UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

| | | |
|---|---|---|
| RANULFO ESTRADA JUAREZ, | : | |
| | : | |
| Plaintiff, | : | CASE NO: 00-CIV-6098 |
| | : | |
| vs. | : | **JUDGE JORDAN** |
| | : | |
| WESTRIA HOLDINGS INC. and | : | **Magistrate Bandstra** |
| MEDITERRANEAN SHIPPING CO. | : | |
| S.A., in personam; and M/V MELODY, | : | |
| Her engines, boilers, tackle, equipment, | : | |
| Apparel, appurtenances, etc., in rem, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**EMERGENCY MOTION TO FIX AMOUNT AND FORM OF SECURITY**

COMES NOW, WESTRIA HOLDINGS, INC. (WESTRIA), Claimant to the Defendant M/V MELODY, by and through its undersigned attorneys, and makes a **Restricted Appearance** pursuant to Supplemental Rule E(8) of the Supplemental Rules for Certain Admiralty and Maritime Claims, and the Federal Rules of Civil Procedure, and moves the Court pursuant to Supplemental Rule E(5) for an Order fixing the amount and form of the security required of said Claimant to prevent the arrest of the M/V MELODY by the Plaintiff herein, and as grounds therefor and in support thereof, incorporates the below Memorandum In Support.

**Memorandum In Support of Motion to Fix Amount and Form of Security**

*Facts*

1. WESTRIA is a foreign corporation and is the disponent owner of the *in rem* defendant M/V MELODY, a Panamanian-registered and flagged vessel.



2. Plaintiff, RANULFO ESTRADA JUAREZ (JUAREZ), is a foreign national and citizen of Guatemala, who was employed by a Netherlands Antilles corporation that was hired by an Italian catering company to provide contract food service personnel aboard the M/V MELODY, who has filed a law suit against both WESTRIA, *in personam*, and the M/V MELODY, *in rem*, alleging the General Maritime Law of the United States applies and that he is entitled to a maritime lien against the above-named vessel for unpaid maintenance and cure benefits.

3. A Warrant For Arrest In Rem was issued by this Court on January 24, 2000, pursuant to Supplemental Rule C for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure and Local Admiralty Rule C, directing the United States Marshal to arrest the M/V MELODY and detain her pending further order of the Court.

4. The M/V MELODY is a passenger cruise ship that calls periodically at the port of Port Everglades, Florida, for extremely short periods of time consisting of a day or less during which passengers are both debarked and embarked. The vessel is next scheduled to call at Port Everglades on Thursday, February 4, 2000.

5. Any delay caused by the arrest of the vessel will cause substantial and irreparable injury to WESTRIA in the form of, but not necessary limited to, damage to its reputation, exposure to potentially hundreds of law suits by dissatisfied customers and passengers, lost revenues, increased operating expenses, and attorney fees.

6. WESTRIA contends any arrest of the M/V MELDOY is unlawful in that the General Maritime Law of the United States **does not apply** to the claim by JUAREZ, and that he **does not have** a maritime lien against the M/V MELODY, contrary to his allegations and the allegations of his U.S. counsel. It further contends, that Dutch law applies to the claim by

JUAREZ pursuant to his employment contract, and that the agreed forum for bringing his claim is Rotterdam. **JUAREZ never entered the United States.** He was hired in Saint Maarten, Netherlands Antilles, joined the vessel in Genoa, Italy, and was stricken by pancreatic cancer while in the service of the M/V MELODY while she was in either Italian or international waters of the Mediterranean Sea. He was treated in an Italian hospital before being sent home to Guatemala where, upon information and belief, he is presently under the care of a treating physician who has been provided and is being paid for by his employer. Upon information and belief, JUAREZ is also being paid his full contractual wage.

7. If the General Maritime Law of the United States **does not** apply to JUAREZ, as WESTRIA contends, and he does not have a maritime lien against the M/V MELODY, then any arrest of the M/V MELODY will be and is unlawful. See, e.g., *Garcia v. M/V KUBBAR*, 4 F.Supp.2d 99 (N.D.N.Y. 1998).

8. If the General Maritime Law of the United States **does** apply, there is no obligation to pay maintenance, cure, and unearned wages after it is determined that a seaman has reached a point of "maximum cure." *Vella v. Ford Motor Co.*, 421 U.S. 1 (1975). JUAREZ has been stricken with terminal pancreatic cancer, for which there is no cure, and therefore has clearly attained maximum cure. Consequently, the medical treatment JUAREZ is presently receiving in Guatemala is purely palliative and he has no legitimate claim for maintenance, cure, or unearned wages, and no maritime lien against the M/V MELODY.

9. The M/V MELODY has not yet been arrested, but WESTRIA believes her arrest to be imminent due, primarily, to correspondence received from Plaintiff's counsel. The most recent of which is attached hereto and incorporated herein.

