

FILED BY _____ D C

00 FEB 3 PM 12:07

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA - MIA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**IN ADMIRALTY**

| | |
|---|---|
| RANULFO ESTRADA JUAREZ, ) | CASE NO.: 00-6098-CIV-JORDAN |
| ) | |
| Plaintiff, ) | Magistrate: Bandstra |
| ) | |
| vs. ) | |
| ) | **PLAINTIFF'S RESPONSE TO** |
| WESTRIA HOLDINGS INC. and ) | **WESTRIA'S EMERGENCY MOTION** |
| MEDITERRANEAN SHIPPING ) | **TO FIX AMOUNT AND FORM OF** |
| CO. S.A., in personam; and, ) | **SECURITY** |
| M/V MELODY, her engines, boilers, ) | |
| tackle, equipment, apparel, ) | |
| appurtenances, etc., in rem, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

COMES NOW, the Plaintiff, RANULFO ESTRADA JUAREZ, ("Plaintiff"), by and through his undersigned attorneys and pursuant to Rule 7.1 of the Local Rules of the United States District Court for the Southern District if Florida, Rules C and E of the Local Admiralty Rules, and Rules C and E of the Supplemental Rules for Certain Admiralty and Maritime Claims, and respectfully submits his response to the Defendant, WESTRIA HOLDINGS INC.'s, ("Westria"), Emergency Motion to Fix Amount and Form of Security:

## I. FACTS

1. The Plaintiff is a foreign national seaman from Guatemala who was employed as a 2nd cook on the cruise ship, M/V MELODY, which regularly sails out of Port Everglades, Florida, with thousands of predominantly United States passengers. [See

Plaintiff's Verified Seaman's Complaint, ¶¶ 2, 5 and 15].

2. The "Crew Agreement" referred to by Westria in their Emergency Motion is written in English, which is not the Plaintiff's native language; and, it requires the Plaintiff to be paid in U.S. funds, requires the Plaintiff to have a return plane ticket from Miami to Guatemala, requires the Plaintiff to have valid U.S. Visas, and relies on numerous U.S. General Maritime Law terms and conditions. [See Exhibit A].

3. Moreover, Westria's claims that the Plaintiff was "employed by a Netherlands Antilles corporation hired by an Italian catering company . . . " and that the Plaintiff "was hired in Saint Maarten, Netherlands Antilles . . . " **have no basis in fact**. [See Westria Emergency Motion, p. 2].

4. Indeed, as indicated on the printout at the top of the pages, the Plaintiff was telefaxed the "Crew Agreement" by "CCET" from an office in Miami, Florida, (305-573-9038) to Guatemala where he signed it. [See Exhibit A].[1]

5. The Plaintiff has never stepped foot in Saint Maarten, Netherlands Antilles, nor does the M/V MELODY even sail into Saint Maarten, Netherlands Antilles.

6. Last, the Plaintiff's "Crew Agreement" does not even identify the employer, more less is it signed by the employer or someone on behalf of the employer. Under these circumstances, the "Crew Agreement" that Westria argues requires dismissal of this case for Dutch law and Rotterdam jurisdiction is likely to be deemed invalid on its

---

[1] CCET is believed to a company in Miami, Florida, associated with International Shipping Partners, Inc., a well-known crewing agent also located in Miami, Florida.

2

DAVID C. RASH, P.A.
88 NORTHEAST 168TH STREET, NORTH MIAMI BEACH, FLORIDA 33162 • TELEPHONE (305) 653-6666 • FACSIMILE (305) 654-8435

face as a matter of law.[2]

7. On about October 1, 1999, and while in the service of the ship, the Plaintiff fell ill with cancer. Despite repeated demands for medical treatment and despite a written referral for medical treatment shore side, the Plaintiff was ignored for approximately two months. [See Plaintiff's Verified Seaman's Complaint, ¶¶ 6-12].

8. On about November 30, 1999, the Plaintiff was finally hospitalized in Italy for two weeks where he received diagnostic studies and treatment for what was believed to be liver and/or pancreas cancer. Surprisingly, on about December 17, 1999, the Plaintiff was discharged from the Italian hospital and repatriated to Guatemala City. The Plaintiff was not provided any transportation to his home town of Santotomas Castilla, some 4 or 5 hours drive from Guatemala City. [See Plaintiff's Verified Seaman's Complaint, ¶¶ 6-12].

