UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
IN ADMIRALTY



CASE NO. 00-6098-CIV-JORDAN/BANDSTRA

RANULFO ESTRADA JUAREZ,

        Plaintiff,

vs.

WESTRIA HOLDINGS, INC., and
in personam; and M/V MELODY,
her engines, boilers, tackle,
equipment, apparel, appurtenances,
etc., in rem,

        Defendants.
_____/

### MOTION TO DISMISS THE JONES ACT AND U.S. MARITIME LAW CLAIMS, MOTION TO DISMISS ON GROUNDS OF FORUM NON CONVENIENS AND MEMORANDUM OF LAW IN SUPPORT OF MOTION

COMES NOW, WESTRIA HOLDINGS, INC., as Claimant Owner of the M/V MELODY, in rem, by and through undersigned counsel and pursuant to the Federal Rule of Civil Procedure 12(b) and files this, their Motion to Dismiss on Grounds of *Forum Non Conveniens*, as follows:

### PREFACE

In this action, a Guatemalan national attached a Panamanian flag ship at Port Everglades, Florida for an illness claim that manifested itself in Italy in November, 1999. Plaintiff was hospitalized in Italy until he was repatriated by air to his home in Guatemala in December, 1999.

Plaintiff had signed a contract of employment with Island Cruise Service N.V. who have offices in St. Maarten, Dutch West Indies and in Genova, Italy. Plaintiff had no contract with WESTRIA HOLDINGS, INC., the Claimant Owner of the vessel. The contract was signed in Puerto Barrios, Guatemala on May 21st, 1999 and called for employment to commence on May 27th, 1999 as 2nd Cook Servicier on the M/V MELODY. Plaintiff then traveled to Italy and joined the vessel in Genova.

The contract on page 3 provided:

I, the undersigned employee, hereby confirm that I have read this Agreement of Engagement in its entirety, and that I have received a copy of the same and hereby agree to be bound by the terms contained above which are subject to Dutch law with Rotterdam court jurisdiction.

Plaintiff had a pre-employment physical examination in Puerto Barrios, Guatemala which he paid for himself. He carried a copy of the results to the vessel in Italy, where he commenced work.

Thereafter, the vessel traded from Italy to Mediterranean ports. It did not trade in the United States during the time Plaintiff was aboard.

Plaintiff was hospitalized in Genova, Italy on November 30, 1999 with stomach pains. He was given treatment and tests and on December 19th, 1999 was discharged to return home to Guatemala.

Thereafter, he and a fellow crewman who was his traveling companion flew from Italy to Guatemala. They had to change planes in Miami. Plaintiff could not leave the Immigration area at M.I.A. because he did not have a valid U.S. visa.

Plaintiff arrived in Guatemala City on December 20th, 1999 where he was met by his

family. They returned to their home in Puerto Barrios by the taxi which had brought them to Guatemala City.

Thereafter, Plaintiff sought medical treatment in Guatemala. Plaintiff has not been treated in the United States.

Plaintiff has received the Guatemalan Quetzal equivalent of five thousand and forty four US Dollars ($5,044 US) for expenses and wages pursuant to his "Crew Agreement".

Plaintiff has <u>never:</u>

1. Resided in the United States;

2. Owned property in the United States;

3. Had a bank account in the United States;

4. Been treated in the United States;

5. Paid United States income taxes.

Under the choice of law rule set forth by the United States Supreme Court in *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and supplemented by *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed. 2d 252 (1970) and the public interest and private interest factors set forth by that court in *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) this court lacks jurisdiction over this cause and should decline jurisdiction on grounds of *forum non conveniens*.

## SUBJECT MATTER JURISDICTION

The landmark case concerning the right of a foreign seaman or his representative to bring an action in an American court for personal injuries or wrongful death, under the

Jones Act (46 U.S.C., § 688) is *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 2d 1254 (1953).

In that case, Larsen, a Danish seaman, joined the crew of a Danish flag ship in New York City, signing a contract of employment in New York City. Larsen was injured on the ship in Havana, Cuba, and received benefits according to Danish law, and the only connection with the United States was that his employment started there and he signed his contract there and the shipowner could be served with process there.

