UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
IN ADMIRALTY

NIGHT BOX FILED

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

CASE NO. 00-6098-CIV-JORDAN/BANDSTRA

RANULFO ESTRADA JUAREZ,

        Plaintiff,

vs.

WESTRIA HOLDINGS, INC., and
in personam; and M/V MELODY,
her engines, boilers, tackle,
equipment, apparel, appurtenances,
etc., in rem,

        Defendants.
_____/

### CLAIMANT/OWNER, WESTRIA HOLDING'S SUPPLEMENTAL MEMORANDUM ON ITS MOTION TO DISMISS FOR FORUM NON CONVENIENS

Claimant Owner of the M/V MELODY, WESTRIA HOLDINGS, INC., files this Supplemental Memorandum in Support of its Motion to Dismiss for *Forum Non Conveniens* and would show the Court that:

1. On March 28, 2000, the deposition of Felice Campagna was taken by Plaintiff. While the deposition has not yet been transcribed, Defendant would represent to the Court that the deposition showed:

    C.C.E.T., Inc., is a Florida corporation with its primary business being a travel agency open to the public.

    C.C.E.T. has an agreement with ISLAND CRUISE SERVICES, N.V. (hereafter "ICS") whose office is at 43 Cole Bay, Phillipsburg, St. Maarten, Netherlands

Antilles.

ICS and C.C.E.T. entered into an agreement on March 27, 1998, a copy of which is attached hereto and which was marked as Exhibit "11" at the deposition.

The agreement was renewed on October 5, 1999 and marked as Exhibit "12" and is attached hereto.

Exhibit "13" is correspondence between ICS and C.C.E.T. of October 20, 1999, clarifying the services to be performed under the agreement of October 5, 1999.

Exhibit "14" on the letterhead of ICS and dated May 21, 1999 was correspondence sent to the Plaintiff in the event he had any problems with immigration authorities on his trip from Guatemala to Italy to join the vessel.

As can be seen, the letter states ICS is the employer of the Plaintiff.

Exhibit "15" is a three-page copy of the Crew Agreement dated May 21, 1999, sent in blank form by fax to a crewing agent in Guatemala, a Mr. Lorini. This document was signed by the Plaintiff as testified to by Plaintiff at his deposition.

The Crew Agreement states Plaintiff was employed by ICS, N.V.

On page 3 of the Agreement, in the last paragraph, it states:

"I, the undersigned Employee, hereby confirm that I have read this Agreement of Engagement in its entirety, and that I have received copy of the same and hereby agree to be bound by the terms contained above which are subject to Dutch Law with Rotterdam court jurisdiction."

The next line bears the signature of Plaintiff, Ranulfo Estrada Juarez, dated May 21, 1999. Plaintiff acknowledged he signed the Agreement to accept the employment.

*Juarez vs. Westria Holdings, Inc.*
CASE NO. 00-6098-CIV-JORDAN/BANDSTRA

Clearly, Plaintiff was an employee of ICS, N.V., and, by signing the Agreement, agreed to any claims being brought in Rotterdam, Holland.

These documents and testimony support Defendant's Motion to Dismiss for *Forum Non Conveniens.*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true copy of the foregoing Westria Holdings Supplemental Memorandum on its Motion to Dismiss for *Forum Non Conveniens* was served by mail to David C. Rash, Esq., 88 N.E. 168th Street, N. Miami Beach, Florida 33162, on March 29, 2000.

HAYDEN AND MILLIKEN, P.A.
Attorneys for Defendant
5915 Ponce de Leon Blvd., #63
Miami, Florida 33146
Phone: (305) 662-1523

By: _____
Reginald M. Hayden, Jr.
Fla. Bar No. 097106

H:\16954\Pldg\Supp-Mem.wpd

# CCET Travel

Telephone: (305) 573-9271 • Fax: (305) 573-9038

"The Magic of Travel
your Vacation
our Obsession"

March 17, 1998

Messrs
I.C.S., N.V.
43 Cole Bay
Philipsburg, St Maarten

Gentlemen:

This Letter of Agreement between C.C.E.T., INC. and I.C.S.,N.V. engages the services of C.C.ET.,INC to provide all travel related services as requested by I.C.S.; services to include:

- Assisting seaman with obtaining the required travel documentation i.e. visas, letter of travel, medical certificates, etc.

- Coordinating with recruiting agent, the travel arrangements from the seaman's country of origin to international gateway city.

- Coordinating travel by providing airline ticket, and transfers to/from airport to ship and/or hotel

- Providing Airport assistance.

- Advising port agents of seaman's arrival and providing flight information as coordinated by CCET.

