UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
IN ADMIRALTY

CASE NO. 00-6098-CIV-JORDAN/BANDSTRA

RANULFO ESTRADA JUAREZ,

        Plaintiff,

vs.

WESTRIA HOLDINGS, INC., and
in personam; and M/V MELODY,
her engines, boilers, tackle,
equipment, apparel, appurtenances,
etc., in rem,

        Defendants.
_____/

## SUPPLEMENTAL FILING IN SUPPORT OF CLAIMANT OWNERS MOTION TO DISMISS ON GROUNDS OF FORUM AND NON CONVENIENS IN MEMORANDUM LAW IN SUPPORT OF MOTION

COMES NOW, WESTRIA HOLDINGS, INC., as Claimant Owner of the M/V "MELODY", in rem, by and through undersigned counsel and pursuant to the Federal Rules of Civil Procedure and files this Supplement to its Motion to Dismiss, etc. filed in this matter, as follows:

### SUPPLEMENTAL MEMORANDUM OF LAW

On or about March 9, 2000, Claimant Owner filed its Motion to Dismiss the Jones Act and U.S. Maritime Law Claims and its Motion to Dismiss on Grounds of *Forum Non Conveniens* in Memorandum of Law and support of said Motions. The contract of employment under which Plaintiff was employed aboard the M/V "Melody", sets forth that all actions brought under his contract of employment shall be brought in the Netherlands.

Claimant Owner has filed a Motion to Dismiss on *Forum Non Conveniens*. In support of said Motion, Claimant Owner asserts that the Netherlands is a proper forum pursuant to Plaintiff's contract of employment and for other reasons. In support of its assertion that the Netherlands provides an adequate forum to address Plaintiff's claims, Claimant Owner files the following cases which have upheld dismissal on grounds of *forum non conveniens* to the Netherlands and have addressed the same or simiar issues regarding forum in the Netherlands as is presently before this honorable Court. See, *Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G.*, 955 F.2d 368 (5th Cir. 1992); *Hein Danser v. Firestone Tire and Rubber Co.*, 86 F.R.D. 120 (SDNY 1980); and, *Volkenburg v. Nederland-Amerik*, 221 F. Supp. 925 (DC Mass. 1963), *affrimed*, 336 F.2d 480 (1st Cir. 1964). For convenience, these cases have been attached for review by the Court.

Respectfully submitted,<br>
HAYDEN AND MILLIKEN, P.A.

_____<br>
Reginald M. Hayden, Jr., Esq.

2

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true copy of the foregoing Westria Holdings Supplemental Filing in Support of Claimant Owners Motion to Dismiss the Jones Act and U.S. Maritime Law Claims, Motion to Dismiss on Grounds of *Forum Non Conveniens* and Memorandum of Law in Support of Motion was served by mail to David C. Rash, Esq., 88 N.E. 168th Street, N. Miami Beach, Florida 33162, on April __5__, 2000.

>HAYDEN AND MILLIKEN, P.A.
>Attorneys for Defendant
>5915 Ponce de Leon Blvd., #63
>Miami, Florida 33146
>Phone: (305) 662-1523
>
>By: _____
>Reginald M. Hayden, Jr.
>Fla. Bar No. 097106

H:\16954\Pldg\Supp-Fil.wpd

EMPRESA LINEAS MARITIMAS ARGENTINAS, S.A., Plaintiff-Appellant, v. SCHICHAU-UNTERWESER, A.G., and Stork-Werkspoor Diesel, B.V., Defendants-Appellees.

No. 91-3221

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

955 F.2d 368; 1992 U.S. App. LEXIS 4136; 1992 AMC 2584

March 12, 1992, Decided

SUBSEQUENT HISTORY: As Corrected.

PRIOR HISTORY: [**1] Appeal from the United States District Court for the Eastern District of Louisiana. D.C. DOCKET NUMBER 90-1294-C-2. JUDGE Robert F. Collins

DISPOSITION: AFFIRMED.

CORE TERMS: cargo, deference, conveniens, deposition, foreign forum, third-party, convenience, inconvenience, engines, public interest, weighing, fault, de bene esse, deposed, vessel, compulsory process, admissible, unfairness, indemnity, survivor, unfair, weigh, product liability, presentation, auxiliary, accorded, information to enable, unreasonably, unwilling, alternate

COUNSEL: ATTORNEYS FOR APPELLANT: JONES, WALKER, ET AL., 201 St. Charles Ave., 50th Fl., NOLA 70170-5100, (582-8000). Robert B. Acomb, Jr., 201 St. Charles Ave., 50th Fl., NOLA 70170-5100, (582-8000). Grady S. Hurley, 201 St. Charles Ave., 50th Fl., NOLA 70170-5100, (582-8000). Donald Burke, Cardillo & Corbett, 29 Broadway, N.Y., N.Y., 10006, 212-344-0464. Robert A. Milana, Kirlin, Campbell & Keating, 23rd Floor, 14 Wall St., N.Y., N.Y. 10005, 212-732-5520. Richard H. Brown, Jr., Kirlin, Campbell & Keating, 23rd Floor, 14 Wall St., N.Y., N.Y. 10005, 212-732-5520. Mary L. O'Conor, Kirlin, Campbell & Keating, 23rd Floor, 14 Wall St., N.Y., N.Y. 10005, 212-732-5520.

FOR SCHICHAU-UNTERWESTER, A.G.: LESTER, SCHWAB, ET AL., 120 Broadway, New York, NY 10271, (212-964-6611). Harold Lee Schwab, LESTER, SCHWAB, ET AL., 120 Broadway, New York, NY 10271, (212-964-6611). FOR STORK-WERKSPOOR DIESEL, B.V.: ADAMS & REESE, 4500 One Shell Sq., NOLA 70139, (581-3234). Joel L. Borrello, ADAMS & REESE, 4500 One Shell Sq., NOLA 70139, (581-3234). Thomas J. Wyllie, ADAMS & REESE, 4500 One Shell Sq., NOLA 70139, (581-3234). BURLINGHAM, UNDERWOOD & LORD, One Battery Park Plaza, 25th Fl., NY, NY 10004-1484. Robert B. Pohl, One Battery Park Plaza, 25th Fl., NY, NY 10004-1484.

