NIGHT BOX
FILED

APR 24 2000

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

| | |
|---|---|
| RANULFO ESTRADA JUAREZ,<br><br>Plaintiff,<br><br>vs.<br><br>WESTRIA HOLDINGS INC. and<br>MEDITERRANEAN SHIPPING<br>CO. S.A., in personam; and,<br>M/V MELODY, her engines, boilers,<br>tackle, equipment, apparel,<br>appurtenances, etc., in rem,<br><br>Defendants. | CASE NO.: 00-6098-CIV-JORDAN<br><br>Magistrate: Bandstra<br><br>**AMENDED MOTION FOR**<br>**SUBSTITUTION OF PARTIES AND**<br>**MOTION FOR LEAVE TO FILE**<br>**AMENDED VERIFIED SEAMAN'S**<br>**COMPLAINT FOR WRONGFUL**<br>**DEATH WITH REQUEST FOR**<br>**RULE C ARREST, WITH**<br>**INCORPORATED MEMORANDUM**<br>**OF LAW** |

COMES NOW, MARIQUITA GUDIEL DE JUAREZ, as Surviving Spouse and Personal Representative of the Estate of RANULFO ESTRADA JUAREZ, Deceased, by and through her undersigned attorney and pursuant to Fed. R. Civ. P. 25, Fed. R. Civ. P. 15 and S.D. Fla. L.R. 15.1, and respectfully requests that this Honorable Court enter an Order substituting her as he proper party and granting leave to file an Amended Verified Seaman's Complaint for Wrongful Death with Request for Rule C Arrest, for the following reasons:

## I. INTRODUCTION

1. On January 21, 2000, the Plaintiff, RANULFO ESTRADA JUAREZ, ("Mr. Juarez"), filed a Verified Seaman's Complaint and Request for Rule B Attachment and Rule C Arrest claiming damages with an accompanying maritime lien for the alleged failure and refusal of the Defendants, WESTRIA HOLDINGS INC., ("Westria"), and MEDITERRANEAN SHIPPING CO. S.A., to provide and pay maintenance and cure

benefits after he fell seriously ill while in the service of the vessel. Additionally, Mr. Juarez asserted a separate claim under the Jones Act for the alleged aggravation of his condition resulting from said failure and refusal to pay and provide maintenance and cure benefits.

2.   On January 24, 2000, this Honorable Court issued a Warrant of Arrest for the M/V MELODY, while reserving its ruling on Mr. Juarez's Request for Rule B Attachment.

3.   On February 7, 2000, and rather than executing the Warrant of Arrest of the M/V MELODY, Mr. Juarez accepted as security for his claims a Letter of Undertaking in the amount of $750,000.00 from the vessel's North of England P & I Club.

4.   On February 26, 2000, Westria, filed a Claim of Owner of the M/V MELODY.

5.   On March 9, 2000, Westria filed a Motion to Dismiss Jones Act and U.S. Maritime Law Claims, Motion to Dismiss on Grounds of Forum Non Conveniens, and Memorandum of Law in Support of Motion.

4.   On or about March 20, 2000, Mr. Juarez died apparently as a result of his cancer illness.

5.   On March 27, 2000, MARIQUITA GUDIEL DE JUAREZ, ("Mrs. Juarez"), as Surviving Spouse and Personal Representative of the Estate of Mr. Juarez, filed a Suggestion of Death and Motion for Substitution of Parties.[1]

---

[1]   In her initial Motion for Substitution of Parties filed on March 27, 2000, the undersigned erroneously stated Mrs. Juarez's name as "Mariquita Estrada Juarez"

