UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**IN ADMIRALTY**

| | | |
|---|---|---|
| RANULFO ESTRADA JUAREZ, | ) | CASE NO.: 00-6098-CIV-JORDAN |
| | ) | |
| Plaintiff, | ) | Magistrate: Bandstra |
| | ) | |
| vs. | ) | |
| | ) | |
| WESTRIA HOLDINGS INC. and | ) | |
| MEDITERRANEAN SHIPPING | ) | **JUAREZ'S SECOND MOTION TO** |
| CO. S.A., in personam; and, | ) | **COMPEL DISCOVERY WITH** |
| M/V MELODY, her engines, boilers, | ) | **CERTIFICATE OF COUNSEL AND** |
| tackle, equipment, apparel, | ) | **INCORPORATED MEMORANDUM** |
| appurtenances, etc., in rem, | ) | **OF LAW** |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

COMES NOW, the Plaintiff, RANULFO ESTRADA JUAREZ, ("Mr. Juarez"), by

and through his undersigned attorney and pursuant to Fed. R. Civ. P. 26, Fed. R. Civ.

P. 33, Fed. R. Civ. P. 34, Fed. R. Civ. P. 37 and S.D. Fla. L.R. 26.1, and respectfully

requests this Honorable Court enter an Order compelling the Defendant, WESTRIA

HOLDINGS INC., ("Westria"), to produce documents, items and things requested by

Juarez in his Second Request for Production dated March 22, 2000, and to answer

Interrogatories propounded by Juarez and dated March 29, 2000, for the following

reasons:

## A. CERTIFICATE OF COUNSEL

1.    The undersigned certifies that a good faith effort has been made in writing

and/or verbally with counsel for Westria to resolve the pending discovery issues, but the

parties have been unable to do so.

## B. PERTINENT FACTS AND PROCEDURAL POSTURE

2.    On or about October 1, 1999, Mr. Juarez, a foreign national seaman from Guatemala, fell seriously ill while working as a crew member 2nd cook on the cruise ship, M/V Melody.  While it is undisputed that Westria is the owner of the vessel, the facts are in dispute as to who is and/or was Mr. Juarez's employer.

3.    On January 21, 2000, Mr. Juarez filed a Verified Seaman's Complaint and Request for Rule B Attachment and Rule C Arrest claiming damages with an accompanying maritime lien against the M/V Melody for the alleged failure and refusal of the Defendants, Westria and MEDITERRANEAN SHIPPING CO. S.A., to provide and pay maintenance and cure benefits after he fell seriously ill while in the service of the vessel.  Additionally, Mr. Juarez asserted a separate claim under the Jones Act for the alleged aggravation of his condition resulting from said failure and refusal to pay and provide maintenance and cure benefits.[1]

4.    On February 22, 2000, Mr. Juarez served his First Request for Production on Westria.

5.    On March 9, 2000, Westria filed a Motion to Dismiss Jones Act and U.S. Maritime Law Claims, Motion to Dismiss on Grounds of Forum Non Conveniens, and Memorandum of Law in Support of Motion.

6.    Although the verbatim requests and Westria's responses will be set forth below in section D, it is important to note that Westria itself has raised jurisdictional and

---

[1]    As a result of Mr. Juarez's death after filing the instant lawsuit, his Surviving Spouse and Personal Representative of his Estate have sought substitution of her as the Plaintiff, as well as sought leave to amend the initial complaint.  These motions are still pending before this Honorable Court.

DAVID C. RASH, P.A.

88 NORTHEAST 168TH STREET, NORTH MIAMI BEACH, FLORIDA 33162 • TELEPHONE (305) 653-6666 • FACSIMILE (305) 654-8435

forum non conveniens defenses thereby necessarily expanding the usual issues and concomitant scope of discovery.

7.    On March 22, 2000, Juarez served Westria with his Second Request for Production focusing solely on documents required to be filed by Westria and/or the vessel with the United States Federal Maritime Commission, ("FMC"). [See Exhibit A].

8.    On March 29, 2000, Juarez served Westria with Interrogatories focusing on the identification of the ship's doctors and nurses, as well as the identity of crew members that have either joined the vessel or been discharged from the vessel in Port Everglades, Florida.  [See Exhibit B].

9.    On April 3, 2000, Westria served its Response to Juarez's First Request for Production.

10.    On May 1, 2000, Westria only filed Objections to Interrogatories Nos. 4 and 5; Westria has not filed any objection or answers to Interrogatories Nos. 1 through 3 as of the date of this motion.  [See Exhibit C].

11.    On May 5, 2000, Westria served its Response to Juarez's Second Request for Production.  [See Exhibit D].

12.    On May 8, 2000, Juarez filed a Motion to Compel Discovery with Certificate of Counsel directed to Westria's responses to Juarez's First Request for Production.  Said motion is currently is pending before this Honorable Court Juarez having agreed to an extension of time until June 6, 2000, within which Westria is suppose to respond.

13.    The issues presented in the instant Second Motion to Compel Discovery concern the Juarez's Second Request for Production dated March 22, 2000, and

3

Juarez's Interrogatories dated March 29, 2000, as well as Westria's Responses and/or Objections thereto.

## C. **APPLICABLE LAW**

14.    Rule 26 of the Federal Rules of Civil Procedure sets forth the familiar, time-honored, liberal scope of discovery as follows:

> [p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, . . . [however] [t]he information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

15.    Rule 33 of the Federal Rules of Civil Procedure states: "Without leave of court or written stipulation, any party may serve upon any other party written interrogatories . . . . " Fed. R. Civ. P. 33 (a).[2]

16.    Further, Rule 34 of the Federal Rules of Civil Procedure clearly permits:

> [a]ny party to serve on any other party a request (1) to produce and permit the party making the request, or someone acting on the requestor's behalf, to inspect and copy, any designated documents (including writings, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form), or to inspect and copy , test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession or control of the party upon whom the request is served . . . .

Fed. R. Civ. P. 34(a).

---

[2]    The Interrogatories in question here are also in compliance with S.D. Fla. L.R. 26.1.G. specifically limited to gathering information regarding the identity of persons with knowledge about relevant to the subject matter.

DAVID C. RASH, P.A.

88 NORTHEAST 168TH STREET, NORTH MIAMI BEACH, FLORIDA 33162 • TELEPHONE (305) 653-6666 •FACSIMILE (305) 654-8435

17.     Therefore, as long as the interrogatories and request for production of documents, items and things made pursuant to Rules 33 and 34 are within the scope of Fed. R. Civ. P. 26(b) and S.D. Fla. L.R. 26.1.G., and the matters and information are in the possession or control of the party upon whom the request is made, then the interrogatories must be answered and the documents, items and things must be produced.

18.     In this case, Westria itself has raised jurisdictional and forum non conveniens defenses thereby necessarily expanding the usual issues and concomitant scope of discovery.

19.     For instance, the FMC requires passenger vessels such as the M/V Melody to make application for and establish proof and certification of financial responsibility for indemnification of passengers for nonperformance of transportation, as well as for financial responsibility to meet liability incurred for death or injury to passengers or other persons on voyages. [See Exhibit E - Passenger Vessel Financial Responsibility, 46 C.F.R. Part 540 (1999)].

20.     Further, the owners, operator and/or managers of the M/V Melody may be required to maintain escrow bank accounts in the United States, designate an agent for service of process, provide passenger revenue information related to United States passengers, as well as a slew of other information all of which is relevant to establishing Westria's and/or its agents' and managers' substantial and systematic contacts with the United States.

21.     Clearly, the FMC materials are relevant and it is reasonably calculated that the FMC materials are likely to lead to the discovery of admissible evidence.

5

## D. **VERBATIM QUOTES**

22.    In compliance with S.D. Fla. L.R. 26.1 H 2, Mr. Juarez sets forth below

verbatim quotes of the Requests, Interrogatories, Objections and/or Responses at

issue:

### 1.    **Plaintiff's Second Request for Production:**

#### a.    **Request No. 1**

23.    Mr. Juarez's Request No. 1 seeks:

All documents filed with the United States Federal Maritime
Commission regarding the M/V MELODY and/or its owners,
including but not limited to the following:

a)    Applications for Certificate of Financial
Responsibility (Form FMC-131);

b)    Certificates of Financial
Responsibility;

c)    Passenger Vessel Surety Bonds (Forms FMC-
132A or 132B);

d)    Guaranties in Respect of Liability for
Nonperformance (Forms FMC-133A or 133B);

e)    Circular Letter No. 1-97 (Requirement for
Taxpayer Identifying Numbers); and,

f)    Taxpayer Identifying Number Forms.

[See Exhibit A, ¶ 1].

24.    Westria's objection and response to Request No. 1 was as follows:

"Attached are the documents being produced in response to Paragraph 1 of the

Plaintiff's Second Request for Production." [See Exhibit D, ¶ 1 and attached

documents consisting of Department of Transportation Vessel Certificate of Financial

6

Responsibility (Water Pollution) and Federal Maritime Commission Certificate of Financial Responsibility for Indemnification of Passengers for Nonperformance of Transportation].

25.    Westria's response is inadequate, vague and evasive since it does not address each sub-part and merely refers to two documents attached thereto one of which is not even responsive to the request. [See Exhibit D, ¶ 1 and attached documents consisting of Department of Transportation Vessel Certificate of Financial Responsibility (Water Pollution) and Federal Maritime Commission Certificate of Financial Responsibility for Indemnification of Passengers for Nonperformance of Transportation].

26.    Mr. Juarez's Request No. 1 seeks documents required to be filed with the United States Federal Maritime Commission for the operation of the M/V Melody as a cruise ship in United States waters and ports. [See Exhibit E - Passenger Vessel Financial Responsibility, 46 C.F.R. Part 540 (1999)].

27.    Clearly, the documents requested are relevant to the jurisdictional and forum non conveniens issues raised by Westria's Motion to Dismiss because the Federal Maritime Commission documents would establish additional contacts with the United States in contradiction to Westria's position and in support of Juarez's position that the United States laws apply and the proper forum is in this Honorable Court.

28.    For instance, the Applications for Certificate of Financial Responsibility would contain ownership, operator, managerial and agency information regarding the M/V Melody, as well as United States passenger revenue estimates.  [See Exhibit E - Passenger Vessel Financial Responsibility, 46 C.F.R. Part 540 (1999)].

7

29.     Also, the Federal Maritime Commission documents requested would indicate the designation of an agent for service of process in the United States, as well as identification of escrow accounts, property and other assets maintained in the United States. [See Exhibit E - Passenger Vessel Financial Responsibility, 46 C.F.R. Part 540 (1999)].

30.     All the documents requested would establish contacts with the United States in opposition to Westria's jurisdictional and forum non conveniens arguments. Accordingly, Westria's response to Request No. 1 should be deemed inadequate, vague and evasive, and this Honorable Court should compel Westria to produce all the requested documents within 15 days.

### b.     Request No. 2

31.     Mr. Juarez's Request No. 2 seeks: "Copies of all bank statements for the past three years for any and all escrow accounts held as required by the 46 CFR Part 540 and/or the United States Federal Maritime Commission." [See Exhibit A, ¶ 2].

32.     Westria's objection and response to Request No. 2 was as follows:

> Objection on the grounds that the information sought is neither relevant nor material to the issues in dispute, nor would it lead to the discovery of admissible evidence; the requested information, should it exist, would constitute the trade secrets and confidential financial records of this Defendant and/or otherwise be privileged; the request calls for this Defendant to render a legal opinion as to whether the requested information is required to be maintained by this Defendant pursuant to the provisions of 46 CFR Part 540 and/or the United States Federal Maritime Commission, as contended by the Plaintiff.

