UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

CASE NO. 00-6098-CIV-JORDAN/BANDSTRA

RANULFO ESTRADA JUAREZ,

          Plaintiff,

vs.

WESTRIA HOLDINGS, INC. and
MEDITERRANEAN SHIPPING
CO., S.A., in personam; and
M/V MELODY, her engines, boilers,
tackle, equipment, apparel,
appurtenances, etc., in rem,

          Defendants.
_____/

## CLAIMANT/OWNER'S RESPONSE TO PLAINTIFF'S
## MOTION TO COMPEL

COMES NOW WESTRIA HOLDINGS, INC., as Claimant/Owner of the M/V

MELODY, and responds to Plaintiff's Motion to Compel as follows:

### PREFACE

The Plaintiff, RANULFO ESTRADA JUAREZ, was a Guatemalan national who died

of terminal pancreatic cancer and liver cancer at or near his home in Guatemala on March

22, 2000.    Plaintiff initially filed a Complaint against WESTRIA HOLDINGS, INC.,

MEDITERRANEAN SHIPPING CO. S.A. and the M/V MELODY.  The only entity served

in these proceedings to date has been the vessel, the M/V MELODY.  Such action has

resulted in the Owner of the vessel, WESTRIA HOLDINGS, INC., appearing and filing its

Motion to Dismiss the Complaint, with Supplemental Memoranda. (See Docket Entries 23,

28 and 29).

CASE NO. 00-6098-CIV-JORDAN

Plaintiff had signed a contract of employment with ICS Island Cruise Service N.V., who has offices in St. Maarten, Dutch West Indies and in Genova, Italy. The contract was signed by Plaintiff in Puerto Barrios, Guatemala on May 21st, 1999 and called for Plaintiff's employment to commence on May 27th, 1999 as 2nd Cook Servicier on board the M/V MELODY. Plaintiff then traveled by aircraft to Italy and joined the vessel in Genova.

Prior to joining the vessel, the Plaintiff had a pre-employment physical examination in Puerto Barrios, Guatemala that he paid for himself. He carried a copy of the results of that examination to the vessel in Italy.

The employment contract provided on page 3:

> I, the undersigned employee, hereby confirm that I have read this Agreement of Engagement in its entirety, and that I have received a copy of the same and hereby agree to be bound by the terms contained above which are subject to Dutch law with Rotterdam court jurisdiction.

The M/V MELODY is owned by WESTRIA HOLDINGS, INC., a Panamanian company, and managed by MSC Mediterranean Shipping Company, S.A., whose registered office is in Geneva. During the time that the Plaintiff was aboard the M/V MELODY, the vessel was under charter to MEDITERRANEAN SHIPPING CRUISES S.p.a., which is located in Italy. Plaintiff has not produced any contract, nor did he have any contract, with either WESTRIA HOLDINGS, INC., MSC MEDITERRANEAN SHIPPING COMPANY, S.A. or MEDITERRANEAN SHIPPING CRUISES S.p.a. Rather, as stated above, Plaintiff's contract was entered into with ICS ISLAND CRUISE SERVICES N.V.

During the entire time that the Plaintiff was on board the vessel, it traded from Italy

to various ports in the Mediterranean. At no time did the vessel enter into any port in the United States while the Plaintiff was aboard the vessel.

The Plaintiff has not alleged that he was injured as a result of any accident that occurred on board the subject vessel, or as a result of any defect of the vessel. Rather, the Plaintiff claims that on October 1, 1999 he became ill and was seen by a doctor aboard the subject vessel. He was subsequently admitted to a hospital in Genova, Italy and was thereafter diagnosed with liver or pancreatic cancer. On December 19, 1999, the Plaintiff was repatriated directly from Italy to his home in Guatemala.

From the time that the Plaintiff was first employed on the vessel, through the time the Plaintiff was repatriated, the vessel sailed between ports in the Mediterranean. Any documents on board the vessel, that do not pertain to the Plaintiff's alleged medical condition, his treatment, or to his pay, that are in the possession of WESTRIA HOLDINGS INC., would not be relevant or material to any of the issues in dispute, and would not be reasonably calculated to lead to the discovery of admissible evidence.

