UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

CASE NO. 00-6098-CIV-JORDAN/BANDSTRA

RANULFO ESTRADA JUAREZ,

           Plaintiff,

vs.

WESTRIA HOLDINGS, INC. and
MEDITERRANEAN SHIPPING
CO., S.A., in personam; and
M/V MELODY, her engines, boilers,
tackle, equipment, apparel,
appurtenances, etc., in rem,

           Defendants.
_____/

## CLAIMANT/OWNER'S RESPONSE TO PLAINTIFF'S SECOND MOTION TO COMPEL DISCOVERY

COMES NOW WESTRIA HOLDINGS, INC., as Claimant/Owner of the M/V MELODY, and responds to Plaintiff's Second Motion to Compel as follows:

### PREFACE

The Plaintiff, RANULFO ESTRADA JUAREZ, was a Guatemalan national who died of terminal pancreatic cancer and liver cancer at or near his home in Guatemala on March 22, 2000. Plaintiff initially filed a Complaint against WESTRIA HOLDINGS, INC., MEDITERRANEAN SHIPPING CO. S.A. and the M/V MELODY. The only entity served in these proceedings to date has been the vessel, the M/V MELODY. Such action has resulted in the Owner of the vessel, WESTRIA HOLDINGS, INC., appearing and filing its Motion to Dismiss the Complaint, with Supplemental Memoranda. (See Docket Entries 23, 28 and 29).



CASE NO. 00-6098-CIV-JORDAN

Plaintiff had signed a contract of employment with ICS Island Cruise Service N.V., who has offices in St. Maarten, Dutch West Indies and in Genova, Italy. The contract was signed by Plaintiff in Puerto Barrios, Guatemala on May 21st, 1999 and called for Plaintiff's employment to commence on May 27th, 1999 as 2nd Cook Servicier on board the M/V MELODY. Plaintiff then traveled by aircraft to Italy and joined the vessel in Genova.

Prior to joining the vessel, the Plaintiff had a pre-employment physical examination in Puerto Barrios, Guatemala that he paid for himself. He carried a copy of the results of that examination to the vessel in Italy.

The employment contract provided on page 3:

I, the undersigned employee, hereby confirm that I have read this Agreement of Engagement in its entirety, and that I have received a copy of the same and hereby agree to be bound by the terms contained above which are subject to Dutch law with Rotterdam court jurisdiction.

The M/V MELODY is owned by WESTRIA HOLDINGS, INC., a Panamanian company, and managed by MSC Mediterranean Shipping Company, S.A., whose registered office is in Geneva. During the time that the Plaintiff was aboard the M/V MELODY, the vessel was under charter to MEDITERRANEAN SHIPPING CRUISES S.p.a., which is located in Italy. Plaintiff has not produced any contract, nor did he have any contract, with either WESTRIA HOLDINGS, INC., MSC MEDITERRANEAN SHIPPING COMPANY, S.A. or MEDITERRANEAN SHIPPING CRUISES S.p.a. Rather, as stated above, Plaintiff's contract was entered into with ICS ISLAND CRUISE SERVICES N.V.

During the entire time that the Plaintiff was on board the vessel, it traded from Italy

to various ports in the Mediterranean. At no time did the vessel enter into any port in the United States while the Plaintiff was aboard the vessel.

The Plaintiff has not alleged that he was injured as a result of any accident that occurred on board the subject vessel, or as a result of any defect of the vessel. Rather, the Plaintiff claims that on October 1, 1999 he became ill and was seen by a doctor aboard the subject vessel. He was subsequently admitted to a hospital in Genova, Italy and was thereafter diagnosed with liver or pancreatic cancer. On December 19, 1999, the Plaintiff was repatriated directly from Italy to his home in Guatemala.

