UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
IN ADMIRALTY

CASE NO. 00-6098-CIV-JORDAN/BANDSTRA

MARIQUITA GUDIEL DE JUAREZ,
as Surviving Spouse and Personal
Representative of the Estate of
RANULFO ESTRADA JUAREZ,
Deceased,

    Plaintiff,

vs.

WESTRIA HOLDINGS, INC.,
MEDITERRANEAN SHIPPING
CRUISES, MEDITERRANEANS
SHIPPING COMPANY (USA) INC.,
ICS ISLAND CRUISE SERVICES
N.V. and, C.C.E.T., INC. in personam;
and M/V MELODY, her engines, boilers,
tackle, equipment, apparel, appurtenances,
etc., in rem,

    Defendants.
_____/

NIGHT BOX
FILED
AUG 18 2000

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

**OWNER, WESTRIA HOLDINGS, INC., MOTION TO DISMISS AMENDED COMPLAINT, TOGETHER WITH MEMORANDUM OF LAW IN SUPPORT THEREOF**

COMES NOW, WESTRIA HOLDINGS, INC., as Claimant Owner of the M/V MELODY, in rem, by and through undersigned counsel, moves this Court to enter an Order dismissing the Amended Complaint filed on behalf of the Plaintiff, MARIQUITA GUDIEL DE JUAREZ, as Surviving Spouse and Personal Representative of the Estate of RANULFO ESTRADA JURAEZ, deceased. As grounds therefor, WESTRIA HOLDINGS, INC. would show unto this Court as follows:

CASE NO. 00-6098-CIV-JORDAN

**PREFACE**

The decedent, RANULFO ESTRADA JUAREZ, was a Guatemalan national who signed a contract of employment with ICS ISLAND CRUISE SERVICE N.V. in Puerto Barrios, Guatemala on May 21, 1999, that called for MR. JUAREZ's employment to commence on May 27, 1999 as a Second Cook Servicier on board the M/V MELODY. MR. JUAREZ traveled by aircraft to Italy and joined the vessel in Genova.

Prior to joining the vessel, MR. JUAREZ had a pre-employment physical examination by a doctor in Puerto Barrios, Guatemala that he paid for himself. He carried a copy of the results of that examination to the vessel in Italy.

The employment contract provided on page 3:

> I, the undersigned employee, hereby confirm that I have read this Agreement of Engagement in its entirety, and that I have received a copy of the same and hereby agree to be bound by the terms contained above which are subject to Dutch law with Rotterdam court jurisdiction.

The M/V MELODY is owned by WESTRIA HOLDINGS, INC., a Panamanian company, and managed by MSC Mediterranean Shipping Company, S.A., whose registered office is in Geneva. During the time that MR. JUAREZ was aboard the M/V MELODY, the vessel was under charter to MEDITERRANEAN SHIPPING CRUISES S.p.a., which is located in Italy. MR. JUAREZ has not produced any contract, nor did he have any contract, with either WESTRIA HOLDINGS, INC., MSC MEDITERRANEAN SHIPPING COMPANY, S.A. or MEDITERRANEAN SHIPPING CRUISES S.p.a. Rather,

as stated above, MR. JUAREZ's contract was entered into with ICS ISLAND CRUISE SERVICES N.V.

During the entire time that MR. JUAREZ was on board the M/V MELODY, the vessel traded from Italy to various ports in the Mediterranean. At no time did the vessel enter into any port in the United States while MR. JUAREZ was aboard the vessel.

The Amended Complaint alleges that MR. JUAREZ became ill on October 1, 1999, while serving aboard the M/V MELODY. MR. JUAREZ was hospitalized in Genova, Italy on November 30, 1999 with stomach pains. He was given treatment and tests with an apparent diagnosis of pancreatic cancer. He was discharged on December 19th, 1999 to return home to Guatemala. Thereafter, MR. JUAREZ and a fellow crewman who was provided as MR. JUAREZ's traveling companion flew from Italy to Guatemala. MR. JUAREZ arrived in Guatemala City on December 20th, 1999 where he was met by his family. They returned to their home in Puerto Barrios by the taxi which had brought them to Guatemala City.

