UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**IN ADMIRALTY**

| | |
|---|---|
| MARIQUITA GUDIEL DE JUAREZ, as Surviving Spouse and Personal Representative of the Estate of RANULFO ESTRADA JUAREZ, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>WESTRIA HOLDINGS INC., MEDITERRANEAN SHIPPING CRUISES, MEDITERRANEAN SHIPPING COMPANY (USA) INC., ICS ISLAND CRUISE SERVICES N.V., and, C.C.E.T., INC. <u>in personam</u>; and, M/V MELODY, her engines, boilers, tackle, equipment, apparel, appurtenances, etc., <u>in rem</u>,<br><br>Defendants. | CASE NO.: 00-6098-CIV-JORDAN<br><br>Magistrate: Bandstra<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO WESTRIA'S OBJECTIONS TO MAGISTRATE'S ORDER OF AUGUST 8, 2000** |

COMES NOW, the Plaintiff, MARIQUITA GUDIEL DE JUAREZ, as Surviving Spouse and Personal Representative of the Estate of RANULFO ESTRADA JUAREZ, Deceased, ("MRS. JUAREZ"), by and through her undersigned attorney and pursuant to Title 28 U.S.C. §636 (b)(1)(A), Rule 4 of the Magistrate Judge Rules for the United States District Court for the Southern District of Florida and Rule 7.1 of the Local Rules for the United States District Court for the Southern District of Florida, and submits her Memorandum in Opposition to the Defendant, WESTRIA HOLDINGS INC.'s, (hereinafter referred to as "WESTRIA"), Objections to Magistrate's Order of August 8, 2000, as follows:

## I. INTRODUCTION

1.      On or about October 1, 1999, the Decedent, RANULFO ESTRADA JUAREZ, (hereinafter referred to as "MR. JUAREZ"), fell ill while working as a crew member on the M/V Melody, a passenger cruise ship owned, operated and managed by the Defendants regularly and systematically out of Port Everglades, Florida.

2.      Despite making several requests for medical treatment, MR. JUAREZ was not adequately or properly treated by the ship's physicians and was not even taken to a shore side physician until November 30, 1999, when he was hospitalized in Italy on an emergent basis.

3.      On or about December 20, 1999, MR. JUAREZ was summarily discharged from the Italian hospital and repatriated to Guatemala where he was not provided any medical treatment or wages by the Defendants, and where he died an untimely death due to the Defendants' failure to provide maintenance and cure, negligence in failing to provide prompt, proper and adequate medical care, and failing to provide a seaworthy vessel and crew.

4.      On or about April 24, 2000, MRS. JUAREZ filed an Amended Motion for Substitution of Parties along with a Motion for Leave to File an Amended Verified Seaman's Complaint for Wrongful Death with Request for Rule C Arrest against WESTRIA, MEDITERRANEAN SHIPPING CRUISES, ("MSC"), MEDITERRANEAN SHIPPING COMPANY (USA) INC., ("MSC-USA"), C.C.E.T., INC., ("CCET"), and ICS ISLAND CRUISE SERVICES N.V., ("ICS"), in personam; and, M/V MELODY, her engines,

2

DAVID C. RASH, P.A.
88 NORTHEAST 168TH STREET, NORTH MIAMI BEACH, FLORIDA 33162 · TELEPHONE (305) 653-6666 · FACSIMILE (305) 654-8435

boilers, tackle, equipment, apparel, appurtenances, etc., in rem.[1]

5.     MRS. JUAREZ's Amended Verified Seaman's Complaint for Wrongful Death with Request for Rule C Arrest asserts claims against all Defendants, including WESTRIA, for the wrongful death of MR. JUAREZ pursuant to the Death on the High Seas Act, pursuant to the Jones Act, pursuant to the General Maritime Law for Unseaworthiness and the General Maritime Law for Failure to Pay Maintenance and Cure.  MRS. JUAREZ also made claims for attorney's fees, punitive damages and pre-judgment interest.

6.     On August 8, 2000, the Honorable Magistrate Judge Ted Bandstra entered an Order granting MRS. JUAREZ's Amended Motion for Substitution of Parties and Motion for Leave to File Amended Verified Seaman's Complaint for Wrongful Death with Request for Rule C Arrest.

7.     Also in the August 8, 2000, Order, the Honorable Magistrate Judge Ted Bandstra ruled on MRS. JUAREZ's pending Motion to Compel Discovery and Second Motion to Compel Discovery compelling Westria to produce numerous items, documents and things as requested by MRS. JUAREZ in her First and Second Requests for Production, and compelling Westria to answer Interrogatories propounded by MRS. JUAREZ.

8.     Notably, on August 18, 2000, WESTRIA filed a Motion to Dismiss the Amended Verified Seaman's Complaint for Wrongful Death with Request for Rule C Arrest

---

[1]   MR. JUAREZ's initial Verified Seaman's Complaint for Damages with Request for Rule B Attachment and Rule C Arrest had been filed on or about January 21, 2000, but after he untimely died on or about March 20, 2000, MRS. JUAREZ filed her Amended Motion for Substitution of Parties and Motion for Leave to File Amended Verified Seaman's Complaint for Wrongful Death with Request for Rule C Arrest.

3

reasserting its defenses that "this court lacks subject matter jurisdiction over this cause and should decline to accept jurisdiction on grounds of <u>forum non conveniens</u>." [See WESTRIA's Motion to Dismiss Amended Complaint , pp. 4-5].

9.  Additionally, on August 18, 2000, and without citing to any supporting statutory, rule or case authority, WESTRIA filed its Objections to Honorable Magistrate Judge Ted Bandstra's Order of August 8, 2000, but only as to the documents, items and things ordered to be produced in response to the Plaintiff's First Request for Production Nos. 4 (A), 4(B), 6, 29, 37, 38, 39, 45, 46, and 47. [See WESTRIA's Objections to Magistrate's Order of August 8, 2000, pp. 4-11].