10. The amount of JUAREZ's claim against the vessel is stated in both the Complaint and attached correspondence as $1.35 million. According to his counsel, $1 million of this claim is for punitive damages, $100,000.00 is for attorney fees, and $250,000.00 is for medical treatment. Plaintiff's counsel also demands that JUAREZ, his wife, and child all be brought to the United States for JUAREZ's treatment and that Defendant pay all travel, living, and other expenses associated therewith. He has also **refused** to accept a letter of undertaking from the vessel's insurers **unless** he is provided with certain information that will assist him in effecting service of process on parties not presently before this Court.

11. As a result, the parties have not been able to agree as to the amount or form of security to be given by the Claimant, and the Claimant therefore respectfully applies to this Court to both set the **fair and reasonable amount** of security and declare **a letter of undertaking** from the well-established North of England P&I Association, which is prepared to issue a letter of undertaking in an amount determined by the Court, satisfactory security **before the subject vessel is arrested on Friday, February 4, 2000.**

*Argument*

The security demands of JUAREZ and his counsel are tortious and "grossly excessive." *Wertman v. Mar Del Sud, Ltd.,* 1995 AMC (D.Ak. 1995). **Even if** this Court ultimately finds JUAREZ is owed maintenance and cure from the time of his diagnosis until death, a position strongly rejected by Claimant and contradicted by the fact that his employer has continued to pay both his wages and his medical bills, that amount cannot possibly reach the amount demanded by opposing counsel. Indeed, counsel himself admits to only $250,000.00 in maintenance and cure payments, and this amount is purely speculative and without a basis in fact. The remainder of his demand ($1.1 million) is for attorney fees and punitive damages, both of which can only be

awarded for the willful failure to pay maintenance and cure. *Vaughan v. Atkinson*, 369 U.S. 527 (1962). Since the employer has paid not only **all** wages due JUAREZ under his contract of employment, which is currently still in effect, but also all medical expenses incurred and being incurred by JUAREZ, there can be no willful failure to pay maintenance and cure and he is not entitled to either attorneys fees or punitive damages. If he is not entitled to attorneys fees or punitive damages, his claim must be, at the very least, reduced to no more and probably less than the speculative $250,000.00 claimed by his counsel. Since his maintenance and cure has been and is being paid, his claim for $250,000.00 is clearly grossly excessive, and Claimant suggests to this Court that **an appropriate amount of security should be no more than $25,000.00**.

Plaintiff will contend that this Court's decision in *Costa Crociere, S.p.A. v. Rose*, 939 F.Supp. 1538, 1996 AMC 2797 (S.D. Fla. 1996), applies, and that a third class of treatment other than maintenance and cure, identified by Judge Marcus as "therapeutic treatment" **which sustains life** for incurable diseases, is also owed him. *Rose* held that a ship owner must provide therapeutic treatment to sustain life. In that case, such treatment consisted of either kidney dialysis for the remainder of the disabled seaman's life or a kidney transplant. *Rose*, however, is inapplicable to the case *sub judice*. JUAREZ is **not** suffering from an incurable disease, as was the Plaintiff in *Rose*, but rather a **terminal condition**. One can live with an incurable condition, such as AIDS or kidney failure, if given the proper treatment. An inoperable, terminal condition, such as pancreatic cancer that has metastasized to Plaintiff's lungs and kidneys, is a completely different matter. There **is** no therapeutic treatment that will sustain his life, and he has in fact reached "maximum medical improvement." *Rose* addresses the question as to when maintenance and cure benefits ought to terminate, and notes the dearth of decisions by the Eleventh Circuit. However, in the case at bar, the employer has **not** ceased to pay maintenance

and cure benefits, so *Rose* is inapplicable. The real issue in this case is whether Plaintiff, a foreign seaman and citizen of Guatemala, is entitled to medical care **in the United States** as opposed to Guatemala, simply because such medical care may be better than in Guatemala or anywhere else in the world. *Rose* does not stand for that proposition, and, in fact, Claimant knows of no case that does. Furthermore, Plaintiff has not shown that his palliative treatment in Guatemala is in any way inferior to what he might receive in the United States.

With regard to the letter of undertaking, it is well-settled that a letter of undertaking serves as adequate security to release a vessel. *L & L Marine Transp., Inc. v. M/V HOKUETSU HOPE*, 895 F.Supp. 297 (S.D. Ala. 1995); *McAllister Towing v. Ambassador*, 20 F.3d 1175 (11th Cir. 1994). Thus, Plaintiff's demands for information notwithstanding, a letter of undertaking offered by the North of England P&I Association constitutes adequate security and Plaintiff has no grounds to refuse to accept it.