9. Since his repatriation to Guatemala City, the Plaintiff has not received any maintenance and cure benefits, including but not limited to medical treatment, unearned wages, and room and board. [See Plaintiff's Verified Seaman's Complaint, ¶¶ 6-12].[3]

10. On January 21, 2000, the Plaintiff filed a Verified Seaman's Complaint and Request for Rule B Attachment and Rule C Arrest against the Defendants, Westria and

---

[2] Westria's counsel has refused to provide any information whatsoever regarding the identity of the necessary parties in this matter, including but not limited to the true owner, operator and manager of the M/V MELODY, as well as the Plaintiff's true employer.

[3] Again, Westria makes bold, but unsubstantiated, factual claims that the Plaintiff is receiving his maintenance and cure in Guatemala. [See Westria Emergency Motion, pp. 3, 4, and 5].

3

MEDITERRANEAN SHIPPING CO. S.A., ("Mediterranean"), in personam, and the M/V MELODY, her engines, boilers, tackle, equipment, apparel, appurtenances, etc., in rem, asserting claims for the Westria's and/or Mediterranean's failure to pay maintenance and cure, Jones Act negligence, attorney's fees, prejudgment interest, and punitive damages.

11. In accordance with Rule C(1) and E(1) of the Local Admiralty Rules, the Plaintiff's Verified Seaman's Complaint states the amount of damages, including unliquidated damages and attorney's fees totaling $1,350,000.00. [See Plaintiff's Verified Seaman's Complaint, ¶¶ 21, 28 and 31].

12. On January 24, 2000, this Court issued a Warrant of Arrest for the M/V MELODY, which will not return to this jurisdiction, i.e. Port Everglades, Florida, until February 4, 2000, when the Plaintiff intends to seek arrest of the vessel.[4]

13. On January 27, 2000, the undersigned met with counsel for Westria to discuss the issues and attempt to agree on a stipulation, bond, or other adequate security in lieu of arrest. [See Exhibit attached to Westria Emergency Motion].

14. Given the uncontradicted allegations in the Plaintiff's Verified Seaman's Complaint, and given the "shell game" played by Westria's counsel as to identities of necessary parties involved in this matter, the Plaintiff requested an adequate letter of undertaking in the amount of $1,350,000.00, as well as identifying information about the owners, operators and managers of the M/V MELODY, and the Plaintiff's employer. [See Exhibit attached to Westria Emergency Motion].

---

[4] In its Order Directing Issuance of the Warrant of Arrest In Rem, this Court reserved ruling on the Plaintiff's Motion for Maritime Attachment and Garnishment.

4

15. Westria does not agree to the Plaintiff's demands in lieu of arrest, and has now filed its pre-arrest Emergency Motion to Fix Amount and Form of Security without any supporting evidence to contradict the Plaintiff's Verified Seaman's Complaint.

## II. ONLY ISSUE PROPERLY BEFORE THE COURT[5]

1. Whether the Plaintiff's uncontradicted Verified Seaman's Complaint requires a stipulation, bond or other security in the alleged amount of $1,350,000.00.

## III. SUMMARY OF THE ARGUMENT

1. The answer to only issue before this Court is "yes" because the Plaintiff's claim "fairly stated" in his Verified Seaman's Complaint as being $1,350,000.00 is taken as true, and there has been no evidence offered by Westria to contradict the statements of damages.

## IV. LEGAL AUTHORITIES AND ARGUMENT

### A.   Brief Overview of the Doctrine of Maintenance and Cure

A seaman is entitled to maintenance and cure when he is injured or falls ill while in the service of the ship. The Osceola, 198 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903); See also Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949). "[T]he cause of the ailment is irrelevant, so long as it manifests itself while the seaman is in the service of his vessel," and the liability of the shipowner for maintenance and cure continues until the seaman reaches a point of maximum medical improvement or when "there is no possibility of betterment in the seaman's physical

---

[5] Although Westria raises the "choice of law" and "maximum medical improvement" issues in its Emergency Motion to Fix Amount and Form of Security, neither issue is properly before the Court nor can it be decided on mere attorney argument.