The Supreme Court refused to apply the Jones Act to that situation listing seven factors to be considered in determining the applicability of the Jones Act:

1. The place of the wrongful act;
2. Law of the flag;
3. Allegiance or domicile of the injured;
4. Allegiance of the defendant shipowners;
5. Place of contract;
6. Inaccessibility of foreign forum;
7. The law of the forum.

The above tests for determining whether U.S. courts had jurisdiction over a foreign seaman's claims were supplemented by the Supreme Court in *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed. 252 (1970), which added an additional factor to the original *Lauritzen* seven, namely, the base of operations of the shipowner. That factor was added because of the growing tendency of shipowners to place their vessels under flags of convenience, primarily the flags of Liberia and Panama, while the

vessels themselves and their owners had no contacts with such country other than the registration of the vessel there.

In *Rhoditis*, a foreign seaman sued a foreign shipowner for personal injuries suffered on board a ship in New Orleans, Louisiana. Although the ship was foreign flag and the shipowner was a foreign corporation, the U.S. court founds the actual owners of the corporation were residents fo the United States, that the ship was controlled and managed in the United States, and that the ship generated a large part of its revenues by operating to and from ports in the United States, and found U.S. law applied.

In a third and related case, the Supreme Court in *Romero v. International Terminal Operating Co.*, 358 U.S. 754, 79 S.Ct. 468, 3 L.Ed. 2d 368 (1959), considered an action by a Spanish seaman injured in Hoboken, New Jersey, on a Spanish flag vessel, the action being brought against a Spanish shipowner, the owner's American agent, and two American companies working on the ship at the time of the accident. The trial court granted a motion to dismiss the complaint, the Supreme Court noting in its opinion, in footnote 4, that the dismissal was for failure to state a claim upon which relief could be granted. The Second Circuit Court of Appeals affirmed that dismissal, 244 F.2d 409 (1957) and the Supreme Court granted certiorari.

In *Romero* the injured seaman claimed damages for his injuries under the Jones Act for negligence and under the General Maritime Law for unseaworthiness, for maintenance and cure, and for a maritime tort against the other two corporate defendants. The trial court found the foreign seaman had no right of action against its foreign employer under the Jones Act, dismissing the claim, found that claims under the General Maritime Law for

unseaworthiness against the shipowner were not within the jurisdiction of the District Court because the parties were not of diverse citizenship and dismissed the Jones Act claim against the agent, finding it was not the employer of the seaman and did not have operation or control of the ship. The maritime tort claims against the other two corporate defendants were dismissed because of lack of complete diversity of citizenship.

In a lengthy opinion, the Supreme Court found that the dismissal for lack of jurisdiction was in error because the plaintiff's mere assertion of claims under the Jones Act was sufficient to empower the trial court to assume jurisdiction with the court having the "power to determine whether it was or was not well founded in law or in fact." *Id.* The Supreme Court then affirmed the dismissal of the shipowner but found the dismissal of the three American defendants was erroneous because the suit against the Spanish shipowner was based on a separate cause of action, commenting, in part, that:

> While Lauritzen v. Larsen involves claims asserted under the Jones Act, the principles on which it was decided did not derive from the terms of that statute.**** The broad principles of choice of law and the applicable criteria selection set forth in Lauritzen were intended to guide the courts in the application fo maritime law generally. Of course, due regard must be had for the differing interests advanced by various aspects of maritime law. But the similarity in purpose and function fo the Jones Act and the general maritime principles of compensation for personal injury, admit of no rational differentiation of treatment fo choice of law purposes. Thus the reasoning of Lauritzen v. Larsen governs all claims here. *Id.* at 485.

Thus, the holding of *Romero* is that the seven *Lauritzen* criteria (supplemented to eight by *Rhoditis*) apply to claims under the general maritime law as well as under the Jones Act.

Considering the *Lauritzen/Rhoditis* eight factors here, the following is clear:

1. <u>Place</u> - Italy.