From time to time I.C.S., may require C.C.E.T. to arrange for funds to be advanced to personnel for reasons of last minute repatriation. On these occasions it is agreed that C.C.E.T. will make arrangements for these payments and charge I.C.S. a minimal handling fee, not to exceed 5% (five percent) of monies advanced on behalf of I.C.S.

It is agreed that for the above services I.C.S., N.V. will pay C.C.E.T, INC. $2500.00 per month respectively for Mv Melody and Mv Rhapsody , $2200.00 per month for the Mv Monterey , plus cost of travel arrangemetns and costs incurred for documentation, transportation and/or hotel expenses.

Should additional ships be added to our service agreement, fees will be negotiated and agreed upon separately from the services subscribed herein.



PAGE 1 OF 2

DEPOSITION
EXHIBIT
# 11   3/28/00
F. Campanya

2300 Biscayne Boulevard • Miami, Florida 33137



# CCET Travel

Telephone: (305) 573-9271 • Fax: (305) 573-9038

*"The Magic of Travel your Vacation our Obsession"*

-2-

Letter of Agreement - Drawn between C.C.E.T., INC. and I.C.S., N.V.

It is agreed and understood that these fees are inclusive of any and/or all overtime, weekend work required to provide the required services.

The terms of this agreement is for a duration of twelve (12) months and will be evaluated six (6) months from date of signature for consideration of costs and/or services which are not foreseen.

The Letter of Agreement is executed and agreed upon by the undersigned.

_____     _____
For and On Behalf Of               For and On Behalf Of
C.C.E.T, INC.

Date: 3/17/95                           Date:_____


Witness:_____          Witness:_____




# C.C.E.T., Inc

Phone (305) 573-9271 • Fax (305) 573-9038

October 5, 1999

I.C.S.,N.V.
Cole Bay 43
Phillipsburg, St Maarten

RE: Agreement Renewal

Gentlemen:

This letter of agreement between C.C.E.T., INC. and I.C.S., N.V. engages the services of C.C.E.T., INC. to provide all travel related services as requested by I.C.S.,NV. - services to include:

- Assisting seamen with obtaining the required travel documentation i.e. visas, letter of travel, etc
- Coordinating with recruiting agent travel arrangements from seaman's original point of travel
- Coordinating travel by providing airline tickets, hotel, transfers to/from vessel and or hotel
- Providing assistance at airport
- Advising port agents of seamans' arrival and providing flight arrangements as coordinated by CCET

From time to time I.C.S. may require C.C.E.T, INC. to arrange funds to be advanced to personnel for reasons of last minute repatriation, on these occasions it is agreed that CCET, Inc will make arrangements for these payments and charge I.C.S., N.V. a minimal handling fee not to exceed 5% (five per cent) of monies advanced on behalf of I.C.S., N.V.

It is agreed that fo rthe above services I.C.S., N.V. will pay C.C.E.T.INC the following monthly fee:
  MV Melody     $2,500.00
  Mv Monterey   $1500.00
  Mv Rhapsody   $1500.00

It is further understood and agreed that these fees are inclusive of any and/or all overtime, or weekend work needed to provide the required services.

The terms of this agreement is a term of twelve (12) months, and will be evaluated every six months from date of signature for consideration of costs and/or services which are not foreseen.

In acceptance of terms stipulated herein.

_____          _____
I.C.S., N.V.                                C.C.E.T, INC.

Oct 12, 1999                                Oc- -/-?
_____          _____
DATE                                        DATE

3050 Biscayne Blvd.
Suite 202
Miami FL. 33137


DEPOSITION
EXHIBIT
#12  3/28/00
F Campagna

ICS

# Island Cruise Services N.V.
43 Cole Bay ~ Philipsburg, ~ St. Martin, NA

October 20, 1999

Ms. Suzel Iglesias
C.C.E.T., INC.
3050 Biscayne Blvd
Suite 202
Miami, Fl. 33137

RE:   SERVICE AGREEMENT

Dear Suzel:

Reference to our telephone conversation of yesterday, it is agreed that whenever we ask for services such as forwarding of correspondence, sending faxes or placing phone calls , costs incurred will be charged to us.  As you know, here in St Maarten, we have difficulties sending faxes on board ships or abroad , so for the sake of expediencey we may ask you to process such communications.

Similiarly any expenses incurred for travel done in our behalf will be reimbursed upon receipt of invoice with supporting documentation.

We take this opportunity to remind you that we are most interested in expanding our services and would very much appreciate if you would introduce our company to the cruise lines and the services that we offer in St Maarten , namely; Manning Company, Ship's Agent , and Tour Operators.