JUDGES: Before REAVLEY, HIGGINBOTHAM and DEMOSS, Circuit Judges.

OPINIONBY: REAVLEY

OPINION: [*370] REAVLEY, Circuit Judge:

The M/V ELMA TRES sank off Bermuda on November 26, 1981, taking 23 crewmen and $17 million in cargo with her. The vessel was bound for United States ports, carrying merchandise for American interests. All cargo claims having been settled, the remaining parties dispute the proper forum for trying the third-party product liability action of Empresa Lineas Maritimas Argentina (ELMA), the vessel's Argentinian time-charterer, against Stork-Werkspoor Diesel, B.V. (SWD), the Dutch manufacturer of the auxiliary diesel engines used to supply electrical power onboard the vessel. The district court granted SWD's motion to dismiss on the basis of forum non conveniens, and ELMA appealed. We affirm.

I. BACKGROUND

In 1981 and 1982, the American cargo interests (collectively "cargo") joined suit against Joachim Drescher (Drescher), the German shipowner, in New York federal court. Drescher responded by filing a complaint in New York under the Limitation of Liability Act, forcing cargo to consolidate their claims in [**2] the limitation action. Cargo also sued ELMA in the consolidated action. In 1984, cargo brought product liability claims against the German ship builder, Schichau-Unterweser, A.G. (SUAG), and against SWD. The court consolidated these claims with the ELMA claims for discovery purposes. SUAG was not subject to personal jurisdiction in New York, and never appeared. Discovery commenced in the consolidated action in 1984. Drescher eventually was dismissed from the action.

[*371] In 1985, SWD filed motions to dismiss cargo's claims for lack of personal jurisdiction and forum non conveniens. The court denied these motions, honoring the American cargo plaintiffs' forum choice. Substantial discovery followed. Then, in February 1988 after ELMA commenced its third-party product liability suit against SWD, SWD filed another motion to dismiss on grounds of lack of jurisdiction and forum non conveniens. By this time, ELMA had settled with cargo, leaving cargo with claims against SWD for the remaining losses. The court reserved its ruling on the 1988 jurisdictional motion, but denied the forum non conveniens motion because of the advanced stage of development of the case. The court doubted [**3] its jurisdiction over SWD, but nevertheless set a trial date. But the court subsequently transferred the case to the Louisiana federal court, without ELMA's opposition, because of SWD's presence in that state.

In August 1990, after settling the remaining claims of cargo, SWD filed its third forum non conveniens motion in New Orleans, claiming that the Netherlands was a more convenient trial location. ELMA and SWD were the only remaining parties. In February 1991 the district court dismissed the case on forum non conveniens grounds. This appeal followed.

II. DISCUSSION

We review the district court's decision-making process and conclusion to determine if the district court acted reasonably. *Nolan v. Boeing Co.*, 919 F.2d 1058, 1068 (5th Cir.1990), cert. denied,    U.S.    , 111 S. Ct. 1587, 113 L. Ed. 2d 651 (1991). Our review follows the analysis set out in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, 67 S. Ct. 839, 843, 91 L. Ed. 1055 (1947) and applied in *In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1165-66 (5th Cir.1987).

ELMA raises a [**4] procedural argument, that the district court did not uniformly require SWD to shoulder the burden on its motion. ELMA notes that this court once before required a defendant to bring "unequivocal, substantiated evidence presented by affidavit testimony" in order to carry its burden. *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1550 n. 14 (5th Cir.), cert. denied,    U.S.    , 112 S. Ct. 430, 116 L. Ed. 2d 449 (1991). The district court did not require SWD to make an affidavit showing on certain issues raised in the motion, including the existence of any SWD indemnity claim against SUAG; the existence of documents in SUAG's possession that were required for SWD's defense; whether SWD's former employees are unwilling to testify in the United States; whether current SWD employees are unwilling to testify in the United States; whether SWD has assets only in the Netherlands; and whether suit in the Netherlands would administratively burden the Dutch court or delay the trial.

As to the showing that a defendant must make to carry its burden against a plaintiff who has chosen a foreign forum, the Supreme Court in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981), [**5] rejected the contention "that defendants seeking forum non conveniens dismissal must submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum." *Id.* at 258, 102 S. Ct. at 267. The Court concluded that "such detail is not necessary." Rather, defendants "must provide enough information to enable the District Court to balance the parties' interests." Id. And Baris commented that a defendant need not present "a detailed development of the entire case," and that "'the necessary detail [required by defendants] will depend upon the particular facts of each case.'" 932 F.2d at 1550 n. 14 (quoting *Air Crash*, 821 F.2d at 1165 n. 28).

We do not think that the Baris affidavit requirement extends to all elements of defendant's burden in every case. Baris involved an American plaintiff, and therefore the defendant was obligated to make a stronger showing of inconvenience than is SWD. *Piper*, 454 U.S. at 255, 102 S. Ct. at 266. And Baris discussed the affidavit [**6] requirement in the context of determining [*372] forum availability and adequacy in a case where these essential threshold requirements were not established. 932 F.2d at 1549-50. Further, the imposition of a blanket rule requiring affidavit evidence as to the kinds of matters ELMA raises would invite protracted discovery in every case, and would tend to inflict an impossible burden on defendants who are seeking dismissal for the very reason that they cannot compel evidence, including the evidence necessary to argue for dismissal. See *Piper*, 454 U.S. at 258, 102 S. Ct. at 267 (purpose of forum non conveniens doctrine defeated by requiring extensive evidence that lies beyond compulsory process). We think that SWD, under the particular facts of this case, has met its burden of supplying "enough information to enable the District Court to balance the parties' interests." Id.