2

6. Now, Mrs. Juarez submits her Amended Motion for Substitution of Parties to correct her name, and submits her Motion for Leave to File an Amended Verified Seaman's Complaint for Wrongful Death with Request for Rule C Arrest against Westria, MEDITERRANEAN SHIPPING CRUISES, ("MSC"), MEDITERRANEAN SHIPPING COMPANY (USA) INC., ("MSC-USA"), C.C.E.T., INC., ("CCET"), and ICS ISLAND CRUISE SERVICES N.V., ("ICS"), in personam; and, M/V MELODY, her engines, boilers, tackle, equipment, apparel, appurtenances, etc., in rem.[2]

## II. FACTS

**A. Mr. Juarez's "Crew Agreement" is Subject to the Death on the High Seas Act, the Jones Act and the General Maritime Law of the United States; and, CCET is ICS' Miami, Florida Agent and Has Its Base of Operations in Miami, Florida.**

7. On or about May 21, 1999, and while in Santo Tomas de Castillo, Guatemala, Mr. Juarez signed an English language "Crew Agreement" for employment as a 2nd cook on board the M/V MELODY. Mr. Juarez's term of employment was approximately 11 months at a rate of pay of $800.00 per month.

8. It was intended that upon the expiration of his term of employment, Mr. Juarez would be discharged in Port Everglades, Florida, on or about April 26, 2000.

9. The English language "Crew Agreement" had been telefaxed from CCET, a Florida corporation based in Miami, Florida, to an agent in Puerto Barrios, Guatemala.

---

when, in fact, it is "Mariquita Gudiel De Juarez."

[2]  Since filing the initial Verified Seaman's Complaint, discovery has revealed more accurate information with regards to which parties, as owners, operators, manager and employers, should be made Defendants in this action.

Mr. Oscar Lorini, the agent in Puerto Barrios, Guatemala, presented to and requested that Mr. Juarez sign the "Crew Agreement" without any interpretation or explanation despite knowing Mr. Juarez's first language was Spanish, and despite knowing that Mr. Juarez neither read nor wrote the English language.

10.     CCET is a Miami based Florida corporation that provides employment services for hundreds of seamen, including but not limited to providing banking services, providing immigration services, providing transportation services and providing travel services, all on behalf of ICS, an alleged Netherlands Antilles corporation based in St. Maarten.[3]

11.     CCET's computers in Miami, Florida, contain ICS letterhead and logos, and CCET prints out letters and telefax cover sheets from Miami on behalf of ICS.

12.     CCET is the Miami, Florida agent of ICS.  See Archer v. Trans/American Services, Ltd., 834 F.2d 1570 (11th Cir. 1988)(catering concessionaire, providing food and beverage service, with attendant personnel, to cruise ship, was shipowner's agent for purposes of Jones Act and maintenance and cure action brought by ship's pantryman).

13.     Upon signing the agreement, Mr. Juarez was required to pay for his flight from Guatemala to Miami, Florida, to Genoa, Italy, where he joined the vessel.  Most important, Mr. Juarez was required to wire transfer $600.00 U.S. from his bank account in Guatemala to CCET's bank account at the NationsBank in Miami, Florida.  This

---

[3] Westria seems to take the position in this case that ICS is Mr. Juarez's "employer" as a matter of law merely because Mr. Juarez was given a letter prepared and printed by CCET stating that ICS was his "employer."

money was for CCET to hold on account in Miami until a Mr. Juarez's return airline ticket from Port Everglades (Miami) to Guatemala could be purchased at the end of his employment term.

14.    The "Crew Agreement" does not identify the "employer" and was not signed by or on behalf of any "employer." The "Crew Agreement" required Mr. Juarez to be paid in U.S. dollars, required Mr. Juarez to have a U.S. Visa, and required Mr. Juarez to have a return airline ticket from Miami, Florida, to Guatemala. Last, the "Crew Agreement" specifically refers to paying sick wages and maintenance "in accordance with . . . general maritime law . . ." and incorporates the U.S. General Maritime Law term: "maximum medical improvement."