[See Exhibit D, ¶ 2].

8

33.     Again, Westria's objection and response is without merit.  Westria raised the jurisdictional and forum non conveniens defenses and now seeks to prevent Juarez from discovering information that would clearly establish substantial contacts with the United States.

34.     Particularly, escrow accounts may be required by 46 C.F.R. §540 to be maintained in the United States as evidence of financial responsibility.  [See Exhibit E - Passenger Vessel Financial Responsibility, 46 C.F.R. Part 540 (1999)].

35.     Escrow bank accounts maintained in the United States are relevant and critical to Juarez's opposition to the defenses raised by Westria.  Therefore, this Honorable Court should over rule Westria's objection to Request No. 2 and require Westria to produce the requested documents within 15 days.

## 2.     Juarez's Interrogatories to Westria:

### a.     Interrogatories Nos. 1 through 3

36.     Westria has neither objected or answered Interrogatories Nos. 1 through 3 as of the date of this motion.  Westria's answers are overdue.[3]

37.     Interrogatories Nos. 1 through 3 merely seek the identification of the physicians who wrote matters in the vessel's medical log, as well as the identification of any physicians and nurses on the vessel at the time Juarez claims he became ill and was treated. [See Exhibit B, ¶¶ 1, 2 and 3].

---

[3]     S.D. Fla. L.R. 26.1 does not require verbatim quotes when the motion is based upon the complete failure to respond as is the case with Interrogatories Nos. 1 through 3. See S.D. Fla. L.R. 26.1.H.2.

DAVID C. RASH, P.A.
88 NORTHEAST 168TH STREET, NORTH MIAMI BEACH, FLORIDA 33162 • TELEPHONE (305) 653-6666 •FACSIMILE (305) 654-8435

38.     Therefore, this Honorable Court should compel immediate answers

thereto within 10 days.

### b.     Interrogatory No. 4

39.     Juarez's Interrogatory No. 4 asks:  "Please identify by name, home

address, and home telephone number all crew members who joined and/or signed-on

the M/V MELODY in Port Everglades, Florida, in 1999 and 2000."  [See Exhibit B, ¶ 4].

40.     Westria's objection and response to Interrogatory No. 4 is as follows:

> Objection. Irrelevant, immaterial, and not calculated to lead
> to the discovery of admissible evidence; overly broad and
> burdensome insofar as it would require searching through
> voluminous records pertaining to all crew members to obtain
> information that has no relevance to this case.

[See Exhibit C, ¶ 4].

41.     Westria's objection has no merit and its response is evasive and

inadequate.  Westria has raised jurisdictional and forum non conveniens defenses and

the number of crew members that joined and/or signed-on the M/V Melody in 1999 and

2000, the years of Juarez's employment term, is certainly relevant to the issues raised

by Westria's defenses.  Whether crew members joined the vessel in Port Everglades,

Florida, establishes substantial and systematic contacts with the United States and

Florida in particular.

42.     As testified in deposition by the Captain of the M/V Melody, many crew

members joined the M/V Melody in Port Everglades in 1999 and 2000.  Juarez wants to

know the exact number and the names and addresses of the crew members that joined

and/or signed-on the vessel in Port Everglades, Florida, in order to determine the

nature and events that lead to the crew members joining the vessel in Port Everglades,

10

Florida.

43.    Thus, this Honorable Court should overrule Westria's objection and compel compliance within 15 days.

### c.    Interrogatory No. 5

44.    Juarez's Interrogatory No. 5 asks: "Please identify by name, home address, and home telephone number all crew members who were discharged and/or signed-off the M/V MELODY in Port Everglades, Florida, in 1999 and 2000." [See Exhibit B, ¶ 5].

45.    Westria's objection and response to Interrogatory No. 5 is as follows:

> Objection. Irrelevant, immaterial, and not calculated to lead to the discovery of admissible evidence; overly broad and burdensome insofar as it would require searching through voluminous records pertaining to all crew members to obtain information that has no relevance to this case.

[See Exhibit C, ¶ 5].

46.    Again, Westria's objection has no merit and its response is evasive and inadequate.  Westria has raised jurisdictional and forum non conveniens defenses and the number of crew members that were discharged and/or signed-off the M/V Melody in 1999 and 2000, the years of Juarez's employment term, is certainly relevant to the issues raised by Westria's defenses.  Whether crew members signed-off the vessel in Port Everglades, Florida, establishes substantial and systematic contacts with the United States and Florida in particular.

47.    As testified in deposition by the Captain of the M/V Melody, many crew members signed-ff the M/V Melody in Port Everglades in 1999 and 2000.  Juarez wants to know the exact number and the names and addresses of the crew members that

DAVID C. RASH, P.A.

88 NORTHEAST 168TH STREET, NORTH MIAMI BEACH, FLORIDA 33162 • TELEPHONE (305) 653-6666 • FACSIMILE (305) 654-8435

signed-off the vessel in Port Everglades, Florida, in order to determine the nature and events that lead to the crew members signing-off the vessel in Port Everglades, Florida.

48.      Thus, this Honorable Court should overrule Westria's objection and compel compliance within 15 days.

### E. CONCLUSION

49.      Westria continues to object to the Juarez's attempts to obtain information relevant to the very issues Westria raised in its Motion to Dismiss on jurisdictional and forum non conveniens grounds.  Juarez seeks information, documents, items and things clearly tailored to the issues presented by Westria's motion.

50.      Juarez cannot adequately respond to Westria's defenses without the requested information, documents, items and things.

51.      Therefore, this Honorable Court should grant Juarez's Second Motion to Compel requiring Westria to either immediately produce the documents, items and things requested, or immediately provide more complete and adequate responses; and to answer the interrogatories not objected to and to provide answers to the interrogatories for which Westria served baseless objections.

WHEREFORE, the Plaintiff, RANULFO ESTRADA JUAREZ, respectfully requests that this Honorable Court enter and Order in accordance with the foregoing motion.

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a copy of the foregoing was served by U.S. Mail this 5th day of June, 2000, on:  Reginald M. Hayden, Jr., Esquire, Hayden and Milliken, P.A.,

DAVID C. RASH, P.A.
88 NORTHEAST 168TH STREET, NORTH MIAMI BEACH, FLORIDA 33162 • TELEPHONE (305) 653-6666 • FACSIMILE (305) 654-8435

5915 Ponce de Leon Boulevard, Suite 63, Miami, Florida, 33146.

LAW OFFICES OF DAVID C. RASH, P.A.
Attorneys for Plaintiff
88 Northeast 168th Street
North Miami Beach, Florida 33162
Tel:    (954) 476-1515 (Broward)
Tel:    (305) 653-6666 (Dade)
Fax:    (305) 654-8435

by:_____
        DAVID C. RASH, ESQUIRE
        Florida Bar No:  0977764

13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**IN ADMIRALTY**

| | | |
|---|---|---|
| RANULFO ESTRADA JUAREZ, | ) | CASE NO.: 00-6098-CIV-JORDAN |
| | ) | |
| Plaintiff, | ) | Magistrate: Bandstra |
| | ) | |
| vs. | ) | |
| | ) | |
| WESTRIA HOLDINGS INC. and | ) | **PLAINTIFF'S SECOND REQUEST** |
| MEDITERRANEAN SHIPPING | ) | **FOR PRODUCTION** |
| CO. S.A., in personam; and, | ) | |
| M/V MELODY, her engines, boilers, | ) | |
| tackle, equipment, apparel, | ) | |
| appurtenances, etc., in rem, | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW the Plaintiff, RANULFO ESTRADA JUAREZ, by and through his undersigned attorney and pursuant to Rule 35 of the Federal Rules of Civil Procedure, and requests that the Defendant, WESTRIA HOLDINGS INC., produce the following documents, items and things:

1.    All documents filed with the United States Federal Maritime Commission regarding the M/V MELODY and/or its owners, including but not limited to the following:

  a)    Applications for Certificate of Financial Responsibility
        (Form FMC-131);

  b)    Certificates of Financial Responsibility;

  c)    Passenger Vessel Surety Bonds (Forms FMC-132A or
        132B);

  d)    Guaranties in Respect of Liability for Nonperformance
        (Forms FMC-133A or 133B);

e)     Circular Letter No. 1-97 (Requirement for Taxpayer Identifying Numbers); and,

f)     Taxpayer Identifying Number Forms.

2.     Copies of all bank statements for the past three years for any and all escrow accounts held as required by the 46 CFR Part 540 and/or the United States Federal Maritime Commission.

I HEREBY CERTIFY that a copy of the foregoing was served by telefax (305-663-1358) and U.S. Mail this 22nd day of March, 2000, on: Reginald M. Hayden, Jr., Esquire, Hayden and Milliken, P.A., 5915 Ponce de Leon Boulevard, Suite 63, Miami, Florida, 33146.

LAW OFFICES OF DAVID C. RASH, P.A.
Attorneys for Plaintiff
88 Northeast 169th Street
North Miami Beach, Florida 33162
Tel: (305) 653-6666 (Dade)
Tel: (954) 476-1515 (Broward)
Fax: (305) 654-8435

by:_____
DAVID C. RASH, ESQUIRE
Florida Bar No: 0977764

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**IN ADMIRALTY**

| | | |
|---|---|---|
| RANULFO ESTRADA JUAREZ, | ) | CASE NO.: 00-6098-CIV-JORDAN |
| | ) | |
| Plaintiff, | ) | Magistrate: Bandstra |
| | ) | |
| vs. | ) | |
| | ) | |
| WESTRIA HOLDINGS INC. and | ) | **NOTICE OF SERVING** |
| MEDITERRANEAN SHIPPING | ) | **INTERROGATORIES** |
| CO. S.A., in personam; and, | ) | |
| M/V MELODY, her engines, boilers, | ) | |
| tackle, equipment, apparel, | ) | |
| appurtenances, etc., in rem, | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW the Plaintiff, RANULFO ESTRADA JUAREZ, by and through his undersigned counsel, and gives notice of serving the attached Interrogatories on the Defendant, WESTRIA HOLDINGS INC., to be answered under oath and in writing within the time and manner prescribed by law pursuant to Rule 33 of the Federal Rules of Civil Procedure.

WE HEREBY CERTIFY that a copy of the foregoing was served by U.S. Mail this 29th day of March, 2000, on: Reginald M. Hayden, Jr., Esquire, Hayden and Milliken, P.A., 5915 Ponce de Leon Boulevard, Suite 63, Miami, Florida, 33146.

LAW OFFICES OF DAVID C. RASH, P.A.
Attorney for the Plaintiff
88 Northeast 168th Street
North Miami Beach, Florida 33162
Tel: (305) 653-6666 (Dade)
Tel: (954) 476-1515 (Broward)
Fax:(305) 654-8435

by:_____
DAVID C. RASH
Florida Bar # 0977764

## INTERROGATORIES TO WESTRIA HOLDINGS, INC.

1.    Please identify by name, home address, and home telephone, as well as state whether or not the individual still on board the M/V Melody, the person who prepared the document titled "Rezione Clinica di Bordo" and attached as Exhibit "A" hereto.

2.    Please identify by name, home address, and home telephone, as well as stating whether or not the individual is still on board the M/V Melody, the person who signed and/or initialed as "Surg. Sign" in the medical log produced by Westria and attached as Exhibit "B" hereto for entries numbered 130, 311, 319 and 322 concerning Ranulfo Estrada Juarez.