The deposition of the vessel's Captain has already been taken by Plaintiff's attorney. Numerous documents pertaining to or that otherwise reference the Plaintiff's medical condition, his wages, monies advanced for his medical care and treatment, or pertaining to his employment on board the vessel, have been produced.

FRCP 26 (b) provides

**Discovery Scope and Limits.**    Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

   **(1) In General.** Parties may obtain discovery regarding any

> matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appear reasonably calculated to lead to the discovery of admissible evidence.

FRCP 34 requires that "The request shall set forth, either by individual item or category, the items to be inspected and describe each with reasonable particularity." The Court should deny a motion to compel further discovery if it concludes that the documents sought are irrelevant. *Burger King Corporation vs. Weaver*, 169 F.3d 1310 (11th Cir. 1999); *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 732 (11th Cir. 1984). It is axiomatic that discovery should not be allowed of information that has no conceivable bearing on the case. *Six v. Henry*, 796 F. Supp. 1448 (W.D. Ok. 1992). Plaintiff's request to require this Defendant to search for and to produce documents not directly related to the Plaintiff, his medical condition and/or pay, would also be overly broad and unduly burdensome.

## PARTICULAR REQUESTS TO WHICH AN OBJECTION HAS BEEN MADE

Pursuant to Local Rule 26.1 H 2, the Plaintiff has cited the verbatim objections made by this Defendant to the particular requests. For the easy reference of this Court, the references made in this response will be to the paragraph numbers as stated in Plaintiff's Motion to Compel.

### REQUEST NO. 4 (A)

CASE NO. 00-6098-CIV-JORDAN

The Request and this Defendant's Objections are noted at paragraphs 12 and 13 of Plaintiff's Motion to Compel.

Plaintiff's Motion to Compel presumes such reports of the "galley and/or food and beverage" departments exist and that they constitute records of WESTRIA HOLDINGS, INC. Moreover, assuming such records exist and were to be held to constitute the records of WESTRIA HOLDINGS, INC., nevertheless, they would not be relevant to this cause unless they pertain to the medical condition or treatment of the Plaintiff or his pay. Clearly, any reports pertaining to passengers, other crew members, quality of food, or other matters that do not pertain to the Plaintiff, would not be relevant to the issues in dispute, nor would it lead to the discovery of admissible evidence.

**REQUEST NO. 4(B)**

The Request and this Defendant's Objections are noted at paragraphs 19 and 20, that refers to paragraph 13, of Plaintiff's Motion to Compel.

Plaintiff's Motion to Compel presumes such "voyage reports and Captain's meeting reports" exist and that they constitute records of WESTRIA HOLDINGS, INC. Moreover, assuming such records exist and were to be held to constitute the records of WESTRIA HOLDINGS, INC., nevertheless, they would not be relevant to this cause unless they pertain to the medical condition or treatment of the Plaintiff or his pay. Clearly, any reports pertaining to passengers, other crew members, operations of the vessel or otherwise, that do not pertain to the Plaintiff, would not be relevant to the issues in dispute nor would it lead to the discovery of admissible evidence.

**REQUEST NO. 4(C)**

The Request and this Defendant's Objections are noted at paragraphs 24 and 25, that refers to paragraph 13, of Plaintiff's Motion to Compel.

Plaintiff's Motion to Compel presumes such "Functional Job Requirements schedules for potential crew members" exist and that they constitute records of WESTRIA HOLDINGS, INC. Moreover, assuming such records exist and were to be held to constitute the records of WESTRIA HOLDINGS, INC., nevertheless, they would not be relevant to this cause unless they pertain to the Plaintiff.

**REQUEST NO. 4 (F)**

The Request and this Defendant's Objections are noted at paragraphs 28 and 29, that refers to paragraph 13, of Plaintiff's Motion to Compel.