From the time that the Plaintiff was first employed on the vessel, through the time the Plaintiff was repatriated, the vessel sailed between ports in the Mediterranean. Any documents on board the vessel, that do not pertain to the Plaintiff's alleged medical condition, his treatment, or to his pay, that are in the possession of WESTRIA HOLDINGS INC., would not be relevant or material to any of the issues in dispute, and would not be reasonably calculated to lead to the discovery of admissible evidence.

The deposition of Captain Silvio Cappucio, one of the Masters for the vessel, was taken by Plaintiff's attorney on April 20, 2000. Numerous documents from the vessel were produced at this deposition.

FRCP 26 (b) provides

> **Discovery Scope and Limits.**   Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
>
> > **(1) In General.** Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim

CASE NO. 00-6098-CIV-JORDAN

> or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appear reasonably calculated to lead to the discovery of admissible evidence.

FRCP 34 requires that "The request shall set forth, either by individual item or category, the items to be inspected and describe each with reasonable particularity." The Court should deny a motion to compel further discovery if it concludes that the documents sought are irrelevant. *Burger King Corporation vs. Weaver*, 169 F.3d 1310 (11th Cir. 1999); *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 732 (11th Cir. 1984). It is axiomatic that discovery should not be allowed of information that has no conceivable bearing on the case. *Six v. Henry*, 796 F. Supp. 1448 (W.D. Ok. 1992). Plaintiff's request to require this Defendant to search for and to produce documents not directly related to the Plaintiff, his medical condition and/or pay, would also be overly broad and unduly burdensome.

### PARTICULAR REQUESTS TO WHICH AN OBJECTION HAS BEEN MADE

Pursuant to Local Rule 26.1 H 2, the Plaintiff has cited the verbatim objections made by this Defendant to the particular requests and interrogaties. For the easy reference of this Court, the pertinent requests and interrogatories involved, together with this Defendant's responses are being restated.

CASE NO. 00-6098-CIV-JORDAN

1. **Plaintiff's Second Request for Production:**

**REQUEST NO. 1** seeks:

All documents filed with the United States Federal Maritime Commission regarding the M/V MELODY and/or its owners, including but not limited to the following:

- a) Applications for Certificate of Financial Responsibility (Form FMC-131)
- b) Certificates of Financial Responsibility
- c) Passenger Vessel Surety Bonds (Forms FMC-132A or 132B)
- d) Guaranties in Respect of Liability for Nonperformance (Forms FMC-133A or 133B)
- e) Circular Letter No. 1-97 (Requirement for Taxpayer Identifying Numbers); and
- f) Taxpayer Identifying Number Forms.

In reponse to this Request, WESTRIA HOLDINGS produced a copy of "Vessel Certificate of Financial Responsibility (Water Pollution)" issued in the name of "Westria Holdings Inc." and a "Certificate of Financial Responsibility for Indemnification of Passengers for Nonperformance of Transportation," issued in the name of "Mediterranean Shipping Cruises, S.P.A." Counsel for WESTRIA HOLDINGS has produced the forms filed with the Federal Maritime Commission that were provided to it on behalf of WESTRIA HOLDINGS. If WESTRIA HOLDINGS possessed copies of the other forms that Plaintiff's counsel contends should have been filed with the Federal Maritime Commission, then they would have presumably been produced. As stated above, one of the forms that was

produced was issued in the name of Mediterranean Shipping Cruises, S.P.A., who is not a party to these proceedings. WESTRIA cannot be held responsible to produce documents that are the possession of other entities who are not parties to these proceedings. Plaintiff's counsel if free, of course, to obtain the forms filed by other entities directly from the Federal Maritime Commission under the Freedom of Information Act.