MR. JUAREZ sought medical treatment in Guatemala. He was told by his doctor that he had pancreatic cancer, and that his illness has no cure (Deposition of MR. ESTRADA JUAREZ, taken on February 18, 2000, at pp. 41-42; 92-93). MR. JUAREZ has not been treated in the United States. MR. JUAREZ acknowledged that he received all of the medical treatment that he went for in Guatemala and that he was not refused any medical treatment or medicine that he requested or that his doctors thought necessary. (*Id* at 92-93).

CASE NO. 00-6098-CIV-JORDAN

There is nothing in the proposed Amended Complaint to even remotely suggest that any accident, negligence or other fault of MR. JUAREZ's employer, or of the M/V MELODY or its crew, *caused* MR. JUAREZ's terminal pancreatic cancer or live cancer.

MR. JUAREZ has received an amount in Guatemalan Quetzals that is equivalent to five thousand and forty four US Dollars ($5,044 US) for expenses and wages pursuant to his "Crew Agreement". At the time of taking MR. JUAREZ's deposition on February 18, 2000, none of the medical bills incurred by the MR. JUAREZ in Guatemala were submitted by MR. JUAREZ, or his counsel, for payment or reimbursement. (*Id* at 89). Subsequently, on April 18, 2000, MR. JUAREZ's counsel submitted pharmaceutical bills, in the amount of 4,106.63 quetzales, with the equivalent amount being paid in United States dollars to MR. JUAREZ's counsel on or about April 20, 2000. The Amended Complaint acknowledges that MR. JUAREZ received the maintenance and cure benefits due to him. (See the Amended Complaint at par. 18 and 20).

MR. JUAREZ has never resided in the United States; has never owned property in the United States; has never had a bank account in the United States; has never paid income taxes in the United States; and has never been treated in the United States.

Under the choice of law rule set forth by the United States Supreme Court in *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and supplemented by *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed. 2d 252 (1970) and the public interest and private interest factors set forth by that court in *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) this court lacks

subject matter jurisdiction over this cause and should decline to accept jurisdiction on grounds of *forum non conveniens*. Alternatively, the claims asserted in Plaintiff's proposed Amended Complaint do not state any claim as against this Defendant upon which relief can be granted.

### **SUBJECT MATTER JURISDICTION**

Plaintiff asserts jurisdiction of this cause under the provisions of 28 U.S.C. §1331, 46 U.S.C. §688 et. seq., 46 U.S.C. app. §761 et. seq., and the "General Maritime Law of the United States." The landmark case concerning the right of a foreign seaman or his representative to bring an action in an American court for personal injuries or wrongful death, under the Jones Act (46 U.S.C. § 688) is *Lauritzen v. Larsen*, 346 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 2d 1254, 1953 AMC 1210 (1953).

In that case, Larsen, a Danish seaman, joined the crew of a Danish flag ship in New York City, signing a contract of employment in New York City. Larsen was injured on the ship in Havana, Cuba, and received benefits according to Danish law, and the only connection with the United States was that his employment started there and he signed his contract there and the shipowner could be served with process there.

The Supreme Court refused to apply the Jones Act to that situation listing seven factors to be considered in determining the applicability of the Jones Act:

1. The place of the wrongful act;
2. Law of the flag;
3. Allegiance or domicile of the injured;

4.  Allegiance of the defendant shipowners;

5.  Place of contract;

6.  Inaccessibility of foreign forum;

7.  The law of the forum.

The above tests for determining whether U.S. courts had jurisdiction over a foreign seaman's claims were supplemented by the Supreme Court in *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed. 252, 1970 AMC 994 (1970), which added an additional factor to the original *Lauritzen* seven, namely, the base of operations of the shipowner. In *Rhoditis*, a foreign seaman sued a foreign shipowner for personal injuries suffered on board a ship in New Orleans, Louisiana. Although the ship was foreign flag and the shipowner was a foreign corporation, the Court found that the actual owners of the foreign corporation were long-standing residents of the United States, that the ship was controlled and managed in the United States, and that its entire income is derived from cargo that either originated or terminated in the United States. Based upon consideration of all of the factors enunciated in *Lauritzen*, as supplemented with the additional factor concerning the shipowner's base of operations, the Court allowed the application of United States substantive law.

In a third and related case, the Supreme Court in *Romero v. International Terminal Operating Co.,* 358 U.S. 754, 79 S.Ct. 468, 3 L.Ed. 2d 368 (1959), considered an action by a Spanish seaman injured in Hoboken, New Jersey, on a Spanish flag vessel, the action being brought against a Spanish shipowner, the owner's American agent, and two

American companies working on the ship at the time of the accident. In *Romero* the injured seaman claimed damages for his injuries under the Jones Act for negligence and under the General Maritime Law for unseaworthiness, for maintenance and cure, and for a maritime tort against the other two corporate defendants. The trial court found the foreign seaman had no right of action against its foreign employer under the Jones Act, dismissing the claim; it found that claims under the general maritime law for unseaworthiness against the shipowner were not within the jurisdiction of the District Court because the parties were not of diverse citizenship; and it dismissed the Jones Act claim against the agent, finding it was not the employer of the seaman and did not have operation or control of the ship. The maritime tort claims against the other two corporate defendants were dismissed because of lack of complete diversity of citizenship.

In a lengthy opinion, the Supreme Court found that the dismissal for lack of jurisdiction was in error because the plaintiff's mere assertion of claims under the Jones Act was sufficient to empower the trial court to assume jurisdiction with the court having the "power to determine whether it was or was not well founded in law or in fact." *Id*. The Supreme Court then affirmed the dismissal of the shipowner but found the dismissal of the three American defendants was erroneous because the suit against the Spanish shipowner was based on a separate cause of action, commenting, in part, that:

> While *Lauritzen v. Larsen* involves claims asserted under the Jones Act, the principles on which it was decided did not derive from the terms of that statute.**** The broad principles of choice of law and the applicable criteria selection set forth in *Lauritzen* were intended to guide the courts in the application of maritime law generally. Of course, due regard must be had

>for the differing interests advanced by various aspects of maritime law. But the similarity in purpose and function of the Jones Act and the general maritime principles of compensation for personal injury, admit of no rational differentiation of treatment of choice of law purposes. Thus the reasoning of *Lauritzen v. Larsen* governs all claims here. *Id.* at 485.

Thus, the holding of *Romero* is that the seven *Lauritzen* criteria (supplemented to eight by *Rhoditis*) apply to claims under the general maritime law as well as under the Jones Act.

Considering the *Lauritzen/Rhoditis* eight factors in this action, the following is clear:

1. <u>Place of Claimed Wrongful Act</u> - Italy.

2. <u>Law of the Flag</u> - Panama.

3. <u>Allegiance or domicile of the injured</u> - Guatemala.

4. <u>Allegiance of the shipowner</u> - Italy or Panama.

5. <u>Place of contract</u> - Guatemala.

6. <u>Inaccessibility of foreign forum</u> - Netherlands is an easily accessible forum and was agreed on in the employment contract.

7. <u>Law of the forum</u> - Netherlands or Dutch law.[1]

8. <u>Shipowner's base of operations</u> - Italy.