10.  WESTRIA's Objections to Honorable Magistrate Judge Tad Bandstra's Order dated August 8, 2000, are at issue here.

## II. STANDARD OF REVIEW

11.  It is well-established that a Magistrate Judge's determination of non-dispositive matters is appealable to this Honorable Court. <u>See</u> 28 U.S.C §636 (b)(1)(A); <u>See also</u> Rule 4 of the Magistrate Judge Rules for the United States District Court for the Southern District Court of Florida. In this regard, Rule 4 of the Magistrate Judge Rules for the United States District Court for the Southern District Court of Florida states that such party appealing a Magistrate's order shall:

> file with the Clerk of Court, and serve on all parties, written objections which shall specifically set forth the order, or part thereof, appealed from a concise statement of the alleged error in the Magistrate Judge's ruling, **and statutory, rule, or case authority, in support of the moving party's position**.

<u>See</u> Rule 4 (a)(1) of the Magistrate Judge Rules for the United States District for the Southern District of Florida (emphasis added).

4

12. Upon review, this Honorable Court shall only set aside "any portion of the Magistrate Judge's order found to be **clearly erroneous or contrary to law**." See Rule 4 (a)(1) of the Magistrate Judge Rules for the United States District for the Southern District of Florida (emphasis added).

13. "Clearly erroneous standard" means that the District Court must affirm the Magistrate Judge's order unless the district court has a definite and firm conviction that error has occurred. See Resolution Trust Corp. v. Deposit Co. of Maryland, 885 F.Supp. 228 (D. Kan. 1995); See also Doe v. Marsh, 899 F.Supp. 933 (N.D.N.Y. 1995).

14. Finally, given the Magistrate Judge's broad discretion in determining nondispositive pretrial discovery matters, the District Court is only permitted to overturn such pretrial orders by a showing of the Magistrate Judge's clear abuse of discretion. See Geophysical Systems Corp. v. Raytheon Co., Inc., 117 F.R.D. 646 (C.D. Cal. 1987).

### III. LEGAL AUTHORITIES AND ARGUMENT

**A. Honorable Magistrate Judge Ted Bandstra's Order Compelling Discovery Is Neither Clearly Erroneous nor Contrary to Law.**

15. WESTRIA's Objections must fail as a matter of law because no statutory, rule or case authority was cited in support of its position as required by Rule 4 (a)(1) of the Magistrate Judge Rules of the United States District Court for the Southern District of Florida. Indeed, WESTRIA merely reargues the same matters presented to Magistrate Judge Ted Bandstra, and does not cite any authority for any of its arguments. Thus, there can be no finding that Magistrate Judge Ted Bandstra's Order dated August 8, 2000, was clearly erroneous or contrary to law.

DAVID C. RASH, P.A.
88 NORTHEAST 168TH STREET, NORTH MIAMI BEACH, FLORIDA 33162 · TELEPHONE (305) 653-6666 · FACSIMILE (305) 654-8435

16. Moreover, this Honorable Court should deny WESTRIA's Objections on the merits because WESTRIA has asserted jurisdictional and <u>forum non conveniens</u> defenses, and the documents, items and things requested and ordered produced are directly relevant or likely to lead to the discovery of admissible evidence contrary to WESTRIA's defenses.

### 1. Request Nos. 4 (A) and 4 (B)

17. First, WESTRIA objects to Magistrate Judge Ted Bandstra's Order compelling it to produce reports from MR. JUAREZ's department for the voyage during which MR. JUAREZ fell ill, and voyage reports and Captain's meeting reports for the voyage during which MR. JUAREZ fell ill. MR. JUAREZ was an assistant cook in the galley of the M/V Melody. MR. JUAREZ fell seriously ill while in the service of the ship. MR. JUAREZ complained to his supervisors and others that his legs and feet were very swollen, and that he was weak and not able to work. MR. JUAREZ had an episode of vomiting and was eventually placed on a no work status. Under these circumstances, WESTRIA's Objection should be denied because departmental reports, voyage reports and Captain's meetings reports are official documents of the vessel and may contain information during the voyage MR. JUAREZ fell ill such as his requests to be relieved from work, his vomiting episodes, information concerning the ship's requests for shore side medical treatment, other crew member observations and a litany of other relevant matters. WESTRIA continues to evade either producing the documents, items and things requested in Request Nos. 4 (A) and 4 (B), or providing a definite response thereto. WESTRIA should not be permitted to determine what in its vessel's official records are relevant to and necessary for MRS. JUAREZ to prosecute this action and oppose WESTRIA's defenses. Magistrate Judge Ted Bandstra's Order dated August 8, 2000, has not been shown to be clearly

6

DAVID C. RASH, P.A.
88 NORTHEAST 168TH STREET, NORTH MIAMI BEACH, FLORIDA 33162 • TELEPHONE (305) 653-6666 • FACSIMILE (305) 654-8435

erroneous or contrary to law as related to Request Nos. 4 (A) and 4 (B) and this Honorable Court should deny same.

### 2. Request No. 6

18.  Second, WESTRIA similarly evades producing the ship's logs, rough and smooth for the voyage during which MR. JUAREZ fell ill. Again, WESTRIA wants to be able to review its own ship's official logs and determine for itself what is relevant. However, MRS. JUAREZ is entitled to the ship's logs as narrowly limited in the request to only the voyage during which MR. JUAREZ fell ill. MRS. JUAREZ should be able to determine for herself what is and is not relevant in the records. WESTRIA has not presented any statutory, rule or case authority to support its contention that the ship's logs as requested are not relevant. MRS. JUAREZ has asserted claims based upon the Death on the High Seas Act, the Jones Act, the General Maritime Law of Unseaworthiness and the General Maritime Law of Failure to Pay Maintenance and Cure. The ship's logs are relevant to the issue before this Honorable Court by way of the Amended Verified Seaman's Complaint for Wrongful Death with Request for Rule C Arrest and the jurisdictional and forum non conveniens defenses raised by WESTRIA. Engine logs, and maintenance and repair logs are relevant to showing connections to the United States, as well as for possible entries or comments therein regarding MR. JUAREZ or the situation of his departure from the vessel. WESTRIA cannot refuse to produce the radio-telephone log since it could contain information related to MR. JUAREZ's medical condition and information passed to others about his departure from the vessel. Accordingly, WESTRIA's Objection concerning Request No. 6 should be denied as Magistrate Judge Ted Bandstra's Order dated August 8, 2000, is neither clearly erroneous or contrary to law.