If this law suit survives beyond a Motion to Dismiss, which Claimant respectfully suggests it should not, the parties' rights and liabilities must be determined under the General Maritime Law of the United States or the laws of The Netherlands, Guatemala, Italy, The Republic of Panama, and perhaps others, through the choice of laws analysis established by the United States Supreme Court in *Lauritzen v. Larsen*, 345 U.S. 571, 97 L.Ed. 1254, 73 S.Ct. 921 (1953), *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 26 L.Ed.2d 252, 90 S.Ct. 1731 (1970), and *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 3 L.Ed.2d 769, 79 S.Ct. 795 (1959). Thus, *Rose* may well not be applicable at all because the General Maritime Law of the United States may simply not apply. The relevant issues that must be ultimately decided include, but are not necessarily limited to:

    a. What law applies to the claim of JUAREZ for maintenance and cure.

b.  Whether JUAREZ has a maritime lien against the M/V MELODY under the applicable law.

b.  Whether JUAREZ may cause the M/V MELODY to be arrested in the United States.

c.  Whether the Court lacks subject matter jurisdiction regarding the claim by JUAREZ.

d.  Whether the United States District Court for the Southern District of Florida is *forum non conveniens*.

e.  Whether the forum selection clause in JUAREZ's contract of employment requiring all disputes to be brought in Rotterdam pursuant to Dutch law is enforceable.

Consequently, Plaintiff's claim for $1.35 million is grossly excessive and unsupported by fact or law. His counsel's blackmail demand for information not otherwise readily available to him is improper and unethical.

WHEREFORE, WESTRIA HOLDINGS, INC. respectfully requests this Court grant an emergency hearing prior to February 4, 2000, for the purposes of fixing the amount and form of the security required to prevent the arrest of the M/V MELODY and declaring a letter of undertaking from the North of England P&I Association good and acceptable security.

Respectfully submitted,

DE ORCHIS, CORSA & HILLENBRAND, LLP
Attorneys for Westria Holdings, Inc.
2650 Biscayne Boulevard
Miami, Florida 33137
Tel: (305) 571-9200  Fax: (305) 571-9250

By: /s/ Kenneth Gale Hawkes
Kenneth Gale Hawkes, Esquire
Florida Bar Number 282243

## CERTIFICATE OF SERVICE

I HEREBY certify that a true and correct copy of the foregoing was furnished by U.S. Mail and telephone facsimile on the 2rd day of February, 2000, to: David C. Rash, Esquire, 88 NE 168th Street, North Miami Beach, Florida 33162.

By: /s/ Kenneth Gale Hawkes
Kenneth Gale Hawkes, Esquire
Florida Bar Number 282243

LAW OFFICES
# DAVID C. RASH
PROFESSIONAL ASSOCIATION

88 NORTHEAST 168TH STREET

NORTH MIAMI BEACH, FLORIDA 33162

DADE (305) 653-6666 • BROWARD (954) 476-1515

TOLL FREE (800) 225-2696

DAVID C. RASH
ALSO ADMITTED IN LOUISIANA

LUIS MARADIAGA
INVESTIGATOR

FACSIMILE (305) 654-8435
E-MAIL: rashpa@gate.net

January 28, 2000

**Via Telefax and U.S. Mail**
305-571-9250

Gale Hawkes, Esquire
DeOrchis, Corsa & Hillenbrand
2650 Biscayne Boulevard
Miami, Florida 33137-4531

    Re:   Ranulfo Estrada Juarez

Dear Mr. Hawkes:

This will re-confirm our demand made several times in writing and yesterday in person that Mr. Juarez, Mrs. Juarez and their minor son be immediately transported to a competent medical facility, preferably in Miami, Florida, so that emergent life-saving medical care can be rendered, and further oncological evaluation can be completed regarding Mr. Juarez's condition, continued treatment and prognosis.

This will also confirm that we will forego arrest of the M/V MELODY <u>only</u> if <u>all</u> 3 of the following conditions are met by the end of business on Wednesday, February 2, 2000:

1. an adequate Letter of Undertaking is posted promising to secure the Plaintiff's claims up to $1,350,000.00;

2. the specific identity of the M/V MELODY's owners, managers and operators is provided with specific names, addresses and places of incorporation; and,

3. the specific identity of the Plaintiff's alleged employer is provided with specific names, addresses and places of incorporation.

If not, then will have no alternative but to enforce Mr. Juarez's rights as a seaman, including arresting of the M/V MELODY.

JAN 3 1 2000

Gale Hawkes, Esquire
DeOrchis, Corsa & Hillenbrand
January 28, 2000
page 2

    Last, despite our earlier written request, your clients' agent in Guatemala, Oscar Lorini, continues to contact Mr. Juarez and his family without providing any assistance in obtaining the necessary emergent medical care and without the payment of past due wages. Again, please advise Mr. Lorini to cease all direct contact with Mr. Juarez and his family unless it is to specifically arrange for immediate emergent medical treatment or to actually pay past due wages.

    Thank you.

Sincerely,

DAVID C. RASH
Attorney at Law