5

DAVID C. RASH, P.A.
88 NORTHEAST 168TH STREET, NORTH MIAMI BEACH, FLORIDA 33162 • TELEPHONE (305) 653-6666 • FACSIMILE (305) 654-8435

condition." Costa Crochiere, S.p.A. v. Rose, 939 F.Supp. 1538, 1548, 1558 (S.D. Fla. 1996)("therapeutic" treatment of incurable disease held to within ambit of maintenance and cure when treatment offered a reasonable chance of continuing life for an indefinite period of time at a meaningful level of functioning).

Historically, courts have liberally interpreted the doctrine of maintenance and cure "for the benefit and protection of seamen who are its wards." Vaughan v. Atkinson, 369 U.S. 527, 531-32, 82 S.Ct. 997, 1000, 8 L.Ed.2d 88 (1962). As a result, a seaman cannot contractually waive his right to maintenance and cure, and the shipowner's liability for the benefits is deemed among the "most pervasive" of all and "is not to be defeated by restrictive distinctions nor narrowly confined." Id.; See also Omar v. Sea-Land Services, Inc., 813 F.2d 986 (9th Cir. 1987). "In other words, 'if leeway is to be given in either direction, all the considerations which brought [the doctrine] into being dictate it should be on the sailor's behalf.'" Costa Crochiere, S.p.A. 939 F.Supp. at 1548 (citing Aguilar v. Standard Oil Co., 318 U.S. 724, 735, 63 S.Ct. 930, 936, 87 L.Ed. 1107 (1943)).

Finally, while the burden of proving the right to maintenance and cure rests with the seaman, once the seaman establishes this right, "the burden of persuasion shifts to the shipowner to prove that the seaman has reached the point of maximum medical improvement." Costa Crochiere, S.p.A., 939 F.Supp. at 1548. The question of whether the seaman has reached maximum medical improvement is a factual medical question, not a legal one, and the determination to terminate a seaman's right to maintenance and cure must be "unequivocal." Id.; See also Breese v. AWI, Inc., 823 F.2d 100 (5th Cir. 1987); L.C. Johnson v. Marlin Drilling Company, 893 F.2d 77, 79 (5th Cir. 1990).

DAVID C. RASH, P.A.
88 NORTHEAST 168TH STREET, NORTH MIAMI BEACH, FLORIDA 33162 • TELEPHONE (305) 653-6666 • FACSIMILE (305) 654-8435

### 1. The Plaintiff has Proven His Right to Maintenance and Cure from Westria.

In this case, the Plaintiff has proven his right to maintenance and cure from the shipowner, Westria. The Plaintiff's Verified Seaman's Complaint alleges that he was a seaman employed by Westria on its cruise ship, the M/V MELODY. Further, the Plaintiff alleges that he fell ill while in the service of the ship. Therefore, the Plaintiff is entitled to receive maintenance ans cure from Westria.

On the other hand, Westria presents only attorney argument insufficient as a matter of law to contradict the Plaintiff's allegations contained in the Verified Seaman's Complaint.

The issue of whether the Plaintiff has reached maximum medical improvement is not before the Court, nor can it be decided without unequivocal medical evidence.

### B. Maritime Liens for Maintenance and Cure

It is well-settled that the duty of a shipowner to pay a seaman's maintenance and cure creates a maritime lien of the "highest priority." Thorsteinsson v. M/V Drangur, 891 F.2d 1547, 1551 (11th Cir. 1990); See also Fredelos v. Merritt-Chapman & Scott Corp., 447 F.2d 435, 440 (5th Cir. 1971). Accordingly, the Plaintiff has an absolute right to an in rem action against the M/V MELODY.

### 1. Plaintiff is Entitled to a Maritime Lien and Warrant of Arrest of the M/V MELODY for Westria's Failure to Provide Maintenance and Cure.

Again, Westria presents no evidence to contradict the Plaintiff's Verified Seaman's Complaint. The Plaintiff has proven his right to maintenance and cure.

DAVID C. RASH, P.A.
88 NORTHEAST 168TH STREET, NORTH MIAMI BEACH, FLORIDA 33162 • TELEPHONE (305) 653-6666 • FACSIMILE (305) 654-8435

Therefore, the Plaintiff is entitled to a maritime lien of the "highest priority" and corresponding Warrant of Arrest of the M/V MELODY.