2. <u>Law of the Flag</u> - Panama.

3. <u>Allegiance or domicile of the injured</u> - Guatemala.

4. <u>Allegiance of the shipowner</u> - Italy or Panama.

5. <u>Place of contract</u> - Guatemala.

6. <u>Inaccessibility of foreign forum</u> - Netherlands is an easily accessible forum and was agreed on in the employment contract.

7. <u>Law of the forum</u> - Netherlands or Dutch law.[1]

8. <u>Shipowner's base of operations</u> - Italy.

As stressed in *Lauritzen*, 345 U.S. at 584, the law of the flag flown by the vessel is of "cardinal importance." Although in his Complaint, Plaintiff asserts that service is available under the Florida Long-Arm Statutes, *Lauritzen* instructs us that the fact that a defendant can be served with process in the United States is entitled to little weight. *Lauritzen, supra.* Of the eight factors specified, none favor Plaintiff. Based upon the *Lauritzen/Rhoditis* factors, Plaintiff is not entitled to bring any claims pursuant to U.S. Law or the Jones Act and his complaint must be dismissed on these grounds. See, *Fogelman v. Aramco*, 920 F.2d 278 (5th Cir. 1991), *Kabadais v. Golden Union*, 1996 AMC 2137

---

[1] In this regard, the Court must assume foreign law is adequate unless Plaintiff demonstrates the inadequacy of foreign law. *McClelland Engineers, Inc. v. Munusamy*, 784 F.2d 1313, 1319 (5th Cir. 1986), overruled on other grounds, *In re: Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147 (5th Cir. 1987).

(E.D.Va. 1996).

## FORUM NON CONVENIENS

Determination of a *forum non conveniens* issue is a two-step process. First, a choice of laws analysis is made as to the applicable law under the tests established by *Lauritzen/Rhoditis*.

Secondly, if foreign law is determined to be applicable, the public/private interest factors test, established by *Gulf Oil Corporation v. Gilbert, infra*, is applied to determine whether or not the court should decline jurisdiction.

In *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the landmark decision in this area, the Supreme Court set forth the tests to determine when the doctrine of *forum non conveniens* applies, listing two general categories, public interest and private interest factors.

The *Gilbert* court considered the following important considerations with regard to these categories, commenting:

> Important considerations [with regard to the private interest of the litigants] are the relevant ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial****.
>
> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to

8

> be imposed upon the people of a community which has no
> relation to the litigation. 333 U.S. 508, 509

These factors have been fleshed out further in subsequent litigation. In *Butler v. Ben Line Steamers*, 1987 AMC 627 (C.D. Cal. 1986), the court noted "The public interest factors include: (1) Administrative difficulties flowing from court congestion; (2) Imposition of jury duty on people of a community that has no relation to the litigation; (3) Local interest in having localized controversies decided at home; (4) The interest in having the case tried in a forum familiar with the law governing the actions; and (5) the avoidance of unnecessary problems and conflicts of law.

Here, the United States has little, if any, interest in this action since it concerns a Guatemalan seaman working on a ship in the Mediterranean. The ship is of foreign registry and owned and operated by foreign entities. Clearly the public interest factors weigh heavily in favor of a Netherlands forum, pursuant to the contract of employment. See, *Johnson v. Nielsen*, 1995 AMC 2662 and *Cruz v. Maritime Company of the Philippines*, 549 F. Supp. 285 (S.D.N.Y. 1982).

As to the private interest factors, these were listed in the *Butler* case as follows:

> (1) Relative ease of access to sources of proof; (2)
> Availability of compulsory process for attendance of
> unwilling witnesses and cost of obtaining attendance of
> willing witnesses; (3) Possibility of viewing the subject
> premises; and (4) All other factors which render trial
> expeditious and inexpensive. 631.