Thanking you for your assistance in these matters, we close with kindest regards,

Yours Sincerely,

*[signature]*



DEPOSITION
EXHIBIT
# 13   3/28/00
F. Campagna

05/22/1999  10:43   3055759008                    CCET                                      PAGE  15



# Island Cruise Services N.V.
Piazza Dante 6** Genova, Italy**Phone 010 581835

May 21, 1999

To Whom it May Concern:

The bearer of this letter, Mr. Estrada, Ranulfo has been hired by our company ISLAND CRUISE SERVICES, N.V. to work on board the passenger vessel M/S Melody of Panamanian Registry.

Mr. Estrada, Ranulfo is traveling to Genova, Italy to join the M/S Melody on May 27, 1999.
Contact information for the vessels agents is as follow:

    ICS Island Cruise Services N.V.
    Piazza Dante 6** 16121 Genova, Italy
    Telephone: 39-010-581835
    CONTACT: Capt. Luigi Marre

Mr. Estrada, Ranulfo upon arriving in Genova, Italy will be met by ICS agent / representative and transferred to the Vessel.

We kindly request that you allow Mr. Estrada, Ranulfo to enter your country for the purpose of joining the above referenced vessel.

Should you have any questions, please do not hesitate to call Capt. Luigi Marre.

Sincerely yours,



02/1999  10:49   7055739039                  CCET                                    PAGE

Victicico 04

# CREW AGREEMENT

- **VESSEL:** M/S Melody

- **LAST NAME:** Estrada Juarez   **NAME:** Ranulfo   **MIDDLE NAME:** Alcino

- **DATE OF BIRTH:** 06-29-49   **Passport #** 2128124   **Nationality:** Guatemala

- **HOME ADDRESS:** Colonia Maria Luisa I, Santo Tomas de Castilla

- **BENEFICIARY:** Mariquita Gudiel ( Wife )

- **RANK** 2nd. Cook Saucier                  **COMMENCEMENT DATE** 05-27-1999
                                              **EXPIRATION DATE** 04-26-2000

- Duration of contract can be extended or reduced up to two months if Management deems necessary

- 1) Upon and subject to the terms, provisions and conditions hereof, the Employer hereby employs the Employee to perform personal service on board the above vessel and/or any other vessel to be designated. And the Employee hereby accepts such employment and agrees to perform such services. Transfer to another vessel may occur at the Employer's discretion.

- For first time employees, the first two months on board shall be considered a probationary period during which time Management will evaluate the employees performance. If management finds employees performance unsatisfactory Management has the right to terminate employment with a seven (7) days notice, paying the wages until the date of sign-off.

- 2) The Employee at all times during his/her employment shall be subject and directly responsible to his/her department head or other person designated by the Employer who shall designate on and off duty hours, specific duties to be performed by the Employee and other details of employment Employee shall perform as designated, neatly, efficiently and otherwise in a manner satisfactory to the department head or other such person. Employee will be personally responsible for any damage or injury caused by Employee to the vessel, any property thereon, or any person.

- 3) Employee must at all times comply strictly with applicable rules of conduct promulgated by the Employer and the regulations of the vessel, as the same may be from time to time enlarged, modified, altered or rescinded in whole or in part by the Employer. Breach of any such rules of conduct may subject Employee to fines and/or discharge. The Employer undertakes no responsibility for you not being able to land a particular country by the reason of you not having the proper documents or for any other reason.

- **4A. NON-TIP AREA PERSONNEL**

- The Employer shall pay Employee for all his services the monthly amount of $ 300.00  in US funds which includes basic salary, fixed overtime of 30 hours weekly, vacation and holidays

- **4B. TIP AREA PERSONNEL**

- As a "Tipping Employee": the Employer shall pay Employee a total monthly income of including basic salary, overtime, vacations, and holidays of $ N/A  plus Bonus and/or commissions as earned.

- **4C. ALL PERSONNEL**

-     The Employer may withhold from any Employee of any class such amount as Employer deems necessary to cover fines or other costs of expenses to which such Employee is subject hereunder. Such withholding shall not relieve the Employee from any of his/her obligations hereunder except to the extent amount withheld has actually been used by Employee upon by Employer to apply against amounts owed and payable by