A. AVAILABILITY AND ADEQUACY OF THE NETHERLANDS FORUM

This court previously has found the Dutch courts available and adequate for the resolution of maritime disputes. *Belcher Co. of Alabama, Inc. v. M/V MARATHA MARINER*, 724 F.2d 1161, 1165-66 (5th Cir.1984); [**7] *Veba-Chemie A.G. v. M/V GETAFIX*, 711 F.2d 1243, 1245 (5th Cir.1983). But ELMA argues that the Dutch forum is inadequate in this case because the extent of merits activity already completed by ELMA

in anticipation of trial in the United States makes dismissal unfair. ELMA further argues that the Dutch forum is inadequate because the different "judicial culture" of the Dutch courts will prejudice ELMA's ability to present its case in the Netherlands, in part because depositions of key witnesses, including the sole survivor of the sinking, are not admissible.

SWD and SUAG both are amenable to process in the Netherlands, and Dutch law permits ELMA to litigate against SWD the type of claims that are the subject matter of this dispute. The district court specifically concluded that Dutch courts will hear maritime disputes between foreign parties arising from accidents on the high seas, and will recognize claims for damages in tort against a product manufacturer. Consequently, the court reasoned, the Netherlands affords an adequate forum for adjudicating ELMA's and SWD's third-party claims. We cannot say that the district court's conclusion was unreasonable. There exist [**8] in this case "at least two forums in which all defendants are amendable to process." *Air Crash, 821 F.2d at 1164.* And the alternate forum is adequate if differences in that forum's laws would not deprive the plaintiff of all remedies or result in unfair treatment. *Id. at 1165.* Absent unfairness, differences in the law of the alternate forum are not a substantial factor to consider. *Piper, 454 U.S. at 254-55, 102 S. Ct. at 265.*

ELMA urges that Dutch rules prohibiting admissibility of foreign depositions prejudice ELMA's ability to put on its case in the Netherlands. But ELMA does not attack the substance of SWD's rebuttal, that Dutch law does not render the critical depositions actually inadmissible, but rather makes their admissibility at trial subject to the judge's discretion. Further, while ELMA contends that Dutch courts are unable to compel the live testimony of certain German witnesses at trial, ELMA's Reply Brief cites no authority in support of that contention despite SWD's rebuttal. In light of the fact that ELMA's key German witnesses were deposed de bene esse, and the uncontested [**9] averment that the Dutch court has discretion to permit ELMA to introduce those depositions at trial, we reject ELMA's argument that the Dutch forum is unfair for the reason that ELMA will be unable to present its case. And we think that the "judicial culture" differences in truth are differences in substantive and procedural law that, while affecting ELMA's rights, do not deprive ELMA of redress for its alleged injury or cause unfairness.

Relying on *Lony v. E.I. Du Pont de Nemours & Co., 935 F.2d 604 (3d Cir.1991)* (Lony II), ELMA argues that forum non conveniens dismissals are inappropriate in cases where substantial discovery has taken place. Lony II specifically holds that [*373] "whenever discovery in a case has proceeded substantially so that the parties already have invested much of the time and resources they will expend before trial, the presumption against dismissal . . . greatly increases." *Id. at 614.* But the district court here specifically considered and rejected ELMA's argument that the advanced status of this case weighs against dismissal. The court observed that, while the cargo suit was filed eight years before, ELMA did [**10] not file its third-party claim until 1988. The court concluded that "while much work has been done on this case, . . . this one factor does not outweigh . . . factors which call for dismissal." And SWD attacks the notion that this case is "trial-ready" with the fact that SWD has been unable to develop its fault-shifting defense against SUAG. We do not think that the district court was unreasonable in weighing as it did the stage of development in this case.

### B. DEFERENCE DUE ELMA'S FORUM CHOICE

While district courts ordinarily should respect an American plaintiff's forum choice, a foreign plaintiff's choice of an American forum merits less deference. *Piper, 454 U.S. at 255, 102 S. Ct. at 266.* ELMA did not choose the United States forum, but rather was haled into court here by the American cargo. ELMA claims, therefore, that it is entitled to the same deference owing to an American plaintiff, which deference requires that SWD prove that the balance of all relevant factors strongly favors dismissal. See *In re Oil Spill by AMOCO CADIZ etc., 491 F. Supp. 170, 177 (N.D.Ill.1979),* aff'd, *699 F.2d 909 (7th Cir.1983)* [**11] (limitation plaintiff's choice of foreign forum balanced by fact that limitation action is defensive).

The district court did not set out the degree of deference that it accorded ELMA's forum choice, nor did it find that the relevant factors favor dismissal strongly. ELMA also contends that the trial court's failure to render any analysis of the degree of deference owing ELMA's forum choice is prima facie abuse of discretion.

Convenience is the ultimate consideration for a district court in balancing private interest factors, including the forum choice of the plaintiff. When a plaintiff chooses a foreign forum for its claims, courts are reluctant to assume that convenience motivated that choice. *Piper, 454 U.S. at 255-56, 102 S. Ct. at 266.* In this case, ELMA has sued SWD in a foreign forum. Of course, ELMA initially was required to defend in New York because of Drescher's limitation action. However, when ELMA filed this suit against SWD, all of the American cargo plaintiffs had settled their claims against ELMA, Drescher had been dismissed, and SUAG had yet to be joined. Unlike the plaintiff in Oil Spill, ELMA had no legal interest [**12] left in the United States forum,

other than the right to assert its claims. Therefore, ELMA had a choice to file in either the Netherlands or the United States. Consequently, the district court could reasonably find that ELMA's forum choice merits less deference than that of a domestic plaintiff, particularly where ELMA had some burden to show that it chose the United States forum for the sake of convenience and not merely to obtain the benefit of favorable law. *Piper, 454 U.S. at 249 & n. 15, 102 S. Ct. at 262 & n. 15*. Given the district court's conclusion that private interest factors weigh against dismissal, we cannot say that the district court unreasonably failed to give special deference to ELMA's forum choice.