15.    Despite signing the English "Crew Agreement," Juarez had no knowledge of an alleged forum selection clause subjecting him and the agreement to Rotterdam jurisdiction and Dutch law.[4]

16.    Mr. Juarez did not read or write Dutch, and the M/V MELODY has never sailed into Rotterdam. Mr. Juarez and his family cannot afford to travel to Rotterdam and, in all likelihood, could not even obtain a Visa to travel to Rotterdam.

   B.    **The M/V MELODY, MSC, and MSC-USA Have Regular and Extensive Contacts with Broward County, Miami-Dade County and the State of Florida, Thereby Subjecting Them to Jurisdiction and Venue in the Southern District of Florida, and to the Death on the High Seas Act, the Jones Act and the General Maritime Law of the United States.**

---

[4]    In no way does Mrs. Juarez agree that the permissive forum selection clause is reasonable or that it is enforceable. These issues are beyond the scope of this motion.

5

17. The M/V MELODY is owned by Westria, and is maintained, managed and operated by Westria's agent, MSC.  See Archer, supra.

18. MSC is an alleged Italian corporation that operates its cruise line business and the M/V MELODY during the winter and spring cruise season out of Broward County and Miami-Dade County.

19. MSC operates in Broward County and Miami-Dade County through its New York based corporation and agent, MSC-USA.  See Archer, supra.

20. Both MSC and MSC-USA share the same office in Miami, Florida.

21. Both MSC and MSC-USA share the same office in New York, New York.

22. Both MSC and MSC-USA use the same "MSC" logo on their vessels, in their advertisements, and on their internet site.

23. Both MSC and MSC-USA advertise the same New York, New York, office address.

24. Crew members on board the M/V MELODY, including Mr. Juarez, wear a golden name plate with the "MSC" logo.

25. The M/V MELODY is approximately 177 meters long and weighs approximately 35,000 tons.

26. The M/V MELODY regularly embarks and disembarks thousands of passengers that cruise from Port Everglades, Florida.

27. While in Port Everglades, Florida, the M/V MELODY regularly takes on supplies, provisions, spare and replacement parts all purchased from Florida companies.

DAVID C. RASH, P.A.
88 NORTHEAST 168TH STREET, NORTH MIAMI BEACH, FLORIDA 33162 • TELEPHONE (305) 653-6666 • FACSIMILE (305) 654-8435

28.  The M/V MELODY is regularly joined by new crew members in Port Everglades, Florida, and the vessel regularly discharges crew in Port Everglades, Florida.

29.  Finally, the vessel's crew are regularly provided medical treatment in or near Port Everglades, Broward County, State of Florida.

### C.  Mr. Juarez's Illness Manifested Itself While He was in the Service of the M/V MELODY, Thus Entitling Him to Maintenance and Cure Benefits.

30.  On or about October 1, 1999, and while in the service of the vessel, Mr. Juarez fell seriously ill thereby entitling him to maintenance and cure benefits until the point of "maximum medical improvement." See Costa Crociere v. Rose, 939 F.Supp. 1538, 1548 (S.D. Fla. 1996)("cause of ailment is irrelevant, so long as it manifests itself while seaman is in the service of his vessel").

31.  After making several requests for medical treatment between October 1, 1999 and October 25, 1999, Mr. Juarez was finally taken off the ship on November 30, 1999, and admitted to an Italian hospital for approximately 20 days.

32.  On December 22, 1999, Mr. Juarez was discharged from the Italian hospital with an apparent diagnosis of pancreas cancer with metastasis to the liver, diabetes and thrombophlebitis.

33.  Mr. Juarez was flown from Genoa, Italy, to Miami, Florida, to Guatemala City, Guatemala. Mr. Juarez had another crew member escort him on the trip due to his weakness and unsteadiness.

34. After arriving in Guatemala City, Guatemala, Mr. Juarez had to take and pay for a taxi to take him the remaining 200 kilometers to his home in Santo Tomas de Castilla, Guatemala.