3.    Please identify by name, home address, and home telephone number of any and all physicians and nurses on board the M/V MELODY from May 1, 1999, to January 1, 2000.

4.     Please identify by name, home address, and home telephone number all crew members who joined and/or signed-on the M/V MELODY in Port Everglades, Florida, in 999 and 2000.

5.     Please identify by name, home address, and home telephone number all crew members who were discharged and/or signed-off the M/V MELODY in Port Everglades, Florida, in 1999 and 2000.

_____
WESTRIA HOLDINGS, INC.

STATE OF FLORIDA        )
                        ) SS
COUNTY OF _____    )

BEFORE ME, the undersigned authority, personally appeared _____

_____ who after first being duly sworn, deposes and says they executed the

foregoing Interrogatories and that the responses are true and correct to the best of their

knowledge and belief.

SWORN TO AND SUBSCRIBED before me this ___ day of _____, 2000.


_____
NOTARY PUBLIC (Signature)

_____
NOTARY PUBLIC (Printed Name)


My commission expires:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

CASE NO. 00-6098-CIV-JORDAN/BANDSTRA

RANULFO ESTRADA JUAREZ,

               Plaintiff,

vs.

WESTRIA HOLDINGS, INC. and
MEDITERRANEAN SHIPPING
CO., S.A., in personam; and
M/V MELODY, her engines, boilers,
tackle, equipment, apparel,
appurtenances, etc., in rem,

               Defendants.
_____/

## WESTRIA HOLDINGS OBJECTIONS TO INTERROGATORIES

COMES NOW WESTRIA HOLDINGS, INC., as Claimant/Owner of the M/V

MELODY, and files its Objections to Plaintiff's Interrogatories numbered 4 and 5 mailed on

March 29, 2000, as follows:

4.     Objection. Irrelevant, immaterial, and not calculated to lead to the discovery

of admissible evidence; overly broad and burdensome insofar as it would require searching

through voluminous records pertaining to all crew members to obtain information that has

no relevance to this case.

5.     Objection. Irrelevant, immaterial, and not calculated to lead to the discovery

of admissible evidence; overly broad and burdensome insofar as it would require searching

through voluminous records pertaining to all crew members to obtain  information that has

no relevance to this case.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true copy of the foregoing was served by mail and by fax number (305) 654-8435 on May 1, 2000 to David Rash, Esq., Counsel for Plaintiff, 88 N.E. 168th Street, North Miami Beach, Florida 33162.

<div style="margin-left:50%">

HAYDEN AND MILLIKEN, P.A.
5915 Ponce de Leon Blvd., #63
Miami, Florida 33146
Phone: (305) 662-1523

By: _____
      Richard R. McCormack
      Fla. Bar No. 168850

</div>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

CASE NO. 00-6098-CIV-JORDAN/BANDSTRA

RANULFO ESTRADA JUAREZ,

Plaintiff,

vs.

WESTRIA HOLDINGS, INC. and
MEDITERRANEAN SHIPPING
CO., S.A., in personam; and
M/V MELODY, her engines, boilers,
tackle, equipment, apparel,
appurtenances, etc., in rem,

Defendants.
_____/

## CLAIMANT/OWNER'S RESPONSE TO PLAINTIFF'S
## SECOND REQUEST FOR PRODUCTION

COMES NOW WESTRIA HOLDINGS, INC., as Claimant/Owner of the M/V

MELODY, and responds to Plaintiff's Second Request for Production, dated March 22,

2000, and states as follows:

1.    Attached are the documents being produced in response to Paragraph 1 of

Plaintiff's Second Request for Production.

2.    Objection on the grounds that the information sought is neither relevant nor

material to the issues in dispute, nor would it lead to the discovery of admissible evidence;

the requested information, should it exist, would constitute the trade secrets and

confidential financial records of this Defendant and/or otherwise be privileged; the request

calls for this Defendant to render a legal opinion as to whether the requested

documentation is required to be maintained by this Defendant pursuant to the provisions

of 46 CFR Part 540 and/or the United States Federal Maritime Commission, as contended by the Plaintiff.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true copy of the foregoing with attachments was served by mail and by fax on May 5, 2000 to David Rash, Esq., Counsel for Plaintiff, 88 N.E. 168th Street, North Miami Beach, Florida 33162.

HAYDEN AND MILLIKEN, P.A.
5915 Ponce de Leon Blvd., #63
Miami, Florida 33146
Phone: (305) 662-1523

By: _____
　　　Richard McCormack, Esq.
　　　Fla. Bar No. 168850

H:\16954\Disc\Resp-SRF-3.22.wpd

Page 2

# Department of Transportation
## United States Coast Guard
## National Pollution Funds Center
## Arlington VA  22203-1804





No.  _844232 - 13_

# VESSEL CERTIFICATE OF FINANCIAL RESPONSIBILITY
## (WATER POLLUTION)

Vessel Operator
### *WESTRIA HOLDINGS INC.*

has established evidence of financial responsibility, in accordance with 33 CFR 138, to meet liability under section 1002 of the Oil Pollution Act of 1990, and under section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act, which may result from the operation of the vessel named below:

Name of Vessel
### *MELODY*

| | |
|---|---|
| Effective Date: | **10MAR2000** |
| Expiration Date: | **10MAR2003** |

The use of this certificate is subject to the provisions of Part 138 of Title 33 of the Code of Federal Regulations, as it is or may be amended, and the conditions on the reverse side of this certificate.  This certificate is invalid if there are any erasures or alterations hereon (except permitted by 33 CFR 138), and is void if the operator named hereon is not the party responsible for operating the vessel.



*Edward C. Armstrong*

Chief, Vessel Certification
National Pollution Funds Center
By Direction

# Federal Maritime Commission

*Washington, D.C. 20573-0001*

## CERTIFICATE OF FINANCIAL RESPONSIBILITY FOR INDEMNIFICATION OF PASSENGERS FOR NONPERFORMANCE OF TRANSPORTATION

NO. P-575

KNOW ALL PERSONS BY THESE PRESENTS THAT

Mediterranean Shipping Cruises S.p.A

has evidenced financial responsibility for indemnification of passengers for nonperformance of transportation, and as the holder of this Certificate is duly authorized to arrange, offer, advertise, or provide passage on vessels having berth or stateroom accommodations for fifty or more passengers and which are to embark passengers at United States ports.

This Certificate, to cover the MELODY, is issued pursuant to the authority contained in Section 3 of Public Law 89-777, and is subject to the provisions of said Law, Part 540, Chapter IV of Title 46 of the Code of Federal Regulations as it is or may be amended, the pertinent provisions of other applicable regulations promulgated under the foregoing section of said Law, and any terms and conditions set forth below.

By Order of the Federal Maritime Commission

Director
Bureau of Tariffs, Certification and Licensing

*Effective: November 19, 1997*



# PART 540 -- PASSENGER VESSEL FINANCIAL RESPONSIBILITY

## Subpart A -- Proof of Financial Responsibility, Bonding and Certification of Financial Responsibility for Indemnification of Passengers for Nonperformance of Transportation

Sec.

540.1 Scope.

540.2 Definitions.

540.3 Proof of financial responsibility, when required.

540.4 Procedure for establishing financial responsibility.

540.5 Insurance, guaranties, escrow accounts, and self-insurance.

540.6 Surety bonds.

540.7 Evidence of financial responsibility.

540.8 Denial, revocation, suspension, or modification.

540.9 Miscellaneous.

Form FMC-131

Form FMC-132A

Form FMC-133A

Appendix A -- Example of Escrow Agreement for use under 46 CFR 540.5 (b)

## Subpart B -- Proof of Financial Responsibility, Bonding and Certification of Financial Responsibility To Meet Liability Incurred for Death or Injury to Passengers or Other Persons on Voyages

540.20 Scope.

540.21 Definitions.

540.22 Proof of financial responsibility, when required.

540.23 Procedure for establishing financial responsibility.

540.24 Insurance, surety bonds, self-insurance, guaranties, and escrow accounts.

540.25 Evidence of financial responsibility.

540.26 Denial, revocation, suspension, or modification.

540.27 Miscellaneous.

Form FMC-132B

Form FMC-133B

## Subpart C -- General

540.91 OMB control numbers assigned pursuant to the Paperwork Reduction Act.

Authority: 5 U.S.C. 552, 553; 31 U.S.C. 9701; secs. 2 and 3, Pub. L. 89-777, 80 Stat. 1356 - 1358, 46 U.S.C. app. 817e, 817d; 46 U.S.C. 1716.

Source: 49 FR 36313, Sept. 14, 1984, unless otherwise noted.

**Subpart A -- Proof of Financial Responsibility,
Bonding and Certification of Financial
Responsibility for Indemnification of
Passengers for Nonperformance of
Transportation**

### § 540.1 Scope.

(a) The regulations contained in this subpart set forth the procedures whereby persons in the United States who arrange, offer, advertise or provide passage on a vessel having berth or stateroom accommodations for 50 or more passengers and embarking passengers at U.S. ports shall establish their financial responsibility or, in lieu thereof, file a bond or other security for obligations under the terms of ticket contracts to indemnify passengers for nonperformance of transportation to which they would be entitled. Included also are the qualifications required by the Commission for issuance of a Certificate (Performance) and the basis for the denial, revocation, modification, or suspension of such Certificates.

(b) Failure to comply with this part may result in denial of an application for a certificate. Vessels operating without the proper certificate may be denied clearance and their owners may also be subject to a civil penalty of not more than $5,000 in addition to a civil penalty of $200 for each passage sold, such penalties to be assessed by the Federal Maritime Commission (46 U.S.C. app. 91, 817d and 817e).

### § 540.2 Definitions.

As used in this subpart, the following terms shall have the following meanings:

(a) *Person* includes individuals, corporations, partnerships, associations, and other legal entities existing under or authorized by the laws of the United States or any State thereof or the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands or any territory or possession of the United States, or the laws of any foreign country.

(b) *Vessel* means any commercial vessel having berth or stateroom accommodations for 50 or more passengers and embarking passengers at U.S. ports.

(c) *Commission* means the Federal Maritime Commission.

(d) *United States* includes the Commonwealth of Puerto Rico, the Virgin Islands or any territory or possession of the United States.

(e) *Berth or stateroom accommodation or passenger accommodations* includes all temporary and all permanent passenger sleeping facilities.

(f) *Certificate (Performance)* means a Certificate of Financial Responsibility for Indemnification of Passengers for Nonperformance of Transportation issued pursuant to this subpart.

(g) *Passenger* means any person who is to embark on a vessel at any U.S. port and who has paid any amount for a ticket contract entitling him to water transportation.

(h) *Passenger revenue* means those monies wherever paid by passengers who are to embark at any U.S. port for water transportation and all other accommodations, services and facilities relating thereto.

(i) *Unearned passenger revenue* means that passenger revenue received for water transportation and all other accommodations, services, and facilities relating thereto not yet performed.

(j) *Insurer* means any insurance company, underwriter, corporation, or association or underwriters, ship owners' protection and indemnity association, or other insurer acceptable to the Commission.

(k) *Evidence of insurance* means a policy, certificate of insurance, cover note, or other evidence of coverage acceptable to the Commission.

(1) *Whole-ship charter* means an arrangement between a passenger vessel operator and a corporate or institutional entity:

(i) Which provides for the purchase of all the passenger accommodations on a vessel for a particular voyage or series of voyages; and

(ii) Whereby the involved corporate or institutional entity provides such accommodations to the ultimate passengers free of charge and such accommodations are not resold to the public.