Plaintiff's Motion to Compel presumes such "safety articles authored by Defendant's employees which was printed or distributed to Defendant's employees" exist and that they constitute records of WESTRIA HOLDINGS, INC. Moreover, assuming such records exist and were to be held to constitute the records of WESTRIA HOLDINGS, INC., nevertheless, they would not be relevant to this cause because (1) Plaintiff was not an employee of WESTRIA HOLDINGS, INC.; (2) there are no "safety issues" in dispute; rather, this is about a seaman who claims to have gotten ill while aboard a vessel; and (3) any such articles that do not pertain to sickness, illness, or obtaining medical treatment would not be relevant to any issues in dispute, nor would not lead to the discovery of admissible evidence.

**REQUEST NO. 6**

The Request and this Defendant's Objections are noted at paragraphs 36 and 37, that also refers to paragraph 13, of Plaintiff's Motion to Compel.

This Defendant has produced copies of the ship's vessel's log book and any medical records that pertain to the Plaintiff. Any logs, or references in logs, that do not pertain to the Plaintiff would not be relevant, nor would they lead to the discovery of admissible evidence. Moreover, for Plaintiff's counsel to claim that the "engine log" or the "maintenance and repair log" could have anything to do with this case is disingenuous.

**REQUEST NO. 9**

The Request and this Defendant's Objections are noted at paragraphs 40 and 41.

Plaintiff has not alleged that an "accident" or "incident" occurred." Plaintiff merely claims that he got sick and went to a doctor on board the ship. Copies of those medical records were already furnished to Plaintiff's counsel.

**REQUEST NO. 9(A)**

The Request and this Defendant's Objections are noted at paragraphs 44 and 45, that refers to paragraph 13, of Plaintiff's Motion to Compel.

Plaintiff's Motion to Compel presumes that an "accident or incident" occurred and that such that such document was required to be filed with the United States Coast Guard pursuant to 46 U.S.C. section 6101 and/or the "government of the flag of the vessel." WESTRIA HOLDINGS, INC. disputes that it was required by law to file any such document with either the United States Coast Guard or the Republic of Panama related to a seaman

who reports that he is ill.

### REQUEST NO. 10

The Request and this Defendant's Objections are noted at paragraphs 48 and 49 of Plaintiff's Motion to Compel.

Counsel for WESTRIA HOLDINGS, INC. is endeavoring to obtain the information that it stated will be produced, including the names of the insurers and the limits of protection and indemnity liability insurance coverage available to this Defendant. However, as stated in the response, a Letter of Undertaking has previously been issued and accepted in this cause by the Plaintiff and his counsel.

### REQUEST NO. 15

The Request and this Defendant's Objections are noted at paragraphs 53 and 54 of Plaintiff's Motion to Compel.

The Plaintiff died as a result of pancreatic or live cancer. No condition on board the vessel is alleged to have caused that condition. In his original request, the Plaintiff never specified what areas of the vessel he wanted access to. The Plaintiff has now limited his request by stating that he wants to inspect, survey, measure and photograph Plaintiff's cabin, the galley and the infirmary on board the vessel. With all due respect, at no time was Plaintiff "confined" to his cabin as counsel suggests. Nor do these three areas of the vessel have anything to do with causing Plaintiff's illness. Therefore, permitting the inspection, surveying, measuring and photographing of these three areas would not be relevant to the issues in dispute, nor would it lead to the discovery of admissible evidence.

CASE NO. 00-6098-CIV-JORDAN

Furthermore, the vessel is not presently in any port in the United States.

**REQUEST NO. 18**

The Request and this Defendant's Objections are noted at paragraphs 57 and 58,

that refers to paragraph 13, of Plaintiff's Motion to Compel.

The information sought is neither relevant nor would it lead to the discovery of

admissible evidence. Plaintiff was not employed by WESTRIA HOLDINGS, INC.

Moreover, the Complaint is devoid of any allegations that the Plaintiff was not fit to have

been employed on the vessel.   On the contrary, the Plaintiff obtained a physical

examination at his own cost, and provided his employer, ICS Island Cruise Services, N.V.,

with a report from Plaintiff's doctor stating that he was fit for duty.  Furthermore, Plaintiff

was employed by ICS Island Cruise Services, N.V. to perform a particular function in the

galley area.  Any written guidelines, if they exist, that did not pertain to the job duties

performed by the Plaintiff, would not be relevant.