**REQUEST 2** seeks:

"Copies of all bank statements for the past three years for any and all escrow accounts held as required by the 46 CFR Part 540 and/or the United States Federal Maritime Commission." [See Exhibit A, ¶ 2 attached to Plaintiff's Motion]. WESTRIA HOLDINGS served the following response:

> Objection on the grounds that the information sought is neither relevant nor material to the issues in dispute, nor would it lead to the discovery of admissible evidence; the requested information, should it exist, would constitute the trade secrets and confidential financial records of this Defendant and/or otherwise be privileged; the request calls for this Defendant to render a legal opinion as to whether the requested information is required to be maintained by this Defendant pursuant to the provisions of 46 CFR Part 540 and/or the United States Federal Maritime Commission, as contended by the Plaintiff. [See Exhibit D, ¶ 2 attached to Plaintiff's Motion]

It is undisputed that the M/V MELODY did not enter into any port in the United States while the Plaintiff was a crew member on board the vessel. Therefore, compliance with 46 CFR Part 540 would not have been required during that time period as Plaintiff presumes. See 46 CFR §540.1. Plaintiff also presumes that 46 CFR Part 540 required WESTRIA HOLDINGS, as opposed to some other entity, to comply with its provisions. On

the contrary, as shown above, the "Certificate for Financial Responsibility for Indemnification of Passengers for Nonperformance of Transportation," was issued in the name of "Mediterranean Shipping Cruises, S.P.A," who is not a party to these proceedings.

By its terms, 46 CFR Part 540 pertains to providing Proof of Financial Responsibilty for "obligations under the terms of ticket contracts to indemnify passengers for nonperformance of transportation to which they would be entitled." 46 CFR §540.1. There is nothing to suggest that WESTRIA HOLDINGS issued tickets to passengers.

Furthermore, the term "passenger" is specifically defined as "any person who is to embark on a vessel at any U.S. port and who has paid any amount for a ticket contract entitling him to water transportation." 46 CFR §540.2(g). Obviously, the provisions of 46 CFR §540 do not pertain to the Plaintiff, who was clearly not a "passenger" as that term is defined.

Moreover, contrary to Plaintiff's contentions, 46 CFR §540.5 does not require the maintenance of any escrow account. Rather, the terms of 46 CFR §540.5 provides that an escrow account is only one of the many different ways that financial security can be established.

Even further assuming *arguendo* that WESTRIA HOLDINGS was required to comply with the provisions of 46 CFR §540; that it was required to maintain an escrow account for passenger claims; and that it did, in fact, maintain such an escrow account, it should not be required to disclose to Plaintiff's attorney the financial transactions relating to that account. Not being a "passenger," Plaintiff would have no right to claim any proceeds from

CASE NO. 00-6098-CIV-JORDAN

that account. In any event, WESTRIA HOLDINGS should not be required to disclose any of its confidential financial records based merely upon the filing of a lawsuit by a foreign seaman who unfortunately died from an incurable illness that had no connection whatsoever with the United States.

2. **JUAREZ'S INTERROGATORIES TO WESTRIA:**

**INTERROGATORIES 1 thru 3:**

Interrogatory 1 reads:

> Please identify the name home address, and home telephone, as well as state whether or not the individual still on board the M/V Melody, the person who prepared the document titled "Rezione Clinica di Bordo," and attached as Exhibit "A" hereto.

Admittedly, WESTRIA has not formally responded to this Interrogatory. However, this document was produced and identified as Exhibit 60 at the deposition of Captain Silvio Cappucio, taken by Plaintiff's attorney on April 20, 2000. According to Captain Cappucio, this document was prepared by Dr. Mario Adamo during March, 2000. (See Depo. of Captain Cappucio at page 50-51). Counsel for WESTRIA will continue to seek to obtain Dr. Adamo's last known address and telephone number.

Interrogatory 2 reads:

> Please identify the name, home address, and home telephone, as well as stating whether or not the individual is still on board the M/V Melody, the person who signed and/or initialed as "Surg. Sign" in the medical log produced by Westria and attached as Exhibit "B" hereto for entries numbered 130, 311, 319 and 322 concerning Ranulfo Estrada Juarez.