As stressed in *Lauritzen*, 345 U.S. at 584, the law of the flag flown by the vessel is

---

1   In this regard, the Court must assume foreign law is adequate unless Plaintiff demonstrates the inadequacy of foreign law. *McClelland Engineers, Inc. v. Munusamy*, 784 F.2d 1313, 1319 (5th Cir. 1986), *overruled on other grounds*, *In re: Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147 (5th Cir. 1987).

of "cardinal importance." Although the Plaintiff asserts in the Amended Complaint that service is available under the Florida Long-Arm Statutes, *Lauritzen* instructs us that the fact that a defendant can be served with process in the United States is entitled to little weight. *Lauritzen, supra.* Of the eight factors specified, none favor Plaintiff. Based upon the *Lauritzen/Rhoditis* factors, Plaintiff is not entitled to bring any claims pursuant to the substantive general maritime laws of the United States, the Death on High Seas Act, or the Jones Act and her Amended Complaint must be dismissed on these grounds. *See, Fogelman v. Aramco*, 920 F.2d 278 (5th Cir. 1991), *Kabadais v. Golden Union*, 1996 AMC 2137 (E.D.Va. 1996).

## **FORUM NON CONVENIENS**

Determination of a *forum non conveniens* issue is a two-step process. First, a choice of laws analysis is made as to the applicable law under the tests established by *Lauritzen/Rhoditis*.

Secondly, if foreign law is determined to be applicable, the public/private interest factors test, established by *Gulf Oil Corporation v. Gilbert, infra*, is applied to determine whether or not the court should decline jurisdiction.

In *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the landmark decision in this area, the Supreme Court set forth the tests to determine when the doctrine of *forum non conveniens* applies, listing two general categories, public interest and private interest factors.

The *Gilbert* court considered the following important considerations with regard to

these categories, commenting:

> Important considerations [with regard to the private interest of the litigants] are the relevant ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial****.
>
> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. 333 U.S. 508, 509

These factors have been fleshed out further in subsequent litigation. In *Butler v. Ben Line Steamers*, 1987 AMC 627 (C.D. Cal. 1986), the court noted "The public interest factors include: (1) Administrative difficulties flowing from court congestion; (2) Imposition of jury duty on people of a community that has no relation to the litigation; (3) Local interest in having localized controversies decided at home; (4) The interest in having the case tried in a forum familiar with the law governing the actions; and (5) the avoidance of unnecessary problems and conflicts of law.

Here, the United States has little, if any, interest in this action since it concerns a Guatemalan seaman working on a ship in the Mediterranean. The ship is of foreign registry and owned and operated by foreign entities. Clearly the public interest factors weigh heavily in favor of a Netherlands forum, pursuant to the contract of employment.

CASE NO. 00-6098-CIV-JORDAN

See, *Johnson v. Nielsen*, 1995 AMC 2662 and *Cruz v. Maritime Company of the Philippines*, 549 F. Supp. 285 (S.D.N.Y. 1982).

As to the private interest factors, these were listed in the *Butler* case as follows:

> (1) Relative ease of access to sources of proof; (2) Availability of compulsory process for attendance of unwilling witnesses and cost of obtaining attendance of willing witnesses; (3) Possibility of viewing the subject premises; and (4) All other factors which render trial expeditious and inexpensive. 631.

Here, absolutely no sources of proof have any contacts with the United States. MR. JUAREZ's pre-employment examination was conducted in Puerto Barrios, Guatemala. MR. JUAREZ was initially hospitalized in Genova, Italy. After being treated in Italy, MR. JUAREZ was discharged and returned home to Guatemala, where he sought medical treatment. All of these corporate parties are foreign. MR. JUAREZ does not claim to have been injured while aboard the M/V MELODY, making viewing of the premises irrelevant.

Although in general a plaintiff's selection of forum is accorded some deference, under the circumstances present here, Plaintiff's selection of forum is entitled to little weight. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 70 L.Ed. 2d 419, 102 S.Ct. 252 (1981); *Murray v. British Broadcasting Corp.*, 81 F.3d 287 (2nd Cir. 1996); *Ekaterini Ioannides v. Marika Maritime Corp.*, 928 F. Supp 374 (S.D.N.Y. 1996).