DAVID C. RASH, P.A.
88 NORTHEAST 168TH STREET, NORTH MIAMI BEACH, FLORIDA 33162 · TELEPHONE (305) 653-6666 · FACSIMILE (305) 654-8435

### 3. Request No. 29

19. Third, WESTRIA objects to producing Board of Directors minutes concerning the purchasing, financing, ownership and operation of the M/V Melody from 1997 to present. The evidence shows that the M/V Melody was purchased or acquired from Premier Cruise Lines, which is a Cape Canaveral, Florida, based cruise line. [See Travel Weekly article dated October 27, 1997, and attached hereto as Exhibit A]. Therefore, any purchasing, financing, ownership and operation information reflected in the Board of Director minutes from 1997 to present is certainly relevant for MRS. JUAREZ to prove all connections to the United States contrary to WESTRIA's jurisdictional and <u>forum non conveniens</u> defenses. WESTRIA's Objections to Request No. 29 are without merit, and this Honorable Court should also compel WESTRIA to produce the documents, items and things requested therein.

### 4. Request No. 37

20. Fourth, WESTRIA objects to producing repair records for the vessel for 1997 to present while on the other hand claiming that this Honorable Court has no subject matter jurisdiction and the case should be dismissed pursuant to the <u>forum non conveniens</u> doctrine. WESTRIA's objection fails again because the ships' repair records would show connections to the United States where the Captain testified in deposition that the M/V Melody undergoes repairs, purchases parts, spare parts, and engages contractors to do ship's repairs. This information may be contained within the repair records and are directly relevant to the jurisdictional and <u>forum non conveniens</u> defenses raised by WESTRIA. WESTRIA simply misses the issue in rearguing that the repair records are not relevant and

8

DAVID C. RASH, P.A.
88 NORTHEAST 168TH STREET, NORTH MIAMI BEACH, FLORIDA 33162 · TELEPHONE (305) 653-6666 · FACSIMILE (305) 654-8435

although the Captain acknowledged this information, the specifics are critical to MRS. JUAREZ's opposition to WESTRIA's Motion to Dismiss. Hence, WESTRIA's Objections to Request No. 37 fail and Magistrate Judge Ted Bandstra's Order dated August 8, 2000, should be affirmed.

### 5. Request No. 38

21.   Fifth, WESTRIA objects to producing documents reflecting the date for each occasion the M/V Melody arrived in a port in the United States or its possessions for the past 5 years. WESTRIA's objection is baseless as the information requested is directly relevant to WESTRIA's and the vessel's connection to the United States for purposes of opposing WESTRIA's jurisdictional and forum non conveniens defenses. It is of no matter that the M/V Melody did not enter a United States port during the time that MR. JUAREZ was on the vessel because the issues are not limited in time as such. Further, had MR. JUAREZ not fell ill and completed his employment term on board the M/V Melody he would have been discharged in Port Everglades, Florida, in April, 2000, where he would have been bused to Miami for repatriation from Miami to Guatemala. In fact, MR. JUAREZ's employment agreement required him to purchase an air ticket from Miami to Guatemala prior to his joining the M/V Melody. When and where the M/V Melody sailed into ports in the United States or its possession in the past 5 years is a key to MRS. JUAREZ showing WESTRIA's and other Defendants' connection to the United States and Florida. Thus, WESTRIA's Objections to Request No. 38 should be denied.

DAVID C. RASH, P.A.
88 NORTHEAST 168TH STREET, NORTH MIAMI BEACH, FLORIDA 33162 • TELEPHONE (305) 653-8666 • FACSIMILE (305) 654-8435

### 6. Request No. 39

22. Sixth, WESTRIA objects to producing the ship's survey and particulars. These documents contain information relevant to this case including but not limited to the ships' owner, the ship's managers and operators, as well as the ship's plans depicting where particular incidents alleged by MR. JUAREZ occurred. Although this case is primarily centered around the Defendants' failure to provide maintenance and cure, including medical treatment and wages, causing an the untimely death of MR. JUAREZ, the locations of certain events claimed to have occurred is relevant and WESTRIA is the only party in possession of said documents — the ship's survey and particulars. WESTRIA completely fails to provide any reasoning as to why it should not be compelled to produce these documents. Therefore, this Honorable Court should deny WESTRIA's Objections to Request No. 39.

### 7. Request No. 45

23. Seventh, WESTRIA objects to producing all advertisements pertaining to WESTRIA or its vessels for 1997 to present. MRS. JUAREZ cannot think of any more directly relevant materials concerning jurisdiction and <u>forum non conveniens</u> than advertisements by the party asserting such defenses. In this case WESTRIA asserts the defenses based on jurisdiction and <u>forum non conveniens</u> but does not want to produce documents, items and things showing that the defenses are insufficient. There is no doubt that the M/V Melody has been the subject of numerous advertisements in the United States and south Florida given the fact that the vessel regularly sails in and out of Port Everglades, Florida, with thousands of cruise passengers. "Mediterranean Shipping

10

DAVID C. RASH, P.A.
88 NORTHEAST 168TH STREET, NORTH MIAMI BEACH, FLORIDA 33162 · TELEPHONE (305) 653-6666 · FACSIMILE (305) 654-8435

Cruises" publishes brochures and flyers concerning the M/V Melody and relating an address on Park Avenue in New York, New York. [See Mediterranean Shipping Cruises 1999 and 2000 brochures attached hereto as Exhibit B]. WESTRIA should be compelled to produce all advertisements requested and this Honorable Court should deny WESTRIA's Objections to Request No. 45.