The choice of law issue is not properly before this Court and is irrelevant to the matter at hand, i.e. amount and form of security.

### C. Pre-Arrest Stipulation, Bond or Other Security - Which Form and How Much?

Pursuant to Rule E of Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims, and Rule E of the Local Admiralty and Maritime Rules, the shipowner can obtain the release of the vessel by (1) entering into an agreed stipulation or special bond with the party on whose behalf the property is being detained; (2) by posting a general bond; or, if the parties cannot agree, (3) by the Court fixing the form and amount of security. Supplemental Rule E(5) and Local Admiralty Rule E(8).[6]

When there has been no general bond posted and the parties cannot agree as to the form and amount of security, the Court may fix a stipulation of special bond in "an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs." Supplemental Rule E(5)(a). Since the every complaint seeking an in rem arrest is required to be verified and is required to state the amount of damages, including unliquidated damages and attorney's fees, the Court should look the allegations therein, and taking them as true, set bond in the stated amount.

---

[6] While letters of undertaking have been considered acceptable security, there is no legal requirement that the party on whose behalf the property is being detained accept from the shipowner a letter of undertaking as adequate security for the release of the vessel. Local Admiralty Rule C(5). Such acceptance is merely permissive. Id. As such, Westria misleads this Court in claiming that the Plaintiff has to accept a letter of undertaking as security.

8

Supplemental Rule C(2) and Local Admiralty Rules A(5), C(1) and E(1).

> **1. The Court Should Require Security, Whether by Letter of Undertaking or Special Bond, In the Amount of $1,350,000.00, Which Is the Uncontradicted, Fairly Stated Amount In the Plaintiff's Verified Seaman's Complaint.**

The Plaintiff's Verified Seaman's Complaint is uncontradicted in that the amount of fairly stated damages is $1,350,000.00. Westria merely presents argument on issues not even before the Court. No evidence has been presented to contradict the verified allegations of the amount of damages. The Plaintiff needs hospitalization, treatment for his disease, nursing care and other medical treatment that the physicians recommend he obtain in Mexico or the United States.

Further, the Plaintiff is due unearned wages from the date of repatriation, December 19, 1999, as well as daily maintenance for room and board, up to the date the Plaintiff is shown by Westria to have reached maximum medical improvement.

The Plaintiff alleged in his Verified Seaman's Complaint that these damages are estimated to be in excess of $250,000.00. Westria has presented no evidence otherwise.

Next, as required by Local Admiralty Rule E(1), the Plaintiff estimates he will have to pay in excess of $100,000.00 in reasonable attorney's fees. Westria presents no evidence to the contrary. Finally, as also required by Local Admiralty Rule E(1), the Plaintiff claims punitive damages in an amount in excess of $1,000,000.00. Westria only presents attorney argument and not any evidence to contradict the Plaintiff's damages.

9

Because the Plaintiff's claims are fairly stated in his Verified Seaman's Complaint, and because there has been evidence to contradict the allegations, this Court should fix a bond in the amount of $1,350,000.00, as security for the Plaintiff's claims against the vessel, M/V MELODY.

WHEREFORE, the Plaintiff, RANULFO ESTRADA JUAREZ, respectfully requests that this Court enter Order requiring a special bond in the amount of $1,350,000.00, as security for the Plaintiff's claims herein, in accordance with the foregoing motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served via telefax (305-571-9250) and hand delivery this 3rd day of February, 2000, to: Kenneth Gale Hawkes, esquire, DeOrchis, Corsa & Hillenbrand, LLP, 2650 Biscayne Boulevard, Miami, Florida, 33137.