Here, absolutely no sources of proof have any contacts with the United States. Plaintiff's pre-employment examination was conducted in Puerto Barrios, Guatemala. Plaintiff was initially hospitalized in Genova, Italy. After being treated in Italy, Plaintiff

was discharged and returned home to Guatemala, where he sought medical treatment. All of the corporate parties are foreign. Plaintiff does not claim to have been injured while aboard the M/V MELODY, making viewing of the premises irrelevant.

Although in general a plaintiff's selection of forum is accorded some deference, under the circumstances present here, Plaintiff's selection of forum is entitled to little weight. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 70 L.Ed. 2d 419, 102 S.Ct. 252 (1981); *Murray v. British Broadcasting Corp.*, 81 F.3d 287 (2nd Cir. 1996); *Ekaterini Ioannides v. Marika Maritime Corp.*, 928 F. Supp 374 (S.D.N.Y. 1996).

In *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 70 L.Ed. 2d 419, 102 S.Ct. 252 (1981), plaintiff sought to recover from defendants on the basis of negligence or strict liability, the latter theory not recognized under Scottish law, and admitted the action was filed in the United States because its laws regarding liability, capacity to sue, and damages, were more favorable to plaintiffs' position than those of Scotland.

The Supreme Court held that plaintiff may not defeat a motion to dismiss on grounds of *forum non conveniens* merely by showing the substantive law that would be applied in the alternate forum is less favorable to plaintiffs than that of the chosen forum. More importantly, in reinstating the trial court's decision, the Supreme Court, commented, in part:

> "The district court's distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified. In Koster, the Court indicated that a plaintiff's choice of forum is entitled to great deference when the plaintiff has chosen the some forum. ****. When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any forum non conveniens inquiry, a

foreign plaintiff's choice deserves less deference." *Id.* at 266.

See also, *Murray v. British Broadcasting Corp.*, 81 F.3d at 290 and *Ekaterini Ioannides v. Marika Maritime Corp.*, 928 F. Supp. at 378.

Moreover, here Plaintiff's employment contract succinctly provides for forum in Rotterdam, The Netherlands. Such clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Here there is no evidence that the Rotterdam forum is unreasonable. Indeed, if the United States is convenient for Plaintiff, there is no reason that Rotterdam would be any different, especially in light of the fact that most, if not all, potential witnesses and evidence is located in Europe or in Guatemala. See, *Ekaterini Ioannides v. Marika Maritime Corp.*, supra.

## CONCLUSION

The lack of substantial contacts with the United States warrants application of Dutch law as agreed in the employment contract. This court lacks jurisdiction to hear any claim brought under U.S. maritime law or the Jones Act and all claims in this regard must be dismissed.

Under the Gulf Oil Corp. v. Gilbert criteria, dismissal of this action on forum non conveniens is warranted. Plaintiff clearly has alternate forums in which to bring this action. Plaintiff's employment contract specifies Rotterdam as the forum for any suit. All of the potential parties to this action are foreign. The United States has no interest in this action. The United States is an inconvenient forum because all of the witnesses

11

and the parties are foreign and reside outside of the United States. Witnesses are not subject to compulsory process and the costs of bringing in voluntary witnesses would be very expensive. The expense of a trial in the United States under the circumstances of the instant case, coupled with the administrative inconvenience to an already congested court system is unwarranted.

The forum non conveniens doctrine is applicable and the court should dismiss the case conditioned on defendants agreeing to waive any statute of limitations or laches defense and their agreement to accept service of process in a court in the Netherlands.

WHEREFORE, WESTRIA HOLDINGS, INC., as Claimant Owner of the M/V MELODY, based upon the foregoing, pray this Court dismiss the Complaint.

Respectfully submitted,

HAYDEN AND MILLIKEN, P.A.
5915 Ponce de Leon Blvd., #63
Miami, Florida 33146
Phone: (305) 662-1523

By: _____
Reginald M. Hayden, Jr.
Fla. Bar No. 097106

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true copy of the foregoing was served by mail to David C. Rash, Esq., 88 N.E. 168th Street, N. Miami Beach, Florida 33162, on March 9, 2000.

By: _____
Reginald M. Hayden, Jr.

H:\16954\Pldg\M-Dismis.wpd