Effective 10-28-98

DEPOSITION EXHIBIT #15 3/28/0

- Employee. Any amounts withheld and not so expended shall be remitted by the Employer to the Employee upon termination of his/her employment. Periodic salary payments shall be made at the end of the month. Upon termination of employment, in arrears for the period then ending
- In the event of injury or illness of an Employee while in the service of the vessel, the Employer will pay as sick pay and maintenance in accordance with the applicable statutes, regulations, and general maritime law as follows:
- 1) In the event of a job related injury or illness of an Employee while in the service of the vessel, the Employer will pay sick pay based on the basic salary, $___247.00___ Until the Employee has reached maximum medical improvement but not to exceed three (3) days at which time the Employer will determine if Employee should be repatriated. If and when repatriated for said illness/injury Employer will pay Employee basic salary for a maximum of 60 days.
- 2) The Employer shall not be liable for any Employee's injury or illness which arose from intentional misconduct on the part of the Employee, or arising from pre-existing injury or illness which was not disclosed by the Employee to the Employer prior to the commencement of the employment.
- 5) This employment may be terminated at any time by Employee by at least fourteen (14) days written notice thereof to the Employer and by Employer at any time without notice, for cause. Cause shall include any breach of Agreement or the rules of conduct, smuggling or other illegal activity, incompetence, inability to perform for any reason, disobedience, impertinence, tardiness, improper behavior towards or in the presence of passengers, or other conduct which is cause for discharge under generally accepted standards of employment of the type herein described for the mentioned cruise vessel.
- ADDITIONAL CAUSES: Employer may terminate Employee's employment at anytime as follows:
- (a) On fourteen (14) days notice or 14 days basic salary
- (b) For failure to pass a physical examination by a doctor designated by the Employer either before or after the execution of this contract.
- (c) Due to the loss of vessel or loss of capacity of navigation.
- (d) Lay up of vessel or loss capacity of navigation
- (e) Sale of vessel or change of flag
- (f) Illness, accidental, and Act of God whether or not it directly affects Employee
- (g) Idleness of vessel for any reason whatsoever.
- In the event of casualty, fire or other accident to the vessel whereby Employee's effects are damaged or lost, the Employer will pay compensation of up to a maximum of $___3000.00___. Furthermore, it remains clearly understood that when an Employee leaves the vessel to go ashore on Employee's own time, should Employee find him/herself involved in personal problem the result of which Employee loses property or suffers and accident or causes loss of lesions to other persons, the Employer does not assume any responsibility of such losses or lesions for which the Employee shall be solely responsible
- 6. CONTRABAND
- Infractions concerning contraband or the possession of narcotics will be immediate cause for dismissal. Any staff member violating contraband laws of the country to which vessel trades or found to be in possession of narcotics will forfeit all wages, traveling expenses and the like accruing both before and after such infractions become known to the Employer. All such contraband may be seized by the Employer's representative without compensation. It is hereby expressly agreed and understood that neither the Owners of the vessel on which you serve nor the Master of Employer will be responsible for any consequence, fines, penalties, imprisonment etc. that you may suffer or have imposed as a result of your illegal possessions, smuggling, dealing or trafficking on drugs or other prohibited substances on board the vessel or ashore.

Effective 10-29-98

7. The Employee will be responsible for his travel expenses from his country of origin to port of embarkation as well as furnish the Employer with a return plane ticket from Miami to his country of origin said ticket will be valid for one (1) year and booked with a regularly scheduled airline (charter flight coupons not acceptable), or the Employee can provide funds to cover cost of an airline ticket. Employer whenever possible will extend to Employee (for employees account) discounted airline tickets to join the vessel at port of embarkation.

On completion of contract Employer will provide airline ticket from port of debarkation to Guatemala

Employer will deduct USD 75.00 monthly from salary for duration of contract, and hold same in escrow. Upon completion of contract money held in escrow will be returned to the crewmember.

### WORKING CONDITIONS

1) One complete set of work uniforms will be provided, care and maintenance of said uniform to be the sole responsibility of Employee, laundering for same will be provided. It is the Employee's responsibility to ensure that said work uniform be maintained in good condition and within the standards of good grooming. if Employee is asked to purchase a replacement uniform because it does not meet said standard, new set of uniform will be sold to Employee at a discounted price.

2) Room & board will be furnished at no expense to the Employee

3) No taxes are deducted aboard the vessel. Payments of taxes will be responsibility of the Employee as deemed by their respective country or origin.

4) The Employee must have prior to employment valid passport for minimum of one year and both C and D visas from the United States Embassy or Consulate valid for at least six months, and a clean bill of health issued by an accredited doctor. In any event if additional medical examination is required cost of same will be deducted from first month's salary. Failure to pass examination will immediately disqualify you and you will be returned to your country of origin at your own expense.

5) Those personnel assigned to the Bar, and consigned the bar stock at commencement of contract will be solely responsible for reconciling of said stock at the completion of contract. It is understood and agreed that from time to time said bar stock will be subject to audit.

6) Uniforms: Employee will receive the first set of uniforms free, each subsequent set provided will be paid by the Employee at full cost of uniform

I, the undersigned Employee, hereby confirm that I have read this Agreement of Engagement in its entirety, and that I have received copy of the same and hereby agree to be bound by the terms contained above which are subject to Dutch law with Rotterdam court jurisdiction

EMPLOYEE
RANULFO ESTRADA JUAREZ

DATE  05-21-99

I.C.S. N.V.
FOR THE EMPLOYER

Effective: 10-29-96