In *Lony v. E.I. Du Pont de Nemours & Co., 886 F.2d 628 (3d Cir.1989)* (Lony I), the Third Circuit opined that a district court must indicate the amount of deference accorded a plaintiff's forum choice. *Id. at 634*. Lony I followed Third Circuit precedent in imposing this mandate. See, e.g., *Lacey v. Cessna Aircraft Co., 862 F.2d 38, 45 (3d Cir.1988)*. But our [**13] cases have not required such specificity from the district courts. Nor do we think that the district court abused its discretion in failing to make a particular finding about the degree of deference it accorded ELMA's forum choice. The district court's order recited the analytical framework for considering [*374] SWD's motion, as set forth in Air Crash, and the court specifically noted that ELMA was a foreign party. While the district court should have supplied more explanation, we cannot say that the court failed to consider ELMA's status or abused its discretion in declining to make the desired finding. See *Piper, 454 U.S. at 257, 102 S. Ct. at 266* (giving substantial deference to district court's decision that "considered all relevant public and private interest factors" and balanced them reasonably).

C. OTHER PRIVATE INTEREST FACTORS

1. Availability of Impleader.

The district court considered SWD's inability to implead SUAG in the United States to be the most important factor warranting dismissal, and the court gratuitously opined that this factor alone would justify dismissal. ELMA argues that the trial court erred in making that consideration [**14] because SWD has no right of indemnity against SUAG for defects in its own engines. Alternatively, ELMA contends that the trial court erred because the doctrine of *Leger v. Drilling Well Control, Inc., 592 F.2d 1246 (5th Cir.1979)*, protects SWD from having to pay more than its actual percentage of fault, which in turn renders SUAG's contribution unnecessary.

We cannot say that the district court acted unreasonably in finding that SWD's defense would be prejudiced if ELMA won judgment in the United States and SWD subsequently had to seek indemnity or contribution against SUAG in a foreign forum that is not bound to honor that judgment. The district court was entitled to consider SWD's inability to implead SUAG as a private interest factor. *Piper, 454 U.S. at 259, 102 S. Ct. at 267; Nolan, 919 F.2d at 1069*. We reject ELMA's assertion that SWD has no potential claims against SUAG. ELMA itself originally brought similar third-party claims against SUAG. And even under the Leger doctrine, assuming it applies, SWD could not effectively defend by faulting SUAG in the United States forum, according to the [**15] district court's findings. SWD cannot look to the district court to compel the discovery SWD needs to present evidence of SUAG's fault. We do not think that SWD has waived discovery as to that issue. And SWD still would risk exposure to the inconvenience and unfairness of inconsistent judgments in the event the district court assigned to SWD greater liability than did the Dutch court which may disregard the United States judgment. See *Piper, 454 U.S. at 243, 260, 102 S. Ct. at 259, 268* (district court reasonably found that defendant's recourse to subsequent indemnity or contribution action in foreign forum creates risk of inconsistent judgments).

2. Access to Proof Sources.

SWD argued and the district court concluded that trial in the United States would impair SWD's defense based on SUAG's fault because important SUAG documents relating to the construction of the ELMA TRES are located at SUAG headquarters in Germany, and SUAG has consented to jurisdiction only in the Netherlands. ELMA does not aver that trial in the Netherlands will interfere with ELMA's access to documents important to ELMA for the trial of this case. In light of the [**16] district court's reasonable conclusion that SWD had a legitimate potential defense based on SUAG's fault, we think that the district court's balancing of this factor also was reasonable.

3. Access to Witnesses.

ELMA also argues that the trial court gave inadequate consideration to the convenience associated with producing witnesses for trial in the competing fora. ELMA does not say that the trial court misidentified any witnesses or their residence, but rather that the court ignored ELMA's problems or weighed factors incorrectly. While the district court gave terse consideration to these factors, we cannot say that the court's conclusion was unreasonable.

SWD has six expert witnesses in the United States and at least four experts in the Netherlands. ELMA has two

experts in Europe and six in the United States. So, [*375] in regard to expert witnesses, ELMA and SWD are equally inconvenienced by trial in the Netherlands, while SWD faces greater inconvenience if the case is tried in the United States. ELMA argues that it selected expert witnesses based on their English-speaking ability because it anticipated trial in the United States. But SWD did also, and we are unable to conclude that [**17] the language ability of expert witnesses creates more inconvenience for one party than for the other. We cannot fault the district court's overall conclusion that the factor of access to expert witnesses favors dismissal.

SWD has approximately six fact witnesses in Holland, four of whom are not under SWD's control. Of those four, two were not deposed de bene esse. None are subject to process of the United States court. ELMA has key witnesses in Germany, whom ELMA contends are not subject to process in the Netherlands and who also are not subject to process in the United States. However, some of these witnesses are employees of SUAG, which has agreed to cooperate with ELMA and to submit to jurisdiction in the Netherlands. Further, ELMA's crucial foreign fact witnesses were deposed de bene esse with those depositions possibly admissible at trial in the Netherlands subject to the Dutch court's discretion. Basically, ELMA can try much of its case by deposition in the United States, but its right to do so in the Netherlands may be limited. SWD prefers calling live witnesses for trial, and would be substantially inconvenienced by trial in the United States.

Relative to the issues [**18] in the case, trial in the United States puts SWD's presentation of its defense at risk primarily for lack of compulsory process over one former employee involved in the design of the ELMA TRES' main engines, one former employee responsible for the guaranty work associated with installation of the auxiliary engines on board the ELMA TRES, and two non-employee engineers familiar with the functioning of SWD's auxiliary engines. By comparison, trial in the Netherlands puts ELMA's presentation of its claims at risk primarily for lack of compulsory process over the sole survivor of the ELMA TRES' sinking, and two Germanischer Lloyds officials involved in classification of the vessel. But the sole survivor and one Lloyds official were deposed de bene esse, so their depositions may be admissible at trial in the Netherlands. We think that the district court reasonably concluded that the location of fact witnesses favors dismissal.