35. Thus far, no medical opinion finding Mr. Juarez had reached "maximum medical improvement" has been tendered by any of Mr. Juarez's treating Italian physicians or other doctors.

36. Since being flown to Guatemala City, Guatemala, Mr. Juarez has not been provided any medical treatment by his employers, or the owners, operators or managers of the vessel.[5]

37. As a direct proximate result of Mr. Juarez's employers', the vessel's owners', operators' and managers' failure to provide and pay maintenance and cure benefits until the point of maximum medical improvement, Mr. Juarez's condition rapidly worsened and he died an untimely death on March 22, 2000.

### III. LEGAL BASIS FOR LEAVE TO AMEND

38. Fed. R. Civ. P. 15(a) states that:

> [a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed on the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. . . .

---

[5] It was only after Mr. Juarez hired the undersigned, incurred significant attorney's fees and cost, and prosecuted the instant lawsuit that any sick wages were paid and any medical bills were reimbursed.

8

See Fed. R. Civ. P. 15(a).[6]

39. Fed. R. Civ. P. 25(a)(1) states that "[i]f a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party . . . ." See Fed. R. Civ. P. 25(a)(1).

40. Mrs. Juarez is the Surviving Spouse of Mr. Juarez and the Personal Representative of Mr. Juarez's Estate.[7]

### A. Mrs. Juarez Has an In Personam Wrongful Death Action Under The Death on the High Seas Act.

41. The Death on the High Seas Act provides an in personam wrongful death remedy for the death of a seaman occurring on the "high seas." See 46 U.S.C. 688; 46 U.S.C. 761 ("[w]henever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas . . . the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty . . .").

42. The location of the wrongful act, neglect or default is determinative, not the place of death, and the "high seas" have been held to include foreign territorial waters. See Howard v. Crystal Cruises, Inc., 41 F.3d 527, 1995 AMC 305 (9th Cir.

---

[6] Although Mrs. Juarez believes that Westria's Motion to Dismiss is not a responsive pleading within the meaning of Fed. R. Civ. P 15(a), Driscoll v. Smith Barney, Harris, Upjohn & Co., 815 F.2d 655, 659 (11th Cir. 1987), vac. on other ground, 484 U.S. 909, 108 S.Ct. 253 (1987), she is filing this motion in the abundance of caution.

[7] Ancillary probate proceedings are being initiated in Miami-Dade County, State of Florida, so as to obtain a formal Order appointing Mrs. Juarez as Personal Representative of the Estate of Mr. Juarez for purposes of bringing this action.

DAVID C. RASH, P.A.
88 NORTHEAST 168TH STREET, NORTH MIAMI BEACH, FLORIDA 33162 • TELEPHONE (305) 653-6666 • FACSIMILE (305) 654-8435

1994); Sanches v. Loffland Bros. Co., 626 F.2d 1228 (5th Cir. 1980); Jennings v. Boeing Airplane Co., 660 F.Supp. 796 (E.D. Pa. 1987); Mozer v. Kloster Redieri, 645 F.Supp. 620 (S.D. Fla. 1986).

43. Therefore, Mrs. Juarez should be substituted as the proper party and granted leave to file an Amended Verified Seaman's Complaint for Wrongful Death with Request for Rules C Arrest.

### B. Mrs. Juarez Has an In Personam Wrongful Death and Survival Negligence Action Under The Jones.

44. Under the Jones Act, the personal representative of the deceased seaman has an in personam wrongful death and survival negligence action against the saman's employer for the benefit of the seaman's surviving spouse and children. See Title 46 U.S.C. §688 ("in cases of death any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury); Ivy v. Security Barge Lines, Inc., 606 F.2d 534, 1980 AMC 356 (5th Cir. 1979); Evich v. Connelly, 759 F.2d 1432, 1986 AMC 2503 (9th Cir. 1985).