[57 FR 41886, Sept. 14, 1992]

## § 540.3 Proof of financial responsibility, when required.

No person in the United States may arrange, offer, advertise or provide passage on a vessel unless a Certificate (Performance) has been issued to or covers such person.

## § 540.4 Procedure for establishing financial responsibility.

(a) In order to comply with section 3 of Pub. L. 89-777 (80 Stat. 1357, 1358) enacted November 6, 1966, there must be filed an application on Form FMC-131 for a Certificate of Financial Responsibility for Indemnification of Passengers for Nonperformance of Transportation. Copies of Form FMC-131 may be obtained from the Secretary, Federal Maritime Commission,

Washington, DC 20573.

(b) An application for a Certificate (Performance) shall be filed in duplicate with the Secretary, Federal Maritime Commission, by the vessel owner or charterer at least 60 days in advance of the arranging, offering, advertising, or providing of any water transportation or tickets in connection therewith except that any person other than the owner or charterer who arranges, offers, advertises, or provides passage on a vessel may apply for a Certificate (Performance). Late filing of the application will be permitted only for good cause shown. All applications and evidence required to be filed with the Commission shall be in English, and any monetary terms shall be expressed in terms of U.S. currency. The Commission shall have the privilege of verifying any statements made or any evidence submitted under the rules of this subpart. An application for a Certificate (Performance), excluding an application for the addition or substitution of a vessel to the applicant's fleet, shall be accompanied by a filing fee remittance of $2,152. An application for a Certificate (Performance) for the addition or substitution of a vessel to the applicant's fleet shall be accompanied by a filing fee remittance of $1,076.

(c) The application shall be signed by a duly authorized officer or representative of the applicant with a copy of evidence of his or her authority. In the event of any material change in the facts as reflected in the application, an amendment to the application shall be filed no later than five (5) days following such change. For the purpose of this subpart, a material change shall be one which: (1) Results in a decrease in the amount submitted to establish financial responsibility to a level below that required to be maintained under the rules of this subpart, or (2) requires that the amount to be maintained be increased above the amount submitted to establish financial responsibility. Notice of the application for, issuance, denial, revocation, suspension, or modification of any such Certificate shall be published in the Federal Register.

[59 FR 59168, Nov. 16, 1994; 63 FR 50534, Sept 22, 1998]

### § 540.5 Insurance, guaranties, escrow accounts, and self-insurance.

Except as provided in § 540.9(j), the amount of coverage required under this section and § 540.6(b) shall be in an amount determined by the Commission to be no less than 110 percent of the unearned passenger revenue of the applicant on the date within the 2 fiscal years immediately prior to the filing of the application which reflects the greatest amount of unearned passenger revenue, unless the applicant qualifies for consideration under § 540.5(e). The Commission, for good cause shown, may consider a time period other than the previous 2-fiscal-year requirement in this section or other methods acceptable to the Commission to determine the amount of coverage required. Evidence of adequate financial responsibility for the purposes of this subpart may be established by one or a combination (including § 540.6 *Surety Bonds*) of the following methods:

(a) Filing with the Commission evidence of insurance, issued by an insurer, providing coverage for indemnification of passengers in the event of the nonperformance of water transportation.

(1) Termination or cancellation of the evidence of insurance, whether by the assured or by the insurer, and whether for nonpayment of premiums, calls or assessments or for other cause, shall not be effected: (i) Until notice in writing has been given to the assured or to the insurer and to the Secretary of the Commission at its office, in Washington, DC 20573, by certified mail, and (ii) until after 30 days expire from the date notice is actually received by the Commission, or until after the Commission revokes the Certificate (Performance), whichever occurs first. Notice of termination or cancellation to the assured or insurer shall be simultaneous to such notice given to the Commission. The insurer shall remain liable for claims covered by said evidence of insurance arising by virtue of an event which had occurred prior to the effective date of said termination or cancellation. No such termination or cancellation shall become effective while a voyage is in progress.

(2) The insolvency or bankruptcy of the assured shall not constitute a defense to the insurer as to claims included in said evidence of insurance and in the event of said insolvency or bankruptcy, the insurer agrees to pay any unsatisfied final judgments obtained on such claims.

(3) No insurance shall be acceptable under these rules which restricts the liability of the insurer where privity of the owner or charterer has been shown to exist.

(4) Paragraphs (a)(1) through (a)(3) of this section shall apply to the guaranty as specified in paragraph (c) of this section.

(b) Filing with the Commission evidence of an escrow account, acceptable to the Commission, for indemnification of passengers in the event of nonperformance of water transportation. Parties filing escrow agreements for Commission approval may execute such agreements in the form set forth in Appendix A of Subpart A of this Part.

(c) Filing with the Commission a guaranty on Form FMC-133A, by a guarantor acceptable to the Commission, for indemnification of passengers in the event of nonperformance of water transportation. The requirements of Form FMC-133A, however, may be amended by the Commission in a particular case for good cause.

(d) Filing with the Commission for qualification as a self-insurer such evidence acceptable to the Commission as will demonstrate continued and stable passenger operations over an extended period of time in the foreign or domestic trade of the United States. Such evidence must include an affidavit by the operator's Chief Executive Officer or other responsible corporate officer of a minimum of five years of operation in United States trades, with

a satisfactory explanation of any claims for nonperformance of transportation. In addition, applicant must demonstrate financial responsibility by maintenance of net worth in an amount calculated as in the introductory text of this section. The Commission will take into consideration all current contractual requirements with respect to the maintenance of such net worth to which the applicant is bound. Evidence must be submitted that the net worth required above is physically located in the United States. This evidence of financial responsibility shall be supported by and subject to the following which are to be submitted on a continuing basis for each year or portion thereof while the Certificate (Performance) is in effect:

(1) A current quarterly balance sheet, except that the Commission, for good cause shown, may require only an annual balance sheet;

(2) A current quarterly statement of income and surplus, except that the Commission, for good cause shown, may require only an annual statement of income and surplus;

(3) An annual current balance sheet and an annual current statement of income and surplus to be certified by appropriate certified public accountants;

(4) Semiannual current statement of the book value or current market value of any assets physically located within the United States together with a certification as to the existence and amount of any encumbrances thereon;

(5) Semiannual current credit rating report by Dun and Bradstreet or any similar concern found acceptable to the Commission;

(6) A list filed semiannually of all contractual requirements or other encumbrances (and to whom the applicant is bound in this regard) relating to the maintenance of net worth;

(7) All financial statements required to be submitted under this section shall be due within a reasonable time after the close of each pertinent accounting period;

(8) Such additional evidence of financial responsibility as the Commission may deem necessary in appropriate cases.

(e) The following schedule may be applied to determine the minimum coverage required for indemnification of passengers in the event of nonperformance of water transportation for those operators who have not elected to qualify by self-insurance; and can provide evidence (in the form of an affidavit by the operator's Chief Executive Officer or other responsible corporate officer) of a minimum of five years of operation in United States

trades, with a satisfactory explanation of any claims for nonperformance of transportation:

| Unearned Passenger Revenue ("UPR") | Required Coverage |
|---|---|
| $0-$5,000,000 | 100% of UPR up to $5,000,000 |
| $5,000,001 to $15,000,000 | $5,000,000 plus 50% of excess UPR over $5,000,000 subject to a maximum of $5,000,000 per vessel |
| $15,000,001 to $35,000,000 | $10,000,000 plus 25% of excess of UPR over $15,000,000 subjec overall maximum of $5,000,000 per vessel and a $15,000,000 ove maximum |
| over $35,000,000 | $15,000,000 overall maximum |

(f) Revenues derived from whole-ship charters, as defined in section 540.2 (1), may be exempted from consideration as unearned passenger revenues, on condition that, in the case of a new operator or within 30 days of the execution of the whole-ship charter if the operator has a Performance Certificate for the vessel in question: (1) a certified true copy of the contract or charter is furnished with the application; (2) the chartering party attests that it will redistribute the vessel's passenger accommodations without charge; and (3) a document executed by the chartering party's Chief Executive Officer or other responsible corporate officer is submitted by which the chartering party specifically acknowledges that its rights to indemnification under section 3 of Public Law 89-777 may be affected by the reduction in section 3, Public Law 89-777, financial responsibility coverage attributable to the exclusion of such funds from the operator's UPR.

[49 FR 36313, Sept. 14, 1984; 55 FR 1823, Jan. 19, 1990; 57 FR 41886, Sept. 14, 1992; 57 FR 62479, Dec. 31, 1992]

## § 540.6 Surety bonds.  ⚘

(a) Where financial responsibility is not established under § 540.5, a surety bond shall be filed on Form FMC-132A. Such surety bond shall be issued by a bonding company authorized to do business in the United States and acceptable to the Commission for indemnification of passengers in the event of nonperformance of water transportation. The requirements of Form-132A, however, may be amended by the Commission in a particular case for good cause.

(b) In the case of a surety bond which is to cover all passenger operations of the applicant subject to these rules, such bond shall be in an amount calculated as in the introductory text of § 540.5.

(c) In the case of a surety bond which is to cover an individual voyage, such

bond shall be in an amount determined by the Commission to equal the gross passenger revenue for that voyage.

(d) The liability of the surety under the rules of this subpart to any passenger shall not exceed the amount paid by any such passenger, except that, no such bond shall be terminated while a voyage is in progress.

[49 FR 36313, Sept. 14, 1984; 55 FR 1824, Jan. 19, 1990; 57 FR 41891, Sept. 14, 1992; 57 FR 62480, Dec. 31, 1992]

## § 540.7 Evidence of financial responsibility.

Where satisfactory proof of financial responsibility has been given or a satisfactory bond has been provided, a Certificate (Performance) covering specified vessels shall be issued evidencing the Commission's finding of adequate financial responsibility to indemnify passengers for nonperformance of water transportation. The period covered by the Certificate (Performance) shall be indeterminate, unless a termination date has been specified thereon.

## § 540.8 Denial, revocation, suspension, or modification.

(a) Prior to the denial, revocation, suspension, or modification of a Certificate (Performance), the Commission shall advise the applicant of its intention to deny, revoke, suspend, or modify and shall state the reasons therefor. If the applicant, within 20 days after the receipt of such advice, requests a hearing to show that the evidence of financial responsibility filed with the Commission does meet the rules of this subpart, such hearing shall be granted by the Commission, except that a Certificate (Performance) shall become null and void upon cancellation or termination of the surety bond, evidence of insurance, guaranty, or escrow account.

(b) A Certificate (Performance) may be denied, revoked, suspended, or modified for any of the following reasons:

(1) Making any willfully false statement to the Commission in connection with an application for a Certificate (Performance);

(2) Circumstances whereby the party does not qualify as financially responsible in accordance with the requirements of the Commission;

(3) Failure to comply with or respond to lawful inquiries, rules, regulations or orders of the Commission pursuant to the rules of this subpart.

(c) If the applicant, within 20 days after notice of the proposed denial, revocation, suspension, or modification under paragraph (b) of this section, requests a hearing to show that such denial, revocation, suspension, or modification should not take place, such hearing shall be granted by the Commission.

## § 540.9 Miscellaneous.  ⬛

(a) If any evidence filed with the application does not comply with the requirements of this subpart, or for any reason fails to provide adequate or satisfactory protection to the public, the Commission will notify the applicant stating the deficiencies thereof.