**REQUEST NO. 22**

This Defendant has re-examined this Request and it will produce a copy of the

Charter Agreement pertaining to the vessel that was in effect on October 1, 1999, subject

to deletion or redaction of privileged financial information referenced in the agreement.

**REQUEST NO. 23**

The Request and this Defendant's Objections are noted at paragraphs 63 and 64

of Plaintiff's Motion to Compel.

At the time of Plaintiff's claimed illness on October 1, 1999, the subject vessel was

sailing in ports in the Mediterranean. The purported "Department of Transportation, United States Coast Guard 'Control Verification for Foreign Vessel' form" is neither required nor applicable to a vessel calling in Ports in the Mediterranean. Furthermore, since any such document would not be in "effect" for the vessel on October 1, 1999, it would be irrelevant to the issues in dispute, and it would not lead to the discovery of admissible evidence.

**REQUEST NO. 26**

The Request and this Defendant's Objections are noted at paragraphs 66 and 67 of Plaintiff's Motion to Compel. By this request, the Plaintiff seeks production of the "Accounting records for Defendant for 1997 to present." This Defendant served the following objection:

> Objection on the grounds that the request is unclear, vague and ambiguous as to what particular documents the Plaintiff is seeking to obtain that may be relevant to the issues in dispute. Plaintiff does not claim that he was injured from an accident, or defect in the vessel. Rather, the Plaintiff alleges that he became ill on board the vessel on or about October 1, 1999. Plaintiff's Complaint further alleges that he was repatriated to Guatemala on or about December 19, 1999. During the entire time that the Plaintiff was first on board the vessel during this voyage and until his repatriation to Guatemala, the vessel was operating in areas about the Mediterranean. During that time the vessel never entered any port in the United States, nor did the Plaintiff receive any medical treatment in the United States. Therefore, the request is irrelevant and immaterial to the issues in dispute, nor is the request reasonably calculated to lead to the discovery of admissible evidence. The information sought constitutes privileged and confidential trade secrets, financial or other records of the Defendant. Furthermore, Plaintiff's request to require the Defendant to search for and to produce documents not directly related to the Plaintiff, his medical condition and/or pay, would also be overly broad and unduly burdensome.

The claimed basis that Plaintiff suggests for such unlimited and patently overbroad discovery of this Defendant's privileged financial information, is that this Defendant has challenged that the laws of the United States do not apply to the Plaintiff's claim or, alternatively, that the Plaintiff's claim should be dismissed on the grounds of *forum non conveniens*.

Defendant has asserted that the Court lacks jurisdiction over this cause and that jurisdiction should be declined on the grounds of *forum non conveniens*, as required by the choice of law rules set forth by the United States Supreme Court in *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), supplemented by *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed. 2d 252 (1970), and the public interest and private interest factors set forth by that court in *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

The landmark case concerning the right of a foreign seaman or his representative to bring an action in an American court for personal injuries or wrongful death, under the Jones Act (46 U.S.C., § 688) is *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 2d 1254 (1953). In that case, Larsen, a Danish seaman, joined the crew of a Danish flag ship in New York City, signing a contract of employment in New York City. Larsen was injured on the ship in Havana, Cuba, and received benefits according to Danish law, and the only connection with the United States was that his employment started there and he signed his contract there and the shipowner could be served with process there.

The Supreme Court refused to apply the Jones Act to that situation listing seven

CASE NO. 00-6098-CIV-JORDAN

factors to be considered in determining the applicability of the Jones Act:

1.    The place of the wrongful act;

2.    Law of the flag;

3.    Allegiance or domicile of the injured;

4.    Allegiance of the defendant shipowners;

5.    Place of contract;

6.    Inaccessibility of foreign forum;

7.    The law of the forum.

The above tests for determining whether U.S. courts had jurisdiction over a foreign seaman's claims were supplemented by the Supreme Court in *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed. 252 (1970), which added an additional factor to the original *Lauritzen* seven, namely, the base of operations of the shipowner. That factor was added because of the growing tendency of shipowners to place their vessels under flags of convenience, primarily the flags of Liberia and Panama, while the vessels themselves and their owners had no contacts with such country other than the registration of the vessel there.