WESTRIA cannot presently determine the specific identity of the person or persons

CASE NO. 00-6098-CIV-JORDAN

who prepared or initialed the referenced documents. It is presumed that the doctors who were on board the vessel on the dates that the notations are stated to have been recorded, would have made and initialed the entries. A list of the doctors who were on board the vessel on the dates the entries are stated to have been made, and the particular periods during which each doctor was on board the vessel, was identified as Exhibit 61 at the deposition of Captain Silvio Cappucio. Counsel for WESTRIA is still seeking to obtain the information concerning the last known addresses and telephone numbers for these doctors, as well as the names and addresses of the nurses on board the vessel during the requested time period.

Interrogatory 3 reads:

> Please identify by name, home address and home telephone number of any and all physicians and nurses on board the M/V MELODY from May 1, 1999 to January 1, 2000.

See WESTRIA's response to Interrogatory 2 above.

**INTERROGATORIES 4 and 5:**

Interrogatory 4 reads:

> Please identify by name, home address, and home telephone number all crew members who joined and/or signed-on the M/V MELODY in Port Everglades, Florida in 999 (sic) and 2000.

Defendant served the following objection to this Interrogatory:

> Objection. Irrelevant, immaterial, and not calculated to lead to the discovery of admissible evidence; overly broad and burdensome insofar as it would require searching through voluminous records pertaining to all crew members to obtain

Page 9

CASE NO. 00-6098-CIV-JORDAN

information that has no relevance to this case.

Interrogatory 5 reads:

> Please identify by name, home address, and home telephone number all crew members who were discharged and/or signed-off the M/V MELODY in Port Everglades, Florida, in 1999 and 2000.

Defendant served the following objection to this Interrogatory:

> Objection. Irrelevant, immaterial, and not calculated to lead to the discovery of admissible evidence; overly broad and burdensome insofar as it would require searching through voluminous records pertaining to all crew members to obtain information that has no relevance to this case.

Plaintiff, a Guatemalan citizen, signed on the vessel in Italy during May, 1999 and was repatriated home from Italy to his home in Guatemala in December, 1999. During the entire time that the Plaintiff was a crew member on board the vessel, the vessel never came to any ports in the United States. Therefore, whether some crew member signed on or off the vessel in Port Everglades, either before or after Plaintiff's employment on board the vessel, has no relevance whatsoever to any issues in dispute.

Furthermore, Defendant previously provided Plaintiff's attorneys at the deposition of Captain Cappucio, taken on April 20, 1997, with a detailed list of all crew members on who were on board the vessel at various times during 1998 and 1999. (See Deposition Exhibits 50-57). These documents provide the port of embarkation for each of the crew members, whose nationalities are listed as being from countries other than the United States. The port of embarkation for some of these crew members is stated to be Port Everglades. The lists are stated to be generated from records of "Mediterranean Shipping

CASE NO. 00-6098-CIV-JORDAN

Company," who are not parties to these proceedings. Therefore, the requested informaton would have to be obtained from that company. Even assuming arguendo that WESTRIA HOLDINGS can obtain this information, nevertheless, in order for this Defendant to determine the address and telephone numbers for any of these crew members who embarked at Port Everglades, as opposed to some other location, would require this Defendant to search through each and every employment application submitted by each crew member at the time of embarkation (assuming such applications still exist and that they provide this information). This would be very time consuming and burdensome, and it would still not lead to the discovery of any relevant admissible evidence.

## CONCLUSION

In view of the foregoing, Plaintiff's Motion to Compel should be denied.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true copy of the foregoing was served by mail on June 29, 2000 to David Rash. Esq., Counsel for Plaintiff, 88 N.E. 168th Street, North Miami Beach, Florida 33162.

HAYDEN AND MILLIKEN, P.A.
5915 Ponce de Leon Blvd., #63
Miami, Florida 33146
Phone: (305) 662-1523

By: /s/ Richard R. McCormack
Richard R. McCormack
Fla. Bar No. 168850