In *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 70 L.Ed. 2d 419, 102 S.Ct. 252 (1981), plaintiff sought to recover from defendants on the basis of negligence or strict liability, the latter theory not recognized under Scottish law, and admitted the action was filed in the United States because its laws regarding liability, capacity to sue, and damages, were

CASE NO. 00-6098-CIV-JORDAN

more favorable to plaintiffs' position than those of Scotland. The Supreme Court held that the plaintiff may not defeat a motion to dismiss on grounds of *forum non conveniens* merely by showing the substantive law that would be applied in the alternate forum is less favorable to plaintiffs than that of the chosen forum. More importantly, in reinstating the trial court's decision, the Supreme Court, commented, in part:

> "The district court's distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified. In Koster, the Court indicated that a plaintiff's choice of forum is entitled to great deference when the plaintiff has chosen the home forum. ****. When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any forum non conveniens inquiry, a foreign plaintiff's choice deserves less deference." *Id.* at 266.

See also, *Murray v. British Broadcasting Corp.*, 81 F.3d at 290 and *Ekaterini Ioannides v. Marika Maritime Corp.*, 928 F. Supp. at 378.

Moreover, here MR. JUAREZ's employment contract succinctly provides for forum in Rotterdam, The Netherlands. Such clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Here there is no evidence that the Rotterdam forum is unreasonable. Indeed, if the United States is convenient for Plaintiff, there is no reason that Rotterdam would be any different, especially in light of the fact that most, if not all, potential witnesses and evidence are located in Europe or in Guatemala. See, *Ekaterini Ioannides v. Marika Maritime Corp.*, supra.

CASE NO. 00-6098-CIV-JORDAN

### COUNT I: DEATH ON HIGH SEAS ACT

Plaintiff contends that the Death on High Seas Act is applicable. 46 USC app. §761 states:

> Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensured.

46 USC app. §762 provides

> The recovery in such suit shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought...

As stated above, the laws of the United States are not applicable to this claim. Moreover, Mr. Estrada Juarez died on land at or near his home in Guatemala from incurable prostrate cancer and liver cancer that was not caused from any act or neglect of the Defendants that occurred on the "high seas." Therefore, the Plaintiff would, in any event, be precluded from maintaining any claim against any of the defendants under DOHSA. This is not a situation where the MR. JUAREZ sustained injuries from an accident that occurred on board a vessel on the high seas from which the MR. JUAREZ would have recovered had he received prompt medical treatment. *cf. Motts v. M/V Green Wave*, 2000 U.S. App. LEXIS 9140 (5th Cir. May 9, 2000).

Assuming *arguendo* that DOHSA is applicable, which this Defendant denies, any

CASE NO. 00-6098-CIV-JORDAN

damages permissible under DOHSA are limited to the pecuniary loss only of the persons for whose benefit the suit is brought. In general, the measure of recovery is the actual pecuniary benefits the beneficiaries could reasonably expected to have received from the continued life of the decedent. DOHSA does not authorize recovery for the decedent's own losses, nor does it allow damages for non-pecuniary losses. *Philomena Dooley v. Korean Air Lines Co., Ltd.*, 524 U.S. 116, 118 S.Ct. 1890, 141 L. Ed.2d 102, *1998 AMC 1940 (1997); Mobile Oil Co. v. Higginbotham*, 436 U.S. 618, 1978 AMC 1059 (1978). There can be no recovery under DOHSA for loss of society, loss of love and affection, loss of companionship, loss of consortium, or mental anguish. *Philomena Dooley v. Korean Air Lines Co., Ltd.; Mobile Oil Co. v. Higginbotham, supra*. Nor does DOHSA permit recovery of pre-death pain and suffering under any "survival" causes of action, since it expressly allows only awards for pecuniary losses to the statutory beneficiaries. *Philomena Dooley v. Korean Air Lines Co.; Mobile Oil Co. v. Higginbortham, supra*. DOHSA preempts any "survival" causes of action being brought under the general maritime law or state law. *Philomena Dooley v. Korean Air Lines Co., Ltd.; Mobile Oil Co. v. Higginbortham, supra; Jacobs v. Northern King Shipping Co., Ltd.*, 1999 AMC 2341 (5th Cir. 1999).