### 8. Request No. 46

24.   Eighth, WESTRIA objects to producing bills, invoices, statements or other documents evidencing payments made to any entity in Florida for 1997 to present. Again, this request seeks documents clearly relevant to defeating the defenses raised by WESTRIA itself. Payments made by WESTRIA to entities in Florida establish systematic connections with Florida. To permit WESTRIA to assert defenses and then deny discovery on the issues is fundamentally unfair and prejudicial. WESTRIA makes no showing that Magistrate Judge Ted Bandstra's Order dated August 8, 2000, was clearly erroneous or contrary to law. MRS. JUAREZ needs to show that the Defendants, including WESTRIA, have connections to Florida and the United States; therefore, WESTRIA's Objections to Request No. 46 should be denied.

### 9. Request No. 47

25.   Ninth, WESTRIA objects to producing bills, invoices, statements or other documents evidencing payments made to any entity in the United States for 1997 to present. Again, this request seeks documents clearly relevant to defeating the defenses raised by WESTRIA itself. Payments made by WESTRIA to entities in the United States establish systematic connections with the United States. To permit WESTRIA to assert

11

DAVID C. RASH, P.A.
88 NORTHEAST 168TH STREET, NORTH MIAMI BEACH, FLORIDA 33162 • TELEPHONE (305) 653-6666 • FACSIMILE (305) 654-8435

defenses and then deny discovery on the issues is fundamentally unfair and prejudicial. WESTRIA makes no showing that Magistrate Judge Ted Bandstra's Order dated August 8, 2000, was clearly erroneous or contrary to law. MRS. JUAREZ needs to show that the Defendants, including WESTRIA, have connections to the United States; therefore, WESTRIA's Objections to Request No. 47 should be denied.

### III. CONCLUSION

26. WESTRIA makes no showing that Magistrate Judge Ted Bandstra's Order dated August 8, 2000, is clearly erroneous or contrary to law. WESTRIA does not cite one statute, one rule or one case to support its position. Accordingly, WESTRIA's Objections fail as a matter of law and this Honorable Court should affirm Magistrate Judge Ted Bandstra's Order dated August 8, 2000, in all respects.

27. On the merits, WESTRIA's objections equally fail because it cannot raise jurisdictional and <u>forum non conveniens</u> defenses while at the same time refuse to produce documents, items and things directly relevant to the issue WESTRIA itself raised and directly relevant to MRS. JUAREZ's opposition to WESTRIA's defenses. Materials relevant to and likely to lead to the discovery of admissible evidence must be produced. Requests Nos. 4 (A), 4 (B), 6, 29, 37, 38, 39, 45, 46, and 47 seek information critical to MRS. JUAREZ's opposition to WESTRIA's position and WESTRIA has not demonstrated that Magistrate Judge Ted Bandstra's Order dated August 8, 2000, is clearly erroneous or contrary to law; thus this Honorable Court should deny WESTRIA's Objections.

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a copy of the foregoing was served by U.S. Mail this

DAVID C. RASH, P.A.
88 NORTHEAST 168TH STREET, NORTH MIAMI BEACH, FLORIDA 33162 • TELEPHONE (305) 653-6666 • FACSIMILE (305) 654-8435

18th day of September, 2000, on: Richard R. McCormack, Esquire, Hayden and Milliken, P.A., 5915 Ponce de Leon Boulevard, Suite 63, Miami, Florida, 33146; and, Gale Kenneth Hawkes, Esquire, De Orchis, Corsa & Hillenbrand, LLP, 2650 Biscayne Boulevard, Miami, Florida, 33137.

        LAW OFFICES OF DAVID C. RASH, P.A.
        Attorneys for Plaintiff
        88 Northeast 168th Street
        North Miami Beach, Florida 33162
        Tel:  (954) 476-1515 (Broward)
        Tel:  (305) 653-6666 (Dade)
        Fax:  (305) 654-8435

by: _____
        DAVID C. RASH, ESQUIRE
        Florida Bar No: 0977764

LAND ITINERARIES ARE COMBINED WITH SMALL-SHIP SAILINGS

# More Operators Look to Cruise-Tours as Hot Product for '98

*Continued from Page 1*

Robin Tauck said the company's approach to cruising is that "it enhances people's understanding of the destination; not just a cruise for cruise's sake but to learn a seafaring side of a culture." But, she added, "People also understand the cruise experience as a relaxing way to travel."

The Treasure Series is expected to bring in $25 million for Tauck this year, she said.

Including Tauck's programs on large ships in North America, cruise-tours account for about 10% of the tour company's overall business and $40 million in gross revenue; the cruise business has grown 30% in the past year," Tauck said.

An added benefit of offering cruise-tours is they seem to attract an under-60 crowd, she added.

IST Cultural Tours of New York, which recently issued its third annual brochure describing just its land-cruise offerings, reported that land-cruise bookings are running 50% above last year at this time.

The number of land-cruise departures has tripled since it started the program three years ago, said Suzanne Hall, vice president of sales and marketing.

"The response has been tremendous," Hall said. "There seems to be a growing demand for unique, small vessels combined with a land program that has a cultural element to it."



*IST Cultural Tours features European cruise-tours that begin with a city stay, such as three nights in Nice, prior to a France and Italy trip. Above, Roman ruins in the French city.*

Most IST programs are in Europe, although there is a Nile cruise, an Amazon tour and a cruise to Antarctica.

All European programs use either a barge, a riverboat, a yacht or a small ship, and all start with a city stay, such as three nights in Nice prior to a France and Italy sailing aboard the Star Clipper.

"The ships are small so you don't have to use tenders to enter a port.

"Sometimes you can just tie up in small port towns and enter the local culture immediately."