LAW OFFICES OF DAVID C. RASH, P.A.
Attorneys for Plaintiffs
88 Northeast 168th Street
North Miami Beach, Florida 33162
Tel:  (954) 476-1515 (Broward)
Tel:  (305) 653-6666 (Dade)
Fax:  (305) 654-8435

by: _____
DAVID C. RASH, ESQUIRE
Florida Bar No: 0977764

05/22/1999  10:48    3055739033                    CCET                                          PAGE  02

# CREW AGREEMENT

**VESSEL:** M/S Melody

**LAST NAME:** Estrada Juarez   **NAME** Ranulfo   **MIDDLE NAME:** Alciro

**DATE OF BIRTH:** 06-29-49   **Passport #** 2128124   **Nationality** Guatemala

**HOME ADDRESS:** Colonia Maria Luisa I, Santo Tomas de Castilla

**BENEFICIARY:** Mariquita Gudiel ( Wife )

**RANK** 2nd. Cook Saucier                        **COMMENCEMENT DATE** 05-27-1999
                                                  **EXPIRATION DATE:** 04-26-2000

- Duration of contract can be extended or reduced up to two months if Management deems necessary.
- 1) Upon and subject to the terms, provisions and conditions hereof, the Employer hereby employs the Employee to perform personal service on board the above vessel and/or any other vessel to be designated. And the Employee hereby accepts such employment and agrees to perform such [illegible due to redaction] the Employer's discretion.
- [illegible] shall be considered a probationary period [illegible] performance. If management finds [illegible] has the right to terminate employment with a [illegible] paying the wages until the date of sign-off.
- The Employee at all times during his/her employment shall be subject and directly responsible to [illegible]

05/22/1999  10:48    3055733039              CCFT                                              PAGE  03

- **Employee**. Any amounts withheld and not so expended shall be remitted by the **Employer** to the **Employee** upon termination of his/her employment. Periodic salary payments shall be made at the end of the month. Upon termination of employment, in arrears for the period then ending
- In the event of injury or illness of an **Employee** while in the service of the vessel, the **Employer** will pay as sick pay and maintenance in accordance with the applicable statutes, regulations, and general maritime law as follows:
- 1) In the event of a job related injury or illness of an Employee while in the service of the vessel, the **Employer** will pay sick pay based on the basic salary, $ __347.00__ Until the **Employee** has reached maximum medical improvement but not to exceed three (3) days at which time the Employer will determine if Employee should be repatriated. If and when repatriated for said illness/injury Employer will pay **Employee** basic salary for a maximum of 60 days.
- 2) The **Employer** shall **not be liable** for any **Employee's** injury or illness which arose from intentional misconduct on the part of the Employee, or arising from pre-existing injury or illness which was not disclosed by the Employee to the Employer prior to the commencement of the employment.
- 5) This employment may be terminated at any time by **Employee** by at least fourteen (14) days written notice thereof to the **Employer** and by Employer at any time without notice, for cause. Cause shall include any breach of Agreement or the rules of conduct, smuggling or other illegal activity, incompetence, inability to perform for any reason, disobedience, impertinence, tardiness, improper behavior towards or in the presence of passengers, or other conduct which is cause for discharge under generally accepted standards of employment of the type herein described for the mentioned cruise vessel.
- **ADDITIONAL CAUSES:** Employer may terminate Employee's employment at anytime as follows:
- (a) On fourteen (14) days notice or 14 days basic salary

3055739038                         CCE:T                                              PAGE  04

7. The Employee will be responsible for his travel expenses from his cou___ of origin to port of embarkation as well as furnish the Employer with a return plane ticket ___ Miami to his country of origin said ticket will be valid for one (1) year and booked with a regul__ scheduled airline (charter flight coupons not acce____le), or the Employee can provide funds to ___ver cost of an airline ticket. Employer whenever ___ ___ble will extend to Employee (for emplo___ ___ccount ) discounted airline tickets to join the ve__ at port of embarkation.

On completion of co__ ___ Employer will provide airline ticke___ ___n port of debarkation to Guatemala

Employer will deduct USD 75.00 monthly from salary for duration of contract, and hold same in escrow. Upon completion of contract money held in escrow will be returned to the crewmember.

### WORKING CONDITIONS

1) One complete set of work  uniforms will be provided , care and maintenance of said uniform to be the sole responsibility of Employee , laundering for same will be provided . It is the Employee's responsibility to ensure that said work uniform be maintained in good condition and within the standards of good grooming. If Employee is asked to purchase a replacement uniform because it does not meet said standard , new set of uniform will be sold to Employee at a discounted price.

2) Room & board will be furnished at no expense to the Employee

3) No taxes are deducted aboard the vessel. Payments of taxes will be responsibility of the Employee as deemed by their respective country or origin.