4. Judgment Enforceability.

ELMA argues that the district court erred in weighing ELMA's alleged inability to enforce a United States judgment in the Netherlands, when ELMA can enforce such a judgment against SWD's assets in the United States. ELMA points [**19] out that the district court merely assumed that SWD's assets were located solely in the Netherlands, and that SWD failed to meet its burden of producing affidavit evidence of the location of its assets to establish that a judgment in ELMA's favor could be enforced only in the Netherlands, and not in the United States or some other country that harbors SWD assets and enforces United States judgments.

The district court's conclusion that ELMA "would have to proceed on . . . [a] judgment in the Netherlands" did not rest upon any explicit finding regarding ELMA's ability to enforce judgment on SWD assets located elsewhere. ELMA and SWD agree that the record does not establish the location of SWD's assets. Since the burden fell on SWD to establish that the judgment-enforceability factor favored dismissal, we believe that the district court was unreasonable in weighing this factor in favor of SWD. We think that the district court should have found this factor to be in equipoise between the parties.

Considering all of the relevant factors, including the district court's inability to reach SUAG documents or compel the attendance of witnesses relevant to SWD's fault-sharing defense, the access [**20] to proof sources, and the relative inconvenience associated with producing witnesses for trial, we cannot say that the district court concluded unreasonably that the private interest factors favor dismissal. While the district [*376] court gave substantial weight to SWD's ability to join SUAG in the Netherlands, the court's opinion does not indicate that the court impermissibly gave conclusive weight to that, or any other, single factor. Without approving the extent of analysis conducted by the district court, we are unable to say that the district court's conclusion regarding the private interest factors was unreasonable, relative to the convenience of the alternative fora for the parties' presentation of their respective claims and defenses.

D. PUBLIC INTEREST FACTORS

Given the availability of an adequate forum in the Netherlands and the balance of private interest factors favoring dismissal, the district court had no need to consider the public interest factors. See *Air Crash, 821 F.2d at 1165* (mandating consideration of public interest factors if private interests do not favor dismissal). But the district court did consider public interest factors, and we think [**21] that the court did not err in weighing these factors in favor of dismissal.

In most respects, this is a "not at all unusual . . . case . . ., involving a foreign plaintiff and foreign defendants, a

foreign vessel with foreign owners, . . . and a possible foreign court . . . that has been held adequate to protect the . . . [plaintiff's] interest . . . ." *Ikospentakis v. Thalassic S.S. Agency, 915 F.2d 176, 179 (5th Cir.1990).* The Louisiana forum has little if any interest in this matter. And trial of the case, even to the bench, will further congest the district court's docket. Without waiving its contention regarding the applicability of United States law, ELMA conceded at oral argument that under the factors set forth in *Lauritzen v. Larsen, 345 U.S. 571, 73 S. Ct. 921, 97 L. Ed. 1254 (1953),* and *Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 90 S. Ct. 1731, 26 L. Ed. 2d 252 (1970),* German law probably will apply to ELMA's third-party claims. We think that, absent a more substantial nexus with the domestic forum, public interest factors in cases such as this one weigh in favor of [**22] forum non conveniens dismissal.

AFFIRMED.

HEIN DANSER, individually and for the Estate of his deceased
son, HENDRIX LAURENS DANSER; MARTHA DANSER; GERRIT BOUHOF;
and I.J. BOUHOF-BLOEMENDAAL, Plaintiffs, against FIRESTONE
TIRE & RUBBER COMPANY, Defendant.

No. 79 Civ. 5336 (KTD)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

86 F.R.D. 120; 1980 U.S. Dist. LEXIS 10282

February 21, 1980

CORE TERMS: decedent, viewing, scene, appropriate forum, conveniens, transferred, diversity, residents, potential prejudice, compulsory process, alternative forum, choice of law, federal law, practicalities, jurisdictional, displaced, resides, accident scene, inconvenience, traveling, discovery, introduce, intend, stored, tire

COUNSEL: [**1]

Paul D. Rheingold, P. C., Kass, Goodkind, Wechsler & Labaton, New York City, and De Brauw & Helbach, Netherlands, for plaintiffs; Paul D. Rheingold, Willard G. LaFauci, New York City, of counsel.

Gilbert, Segall & Young, New York City, for defendant; Elihu Inselbuch, Bernard J. Rosenthal, New York City, of counsel.

OPINIONBY: DUFFY

OPINION: [*121]

OPINION & ORDER

This diversity action was commenced in October, 1979, by Martha Danser, Gerrit Bouhof, I. J. Bouhof-Bloemendaal and Hein Danser, individually and on behalf of his deceased son, Hendrick Laurens Danser, against Firestone Tire & Rubber Company (hereinafter referred to as "Firestone").

The complaint charges that as a result of defendant's allegedly defective automobile tire, the vehicle in which plaintiffs and decedent were traveling was involved in an accident. Plaintiffs seek to recover for their injuries sustained as a result of the accident. In addition, Hein Danser seeks to recover for the wrongful death of his son, Hendrik, who apparently died as a result of the accident.

The facts, simply stated, are as follows. In July, 1978, the plaintiffs and decedent, all citizens of the Netherlands, were traveling in an [**2] automobile near Cologne, West Germany. The complaint charges that while the vehicle was in motion the defendant's radial tire ruptured due to a defect. And, as a result of the blowout, the vehicle was involved in an accident which resulted in the death of Hendrik Danser and caused the plaintiffs to sustain severe personal injuries.

Defendant now moves, pursuant to Fed.R.Civ.P. 12(b)(3), to dismiss the action on the ground of forum non conveniens and have it transferred to an appropriate forum in West Germany or The Netherlands.