45. The Jones Act wrongful death and survival remedy for seaman is a claim against their employer for negligence, and may include the failure to provide prompt, proper and adequate medical treatment, negligence of the ship's doctor and negligent selection of shore side treatment. See Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 1933 AMC 9 (1932); Central Gulf S.S. Corp. v. Sambula, 405 F.2d 291, 1968 AMC 2521 (5th Cir. 1968).

10

46.  Finally, it is well-established that the failure to provide and pay maintenance and cure benefits resulting in an aggravation of the seaman's condition entitles the seaman to full tort damages. See Vaughan v. Atkinson, 369 U.S. 527, 1962 AMC 1131 (1962); Garay v. Carnival Cruise Line Inc., 904 F.2d 1527 (11th Cir. 1990); Gaspard v. Taylor Diving & Salvage Co., Inc., 649 F.2d 372, 1982 AMC 2875 (5th Cir. 1981).

47.  Accordingly, Mrs. Juarez should be substituted as the proper party and be granted leave to file an Amended Verified Seaman's Complaint for Wrongful Death with Request for Rules C Arrest.

### C. Mrs. Juarez Has an In Personam and In Rem General Maritime Law Wrongful Death and Survival Unseaworthiness Claims Against the Owners of the M/V MELODY and the M/V MELODY.

48.  The General Maritime Law provides An in personam and in rem wrongful death and survival remedy for seamen whose death is caused by an unseaworthy vessel. See Moragne v. State Marine Lines, Inc., 398 U.S. 375, 1970 AMC 967 (1970) (general maritime law provides wrongful death remedies to the personal representative of seamen killed as a result of unseaworthy conditions).

49.  The doctrine of unseaworthiness provides a remedy against the vessel owner for failing to provide a vessel, **including its crew**, equipment and operations, that are reasonably fit for its intended purpose. See Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 1971 AMC 277 (1971); Petition of New England Fish Co., 465 F.Supp. 1003, 1979 AMC 1910 (W.D. Wash. 1979); Thezan v. Maritime Overseas Corp., 708 F.2d 175, 1985 AMC 1278 (5th Cir. 1983).

11

50. Hence, Mrs. Juarez should be substituted as the proper party and be granted leave to file an Amended Verified Seaman's Complaint for Wrongful Death with Request for Rules C Arrest.

## IV. CONCLUSION

51. Accordingly, Mrs. Juarez, as Surviving Spouse and Personal Representative of the Estate of Mr. Juarez, Deceased, respectfully requests this Honorable Court enter an Order substituting her as the proper party in this action and granting her leave to file the Verified Amended Seaman's Complaint for Wrongful Death with Request for Rule C Arrest, with said proposed amended pleading attached hereto as Exhibit "A" be deemed filed as of the date of these motions if approved by this Honorable Court.[8]

WHEREFORE, MARIQUITA GUDIEL DE JUAREZ, as Surviving Spouse and Personal Representative of the Estate of RANULFO ESTRADA JUAREZ, Deceased, respectfully request that this Honorable Court enter an Order in accordance with the foregoing motions.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a copy of the foregoing was served by U.S. Mail this 24th day of April, 2000, on: Reginald M. Hayden, Jr., Esquire, Hayden and Milliken,

---

[8] Given this Honorable Court's request at the Status Hearing on April 14, 2000, that the instant motion and proposed amended pleading be filed, and Westria' counsel's indication at said Status Hearing, the undersigned is under the belief that Westria's counsel objects to the matter.

12

P.A., 5915 Ponce de Leon Boulevard, Suite 63, Miami, Florida, 33146.

LAW OFFICES OF DAVID C. RASH, P.A.<br>
Attorneys for Plaintiff<br>
88 Northeast 168th Street<br>
North Miami Beach, Florida 33162<br>
Tel:  (954) 476-1515 (Broward)<br>
Tel:  (305) 653-6666 (Dade)<br>
Fax: (305) 654-8435

by: _/s/ David C. Rash_
DAVID C. RASH, ESQUIRE
Florida Bar No: 0977764