(b) Any financial evidence submitted to the Commission under the rules of this subpart shall be written in the full and correct name of the person to whom the Certificate (Performance) is to be issued, and in case of a partnership, all partners shall be named.

(c) The Commission's bond (Form FMC-132A), guaranty (Form FMC-133A), and application (Form FMC-131) forms are hereby incorporated as a part of the rules of this subpart. Any such forms filed with the Commission under this subpart must be in duplicate.

(d) Any securities or assets accepted by the Commission (from applicants, insurers, guarantors, escrow agents, or others) under the rules of this subpart must be physically located in the United States.

(e) Each applicant, insurer, escrow agent and guarantor shall furnish a written designation of a person in the United States as legal agent for service of process for the purposes of the rules of this subpart. Such designation must be acknowledged, in writing, by the designee. In any instance in which the designated agent cannot be served because of its death, disability, or unavailability, the Secretary, Federal Maritime Commission, will be deemed to be the agent for service of process. A party serving the Secretary in accordance with the above provision must also serve the Certificant, insurer, escrow agent, or guarantor, as the case may be, by registered mail at its last known address on file with the Commission.

(f) [Reserved]

(g) Financial data filed in connection with the rules of this subpart shall be confidential except in instances where information becomes relevant in connection with hearings which may be requested by applicant pursuant to § 540.8 (a) or (b).

(h) Every person who has been issued a Certificate (Performance) must submit to the Commission a semiannual statement of any changes that have taken place with respect to the information contained in the application or documents submitted in support thereof. Negative statements are required to indicate no change. Such statements must cover every 6-month period of the fiscal year immediately subsequent to the date of the issuance of the Certificate (Performance), and include a statement of the highest unearned passenger vessel revenue accrued for each month in the 6-month reporting period. In addition, the statements will be due within 30 days after the close

of every such 6-month period.

(i) [Reserved]

(j) The amount of: (1) Insurance as specified in § 540.5(a), (2) the escrow account as specified in § 540.5(b), (3) the guaranty as specified in § 540.5 (c), or (4) the surety bond as specified in § 540.6, shall not be required to exceed 15 million dollars (U.S.).

(k) Every person in whose name a Certificate (Performance) has been issued shall be deemed to be responsible for any unearned passage money or deposits in the hands of its agents or of any other person or organization authorized by the certificant to sell the certificant's tickets. Certificants shall promptly notify the Commission of any arrangements, including charters and subcharters, made by it or its agent with any person pursuant to which the certificant does not assume responsibility for all passenger fares and deposits collected by such person or organization and held by such person or organization as deposits or payment for services to be performed by the certificant. If responsibility is not assumed by the certificant, the certificant also must inform such person or organization of the certification requirements of Pub. L. 89-777 and not permit use of its name or tickets in any manner unless and until such person or organization has obtained the requisite Certificate (Performance) from the Commission.

[55 FR 34568, Aug. 23, 1990]


Form FMC-131   ⚠

FEDERAL MARITIME COMMISSION

*Washington, DC 20573*

*Application for Certificate of Financial Responsibility*

In compliance with the provisions of Pub. L. 89-777 and 46 CFR Part 540, application is hereby made for a Certificate of Financial Responsibility (check one or both as applicable):

[ ] for indemnification of passengers for nonperformance. [ ] Initial application [ ] Certificate has previously been applied for (if so, give date of application and action taken thereon).

[ ] to meet liability incurred for death or injury to passengers or other persons. [ ] Initial application [ ] Certificate has previously been applied for (if so, give date of application and action taken thereon).

*Instructions*

Submit two (2) typed copies of the application to the Secretary, Federal Maritime Commission, Washington, D.C. 20573. The application is in four parts: Part I -- General; Part II -- Performance; Part III -- Casualty and Part IV -- Declaration. Applicants must answer all questions in Part I and Part IV, then Parts II and/or Part III as appropriate. Instructions relating to Part II and Part III are contained at the beginning of the respective part. If the information required to be submitted under 46 CFR Part 540 has been previously submitted under other rules and regulations of the Commission, state when and for what reason such information was submitted. If previously submitted, it is not necessary to resubmit. If additional space is required, supplementary sheets may be attached.

*Part I -- General*

*Answer All Questions*

1. (a)  Legal business name:

(b) English equivalent of legal name if customarily written in language other than English:

(c) Trade name or names used:

2. (a) State applicant's legal form of organization, i.e., whether operating as an individual, corporation, partnership, association, joint stock company, business trust, or other organized group of persons (whether incorporated or not), or as a receiver, trustee, or other liquidating agent, and describe current business activities and length of time engaged therein.

(b) If a corporation, association, joint stock company, business trust, or other organization, give:

Name of State or country in which incorporated or organized.

Date of the incorporation or organization.

(c) If a partnership, give name and address of each partner:

3. Give following information regarding any person or company controlling, controlled by, or under common control with you (answer only if applying as a self-insurer under Part II or Part III).

| Name | Address |
|------|---------|
|      |         |

4. In relation to the passenger transportation engaged in by you to or from U.S. ports:

Do you own all the vessels? [ ] Yes [ ] No (If ``No'' indicate the nature of the arrangements under which those not owned by you are available to you (e.g., bareboat, time, voyage, or other charter, or arrangement).)

5. Name of each passenger vessel having accommodations for 50 or more passengers and embarking passengers at U.S. ports:

| Name | Country | Regist |
|------|---------|--------|
| ..................................... | ..................................................................... | ........ |

6. Submit a copy of passenger ticket or other contract evidencing the sale of passenger transportation.

7. Name and address of applicant's U.S. agent or other person authorized to accept legal service in the United States.

### Part II -- Performance

Answer items 8 - 15 if applying for Certificate of Financial Responsibility for Indemnification of Passengers for Nonperformance. If you are filing evidence of insurance, escrow account, guaranty or surety bond under Subpart A of 46 CFR Part 540 and providing at least fifteen (15) million dollars (U.S.) of coverage, you need not answer questions 10 - 15.

8. If you are providing at least fifteen (15) million dollars (U.S.) of coverage, state type of evidence and name and address of applicant's insurer, escrow agent, guarantor or surety (as appropriate).

9.* A Certificate (Performance) is desired for the following proposed passenger voyage or voyages: (Give itinerary and indicate whether the Certificate is for a single voyage, multiple voyages or all voyages scheduled annually.)

| Vessel | Voyage date | Ve |
|--------|-------------|----|
| ................................................ | ................................................ | .... |

10. Items 11 - 15 are optional methods; answer only the one item which is applicable to this application. Check the appropriate box below:

[ ] Insurance (item 11).

[ ] Escrow (item 12).

[ ] Surety bond (item 13).

[ ] Guaranty (item 14).

[ ] Self-insurer (item 15).

11. (a) Total amount of performance insurance which is to be computed in accordance with 46 CFR 540.5. (Evidence of insurance must be filed with the Federal Maritime Commission before a Certificate (Performance) may be issued.)

(b) Method by which insurance amount is determined (attach data substantiating that amount is not less than that prescribed in 46 CFR 540.5).

(c) Name and address of applicant's insurer for performance policy.

12. (a) Name and address of applicant's escrow agent. (Applicant may pledge cash or U.S. Government securities, in lieu of a surety bond, to fulfill the indemnification provisions of Pub. L. 89-777.) (b) Total escrow deposit which is to be computed in accordance with 46 CFR 540.5. (Escrow agreement must be filed with the Federal Maritime Commission before a Certificate (Performance) will be issued.) Cash $_____ . U.S. Government Securities $ _____ .

(c) Method by which escrow amount is determined (attach data substantiating that amount is not less than that prescribed by 46 CFR 540.5).

*The filing of sailing schedules will be acceptable in answers to this question.

13. (a) Total amount of surety bond in accordance with 46 CFR 540.6. (The bond must be filed with the Federal Maritime Commission before a Certificate (Performance) may be issued.)

(b) Method by which bond amount is determined (attach data substantiating that amount is not less than that prescribed in 46 CFR 540.6).

(c) Name and address of applicant's surety on performance bond.

14. (a) Total amount of guaranty which is to be computed in accordance with 46 CFR 540.5. (Guaranty must be filed with the Federal Maritime Commission before a Certificate (Performance) may be issued.)

(b) Method by which guaranty amount is determined (attach data substantiating that amount is not less than that prescribed in 46 CFR 540.5).

(c) Name and address of applicant's guarantor.

15. If applicant intends to qualify as a self-insurer for a Certificate (Performance) under 46 CFR 540.5, attach all data, statements, and documentation required therein.

*Part III -- Casualty*

Answer Items 16 - 22 if Applying for Certificate of Financial Responsibility to Meet Liability Incurred for Death or Injury to Passengers or Other Persons

16. (a) Name of passenger vessel subject to section 2 of Pub. L. 89-777 operated by you to or from U.S. ports which has largest number of berth or stateroom accommodations.

(b) State the maximum number of berth or stateroom accommodations.

17. Amount of death or injury liability coverage based on number of accommodations aboard vessel named in item 16 above, calculated in accordance with 46 CFR 540.24.

Items 18 - 22 Are Optional Methods: Answer Only the One Item Which is Applicable to This Application

18. (a) Total amount of applicant's insurance. (Evidence of the insurance must be filed with the Federal Maritime Commission before a Certificate (Casualty) will be issued.)

(b) Name and address of applicant's insurer.

19. (a) Total amount of surety bond. (Bond must be filed with the Federal Maritime Commission before a Certificate (Casualty) will be issued.)

(b) Name and address of applicant's surety for death or injury bond.

20. (a) Total amount of escrow deposit. (Escrow agreement must be filed with the Federal Maritime Commission before a Certificate (Casualty) will be issued.)

(b) Name and address of applicant's escrow agent.

21. (a) Total amount of guaranty. (Guaranty must be filed with the Federal Maritime Commission before a Certificate (Casualty) will be issued.)

(b) Name and address of applicant's guarantor.

22. If applicant intends to qualify as a self-insurer for a Certificate (Casualty) under 46 CFR 540.24(c), attach all data, statements and documentation required therein.

*Part IV -- Declaration*

This application is submitted by or on behalf of

(a) Name.

(b) Name and title of official.

(c) Home office -- Street and number.

(d) City.

(e) State or country.

(f) ZIP Code.

(g) Principal office in the United States -- Street and number.

(h) City.

(i) State.

I declare that I have examined this application, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct and complete.

By _____
(Signature of official)


_____
(Date)

Comments:

[55 FR 34568, Aug. 23, 1990]


Form FMC-132A    ▲

# FEDERAL MARITIME COMMISSION

*Surety Co. Bond No.* _____

*FMC Certificate No.* _____

*Passenger Vessel Surety Bond*

*(46 CFR Part 540)*

Know all men by these presents, that we

_____ (Name of applicant), of _____ (City),
_____ (State and country), as Principal (hereinafter called
Principal), and _____ (Name of surety), a company created and
existing under the laws of _____ (State and country) and
authorized to do business in the United States as Surety (hereinafter called
Surety) are held and firmly bound unto the United States of America in the
penal sum of _____ , for which payment, well and truly to be made, we
bind ourselves and our heirs, executors, administrators, successors, and
assigns, jointly and severally, firmly by these presents.