In *Rhoditis*, a foreign seaman sued a foreign shipowner for personal injuries suffered on board a ship in New Orleans, Louisiana. Although the ship was foreign flag and the shipowner was a foreign corporation, the U.S. court found the actual owners of the corporation were residents fo the United States, that the ship was controlled and managed in the United States, and that the ship generated a large part of its revenues by operating

Page 12

to and from ports in the United States, and found U.S. law applied.

In a third and related case, the Supreme Court in *Romero v. International Terminal Operating Co.*, 358 U.S. 754, 79 S.Ct. 468, 3 L.Ed. 2d 368 (1959), considered an action by a Spanish seaman injured in Hoboken, New Jersey, on a Spanish flag vessel, the action being brought against a Spanish shipowner, the owner's American agent, and two American companies working on the ship at the time of the accident. The trial court granted a motion to dismiss the complaint, the Supreme Court noting in its opinion, in footnote 4, that the dismissal was for failure to state a claim upon which relief could be granted. The Second Circuit Court of Appeals affirmed that dismissal, 244 F.2d 409 (1957) and the Supreme Court granted certiorari.

In *Romero* the injured seaman claimed damages for his injuries under the Jones Act for negligence and under the General Maritime Law for unseaworthiness, for maintenance and cure, and for a maritime tort against the other two corporate defendants. The trial court found the foreign seaman had no right of action against its foreign employer under the Jones Act, dismissing the claim, found that claims under the General Maritime Law for unseaworthiness against the shipowner were not within the jurisdiction of the District Court because the parties were not of diverse citizenship and dismissed the Jones Act claim against the agent, finding it was not the employer of the seaman and did not have operation or control of the ship. The maritime tort claims against the other two corporate defendants were dismissed because of lack of complete diversity of citizenship.

In a lengthy opinion, the Supreme Court found that the dismissal for lack of

jurisdiction was in error because the plaintiff's mere assertion of claims under the Jones

Act was sufficient to empower the trial court to assume jurisdiction with the court having

the "power to determine whether it was or was not well founded in law or in fact." *Id.* The

Supreme Court then affirmed the dismissal of the shipowner but found the dismissal of the

three American defendants was erroneous because the suit against the Spanish shipowner

was based on a separate cause of action, commenting, in part, that:

> While Lauritzen v. Larsen involves claims asserted under the
> Jones Act, the principles on which it was decided did not derive
> from the terms of that statute.**** The broad principles of
> choice of law and the applicable criteria selection set forth in
> Lauritzen were intended to guide the courts in the application
> fo maritime law generally. Of course, due regard must be had
> for the differing interests advanced by various aspects of
> maritime law. But the similarity in purpose and function fo the
> Jones Act and the general maritime principles of compensation
> for personal injury, admit of no rational differentiation of
> treatment fo choice of law purposes. Thus the reasoning of
> Lauritzen v. Larsen governs all claims here. *Id.* at 485.

Thus, the holding of *Romero* is that the seven *Lauritzen* criteria (supplemented to

eight by *Rhoditis*) apply to claims under the general maritime law as well as under the

Jones Act.

Considering the *Lauritzen/Rhoditis* eight factors in this action, the following is clear:

1.    Place - Italy.

2.    Law of the Flag - Panama.

3.    Allegiance or domicile of the injured - Guatemala.

4.    Allegiance of the shipowner - Italy or Panama.

5.    Place of contract - Guatemala.

6.      Inaccessibility of foreign forum - Netherlands is an easily accessible forum and was agreed on in the employment contract.

7.      Law of the forum - Netherlands or Dutch law.[1]

8.      Shipowner's base of operations - Italy.

As stressed in *Lauritzen*, 345 U.S. at 584, the law of the flag flown by the vessel is of "cardinal importance."  Although in his Complaint, Plaintiff asserts that service is available under the Florida Long-Arm Statutes, *Lauritzen* instructs us that the fact that a defendant can be served with process in the United States is entitled to little weight. *Lauritzen, supra.*  Of the eight factors specified, none favor Plaintiff.  Based upon the *Lauritzen/Rhoditis* factors, Plaintiff is not entitled to bring any claims pursuant to U.S. Law, the Death on High Seas Act, or the Jones Act and his Complaint must be dismissed on these grounds.  See, *Fogelman v. Aramco*, 920 F.2d 278 (5th Cir. 1991), *Kabadais v. Golden Union*, 1996 AMC 2137 (E.D.Va. 1996).