**COUNT II:JONES ACT CLAIM:**

Alternatively, Plaintiff seeks to assert a claim under the Jones Act. 46 U.S.C. app. §688 provides

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such actions all statutes of the United States modifying or extending the common law right or remedy in cases of personal injury to

14

>railway employees shall appy; and.in cases of the death any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right to trial by jury, and in such action all statutes of the United States confirming or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such action shall be in the court of the district in which the defendant employer resides or in which his principal office is located.

Assuming *arguendo* that the Jones Act is applicable which, as discussed above, it is not, the personal representative of Plaintiff's estate would also be limited to the recovery of *pecuniary* damages only. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 323, 112 L.Ed. 275 (1990); *Miller v. American President Lines*, Ltd., 989 F.2d 1450, 1457, 1993 AMC 1217, (6th Cir. 1993). Furthermore, any rights that the MR. JUAREZ has under the Jones Act may only be asserted as against the decedent's employer, ICS ISLAND CRUISE SERVICES N.V. *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 1949 AMC 1031 (1949).

### COUNT III - UNSEAWORTHINESS CLAIM:

Assuming *arguendo* that the general maritime laws of the United States apply to these claims which, as discussed above, they do not, then the Plaintiff is precluded from maintaining any claim for unseaworthiness as against any of the proposed named Defendants. *Miles v. Apex Marine Corporation*, 498 U.S. 19, 111 S.Ct. 317, 326, 112 L.Ed.2d 275, 1991 AMC 1 (1990). Rather, since MR. JUAREZ has died, and assuming *arguendo* that the substantive law of the United States applies, which it does not, then any remedies that he or his survivors would have in this action would be only those claims that are provided by the Jones Act. *Miles v. Apex Marine Corporation, supra.* As discussed

above, Mr. Estrada Juarez would not be entitled to assert any claim under DOHSA.

### COUNT IV - MAINTENANCE AND CURE CLAIM

All maintenance and cure expenses submitted on behalf of the MR. JUAREZ have been paid. Moreover, MR. JUAREZ was not entitled to receive maintenance and cure for palliative treatment. *Farrell v. United States*, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949).; *Vella v. Fore Motor Co.*, 421 U.S. 1, 95 S.Ct. 1381, 43 L.Ed.2d 682 (1975); *Cox v. Dravo Corp.*, 517 F.2d 620 (3d Cir. 1975), cert. den. 423 U.S. 1020; *Rofer v. Head & Head, Inc.*, 226 F.2d 927 (5th Cir. 1955).

### COUNT V - ATTORNEYS FEES

All maintenance and cure expenses incurred up to the time of MR. JUAREZ's' death, that were submitted, have been paid. Therefore, even assuming *arguendo* that the laws of the United States apply, which they do not, then the Plaintiff should not be entitled to recover any attorneys fees.

### COUNT VI - PUNITIVE DAMAGES

Assuming *arguendo* that the laws of the United States apply, which they do not, punitive damages are not recoverable under DOHSA or the Jones Act. *Mobile Oil Corp. v. Higginbotham, 436 U.S. 618, 56 L.Ed. 2d 581, 98 S.Ct. 2010 (1978);* cf. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 325, 112 L.Ed. 2d 275 (1990); *Motts v. M/V Green Wave, 2000 U.S. App. LEXIS 9140 (5th Cir. May 9, 2000);* *Miller v. American President Lines*, 989 F.2d 1450, 1458, 1993 AMC 1217 (6th Cir. 1993); *Kopczynski v. The Jacqueline*, 742 F.2d 555, 560-61 (9th Cir. 1984); *Bergen v. F/V St. Patrick,* 816 F.2d 1345,

CASE NO. 00-6098-CIV-JORDAN

1347 (9th Cir. 1987).