Hall said the baby-boom generation and increasingly sophisticated senior travelers are fueling the trend.

St. Louis-based Intrav, which formerly had worked only with affinity groups, also is promoting small-ship cruises that are tied to land packages.

Paul Duynhouwer, president of Intrav and its sister company Clipper Cruise Line, set about trying to link the two companies when he was named president of Intrav in late 1996.

Under Duynhouwer, St. Louis-based Intrav has broadened its business mix from affinity groups and is now promoting to agents.

"What we've learned over the years at Clipper about the market for small-ship cruising will assist Intrav in customizing its own cruise-tours, many of which are aboard other distinctive vessels such as the Song of Flower and Silver Cloud, and aboard deluxe European river cruisers."



*Intrav customizes its cruise-tours, many of which are aboard distinctive vessels such as the Song of Flower, pictured above.*

Intrav released the first Special Expeditions catalog, which includes 24 programs, 13 of which combine a land tour with a small-ship sailing.

General Tours of Keene, N.H., also is highlighting its river and sea cruise programs.

> *'Sometimes you can tie up in small port towns and enter the local culture immediately.' — Suzanne Hall, IST Tours*

Robert Drumm, the company's president, said it is a trend that is driven by increasing numbers of people who enjoy cruising on large ships and have a desire for "more intimate sailing experiences."

Due to heavy demand, General Tours in 1998 will add another ship on the Volga in Russia, bringing to three the number of ships it offers, according to Drumm.

*Fran Golden contributed to this report.*

---

# Mediterranean Line Positions Its Melody for Caribbean Cruises

**BY JIM GLAB**

NEW YORK — Mediterranean Shipping Cruises said it will enter the North American market this winter with the positioning of the 1,076-passenger Melody on a series of Caribbean cruises from Fort Lauderdale, Fla.

The Melody, formerly Premier Cruise Lines' Atlantic, is part of a four-vessel fleet that operates in Europe, South America and South Africa.

"We intend to stay [in the North American market] and to grow, to become a significant player," said Mediterranean Shipping Cruises president Nicola Arena.

"We are very friendly to travel agents," he said.

Arena said the company is looking to buy a fifth vessel and is shopping for a 10- to 12-year-old ship that can accommodate up to 1,500 passengers.

"If we can't find a ship we like, we'll build one," Arena said. "We are seriously considering this alternative."

By next winter, he said, the line hopes to have two ships in North American waters.

Mediterranean Shipping Cruises is a subsidiary of Geneva-based Mediterranean Shipping Co., which has a fleet of more than 100 container ships as well as ferry services and hotels in Italy.

In making its move into a crowded winter Caribbean field, the cruise line will avoid the seven-day cruise market and instead will offer 12-day itineraries to the western and eastern Caribbean from Jan. 13 through April 22, after which the vessel will return to the Mediterranean.

Cruise-only prices for the Caribbean sailings will start at $1,225 per person, double occupancy, for an inside cabin with two lower berths, and range up to $3,395 for a full suite.

Advance-purchase discounts of 15% are available, and prices include port charges.

John Mucklow, director of sales and marketing, said the company already has forged partnership agreements with travel agency marketing groups like GEM, Cruiselink and Space, as well as retail chains like Liberty Travel and Empress Travel.

"We're in conversations with quite a few others," said Mucklow, a former Premier Cruise Lines executive. He is based in Cocoa Beach, Fla.

Arena noted that the Melody should appeal to the family market, since it still has a large children's activities area from its days as Premier's Big Red Boat, and because it has "a lot of outside cabins with four or even five berths."

He also said that the line expects a large portion of the passengers on the ship's first Caribbean season to be Europeans, perhaps as much as 50%.

Part of the Melody's appeal, he said, will come from its Italian ambience, including Italian cuisine and a crew that is largely Italian.

Its western Caribbean itinerary will include stops at Playa del Carmen, Cozumel, Grand Cayman, Ocho Rios, Santo Domingo, the Turks & Caicos and Key West; the eastern sailings will call at St. Thomas, Guadeloupe, Grenada, Barbados, Antigua and the Turks & Caicos.

Mediterranean Shipping Cruises' other vessels are the Rhapsody, formerly the Cunard Princess; the Symphony, previously the Enrico Costa, and the Monterey, which was once a U.S.-flag vessel.

Brochures are available from the line's New York sales office at (800) 666-9333.

---

## National to Serve 44 Nations Under Its Own Name

MINNEAPOLIS — National Car Rental said it will begin serving 44 countries in Europe, Africa and the Middle East under its own name on Feb. 1.

The National brand will appear in more than 700 locations in those regions, the company said.

Some of the largest of the markets in which the National name will be introduced will be the U.K., with 108 locations; France, 122; Germany, 112; Italy, 81, and Spain, 45.

There will be another 248 National Car Rental locations in 39 other countries in Europe, Africa and the Middle East, National said.

Jeff Parell, National's president, said the overseas expansion is the next logical step toward the company's goal of becoming the "global brand of choice."

National previously acquired its Canadian partner, Tilden, and now operates in Canada as National Tilden.

The changes in the overseas markets result from the recent purchase of EuroDollar Holdings, parent of EuroDollar Rent-A-Car, by National's parent company, Republic Industries, as well as from other joint ventures, acquisitions and National's own internal expansion.

A 10-year agreement between National and Europcar, National's partner in the Interrent marketing alliance for Europe, Africa and the Middle East, expires Jan. 31 by its own terms.



EXHIBIT A



# Mediterranean
*Cruises to The Old World*



# 1999

**CARIBBEAN • TRANSATLANTIC • MEDITERRANEAN • SOUTH AMERICA**



# TERMS AND CONDITIONS

**CONDITIONS**
Your kind attention is drawn to the provisions applicable as indicated in your passage ticket contract. Upon acceptance of that ticket contract the passenger accepts and agrees to the terms and conditions therein. Specific attention should be given to the provisions on the Carrier's responsibility. All of our rates are quoted in U.S. dollars and are per person, based on double occupancy.