There have been numerous judicial statements in this Circuit with respect to the factual and policy considerations against which a motion to dismiss for forum non conveniens is to be tested. n1 See, e.g., *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448 (2d Cir. 1975), cert. denied, 423 U.S. 1052, 96 S. Ct. 781, 46 L. Ed. 2d 641 (1976). They have, however, emanated from the Supreme Court's seminal pronouncement of the doctrine of forum non conveniens in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947).

n1. There is considerable debate whether in a diversity action, state or federal law is controlling on the question of forum non conveniens. However, given the similarity between New York law and Federal law with respect to the doctrine, it is unnecessary to address the issue. See *Schertenleib v. Traum*, 589 F.2d 1156, 1162 n. 13 (2d Cir. 1978); *Malka v. E. F. Hutton & Co., Inc.*, 465 F. Supp. 131, 137 n. 1 (S.D.N.Y.1979).

[**3]

In Gulf the Court observed that much must be left to the discretion of the trial judge in determining whether despite a [*122] proper jurisdictional predicate, an action is better left to an alternative forum. *330 U.S. at 508, 67 S. Ct. at 843.* See also *Fitzgerald, supra, 521 F.2d at 451.* However, the Supreme Court did enunciate certain factors which are to be considered by a trial judge in the exercise of his discretion. These include:

(a) The existence of an alternative forum;

(b) The convenience or potential prejudice to the litigants if transferred to another forum;

(c) The public interest at stake including a limitation on the use of a local forum for resolution of controversies which lack significant local contacts and may require the untangling of conflict of law questions and the possible application of foreign law;

(d) Trial practicalities including the access to sources of proof, the availability of compulsory process, the cost of obtaining willing witnesses, the possibility of either a court or a jury viewing the scene if it is a case in which a viewing would be appropriate and the enforceability of a judgment should one be obtained; and

(e) Consideration of [**4] any other factors which would bear on the interests of the original and alternate forums in the subject matter of the suit or on the possibility in either forum of a fair, expeditious and inexpensive trial. *Gulf Oil, supra, 330 U.S. at 508-09, 67 S. Ct. at 843.*

Against these considerations, however, it is crucial to note that a plaintiff's choice of forum is not to be lightly displaced. Indeed, while the temptation may be strong to send litigants to another jurisdiction, especially when the operative facts from which the action arises are foreign, it is only when the convenience of the parties and the interests of justice demand a change in forum that plaintiff's choice will be displaced. See *Fitzgerald, supra, 521 F.2d at 450.*

Applying this analysis to the case at bar, I find that the convenience of all parties, as well as the interests of justice, will best be served if the instant action is dismissed and transferred to an appropriate forum in West Germany or the Netherlands, whichever forum plaintiffs choose.

There is no question that the plaintiffs and decedent are all citizens of The Netherlands. Nor is there any question that this action was triggered by an automobile [**5] accident which occurred in West Germany. Thus, plaintiffs are entitled to vindicate whatever claims they may have either in the courts of Netherland or West Germany.

Although forced to concede the existence of alternative forums, plaintiffs urge that these forums are not adequate. In particular, they argue, without benefit of documentation, that if forced to litigate in either West Germany or the Netherlands, they would not be entitled to a trial before a jury. Nor would they be permitted to recover punitive damages or pursue their claim alleging strict tort liability in those forums.

Even assuming plaintiffs' allegations to be true, there is no indication that they would be unable to obtain a fair trial in West Germany or the Netherlands if forced to try the case before a judge without a jury. Moreover, while one theory of recovery may be foreclosed in those jurisdictions, the plaintiffs would be able to obtain relief for their injuries as well as the death of the decedent. Indeed, plaintiffs have offered no evidence to the contrary. Thus, while there may exist certain differences between a trial of this action in New York and either West Germany or the Netherlands, they do [**6] not warrant a finding that these forums are not adequate alternatives.

It is equally clear that the convenience to all the litigants greatly outweighs any potential prejudice if the action is tried in West Germany or the Netherlands. The plaintiffs are all citizens of the Netherlands. And, the Netherlands is only 50 miles from the scene of the accident in West Germany.

There is not doubt that an action in either West Germany or the Netherlands would be more convenient for plaintiffs. However, plaintiffs do not seek such a [*123] transfer. Rather, it is the defendant, a domestic corporation concededly doing business in New York, which seeks the transfer. Stated differently, it is the party with the only real contact with the instant forum which seeks the transfer.

It is true that when a plaintiff chooses a forum in which a defendant resides, this weighs heavily against dismissal. *Schertenleib v. Traum, 589 F.2d 1156, 1164 (2d Cir. 1978).* However, these factors alone are not conclusive. Indeed, in Schertenleib the Court held that despite the residence of defendant in the forum, "(where) every other fact points to (a foreign jurisdiction) as the more convenient forum," [**7] the action should be dismissed. *Id. at 1164-65.* In fact, it may well be an abuse of discretion to retain a case in which the only contact with the forum chosen by plaintiff is that the

defendant resides therein for purposes of venue. *Schertenleib, supra, at 1164.*

It is also apparent that given the limited contacts of the instant controversy with New York, the interests of the community strongly tip in favor of another forum. For example, it would indeed be an injustice to impose the burden of jury duty upon the people of a community having no relation to the litigation. *Malka v. E. F. Hutton & Co., Inc.,* 465 F. Supp. 131, 137 (S.D.N.Y.1979).

Moreover, given the nature of the claim, sounding in products liability, both West Germany, as the scene of the accident, and the Netherlands, as the home of the plaintiffs, have a significantly greater interest in the action. To be sure, West Germany has a great interest in determining the quality of goods to be used within its boarders. Likewise, the Netherlands has an interest in the quality of products to be used by its citizens. New York, however, has no such interest in the case at bar. It may subscribe to a greater or lesser quality [**8] of product than would the foreign jurisdictions having an interest in this case.

Finally, there is the choice of law question which also points to either West Germany or the Netherlands as more appropriate forums than New York. In light of the place of the accident and the citizenship of the plaintiffs and decedent, it is clear that a choice of law issue exists. And, under settled New York law, the law of the jurisdiction with the most significant contacts would be applied. *Babcock v. Jackson,* 12 N.Y.2d 473, 191 N.E.2d 279, 240 N.Y.S.2d 743 (1963).