Whereas the Principal intends to become a holder of a Certificate
(Performance) pursuant to the provisions of Subpart A of Part 540 of Title
46, Code of Federal Regulations and has elected to file with the Federal
Maritime Commission such a bond to insure financial responsibility and the
supplying transportation and other services subject to Subpart A of Part 540
of Title 46, Code of Federal Regulations, in accordance with the ticket
contract between the Principal and the passenger, and

Whereas this bond is written to assure compliance by the Principal as an
authorized holder of a Certificate (Performance) pursuant to Subpart A of
Part 540 of Title 46, Code of Federal Regulations, and shall inure to the
benefit of any and all passengers to whom the Principal may be held legally
liable for any of the damages herein described.

Now, therefore, the condition of this obligation is such that if the Principal
shall pay or cause to be paid to passengers any sum or sums for which the
Principal may be held legally liable by reason of the Principal's failure
faithfully to provide such transportation and other accommodations and
services in accordance with the ticket contract made by the Principal and the
passenger while this bond is in effect for the supplying of transportation and
other services pursuant to and in accordance with the provisions of Subpart
A of Part 540 of Title 46, Code of Federal Regulations, then this obligation
shall be void, otherwise, to remain in full force and effect.

The liability of the Surety with respect to any passenger shall not exceed the
passage price paid by or on behalf of such passenger.

The liability of the Surety shall not be discharged by any payment or succession of payments hereunder, unless and until such payment or payments shall amount in the aggregate to the penalty of the bond, but in no event shall the Surety's obligation hereunder exceed the amount of said penalty. The Surety agrees to furnish written notice to the Federal Maritime Commission forthwith of all suits filed, judgments rendered, and payments made by said Surety under this bond.

This bond is effective the _____ day of _____ , _____ 19 _____ , 12:01 a.m., standard time at the address of the Principal as stated herein and shall continue in force until terminated as hereinafter provided. The Principal or the Surety may at any time terminate this bond by written notice sent by certified mail to the other and to the Federal Maritime Commission at its office in Washington, D.C., such termination to become effective thirty (30) days after actual receipt of said notice by the Commission, except that no such termination shall become effective while a voyage is in progress. The Surety shall not be liable hereunder for any refunds due under ticket contracts made by the Principal for the supplying of transportation and other services after the termination of this bond as herein provided, but such termination shall not affect the liability of the Surety hereunder for refunds arising from ticket contracts made by the Principal for the supplying of transportation and other services prior to the date such termination becomes effective.

In witness whereof, the said Principal and Surety have executed this instrument on _____ day of _____ , 19 _____ .

<div align="center">PRINCIPAL</div>

Name _____

By _____
(Signature and title)

Witness _____

<div align="center">SURETY</div>

[SEAL] Name _____

By _____
(Signature and title)

Witness _____

Only corporations or associations of individual insurers may qualify to act as surety, and they must establish to the satisfaction of the Federal Maritime Commission legal authority to assume the obligations of surety and financial

ability to discharge them.

Form FMC-133A

## FEDERAL MARITIME COMMISSION

*Guaranty No.* _____

*FMC Certificate No.* _____

*Guaranty in Respect of Liability for*
*Nonperformance, Section 3 of the Act*

1. Whereas _____ (Name of applicant) (Hereinafter referred to as the ``Applicant'') is the Owner or Charterer of the passenger Vessel(s) specified in the annexed Schedule (``the Vessels''), which are or may become engaged in voyages to or from United States ports, and the Applicant desires to establish its financial responsibility in accordance with section 3 of Pub. L. 89-777, 89th Congress, approved November 6, 1966 (``the Act'') then, provided that the Federal Maritime Commission (``FMC'') shall have accepted, as sufficient for that purpose, the Applicant's application, supported by this Guaranty, and provided that FMC shall issue to the Applicant a Certificate (Performance) (``Certificate''), the undersigned Guarantor hereby guarantees to discharge the Applicant's legal liability to indemnify the passengers of the Vessels for nonperformance of transportation within the meaning of section 3 of the Act, in the event that such legal liability has not been discharged by the Applicant within 21 days after any such passenger has obtained a final judgment (after appeal, if any) against the Applicant from a United States Federal or State Court of competent jurisdiction, or has become entitled to payment of a specified sum by virtue of a compromise settlement agreement made with the Applicant, with the approval of the Guarantor, whereby, upon payment of the agreed sum, the Applicant is to be fully, irrevocably and unconditionally discharged from all further liability to such passenger for such nonperformance.

2. The Guarantor's liability under this Guaranty in respect to any passenger shall not exceed the amount paid by such passenger; and the aggregate amount of the Guarantor's liability under this Guaranty shall not exceed $ _____ .

3. The Guarantor's liability under this Guaranty shall attach only in respect of events giving rise to a cause of action against the Applicant, in respect of any of the Vessels, for nonperformance of transportation within the meaning of Section 3 of the Act, occurring after the Certificate has been granted to the Applicant, and before the expiration date of this Guaranty, which shall be the earlier of the following dates:

(a) The date whereon the Certificate is withdrawn, or for any reason becomes invalid or ineffective; or

(b) The date 30 days after the date of receipt by FMC of notice in writing (including telex or cable) that the Guarantor has elected to terminate this Guaranty except that:

(i) If, on the date which would otherwise have been the expiration date under the foregoing provisions (a) or (b) of this Clause 3, any of the Vessels is on a voyage whereon passengers have been embarked at a United States port, then the expiration date of this Guaranty shall, in respect of such Vessel, be postponed to the date on which the last passenger on such voyage shall have finally disembarked; and

(ii) Such termination shall not affect the liability of the Guarantor for refunds arising from ticket contracts made by the Applicant for the supplying of transportation and other services prior to the date such termination becomes effective.

4. If, during the currency of this Guaranty, the Applicant requests that a vessel owned or operated by the Applicant, and not specified in the annexed Schedule, should become subject to this Guaranty, and if the Guarantor accedes to such request and so notifies FMC in writing (including telex or cable), then, provided that within 30 days of receipt of such notice, FMC shall have granted a Certificate, such Vessel shall thereupon be deemed to be one of the Vessels included in the said Schedule and subject to this Guaranty.

5. The Guarantor hereby designates _____ , with offices at _____ , as the Guarantor's legal agent for service of process for the purposes of the Rules of the Federal Maritime Commission, Subpart A of Part 540 of Title 46, Code of Federal Regulations, issued under Section 3 of Pub. L. 89-777 (80 Stat. 1357, 1358), entitled ``Security for the Protection of the Public.''

_____
(Place and Date of Execution)


_____
(Type Name of Guarantor)


_____
(Type Address of Guarantor)

By _____
(Signature and Title)

*Schedule of Vessels Referred to in Clause 1*

*Vessels Added to This Schedule in
Accordance With Clause 4*

Appendix A - Example of Escrow Agreement for use under 46 CFR 540.5
(b)

*Escrow Agreement*

1. Legal name(s), state(s) of incorporation, description of business(es), trade name(s) if any, and domicile(s) of each party.

2. Whereas, [name of the passenger vessel operator] (``Operator'') and/or [name of the issuer of the passenger ticket] (``Ticket Issuer'') wish(es) to establish an escrow account to provide for the indemnification of certain of its passengers utilizing [name vessel(s)] in the event of nonperformance of transportation to which such passengers would be entitled, and to establish the Operator's and/or Ticket Issuer's financial responsibility therefor; and

3. Whereas, [name of escrow agent] (``the Escrow Agent'') wishes to act as the escrow agent of the escrow account established hereunder.

4. The Operator and/or Ticket Issuer will determine, as of the day prior to the opening date, the total amounts of U.S. unearned passenger revenues (``UPR'') which it had in its possession. Unearned passenger revenues are defined as [incorporate the elements of 46 CFR 540.2(i)].

5. The Operator and/or Ticket Issuer shall on the opening date deposit an amount equal to UPR as determined above, plus a cash amount equal to [amount equal to no less than 10% of the Operator's and/or Ticket Issuer's UPR on the date within the 2 fiscal years immediately prior to the filing of the escrow agreement which reflects the greatest amount of UPR, except that the Commission, for good cause shown, may consider a time period other than the previous 2-fiscal-year requirement or other methods acceptable to the Commission to determine the amount of coverage required] (``initial deposit'').

6. The Operator and/or Ticket Issuer may at any time deposit additional funds into the account.

7. The Operator and/or Ticket Issuer shall, at the end of each business week, recompute UPR by first computing:

A. the amount by which UPR has decreased due to: (1) Refunds due to cancellations; (2) amount of cancellation fees assessed in connection with (1) above; and (3) the amount earned from completed cruises; and

B. the amount by which UPR has increased due to receipts from passengers for future water transportation and all other related accommodations and services not yet performed.

The difference between the above amounts is the amount by which UPR has

increased or decreased (``new UPR''). If the new UPR plus the amount of the initial deposit exceeds the amount in the escrow account, the Operator and/or Ticket Issuer shall deposit the funds necessary to make the account balance equal to UPR plus the initial deposit. If the account balance exceeds new UPR plus the initial deposit, the balance shall be available to the Operator and/or Ticket Issuer. The information computed in paragraph 7 shall be furnished to the Commission and the Escrow Agent in the form of a recomputation certificate signed and certified by a competent officer of the Operator and/or Ticket Issuer. Copies sent to the Commission are to be addressed to the Director, Bureau of Tariffs, Certification and Licensing, Federal Maritime Commission, Washington, D.C. 20573.

8. A monthly report shall be prepared by the Escrow Agent and provided to the Operator and/or Ticket Issuer and the Commission within 15 days of the end of each month and shall list the investment assets of the account, their original cost, their current market value, and the beginning and ending balance of the account.

9. The Operator's and/or Ticket Issuer's independent auditors shall prepare quarterly reports, such reports to be furnished to the Escrow Agent and the Commission, and any shortfall is to be covered within one business day.

10. The Escrow Agent shall invest the funds of the account in qualified investments as directed by the Operator and/or Ticket Issuer. Some examples of qualified investments are, to the extent permitted by law:

(a) Government obligations of the United States or its agencies;

(b) Certificates of deposit, time deposits or acceptances of any bank, savings institution or trust company whose debt obligations are in the two highest categories rated by Standard and Poor's or Moody's, or which is itself rated in the two highest categories by Keefe, Bryette and Woods;

(c) Commercial paper similarly rated;

(d) Certificates or time deposits issued by any bank, savings institution or trust company when fully insured by the FDIC or the FSLIC;

(e) Money market funds utilizing securities of the same quality as above; and/or

(f) Corporate bonds of the three highest categories, as rated by Standard and Poor's or Moody's.

11. Income derived from the investments shall be credited to the escrow account.

12. The purpose of the escrow agreement is to establish the financial

responsibility of the Operator and/or Ticket Issuer pursuant to section 3 of Public Law 89 - 777, approved November 5, 1966, and the account is to be utilized to discharge the Operator's and/or Ticket Issuer's legal liability to indemnify passengers for nonperformance of transportation via the [name of vessel(s)]. The Escrow Agent is to make such payments on instructions from the Operator and/or Ticket Issuer, or, in the absence of such instructions, 21 days after final judgment against the Operator and/or Ticket Issuer in a U.S. Federal or State court having jurisdiction. The Operator and/or Ticket Issuer will pledge to each passenger holding a ticket for future passage on the Operator's/Ticket Issuer's vessel(s) an interest in the Escrow Account equal to the Fares amount shown on the face of such ticket. The Escrow Agent agrees to act as nominee for each passenger until transportation is performed or until passenger has been compensated.

13. Escrow Agent shall waive right to offset.

14. The Operator and/or Ticket Issuer will indemnify and hold Escrow Agent harmless.

15. Statement of the parties' agreement concerning warranty of *bona fides* by the Operator and/or Ticket Issuer and Escrow Agent.