Determination of a *forum non conveniens* issue is a two-step process.  First, a choice of laws analysis is made as to the applicable law under the tests established by *Lauritzen/Rhoditis*.

Secondly, if foreign law is determined to be applicable, the public/private interest

---

[1]

In this regard, the Court must assume foreign law is adequate unless Plaintiff demonstrates the inadequacy of foreign law. *McClelland Engineers, Inc. v. Munusamy*, 784 F.2d 1313, 1319 (5th Cir. 1986), overruled on other grounds, *In re: Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147 (5th Cir. 1987).

factors test, established by *Gulf Oil Corporation v. Gilbert, infra*, is applied to determine whether or not the court should decline jurisdiction.

In *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the landmark decision in this area, the Supreme Court set forth the tests to determine when the doctrine of *forum non conveniens* applies, listing two general categories, public interest and private interest factors.

The *Gilbert* court considered the following important considerations with regard to these categories, commenting:

> Important considerations [with regard to the private interest of the litigants] are the relevant ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial****.

> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. 333 U.S. 508, 509

These factors have been fleshed out further in subsequent litigation. In *Butler v. Ben Line Steamers*, 1987 AMC 627 (C.D. Cal. 1986), the court noted "The public interest factors include: (1) Administrative difficulties flowing from court congestion; (2) Imposition of jury duty on people of a community that has no relation to the litigation; (3) Local interest

in having localized controversies decided at home; (4) The interest in having the case tried in a forum familiar with the law governing the actions; and (5) the avoidance of unnecessary problems and conflicts of law.

Here, the United States has little, if any, interest in this action since it concerns a Guatemalan seaman working on a ship in the Mediterranean. The ship is of foreign registry and owned and operated by foreign entities. Clearly the public interest factors weigh heavily in favor of a Netherlands forum, pursuant to the contract of employment. See, *Johnson v. Nielsen*, 1995 AMC 2662 and *Cruz v. Maritime Company of the Philippines*, 549 F. Supp. 285 (S.D.N.Y. 1982).

As to the private interest factors, these were listed in the *Butler* case as follows:

> (1) Relative ease of access to sources of proof; (2) Availability of compulsory process for attendance of unwilling witnesses and cost of obtaining attendance of willing witnesses; (3) Possibility of viewing the subject premises; and (4) All other factors which render trial expeditious and inexpensive. 631.

Here, absolutely no sources of proof have any contacts with the United States. Plaintiff's pre-employment examination was conducted in Puerto Barrios, Guatemala. Plaintiff was initially hospitalized in Genova, Italy. After being treated in Italy, Plaintiff was discharged and returned home to Guatemala, where he sought medical treatment. All of these corporate parties are foreign.

Although in general a plaintiff's selection of forum is accorded some deference, under the circumstances present here, Plaintiff's selection of forum is entitled to little weight. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 70 L.Ed. 2d 419, 102 S.Ct. 252 (1981);

*Murray v. British Broadcasting Corp.*, 81 F.3d 287 (2nd Cir. 1996); *Ekaterini Ioannides v. Marika Maritime Corp.*, 928 F. Supp 374 (S.D.N.Y. 1996).

In *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 70 L.Ed. 2d 419, 102 S.Ct. 252 (1981), plaintiff sought to recover from defendants on the basis of negligence or strict liability, the latter theory not recognized under Scottish law, and admitted the action was filed in the United States because its laws regarding liability, capacity to sue, and damages, were more favorable to plaintiffs' position than those of Scotland.

The Supreme Court held that plaintiff may not defeat a motion to dismiss on grounds of *forum non conveniens* merely by showing the substantive law that would be applied in the alternate forum is less favorable to plaintiffs than that of the chosen forum. More importantly, in reinstating the trial court's decision, the Supreme Court, commented, in part:

> "The district court's distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified. In Koster, the Court indicated that a plaintiff's choice of forum is entitled to great deference when the plaintiff has chosen the some forum. ****. When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any forum non conveniens inquiry, a foreign plaintiff's choice deserves less deference." *Id.* at 266.