Nor are punitive damages recoverable for the alleged willful and callous failure of an employer of a seaman to pay maintenance and cure to an injured seaman. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed. 2d 275 (1990); *Motts v. M/V Green Wave*, 2000 U.S. App. LEXIS 9140 (5th Cir. May 9, 2000); *Guevara v. Maritime Overseas Corporation*, 59 F.3d 1496 (5th Cir. 1995) (*en banc*); *cf. Miller v. American President Lines, Ltd.*, 989 F.2d 1450, 1457 1993 AMC 1217 (6th Cir. 1993).

WESTRIA HODINGS, INC. recognizes that the Eleventh Circuit previously held in *Hines v. J.A. LaPorte, Inc.*, 820 F.2d 1187, 1988 AMC 1721 (11th Cir. 1987), that punitive damages may be awarded in addition to attorneys fees for the arbitrary and willful withholding of maintenance and cure benefits to an injured seaman. That decision was decided prior to the Supreme Court deciding *Miles v. Apex Marine Corp., supra*. Furthermore, in rendering its decision, *Hines v. J.A. LaPorte, Inc.* relied on the reasoning expressed by the Fifth Circuit *In Complaint of Merry Shipping, Inc.*, 650 F.2d 622, 1981 AMC 2839 (5th Cir. 1981). That decision has now been expressly overruled by *Guevara v. Maritime Overseas Corporation*, 59 F.3d 1496 (5th Cir. 1995) (*en banc*).

### COUNT VII - PREJUDGMENT INTEREST

If this matter were governed by U.S. admiralty law, which it is not, then under certain circumstances the award of prejudgment interest is within the discretion of the Court to award in connection with certain pecuniary damages. The claim for prejudgment interest however, creates a separate cause of action.

CASE NO. 00-6098-CIV-JORDAN

## **CONCLUSION**

The lack of substantial contacts with the United States warrants application of Dutch law as agreed in the employment contract. This court lacks jurisdiction to hear any claim brought under the general maritime law of the United States, the Death on High Seas Act, or the Jones Act and all claims in this regard must be dismissed.

Under the Gulf Oil Corp. v. Gilbert criteria, dismissal of this action on *forum non conveniens* is warranted. Plaintiff clearly has alternate forums in which to bring this action. MR. JUAREZ's employment contract specifies Rotterdam as the forum for any suit. All of the potential parties to this action are foreign. The United States has no interest in this action. The United States is an inconvenient forum because all of the witnesses and the parties are foreign and reside outside of the United States. Witnesses are not subject to compulsory process and the costs of bringing in voluntary witnesses would be very expensive. The expense of a trial in the United States under the circumstances of the instant case, coupled with the administrative inconvenience to an already congested court system is unwarranted.

The *forum non conveniens* doctrine is applicable and the court should dismiss the case conditioned on the defendants agreeing to waive any statute of limitations or laches defense and their agreement to accept service of process in a court in the Netherlands.

WHEREFORE, WESTRIA HOLDINGS, INC., as Claimant Owner of the M/V MELODY, based upon the foregoing, pray this Court will enter an Order dismissing the Amended Complaint.

CASE NO. 00-6098-CIV-JORDAN

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true copy of the foregoing was served by mail to David C. Rash, Esq., 88 N.E. 168th Street, N. Miami Beach, Florida 33162, on August 18, 2000.

HAYDEN AND MILLIKEN, P.A.
5915 Ponce de Leon Blvd., #63
Miami, Florida 33146
Telephone: (305) 662-1523
Facsimile: (305) 663-1358

By: _____
Richard R. McCormack
Fla. Bar No. 168850

H:\16954\Pldg\M-Dismiss Amended Comp 8.17.00.wpd