**FINAL PAYMENTS**
Reservations can be made and accepted through any travel agency. A deposit of $250.00 per person will secure a confirmed stateroom. Final payment is due at least 60 days prior to sailing.

**CRUISE FARE INCLUDES:**
The cruise fares shown are in US dollars and are per person, based on double occupancy. They include accommodation selected, ocean transportation, all meals onboard and entertainment offered by the cruise vessel. IT DOES NOT INCLUDE: shore excursions, sightseeing or meals ashore, laundry, wine, beer,liquors, cocktails, mineral waters, medical expenses, on-board gratuities to the ship's personnel or any other items of a personal nature.

**CANCELLATION OR CHANGES:**
Cancellation requests must be received in writing directly to MSC no later than 60 days prior to sailing date for a full refund, less an administrative fee of $50.00 per person. Requests received later than 60 days will be subject to the following charges:

**59 to 31 DAYS PRIOR TO SAILING—
a penalty of 25% of full fare**

**30 to 16 DAYS PRIOR TO SAILING—
a penalty of 50% of full fare**

**15 to 8 DAYS PRIOR TO SAILING—
a penalty of 75% of full fare**

**WITHIN 7 DAYS OF SAILING—
a penalty of 100% of full fare**

No refund will be permitted if a passenger voluntarily or involuntarily terminates his/her cruise in progress. Cruise contracts are non-transferrable. Name changes and cruise date changes are considered reservation cancellations and are subject to the above cancellation fees.

**VOLUNTARY CHANGES:**
A $50 administrative fee per person will be assessed for changes made to bookings once documents and air tickets have been issued plus any suppliers' fee if applicable. Costs and penalties of up to 100% of the air ticket value may be charged and will be the client's sole responsibility. Once air tickets have been issued, they cannot be exchanged or refunded for a travel allowance. We strongly urge the purchase of trip cancellation insurance.

**EMBARKATION:**
Commences 4 hours before sailing time. All passengers are requested to be at the port of embarkation at least 2 hours before departure time allowing sufficient time for ticket and travel documentation to be checked. *

**TRAVEL DOCUMENTS:**
All passengers must be in possession of a valid passport. Visas are required for certain cruise itineraries. Kindly consult your Travel Agent or MSC for details. Passengers will not be allowed to board at embarkation without proper proof of identification or citizenship. Passports are considered proof of citizenship. It is strongly recommended that the expiration date on your passport not occur within 6 months of completing your cruise. Absolutely no refund of cruise fare or any portion thereof will be given to any passenger failing to bring valid and current proof of citizenship or proper documentation.

**REFUSAL OF PASSAGE AND
PREMATURE DISEMBARKATION:**
MSC reserves the right to deny boarding and not issue a refund to any passenger failing to provide proper travel identification or citizenship. A passenger's cruise may be terminated at any time and at the sole risk and expense of the passenger if the passenger's physical or mental condition is a risk or danger to him/herself or anyone else on board. The captain may at any time deny passage to any passenger or choose to terminate the voyage if the captain believes the passenger to be dangerous to himself or cause disturbances to other MSC passengers or crew. MSC shall not be liable for any refund for any portion of the fare of the person disembarking the ship prematurely for any of the above mentioned reasons. MSC will not refund any portion of transportation expenses, medical or lodging expenses, meals, telecommunications or any other expenses incurred by a passenger who voluntarily leaves the ship early or disembarks the ship for any other reason.

**ITINERARY CHANGES:**
MSC reserves the right to cancel, delay, modify or change port of call due to causes beyond the control of MSC at any time and for any reason whatsoever without prior notice, and shall not be held liable for any loss to guests by reason of such change, cancellation or substitution.

**BAGGAGE & PERSONAL EFFECTS:**
MSC, its employees and agents do not accept responsibility for loss, damage or theft of guests' baggage or any personal effects. MSC's responsibility with respect to lost, damaged or misdelivered luggage is strictly limited as stated in the passage contract. In the event of loss or damage to baggage or personal effects, immediate notification should be made to the office of the hotel manager.

**HEALTH AND MEDICAL REQUIREMENTS:**
All passengers must show that they are physically and otherwise able to travel. Passengers are requested to report any physical disability that may require special attention or treatment to MSC at time of booking. Shipboard, medical services and facilities, including medical personnel, are available to all passengers at a reasonable rate.

**ACCOMMODATION OF CHILDREN:**
Passengers under the age of 21 must be accompanied by a parent or responsible adult. If the accompanying adult is not the parent or legal guardian, parent or guardian's written consent must be provided.

**CURRENCY ON BOARD:**
While cruising in the Mediterranean, the currency on board MSC vessels is in Italian Lire. For your convenience a "cashless society" has been created, which means that you sign for your drinks and bar purchases. At the end of the cruise, you will receive an itemized bill which may be settled with cash, Visa, Mastercard, Diners Club, or American Express.

**AIR TRANSPORTATION:**
MSC will make arrangements for air service in connection with the Air/ Sea programs for the Melody, the Monterey and the Rhapsody. MSC reserves the right to choose the air carrier, routing and city airport from each gateway city listed herein. MSC also reserves the right to add or withdraw gateway cities at any time. Air carrier and flight schedules are subject to change without notice and may necessitate changes for ticketed and unticketed passengers. Every effort will be made to assist all clients paid in full. Air space is subject to capacity limitations and may not be available for all guests. Air schedules will only be confirmed upon receipt of final payment.
The lowest applicable airfare will be used at the time ticket is issued. Therefore, some flights can be non-stop, direct, overnight or may also require a change of plane, be on commuter, charter or regularly scheduled carriers. All rules and restrictions of the ticketed air carrier will apply. Frequently, fares used are subject to a 100% cancellation fee in case of date, flight or name change or in case of cruise cancellation by the passenger for any reason. Airline tickets may not be exchanged or replaced by another carrier once tickets have been issued.