Given the paucity of New York contacts with the case at bar, it is very unlikely that New York law will be applied in this diversity action. Rather, logic dictates that either the law of West Germany or the Netherlands will be controlling. Certainly these jurisdictions are in a better position to apply their own law than is a federal court sitting in New York.

Turning finally to the practicalities of trial, the availability of compulsory process, the cost of obtaining willing witnesses and the possibility of either the court or the jury viewing the accident scene all require that the action be commenced in a more appropriate forum. [**9]

Any eye witnesses to the accident are most likely to be residents of West Germany or the neighboring countries. Certainly the plaintiffs will testify and they are all residents of the Netherlands. And, no one has suggested that any New York residents will be called as witnesses during the trial of this action.

Moreover, this Court could not compel the appearance of these potential foreign witnesses at trial. Nor could it compel the production of relevant documents (accident reports and medical records), which may be in the hands of third parties in West Germany or the Netherlands.

Finally, a view of the scene may be possible in the case at bar. Indeed, defendant contends that the rupture of its tire occurred during or after the accident in issue. A view of the accident scene may prove helpful in resolving this issue. At any rate, a viewing would only be possible if the action were in an appropriate West German court.

It is true that certain evidence which may prove germane to the instant action is located [*124] in the United States. For example, there are certain documents and transcripts in the possession of the Federal Trade Commission in Washington, D.C., which [**10] plaintiffs intend to introduce. In addition, plaintiffs intend to introduce certain documents which are in the possession of defendant and stored in its corporate headquarters in Akron, Ohio.

None of this evidence, however, is stored in New York and accordingly some inconvenience will necessarily be involved in shepherding it for trial in this Court. And, while this inconvenience may be slightly increased if the action is tried in either West Germany or the Netherlands, it is far outweighed by the other factors which strongly indicate that the action should be relegated to a more appropriate forum.

Accordingly, the complaint is dismissed on the conditions that (1) the courts of either West Germany or the Netherlands have jurisdiction to adjudicate the claims asserted herein; (2) the defendant appears generally in any action asserting the present claims filed against it by plaintiffs in either West Germany or the Netherlands; (3) the defendant waives jurisdictional defenses as well as any statute of limitations defense it did not have at the time this complaint was filed; (4) defendant produces in the foreign forum chosen by plaintiffs all reasonable discovery requests by plaintiffs [**11] including the production of any of defendant's employees whose depositions are required for the litigation of this action; and (5) the defendant will further employ all reasonable efforts to produce any Federal Trade Commission documents in its possession during the discovery period of the action.

SO ORDERED.

Hendriks Johannes VOLKENBURG, ppa v. NEDERLAND-AMERIK. STOOMV. MAATS

Civ. A. No. 63-492

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

221 F. Supp. 925; 1963 U.S. Dist. LEXIS 7918

October 2, 1963

CORE TERMS: seaman, cure, general maritime law, Jones Act, conveniens, right to recover, resident, full paragraph, tribunal, inasmuch, port, entitled to recover, convenient forum, personal injury, foreign vessel, calculations, seamen, inconvenient forum, guardian ad litem, foreign country, foreign law, vessel, voyage, ending

COUNSEL: [**1]

Harry Kisloff, Thomas E. Cargill, Jr., Boston, Mass., for plaintiff.

John T. Riley, Leo F. Glynn, Boston, Mass., for defendant.

OPINIONBY: WYZANSKI

OPINION: [*925]

Defendant has moved to dismiss plaintiff's complaint which in Count 1 alleges [*926] a claim under the Jones Act, in Count 2 alleges a claim under the general maritime law, in Count 3 alleges a claim under the Dutch law, and in Count 4 alleges a claim under alternatively the general maritime law and Dutch law. The first three of these counts each seeks recovery for the same personal injuries; the fourth count seeks recovery for cure and maintenance. The reasons defendant assigns for his motion are:

'A. That the court decline jurisdiction upon the grounds of forum non conveniens.

'B. That, in the alternative, the action be dismissed because of the failure of the plaintiff to plead the applicable foreign law of the kingdom of the Netherlands.

'C. The plaintiff's complaint failed to state a cause of action within the jurisdiction of this honorable court.'

Plaintiff, who is a minor, sues by his next friend or guardian ad litem. Their counsel admit that both of them are citizens and residents of the Netherlands [**2] and are now there and that defendant is a corporation organized under Dutch law and having its principal office in the Netherlands. The alleged accident on which the claims are based occurred in a darkened hold of a ship, apparently of Dutch registry, at a time when it was in Boston harbor. So far as appears the vessel was in the course of a voyage beginning and ending in a foreign country, presumably Holland.

No suggestion was made that any witness to the alleged accident, or to the condition of the hold, or to any aspect of defendant's liability, if any, is a United States citizen or resident or even temporary visitor; nor that any part of the contract for the employment of plaintiff or of the shipping articles regulating his employment is governed by United States law.

Plaintiff's counsel urge that this is an appropriate forum to hear the claims, first, because the injury occurred on maritime waters in this District and, second, because after his injury plaintiff was hospitalized in the Brighton Marine Hospital in Boston so that in this District there are not merely the records of treatment but also probably the residences of at least some of the doctors who have treated plaintiff. [**3]

This Court concludes that the first two counts should be dismissed on the merits for failure to state a cause of action and that the remaining counts should be dismissed on the ground of forum non conveniens.