16. Statement of the parties' agreement concerning fees to be paid by the Operator and/or Ticket Issuer to Escrow Agent, reimbursable expenses to be paid by the Operator and/or Ticket Issuer to Escrow Agent. A statement that fees for subsequent terms of agreement are to be negotiated.

17. Statement of the parties' agreement concerning the term of agreement and renewal/termination procedures.

18. Statement of the parties' agreement concerning procedures for appointment of successor Escrow Agent.

19. Statement that disposition of funds on termination shall be to the Operator and/or Ticket Issuer, if evidence of the Commission's acceptance of alternative evidence of financial responsibility is furnished; otherwise, all passage fares held for uncompleted voyages are to be returned to the passengers. The Operator and/or Ticket Issuer shall pay all fees previously earned to the Escrow Agent.

20. The agreement may be enforced by the passengers, the Escrow Agent, the Operator and/or Ticket Issuer or by the Federal Maritime Commission.

21. All assets maintained under the escrow agreement shall be physically located in the United Sates and may not be transferred, sold, assigned, encumbered, etc., except as provided in the agreement.

22. The Commission has the right to examine the books and records of the Operator and/or Ticket Issuer and the Escrow Agent, as related to the escrow

account, and the agreement may not be modified unless agreed in writing by the Operator and/or Ticket Issuer and Escrow Agent and approved in writing by the Commission.

[57 FR 41891, Sept. 14, 1992]

### Subpart B -- Proof of Financial Responsibility, Bonding and Certification of Financial Responsibility to Meet Liability Incurred for Death or Injury to Passengers or Other Persons on Voyages

### § 540.20 Scope.

The regulations contained in this subpart set forth the procedures whereby owners or charterers of vessels having berth or stateroom accommodations for 50 or more passengers and embarking passengers at U.S. ports shall establish their financial responsibility to meet any liability which may be incurred for death or injury to passengers or other persons on voyages to or from U.S. ports. Included also are the qualifications required by the Commission for issuance of a Certificate (Casualty) and the basis for the denial, revocation, suspension, or modification of such Certificates.

### § 540.21 Definitions.

As used in this subpart, the following terms shall have the following meanings:

(a) *Person* includes individuals, corporations, partnerships, associations, and other legal entities existing under or authorized by the laws of the United States or any state thereof or the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands or any territory or possession of the United States, or the laws of any foreign country.

(b) *Vessel* means any commercial vessel having berth or stateroom accommodations for 50 or more passengers and embarking passengers at U.S. ports.

(c) *Commission* means the Federal Maritime Commission.

(d) *United States* includes the Commonwealth of Puerto Rico, the Virgin Islands or any territory or possession of the United States.

(e) *Berth or stateroom accommodations or passenger accommodations* includes all temporary and all permanent passenger sleeping facilities.

(f) *Certificate (Casualty)* means a Certificate of Financial Responsibility to Meet Liability Incurred for Death or Injury to Passengers or Other Persons

on Voyages issued pursuant to this subpart.

(g) *Voyage* means voyage of a vessel to or from U.S. ports.

(h) *Insurer* means any insurance company, underwriter, corporation or association of underwriters, ship owners' protection and indemnity association, or other insurer acceptable to the Commission.

(i) *Evidence of insurance* means a policy, certificate of insurance, cover note, or other evidence of coverage acceptable to the Commission.

(j) For the purpose of determining compliance with § 540.22, ``passengers embarking at United States ports" means any persons, not necessary to the business, operation, or navigation of a vessel, whether holding a ticket or not, who board a vessel at a port or place in the United States and are carried by the vessel on a voyage from that port or place.

## § 540.22 Proof of financial responsibility, when required.

No vessel shall embark passengers at U.S. ports unless a Certificate (Casualty) has been issued to or covers the owner or charterer of such vessel.

## § 540.23 Procedure for establishing financial responsibility.

(a) In order to comply with section 2 of Pub. L. 89-777 (80 Stat. 1357, 1358) enacted November 6, 1966, there must be filed an Application on Form FMC-131 for a Certificate of Financial Responsibility to Meet Liability Incurred for Death or Injury to Passengers or Other Persons on Voyages. Copies of Form FMC-131 may be obtained from the Secretary, Federal Maritime Commission, Washington, DC 20573.

(b) An application for a Certificate (Casualty) shall be filed in duplicate with the Secretary, Federal Maritime Commission, by the vessel owner or charterer at least 60 days in advance of the sailing. Late filing of the application will be permitted only for good cause shown. All applications and evidence required to be filed with the Commission shall be in English, and any monetary terms shall be expressed in terms of U.S. currency. The Commission shall have the privilege of verifying any statements made or any evidence submitted under the rules of this subpart. An application for a Certificate (Casualty), excluding an application for the addition or substitution of a vessel to the applicant's fleet, shall be accompanied by a filing fee remittance of $938. An application for a Certificate (Casualty) for the addition or substitution of a vessel to the applicant's fleet shall be accompanied by a filing fee remittance of $469.

(c) The application shall be signed by a duly authorized officer or represenative of the applicant with a copy of evidence of his authority. In the event of any material change in the facts as reflected in the application, an amendment to the application shall be filed no later than five (5) days

following such change. For the purpose of this subpart, a material change shall be one which: (1) Results in a decrease in the amount submitted to establish financial responsibility to a level below that required to be maintained under the rules of this subpart, or (2) requires that the amount to be maintained be increased above the amount submitted to establish financial responsibility. Notice of the application for, issuance, denial, revocation, suspension, or modification of any such Certificate shall be published in the Federal Register.

[59 FR 59168, Nov. 16, 1994; 63 FR 50534, Sept 22, 1998]

### § 540.24 Insurance, surety bonds, self-insurance, guaranties, and escrow accounts.

Evidence of adequate financial responsibility for the purposes of this subpart may be established by one of the following methods:

(a) Filing with the Commission evidence of insurance issued by an insurer providing coverage for liability which may be incurred for death or injury to passengers or other persons on voyages in an amount based upon the number of passenger accommodations aboard the vessel, calculated as follows:

*Twenty thousand dollars for each passenger accommodation up to and including 500; plus*

*Fifteen thousand dollars for each additional passenger accommodation between 501 and 1,000; plus*

*Ten thousand dollars for each additional passenger accommodation between 1,001 and 1,500; plus*

*Five thousand dollars for each passenger accommodation in excess of 1,500;*

Except that, if the applicant is operating more than one vessel subject to this subpart, the amount prescribed by this paragraph shall be based upon the number of passenger accommodations on the vessel being so operated which has the largest number of passenger accommodations.

(1) Termination or cancellation of the evidence of insurance, whether by the assured or by the insurer, and whether for nonpayment of premiums, calls or assessments, or for other cause, shall not be effected: (i) Until notice in writing has been given to the assured or to the insurer and to the Secretary of the Commission at its office in Washington, DC 20573, by certified mail, and (ii) until after 30 days expire from the date notice is actually received by the Commissioner, or until after the Commission revokes the Certificate (Casualty), whichever occurs first. Notice of termination or cancellation to the assured or insurer shall be simultaneous to such notice given to the Commission. The insurer shall remain liable for claims covered by said

evidence of insurance arising by virtue of an event which had occurred prior to the effective date of said termination or cancellation. No such termination or cancellation shall become effective while a voyage is in progress.

(2) The insolvency or bankruptcy of the assured shall not constitute a defense to the insurer as to claims included in said evidence of insurance and in the event of said insolvency or bankruptcy, the insurer agrees to pay any unsatisfied final judgments obtained on such claims.

(3) No insurance shall be acceptable under these rules which restricts the liability of the insurer where privity of the owner or charterer has been shown to exist.

(4) Paragraphs (a)(1) through (a)(3) of this section shall apply to the guaranty as specified in paragraph (d) of this section.

(b) Filing with the Commission a surety bond on Form FMC-132B issued by a bonding company authorized to do business in the United States and acceptable to the Commission. Such surety bond shall evidence coverage for liability which may be incurred for death or injury to passengers or other persons on voyages in an amount calculated as in paragraph (a) of this section, and shall not be terminated while a voyage is in progress. The requirements of Form FMC-132B, however, may be amended by the Commission in a particular case for good cause.

(c) Filing with the Commission for qualification as a self-insurer such evidence acceptable to the Commission as will demonstrate continued and stable passenger operations over an extended period of time in the foreign or domestic trade of the United States. In addition, applicant must demonstrate financial responsibility by maintenance of working capital and net worth, each in an amount calculated as in paragraph (a) of this section. The Commission will take into consideration all current contractual requirements with respect to the maintenance of working capital and/or net worth to which the applicant is bound. Evidence must be submitted that the working capital and net worth required above are physically located in the United States. This evidence of financial responsibility shall be supported by and subject to the following which are to be submitted on a continuing basis for each year or portion thereof while the Certificate (Casualty) is in effect:

(1) A current quarterly balance sheet, except that the Commission, for good cause shown, may require only an annual balance sheet;

(2) A current quarterly statement of income and surplus except that the Commission, for good cause shown, may require only an annual statement of income and surplus;

(3) An annual current balance sheet and an annual current statement of income and surplus to be certified by appropriate certified public accountants;

(4) An annual current statement of the book value or current market value of any assets physically located within the United States together with a certification as to the existence and amount of any encumbrances thereon;

(5) An annual current credit rating report by Dun and Bradstreet or any similar concern found acceptable to the Commission;

(6) A list of all contractual requirements or other encumbrances (and to whom the applicant is bound in this regard) relating to the maintenance of working capital and net worth;

(7) All financial statements required to be submitted under this section shall be due within a reasonable time after the close of each pertinent accounting period;

(8) Such additional evidence of financial responsibility as the Commission may deem necessary in appropriate cases.

(d) Filing with the Commission a guaranty on Form FMC-133B by a guarantor acceptable to the Commission. Any such guaranty shall be in an amount calculated as in paragraph (a) of this section. The requirements of Form FMC-133B, however, may be amended by the Commission in a particular case for good cause.

(e) Filing with the Commission evidence of an escrow account, acceptable to the Commission, the amount of such account to be calculated as in paragraph (a) of this section.

(f) The Commission will, for good cause shown, consider any combination of the alternatives described in paragraphs (a) through (e) of this section for the purpose of establishing financial responsibility.

[49 FR 36313, Sept. 14, 1984; 55 FR 1823, Jan. 19, 1990]

## § 540.25 Evidence of financial responsibility.

Where satisfactory proof of financial responsibility has been established, a Certificate (Casualty) covering specified vessels shall be issued evidencing the Commission's finding of adequate financial responsibility to meet any liability which may be incurred for death or injury to passengers or other persons on voyages. The period covered by the certificate shall be indeterminate unless a termination date has been specified therein.

## § 540.26 Denial, revocation, suspension, or modification.

(a) Prior to the denial, revocation, suspension, or modification of a Certificate (Casualty), the Commission shall advise the applicant of its intention to deny, revoke, suspend, or modify, and shall state the reasons

therefor. If the applicant, within 20 days after the receipt of such advice, requests a hearing to show that the evidence of financial responsibility filed with the Commission does meet the rules of this subpart, such hearing shall be granted by the Commission, except that a Certificate (Casualty) shall become null and void upon cancellation or termination of evidence of insurance, surety bond, guaranty, or escrow account.