See also, *Murray v. British Broadcasting Corp.*, 81 F.3d at 290 and *Ekaterini Ioannides v. Marika Maritime Corp.*, 928 F. Supp. at 378.

Moreover, here Plaintiff's employment contract succinctly provides for forum in Rotterdam, The Netherlands. Such clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the

circumstances." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Here there is no evidence that the Rotterdam forum is unreasonable. Indeed, if the United States is convenient for Plaintiff, there is no reason that Rotterdam would be any different, especially in light of the fact that most, if not all, potential witnesses and evidence is located in Europe or in Guatemala. See, *Ekaterini Ioannides v. Marika Maritime Corp.*, supra.

The foregoing establishes that the documents being sought by the Plaintiff in Request No. 26, as well as those sought in Request Nos. 27-47, are not relevant to the issues in dispute, nor would they lead to the discovery of admissible evidence. Plaintiff was not hired in the United States; Plaintiff did not join the vessel in the United States; Plaintiff's illness did not occur or manifest itself in the United States; Plaintiff did not receive medical treatment in the United States; this Defendant is a foreign entity that maintains its principal place of business in a foreign country; the vessel is registered in a foreign country; and the vessel did not arrive in any port of the United States while the Plaintiff served on board the vessel.

Moreover, the request is overbroad and seeks the production of this Defendant's privileged financial records. Plaintiff requests Defendant's "accounting records" from 1997 to date even though the Plaintiff was only on board the vessel from May, 1999 thru November, 1999. The request does not describe with any reasonable particularity the "accounting records" that are being sought. Depending upon the interpretation given to this request as to the meaning of "accounting records," could theoretically require this Defendant to search for and produce every check, bank statement, invoice, voucher,

receipt, journal, etc. of this Defendant, regardless of to whom it pertains, even though the time period requested has no relationship with the Plaintiff's service aboard the vessel; nor do the documents pertain to the Plaintiff, his illness or wages; nor are the documents limited to any particular location that the vessel may have traveled during the time that the Plaintiff was aboard the vessel. Such an unbridled "fishing expedition" that intrudes into the privileged financial records of this Defendant, that are not relevant to the issues in dispute, cannot and should not be permitted.

**REQUEST NO. 27**

Plaintiff seeks recovery of "Purchasing records and financing records of the vessel." The same arguments apply to this request as were made in response to REQUEST NO. 26, above.

**REQUEST NO. 28**

Plaintiff seeks "Defendant's Articles of Incorporation and shareholder records." The same arguments apply to this request as were made in response to REQUEST NO. 26, above. Furthermore, "the Defendant is not organized as a corporation under the laws of any State of the United States."

**REQUEST NO. 29**

Plaintiff's request seeks "Board of Directors minutes, pertaining to the purchase, financing, ownership and operation of the vessel for 1997 to present." The same arguments apply to this request as were made in response to REQUEST NO. 26, above. "Moreover, there were no Board of Directors meetings held within the United States."

### REQUEST NO. 30

Plaintiff's request seeks "Tariffs in effect for the vessel for one year up to and including the date of the accident." The same arguments apply to this request as were made in response to REQUEST NO. 26, above.

### REQUEST NO. 35

Plaintiff seeks "Agency agreements pertaining to the vessel for 1997 to present." The same arguments apply to this request as were made in response to REQUEST NO. 26, above. Plaintiff specifically states that it wants a copy of the agreement for the vessel's agent in Port Everglades, Florida. The vessel never came to Florida while the Plaintiff was on board. Allowing the Plaintiff to obtain this Defendant's agreements for a port having no connection whatsoever with Plaintiff's illness, or the operation of the vessel while the Plaintiff was aboard, is irrelevant.

### REQUEST NO. 36

Plaintiff seeks "Accounting records for the vessel for 1997 to present." (See paragraph No. 84 of Plaintiff's Motion to Compel). The same arguments apply to this request as were made in response to REQUEST NO. 26, above. Plaintiff was only aboard the vessel from May, 1999 to approximately November, 1999.