Additional costs, including any penalties, will be at the client's expense.
In cases of layover and/or rerouting privileges, it is the passenger's sole responsibility to make and pay for any such charges. Some airline schedules may require departure a day prior to start of package. Refunds may be processed only through MSC. Flight Cancellation: MSC cannot be held responsible for airline cancellations, failure to carry for any reason including work stoppage, routing, or any other disruption or services or accommodations beyond its control. MSC assumes no responsibility for those guests who choose to purchase their own air.

**AIR DEVIATIONS:**
A deviation is a flight request for any day other than that of departure or disembarkation. The only exception is in conjunction with MSC land packages. Some gateway cities may require a pre or post cruise overnight stay.

**The following are considered deviations:**
• Pre or post extensions (except for MSC packages) at embarkation or disembarkation points.

• En route stopovers (30 day maximum and subject to airline approval)

• Requests for specific carriers, upgrades, gateways and specific flight schedules not included in MSC Air/Sea program. (additional fares may apply).

**Air deviations** are available on a request basis which must be made in writing no later than 60 days prior to departure and are subject to a non-refundable deviation fee of $50 per person per request. The fee does not include any fare differential which is the sole responsibility of the passenger. Requests are only accepted for bookings under deposit and must be received in writing prior to MSC's completion of the booking.
**All deviations are subject to availability and confirmation. Passengers deviating from MSC's Air/Sea program will forfeit complimentary overnight accommodations as well as all transfers provided by MSC on the day of the cruise.**

**SPECIAL REQUESTS FOR
MEALS/SEATING ON AIR CARRIERS**
MSC cannot confirm specific seat assignments. Kindly have your travel agent contact the airlines directly for seat assignments, frequent flyer numbers or any special meal requests you may have. Not all airlines guarantee pre-reserved seating, or requests for adding frequent flyer numbers to Air/Sea bookings made by MSC. Should you have very specific air travel requirements, we recommend you have your travel agent book directly with the airlines.

**CRUISE-ONLY PASSENGERS:**
Passengers purchasing cruise-only are responsible for their own transfers between airport and the pier or vice versa. We urge you to get to the pier at least 3 hours prior to departure.

**RESPONSIBILITY:**
MSC is not to be held responsible for any act, error or omission during the time passengers are not aboard the MSC vessels. MSC acts only as agent for the supplier of the other off-ship services such as airlines, and transportation carriers, shore excursions, meals, accommodations, featured in this brochure. Passengers agree not to hold MSC, its owners or agents, responsible or liable for any loss, injury, expense or damage which results directly or indirectly from any act of omission, whether negligent or otherwise, of any third party person or firm which is to, or does, provide goods or services in connection with the trip or any available option. Without limiting the foregoing, MSC shall have no liability to passengers for the quality of services and the condition, cleanliness or safety of a hotel, housing facility or conveyance, or for any transportation delay, including but not limited to liability for inconvenience, shortened vacation time, additional expenses, or any other kind of damage. MSC expressly disclaims all responsibility of any nature whatsoever for any loss, damage or injury to property or person resulting from air, rail or motorcoach transportation.

WWW.MSC CRUISE.COM
WWW.MSCCRUISESUSA.COM
EMAIL: USACRUISES@MEDSHIP.COM

*See Your Travel Agent—The Cruise Expert*





24

**MEDITERRANEAN SHIPPING CRUISES**
420 Fifth Avenue, New York, NY 10018 • For Reservations, Call Your Travel Agent • For Brochures, Call 1-800-666-9333

# msc MELODY



**MEDITERRANEAN SHIPPING CRUISES**
**2000**
THE YEAR OF THE MILLENNIUM

CARIBBEAN • TRANSATLANTIC • MEDITERRANEAN • SOUTH AMERICA

# TERMS AND CONDITIONS

**CONDITIONS**
Your kind attention is drawn to the provisions applicable as indicated in your passage ticket contract. Upon acceptance of the ticket contract the passenger accepts and agrees to the terms and conditions therein. Specific attention should be given to the provisions on the Carrier responsibility.

**RESERVATIONS/DEPOSITS AND FINAL PAYMENTS:**
Reservations can be made and accepted through any travel agency. A deposit of $250.00 per person will secure a confirmed stateroom. Final payment is due no later than 60 days prior to sailing.

**CRUISE FARE INCLUDES:**
The cruise fares shown are in US dollars and are per person, based on double occupancy.They include accommodation selected, ocean transportation, all meals onboard and entertainment offered by the cruise vessel. IT DOES NOT INCLUDE: shore excursions, sightseeing or meals ashore, laundry, wine, beer,liquors, cocktails, mineral waters, medical expenses, on-board gratuities to the ship's personnel or any other items of a personal nature.

Government fees, port charges and federal departure taxes are included in the above mentioned prices and are subject to change without prior notice. MSC reserves the right to pass on any fuel surcharge without prior notice to guests. Rates are subject to change at any time. Only bookings paid in full will be protected from any rate increases.

**CANCELLATION OR CHANGES:**
Cancellation requests must be received in writing directly to MSC no less than 60 days prior to sailing date for a full refund. Requests received less than 60 days will be subject to the following charges:

- 59 to 31 days prior to sailing, a penalty of 25% of gross fare
- 30 to 15 days prior to sailing, a penalty of 50% of gross fare
- 14 to 8 days prior to sailing, a penalty of 75% of gross fare
- 7 days to day of sailing, 100% of gross fare

No refund will be permitted if a passenger voluntarily or involuntarily terminates his/her cruise in progress. Cruise contracts are non-transferrable. Name changes and cruise date changes are considered reservation cancellations and are subject to the above cancellation fees.

Cancellation fees are for the cruise portion of the package and do not include cancellation or penalty fees which may be assessed by air carriers or any other land, hotel or services suppliers.