Count 1 presents no problem. *Romero v. International Terminal Operating Co., et al.,* 358 U.S. 354, 381-384, 79 S.Ct. 468, 485-486, 3 L.Ed.2d 368 and *Lauritzen v.*

*Larsen, 354 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254,* 'preclude the assertion of a claim under the Jones Act', (see *358 U.S. 354, 384, 79 S.Ct. 468, 486, 3 L.Ed.2d 368)* 'in an action involving an injury sustained in an American port by a foreign seaman on board a foreign vessel in the course of a voyage beginning and ending in a foreign country', (see *Romero v. International Terminal Operating Co., et al., 358 U.S. 354, 381, 79 S.Ct. 468, 485, 3 L.Ed.2d 368).* Compare Note, *73 Harv.L.Rev. 84, 126, 147.*

When such an action is brought the appropriate course is for the District Court to deny the Jones Act claim on the merits. ( *Romero v. International Terminal Operating Co., et al., 358 U.S. 354, 382,* note 53 and 384 first full paragraph, *79 S.Ct. 468, 485, 3 L.Ed.2d 368.)* But this denial of the Jones Act claim on the merits [**4] leaves the District Court free to consider whether, with due regard to the doctrine of forum non conveniens, it should take jurisdiction and apply the relevant foreign law. Note, *73 Harv.L.Rev. 84, 126, 147,* second full paragraph. Cf. *Moutzouris v. National Shipping & Trading Co., D.C., 196 F.Supp. 482, 483.*

Count 2 alleges that the plaintiff suffered injuries which give rise to 'claims under the general maritime law.' If what is meant is that plaintiff has claims under that aspect of general maritime [*927] law which is applied as part of the law of the United States, then those claims must be denied on the merits. *Romero v. International Terminal Operating Co., et al., 358 U.S. 354, 382,* note 53, second sentence, *79 S.Ct. 468, 485, 3 L.Ed.2d 368.* If what is meant is that plaintiff has claims under that aspect of general maritime law which is applied in the Netherlands, such claims are set forth in Count 3 and are dealt with immediately hereafter.

Count 3 sets forth plaintiff's personal injury claims under the Dutch law. This United States District Court is not a convenient forum for the adjudication of those Dutch claims because there are no American parties involved, [**5] there is no indication that within the United States there is any witness to the alleged liability, there is no suggestion that there is unavailable to plaintiff in the Netherlands, where he and the guardian ad litem now are, both a forum and a right of action or other remedy, and there is no showing of any undue hardship on plaintiff in requiring that he resort to a Dutch tribunal which is presumably better fitted than this Court to understand Dutch rules of law and Dutch contracts, and to measure 'the seaman's actual loss in the context of standards prevailing in his own society' (see Note, *73 Harv.L.Rev. 84, 126, 147,* first full paragraph). Hence the third count must be dismissed on the ground of forum non conveniens.

Count 4 must also be dismissed on the ground of forum non conveniens. This fourth count seeks recovery on a claim for cure and maintenance, not on personal injury claims based on negligence or unseaworthiness or the like. Note *73 Harv.L.Rev. 84, 126, 147* proposes that a foreign seaman, employed by and injured on a foreign vessel, who is treated in the United States for his injury, should be entitled to recover in American courts for maintenance and cure, inasmuch [**6] as 'compensation of the injured seaman would further the local interest in assuring payment of American residents who had furnished medical and other services occasioned by the wrongdoing.' See Note *73 Harv.L.Rev. 84, 126, 147.*

Theoretical and practical considerations militate against the proposal. Under the Romero doctrine, plaintiff has no right to recover under any substantive rule of United States law as it now stands: not under the Jones Act, nor so much of the general maritime law as is incorporated in United States law, nor so much of the cure and maintenance rules as are incorporated in United States law. Plaintiff's right to recover, if any, must be premised on a claim based on such cure and maintenance rules as are incorporated in Dutch law.

Perhaps the Dutch rules resemble the American rules with respect to cure and maintenance. If they are similar, then, presumably, most seamen, such as plaintiff, who are injured in the port of Boston would have no sizeable claim for so much of their claim as related to 'cure.' 'Cure' does not include a right to recover for medical and hospital treatment which has been furnished at some one else's expense. *Johnson v. United States,* [**7] *333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468; Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 531, 58 S.Ct. 651, 654, 82 L.Ed. 993; Gomes v. Eastern Gas and Fuel Associates, D.Mass., 127 F.Supp. 435, 437.* Nor does it include a right to recover even what the seaman himself has spent for medical and hospital care, if such care was adequate and available at a marine or public health hospital. *Calmar S.S. Corp. v. Taylor, supra; Bailey v. City of New York, S.D.N.Y., 55 F.Supp. 699, 703.* Inasmuch as in Boston there is a Public Health Service Hospital, a seaman, like plaintiff, injured in this port and cared for here is hardly ever entitled to recover a substantial judgment for cure. As to maintenance, seamen, like plaintiff, may have substantial claims, but such claims are subject to calculations which may be easier for a Dutch than for an American tribunal. If the Dutch rule, like the American rule, is that an injured seaman gets maintenance 'comparable to that to which the seaman is entitled [*928] while at sea', (see *Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 528, 58 S.Ct. 651, 653, 82 L.Ed. 993)* perhaps the quality of food and lodging to which the seaman is entitled is measured by that [**8] furnished by his Dutch vessel, and the cost of procuring such

quality is determined by what the seaman would have to pay to obtain that quality at a reasonably selected place to which he went when he left the public hospital -- a place which might be in Massachusetts or more likely at his home in the Netherlands.

In any event, it seems clear, with respect to the cure and maintenance claim, that inasmuch as the parties are Dutch, the applicable law is Dutch, many of the most important witnesses are in the Netherlands, and some of the calculations would best be made by a tribunal knowing Dutch standards, and that, in view of the availability and actual use made of the Brighton Public Health Service hospital, there is no occasion to assure 'payment of American residents who furnished medical and other services', the fourth count should be dismissed for want of a convenient forum.

Count 1, being based on the Jones Act, is dismissed on the merits;

Count 2, being based on the general maritime law as applied as part of the law of the United States, is also dismissed on the merits;

Count 3, being based on Dutch law, is dismissed on the ground that this is an inconvenient forum;

Count [**9]   4, being a claim for cure and maintenance based on both the general maritime law and the Dutch law, is dismissed on the ground that this is an inconvenient forum.