(b) A Certificate (Casualty) may be denied, revoked, suspended, or modified for any of the following reasons:

(1) Making any willfully false statement to the Commission in connection with an application for a Certificate (Casualty);

(2) Circumstances whereby the party does not qualify as financially responsible in accordance with the requirements of the Commission;

(3) Failure to comply with or respond to lawful inquiries, rules, regulations, or orders of the Commission pursuant to the rules of this subpart.

(c) If the applicant, within 20 days after notice of the proposed denial, revocation, suspension, or modification under paragraph (b) of this section, requests a hearing to show that such denial, revocation, suspension, or modification should not take place, such hearing shall be granted by the Commission.

§ 540.27 Miscellaneous.

(a) If any evidence filed with the application does not comply with the requirements of this subpart, or for any reason, fails to provide adequate or satisfactory protection to the public, the Commission will notify the applicant stating the deficiencies thereof.

(b) Any financial evidence submitted to the Commission under the rules of this subpart shall be written in the full and correct name of the person to whom the Certificate (Casualty) is to be issued, and in case of a partnership, all partners shall be named.

(c) The Commission's bond (Form FMC-132B), guaranty (Form FMC-133B), and application (Form FMC-131 as set forth in Subpart A of this part) forms are hereby incorporated as a part of the rules of this subpart. Any such forms filed with the Commission under this subpart must be in duplicate.

(d) Any securities or assets accepted by the Commission (from applicants, insurers, guarantors, escrow agents, or others) under the rules of this subpart must be physically located in the United States.

(e) Each applicant, insurer, escrow agent, and guarantor shall furnish a written designation of a person in the United States as legal agent for service of process for the purposes of the rules of this subpart. Such designation must be acknowledged, in writing, by the designee. In any instance in which the designated agent cannot be served because of death, disability, or unavailability, the Secretary, Federal Maritime Commission, will be deemed to be the agent for service of process. A party serving the Secretary in accordance with the above provision must also serve the certificant, insurer, escrow agent, or guarantor, as the case may be, by registered mail, at its last known address on file with the Commission.

(f) In the case of any charter arrangements involving a vessel subject to the regulations of this subpart, the vessel owner (in the event of a subcharter, the charterer shall file) must within 10 days file with the Secretary of the Commission evidence of any such arrangement.

(g) Financial data filed in connection with the rules of this subpart shall be confidential except in instances where information becomes relevant in connection with hearings which may be requested by applicant pursuant to § 540.26(a) or § 540.26(b).

(h) Every person who has been issued a Certificate (Casualty) must submit to the Commission a semiannual statement of any changes that have taken place with respect to the information contained in the application or documents submitted in support thereof. Negative statements are required to indicate no change. Such statements must cover every such 6-month period commencing with the first 6-month period of the fiscal year immediately subsequent to the date of the issuance of the Certificate (Casualty). In addition, the statements will be due within 30 days after the close of every 6-month period.

<div align="center">Form FMC-132B</div>

(5-67)

<div align="center">

## FEDERAL MARITIME COMMISSION

</div>

*Surety Co. Bond No.* _____

*FMC Certificate No.* _____

<div align="center">

*Passenger Vessel Surety Bond*
*(46 CFR Part 540)*

</div>

Know all men by these presents, that We

_____ (Name of applicant), of _____ (City),
_____ (State and country), as Principal (hereinafter called

Principal), and _____ (Name of surety), a company created and existing under the laws of

_____ (State and country) and authorized to do business in the United States, as Surety (hereinafter called Surety) are held and firmly bound unto the United States of America in the penal sum of _____ , for which payment, well and truly to be made, we bind ourselves and our heirs, executors, administrators, successors, and assigns, jointly and severally, firmly by these presents.

Whereas, the Principal intends to become a holder of a Certificate (Casualty) pursuant to the provisions of Subpart B of Part 540 of Title 46, Code of Federal Regulations, and has elected to file with the Federal Maritime Commission such a bond to insure financial responsibility to meet any liability it may incur for death or injury to passengers or other persons on voyages to or from U.S. ports, and

Whereas, this bond is written to assure compliance by the Principal as an authorized holder of a Certificate (Casualty) pursuant to Subpart B of Part 540 of Title 46, Code of Federal Regulations, and shall inure to the benefit of any and all passengers or other persons to whom the Principal may be held legally liable for any of the damages herein described.

Now, therefore, the condition of this obligation is such that if the Principal shall pay or cause to be paid to passengers or other persons any sum or sums for which the Principal may be held legally liable by reason of the Principal's failure faithfully to meet any liability the Principal may incur for death or injury to passengers or other persons on voyages to or from U.S. ports, while this bond is in effect pursuant to and in accordance with the provisions of Subpart B of Part 540 of Title 46, Code of Federal Regulations, then this obligation shall be void, otherwise, to remain in full force and effect.

The liability of the Surety with respect to any passenger or other persons shall in no event exceed the amount of the Principal's legal liability under any final judgment or settlement agreement, except that, if the aggregate amount of such judgments and settlements exceeds an amount computed in accordance with the formula contained in section 2(a) of Pub. L. 89-777, then the Surety's total liability under this surety bond shall be limited to an amount computed in accordance with such formula.

The Surety agrees to furnish written notice to the Federal Maritime Commission forthwith of all suits filed, judgments rendered, and payments made by said Surety under this bond.

This bond is effective the _____ day of _____ , 19 _____ , 12:01 a.m., standard time, at the address of the Principal as stated herein and shall continue in force until terminated as hereinafter provided. The Principal or the Surety may at any time terminate this bond by written notice sent by certified mail to the other and to the Federal Maritime Commission

at its Office in Washington, D.C., such termination to become effective thirty (30) days after actual receipt of said notice by the Commission, except that no such termination shall become effective while a voyage is in progress. The Surety shall not be liable hereunder for any liability incurred for death or injury to passengers or other persons on voyages to or from U.S. ports after the termination of this bond as herein provided, but such termination shall not affect the liability of the Surety hereunder for such liability incurred for death or injury to passengers or other persons on voyages to or from U.S. ports prior to the date such termination becomes effective.

In witness whereof, the said Principal and Surety have executed this instrument on the _____ day of _____ , 19 _____ .

<div align="center">PRINCIPAL</div>

Name _____

By _____
(Signature and title)

Witness _____

<div align="center">SURETY</div>

Name _____

By [SEAL] _____
(Signature and title)

Witness _____

Only corporations or associations of individual insurers may qualify to act as Surety, and they must establish to the satisfaction of the Federal Maritime Commission legal authority to assume the obligations of surety and financial ability to discharge them.

<div align="center">Form FMC-133B   &#9651;</div>

(5-67)

<div align="center">FEDERAL MARITIME COMMISSION</div>

*Guaranty No.* _____

*FMC Certificate No.* _____

*Guaranty in Respect of Liability for Death*
*or Injury, Section 2 of the Act*

1. Whereas _____ (Name of Applicant) (Hereinafter referred to as the ``Applicant'') is the Owner or Charterer of the passenger Vessel(s) specified in the annexed Schedule (``the Vessels''), which are or may become engaged in voyages to or from U.S. ports, and the Applicant desires to establish its financial responsibility in accordance with section 2 of Pub. L. 89-777, 89th Congress, approved November 6, 1966 (``the Act'') then, provided that the Federal Maritime Commission (``FMC'') shall have accepted, as sufficient for that purpose, the Applicant's application, supported by this Guaranty, and provided that FMC shall issue to the Applicant a Certificate (Casualty) (``Certificate''), the undersigned Guarantor hereby guarantees to discharge the applicant's legal liability in respect of claims for damages for death or injury to passengers or other persons on voyages of the Vessels to or from U.S. ports, in the event that such legal liability has not been discharged by the Applicant within 21 days after any such passenger or other person, or, in the event of death, his or her personal representative, has obtained a final judgment (after appeal, if any) against the Applicant from a U.S. Federal or State Court of competent jurisdiction, or has become entitled to payment of a specified sum by virtue of a compromise settlement agreement made with the Applicant, with the approval of the Guarantor, whereby, upon payment of the agreed sum, the Applicant is to be fully, irrevocably and unconditionally discharged from all further liability to such passenger or other person, or to such personal representative, with respect to such claim.

2. The Guarantor's liability under this Guaranty shall in no event exceed the amount of the Applicant's legal liability under any such judgment or settlement agreement, except that, if the aggregate amount of such judgments and settlements exceeds an amount computed in accordance with the formula contained in section 2(a) of the Act, then the Guarantor's total liability under this Guaranty shall be limited to an amount computed in accordance with such formula.

3. The Guarantor's liability under this Guaranty shall attach only in respect of events giving rise to causes of action against the Applicant in respect of any of the Vessels for damages for death or injury within the meaning of section 2 of the Act, occurring after the Certificate has been granted to the Applicant and before the expiration date of this Guaranty, which shall be the earlier of the following dates:

(a) The date whereon the Certificate is withdrawn, or for any reason becomes invalid or ineffective; or

(b) The date 30 days after the date of receipt by FMC of notice in writing (including telex or cable) that the Guarantor has elected to terminate this Guaranty, except that if, on the date which would otherwise have been the expiration date of this Guaranty under the foregoing provisions of this

Clause 3, any of the Vessels is on a voyage in respect of which such Vessel would not have received clearance in accordance with section 2(e) of the Act without the Certificate, then the expiration date of this Guaranty shall, in respect of such Vessel, be postponed to the date on which the last passenger on such voyage shall have fully disembarked.

4. If, during the currency of this Guaranty, the Applicant requests that a vessel owned or operated by the Applicant, and not specified in the annexed Schedule, should become subject to this Guaranty, and if the Guarantor accedes to such request and so notifies FMC in writing (including telex or cable), then provided that, within 30 days of receipt of such notice FMC shall have granted a Certificate, such vessel shall thereupon be deemed to be one of the Vessels included in the said Schedule and subject to this Guaranty.

5. The Guarantor hereby designates _____ , with offices at _____ , as the Guarantor's legal agent for Service of process for the purposes of the Rules of the Federal Maritime Commission, Subpart B of Part 540 of Title 46, Code of Federal Regulations, issued under section 2 of the Pub. L. 89-777 (80 Stat. 1357, 1358), entitled ``Security for the Protection of the Public.''

_____
(Place and Date of Execution)

_____
(Name and Guarantor)

_____
(Address of Guarantor)

By _____
(Name and Title)


*Schedule of Vessels Referred to in Clause 1*

*Vessels Added to This Schedule in
Accordance With Clause 4*

Subpart C -- General

## § 540.91 OMB control numbers assigned pursuant to the Paperwork Reduction Act.

This section displays the control numbers assigned to information collection requirements of the Commission in this part by the Office of Management and Budget pursuant to the Paperwork Reduction Act of 1980, Pub. L. 96-

511. The Commission intends that this section comply with the requirements of section 3507(f) of the Paperwork Reduction Act, which requires that agencies display a current control number assigned by the Director of the Office of Management and Budget (OMB) for each agency information collection requirement:

| Section | Current OMB Control No |
|---|---|
| 540.4................................................................ | |
| (Form FMC -131) | 3072-0012 |
| 540.5 | 3072-0011 |
| 540.6 | 3072-0011 |
| 540.8 | 3072-0011 |
| 540.9 | 3072-0011 |
| 540.23 | |
| (Form FMC-131) | 3072-0012 |
| 540.24 | 3072-0011 |
| 540.26 | 3072-0011 |
| 540.27 | 3072-0011 |

NOTE: At 58 FR 27208, May 7, 1993, Sections 540.30 through 540.36 and Appendices A and B were removed.

Last Update: May 1, 1999

Back to Index