### REQUEST NO. 37

Plaintiff seeks "Repair records for the vessel for 1997 to present." (See paragraph No. 87 of Plaintiff's Motion to Compel). The same arguments apply to this request as were made in response to REQUEST NO. 26, above. Moreover, there is no allegation that there

was any condition in the vessel that caused Plaintiff's illness. Any repairs performed on the vessel having nothing to do with Plaintiff's illness and are irrelevant.

**REQUEST NO. 38**

Plaintiff seeks "Documents reflecting the date for each occasion when the vessel arrived in a port in the United States or its possessions for the past five (5) years." (See paragraph No. 90 of Plaintiff's Motion to Compel). The same arguments apply to this request as were made in response to REQUEST NO. 26, above.

**REQUEST NO. 39**

Plaintiff seeks "Ship's survey and particulars." (See paragraph No. 93 of Plaintiff's Motion to Compel). The same arguments apply to this request as was made in response to REQUEST NO. 26, above. Moreover, there is no allegation that there was any condition in the vessel that caused Plaintiff's illness. Such documents are totally irrelevant.

**REQUEST NO. 41**

Plaintiff requests "Deeds for property owned by the Defendant located in the United States." (See paragraph No. 96 of Plaintiff's Motion to Compel). The same arguments apply to this request as were made in response to REQUEST NO. 26, above. Moreover, Defendant already responded that "no such documents are believed to exist." (See paragraph 97 of Plaintiff's Motion to Compel).

**REQUEST NO. 42**

Plaintiff requests "Leases for property leased by Defendant located in the United States." (See paragraph No. 99 of Plaintiff's Motion to Compel). The same arguments

apply to this request as were made in response to REQUEST NO. 26, above. Moreover, Defendant already responded that "no such documents are believed to exist." (See paragraph 97 of Plaintiff's Motion to Compel).

**REQUEST NO. 43**

Plaintiff requests "Agreements with brokers, freight forwarders or agents pertaining to cargo transported by Defendant to or from the United States for 1997 to present." (See Paragraph 102 of Plaintiff's Motion to Compel). The same arguments apply to this request as was made in response to REQUEST NO. 26, above. Moreover, Defendant already responded that "no such documents are believed to exist." (See paragraph 103 of Plaintiff's Motion to Compel).

**REQUEST NO. 44**

Plaintiff requests "Complaints from other lawsuits involving Defendant as either Plaintiff or Defendant in a Court located in the United States for the last five (5) years." (See paragraph No. 105 of Plaintiff's Motion to Compel). The same arguments apply to this request as were made in response to REQUEST NO. 26, above. Moreover, Defendant already responded that "no such documents are believed to exist." (See paragraph 106 of Plaintiff's Motion to Compel).

**REQUEST NO. 45**

Plaintiff requests "Advertisements pertaining to Defendant or its vessels for 1997 to present." (See paragraph 108 of Plaintiff's Motion to Compel). The same arguments apply to this request as was made in response to REQUEST NO. 26, above.

CASE NO. 00-6098-CIV-JORDAN

**REQUEST NO. 46**

Plaintiff requests "Bills, invoices, statements, or documents evidencing payments by Defendants to any entity in Florida for 1997 to present." (See paragraph 111 of Plaintiff's Motion to Compel). The same arguments apply to this request as were made in response to REQUEST NO. 26, above.

**REQUEST NO. 47**

Plaintiff requests "Bills, invoices, statements, or documents evidencing payments by Defendants to any entity in the United States for 1997 to present." (See paragraph 114 of Plaintiff's Motion to Compel). The same arguments apply to this request as were made in response to REQUEST NO. 26, above.

## CONCLUSION

In view of the foregoing, Plaintiff's Motion to Compel should be denied.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true copy of the foregoing was served by mail on June 12, 2000 to David Rash, Esq., Counsel for Plaintiff, 88 N.E. 168th Street, North Miami Beach, Florida 33162.

HAYDEN AND MILLIKEN, P.A.
5915 Ponce de Leon Blvd., #63
Miami, Florida 33146
Phone: (305) 662-1523

By: _____

Page 24