**VOLUNTARY CHANGES:**
A $ 50 administrative fee per person will be assessed for changes made to bookings once documents and air tickets have been issued plus any suppliers' fee if applicable. Costs and penalties of up to 100% of the air ticket value may be charged and will be the client's sole responsibility. Once tickets have been issued, they cannot be exchanged or refunded for a travel allowance.

**EMBARKATION:**
Commences 4 hours before sailing time. All passengers are requested to be at the port of embarkation no later than 2 hours before departure time allowing sufficient time for ticket and travel documentation to be checked.

**TRAVEL DOCUMENTS**
Passengers will not be allowed to board at embarkation without proper proof of identification or citizenship. For the Caribbean,passports and notarized (ORIGINAL or raised seal) birth certificates are considered proof of citizenship for U.S citizens and should be accompanied with a valid picture I.D such as a valid driver's license. It is strongly recommended that the expiration date on your passport not occur within 6 months of completing your cruise. Non. US. citizens residing in the United States will need a valid Alien Registration card (green card). In some cases, alien residents may be required to have visas or sailing permits to enter some of the countries visited. Foreign passengers must be in possession of a valid passport and multiple entry visa for the U.S. All travel documents necessary for embarkation, disembarkation at the various ports of calls as well as re-entry into the US are the sole responsibility of the passenger and include passports, visas, proof of citizenship, sailing permits etc. Check with your travel agent and local immigration offices, embassies or consulates to determine proper documentary requirements for each port of call. Absolutely no refund of cruise fare or any portion thereof will be given to any passenger who is denied boarding due to lack of proper proof of citizenship documentation.

**BAGGAGE & PERSONAL EFFECTS:**
MSC, its employees and agents do not accept responsibility for loss, damage or theft of guests' baggage or any personal effects. MSC's responsibility with respect to lost, damaged or misdelivered luggage is strictly limited as stated in the passage contract. In the event of loss or damage to baggage or personal effects, immediate notification should be made to the office of the hotel manager.

**ITINERARY CHANGES:**
MSC reserves the right to cancel, change, modify or substitute ports of call at any time and for any reason whatsoever without prior notice, and shall not be held liable for any loss to guests by reason of such change, cancellation or substitution.

**HEALTH AND MEDICAL REQUIREMENTS:**
Passengers are requested to report any physical disability that may require special attention or treatment to MSC at time of booking. Shipboard, medical services and facilities, including medical personnel are available to all passengers at a reasonable rate.

**ACCOMMODATION OF CHILDREN:**
All children under the age of 21 must be accompanied by a parent or responsible adult. If the accompanying adult is not the parent or legal guardian, parent or guardian's written consent must be provided.

**VALUABLES:**
Guests are advised to utilize the complimentary safety deposit facilities on board for jewelry and other valuables. MSC cannot be held responsible for the loss of valuables that are not secured in the safety deposit boxes.

**AIR TRANSPORTATION:**
MSC will make arrangements for air service in connection with the Air/ Sea programs and reserves the right to choose the air carrier, routing and city airport from each gateway city listed herein. MSC also reserves the right to add or withdraw gateway cities at any time. Air carrier and flight schedules are subject to change without notice and may necessitate changes for ticketed and unticketed passengers Every effort will be made to assist all clients paid in full. Air space is subject to capacity limitations and may not be available for all guests. Air schedules will only be confirmed at time tickets are issued. Air tickets will be issued only upon receipt of final payment. The lowest applicable airfare will be used at the time ticket is issued. Flights may be non-stop, direct, or overnight and some may also require a change of plane, be on commuter, charter or regularly scheduled carriers. Air add-ons are based on the lowest available airfares, assumed costs and include service fees. Because of changing airline tariffs, passenger air tickets may reflect fares higher or lower than the air add-on paid to us. The difference is neither chargeable nor refundable. Any deviation requests from MSC's air/sea program must be submitted in writing 75 days prior to departure and are subject to a $50 revision fee and any fare differential related to the requested change. All rules and restrictions of the ticketed air carrier will apply. Frequently, fares used are subject to a 100% cancellation fee in case of date, flight or name change or in case of cruise cancellation by the passenger for any reason. Airline tickets may not be exchanged or replaced by another carrier once tickets have been issued. Additional costs, including any penalties, will be at the client's expense. In cases of layover and/or rerouting privileges, it is the passenger's sole responsibility to make and pay for any such charges. Some airline schedules may require departure a day prior to start of package. Refunds can be processed only through MSC. Flights may arrive/depart from Fort Lauderdale/Hollywood International airport but could be Miami International Airport, Palm Beach Airport or any other airport MSC may choose. Flight Cancellation: MSC cannot be held responsible for airline cancellations, failure to carry for any reason including work stoppage, routing, or any other disruption of services or accommodations beyond its control. MSC assumes no responsibility for those guests who choose to purchase their own air.

**RESPONSIBILITY:**
MSC is not to be held responsible for any act, error or omission during the time passengers are not aboard the MSC vessels. MSC acts only as agent for the supplier of the other off-ship services such as airlines, and transportation carriers, shore excursions and accommodations as featured in this brochure. Passengers agree not to hold MSC, its owners or agents, responsible or liable for any loss, injury, expense or damage which results directly or indirectly from any act of omission, whether negligent or otherwise, of any third party person or firm which is to, or does, provide goods or services in connection with the trip or any available option. Without limiting the foregoing, MSC shall have no liability to passengers for the quality of services and the condition, cleanliness or safety of a hotel, housing facility or conveyance, or for any transportation delay, including but not limited to liability for inconvenience, shortened vacation time, additional expenses, or any other kind of damage. MSC expressly disclaims all responsibility of any nature whatsoever for any loss, damage or injury to property or person resulting from air, rail or motorcoach transportation.

*See Your Travel Agent*





## MEDITERRANEAN SHIPPING CRUISES

16   420 Fifth Avenue, New York, NY 10018 • For Reservations, Call Your Travel Agent • For Brochures, Call 1800-666-9333