UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
IN ADMIRALTY

CASE NO. 00-6098-CIV-JORDAN/BANDSTRA

MARIQUITA GUDIEL DE JUAREZ,
as Surviving Spouse and Personal
Representative of the Estate of
RANULFO ESTRADA JUAREZ,
Deceased,

                              Plaintiff,

vs.

WESTRIA HOLDINGS, INC.,
MEDITERRANEAN SHIPPING
CRUISES, MEDITERRANEANS
SHIPPING COMPANY (USA) INC.,
ICS ISLAND CRUISE SERVICES
N.V. and, C.C.E.T., INC. in personam;
and M/V MELODY, her engines, boilers,
tackle, equipment, apparel, appurtenances,
etc., in rem,

                              Defendants.
_____ /

## MOTION TO DISMISS AMENDED COMPLAINT,
### TOGETHER WITH MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendants, WESTRIA HOLDINGS, INC., individually and as the Claimant Owner

of the M/V MELODY, *in rem*, MEDITERRANEAN SHIPPING CRUISES, ISLAND CRUISE

SERVICE N.V. (identified in the Amended Complaint as "ICS ISLAND CRUISE SERVICES

N.V.") and C.C.E.T., INC., by and through undersigned counsel, moves this Court to enter

an Order dismissing the Amended Complaint filed on behalf of the Plaintiff, MARIQUITA

GUDIEL DE JUAREZ, as Surviving Spouse and Personal Representative of the Estate of





NON-COMPLIANCE OF S.D. fla. L.R.

CASE NO. 00-6098-CIV-JORDAN

RANULFO ESTRADA JURAEZ, deceased. As grounds therefor, these parties would show unto this Court as follows:

### PREFACE

The decedent, RANULFO ESTRADA JUAREZ, was a Guatemalan national who signed a contract of employment with ISLAND CRUISE SERVICE N.V., also known as I.C.S., N.V. in Puerto Barrios, Guatemala on May 21, 1999, that called for MR. JUAREZ's employment to commence on May 27, 1999 as a Second Cook Servicier on board the M/V MELODY. MR. JUAREZ traveled by aircraft to Italy and joined the vessel in Genova, Italy.[1]

Prior to joining the vessel, MR. JUAREZ had a pre-employment physical examination by a doctor in Puerto Barrios, Guatemala that he paid for himself. He carried a copy of the results of that examination to the vessel in Italy.

---

1 These Defendants acknowledge that the decedent, Ranulfo Estrada Juarez, was employed by ISLAND CRUISE SERVICE, N.V. pursuant to the "Crew Agreement," dated May 21, 1999, that was signed by the decedent in Guatemala, and that was identified at his deposition taken in this cause on February 18, 2000, prior to the filing of the Amended Complaint. A copy of the "Crew Agreement" is attached as Exhibit "A." (See Deposition of Ranulfo Estrada Juarez, taken on February 18, 2000, at pp. 9-10). The decedent acknowledged receiving the document, dated May 21, 1999, a copy of which is attached as Exhibit "B," that he needed in order to join the M/S MELODY in Italy. (Id at 49-50; Exhibit 4). The decedent further acknowledged that the statement contained in that document that "The bearer of this letter, Mr. Estrada, Ranulfo, has been hired by our company, Island Cruise Services, N.V., to work on board the passenger vessel, M/S MELODY, of Panamanian registry" is correct. (Id at 49-50). Despite the foregoing, Mr. Juarez testified that his employer was "Mediterranean Shipping" and that he was provided medical treatment by "Mediterranean Shipping Company." (Id at p. 14; 37-38). At no time during his deposition did the decedent ever identify his employer as either WESTRIA HOLDINGS, INC., C.C.E.T., INC., MEDITERRANEAN SHIPPING CRUISES, or MEDITERRANEAN SHIPPING COMPANY (USA), INC.. For the Plaintiff to now allege in her Amended Complaint that these entities were somehow decedent's employer would be, at best, disingenuous; especially since the decedent can have only one employer.

CASE NO. 00-6098-CIV-JORDAN

The employment contract provided on page 3:

> I, the undersigned employee, hereby confirm that I have read this Agreement of Engagement in its entirety, and that I have received a copy of the same and hereby agree to be bound by the terms contained above which are subject to Dutch law with Rotterdam court jurisdiction.

The M/V MELODY is owned by WESTRIA HOLDINGS, INC., a Panamanian company, and managed by MSC Mediterranean Shipping Company, S.A., whose registered office is in Geneva. During the time that MR. JUAREZ was aboard the M/V MELODY, the vessel was under charter to MEDITERRANEAN SHIPPING CRUISES S.p.a., which is located in Italy. MR. JUAREZ has not produced any contract, nor did he have any contract, with either WESTRIA HOLDINGS, INC., MEDITERRANEAN SHIPPING CRUISES, or C.C.E.T., INC. Rather, as stated above, MR. JUAREZ's contract was entered into with ISLAND CRUISE SERVICES N.V.

During the entire time that MR. JUAREZ was on board the M/V MELODY, the vessel traded from Italy to various ports in the Mediterranean. At no time did the vessel enter into any port in the United States while MR. JUAREZ was aboard the vessel.

The Amended Complaint alleges that MR. JUAREZ became ill on October 1, 1999, while serving aboard the M/V MELODY. MR. JUAREZ was hospitalized in Genova, Italy on November 30, 1999 with stomach pains. He was given treatment and tests with an apparent diagnosis of pancreatic cancer. He was discharged on December 19th, 1999 to return home to Guatemala. Thereafter, MR. JUAREZ and a fellow crewman who was provided as MR. JUAREZ's traveling companion flew from Italy to Guatemala. MR.

3

CASE NO. 00-6098-CIV-JORDAN

JUAREZ arrived in Guatemala City on December 20th, 1999 where he was met by his family. They returned to their home in Puerto Barrios by the taxi which had brought them to Guatemala City.

MR. JUAREZ sought medical treatment in Guatemala. He was told by his doctor that he had pancreatic cancer, and that his illness has no cure (Deposition of MR. ESTRADA JUAREZ, taken on February 18, 2000, at pp. 41-42; 92-93). MR. JUAREZ has not been treated in the United States. MR. JUAREZ acknowledged that he received all of the medical treatment that he went for in Guatemala and that he was not refused any medical treatment or medicine that he requested or that his doctors thought necessary. (*Id* at 92-93).

There is nothing in the proposed Amended Complaint to even remotely suggest that any accident, negligence or other fault of MR. JUAREZ's employer, or of the M/V MELODY or its crew, *caused* MR. JUAREZ's terminal pancreatic cancer or liver cancer.

MR. JUAREZ has received an amount in Guatemalan Quetzals that is equivalent to five thousand and forty four US Dollars ($5,044 US) for expenses and wages pursuant to his "Crew Agreement". At the time of taking MR. JUAREZ's deposition on February 18, 2000, none of the medical bills incurred by the MR. JUAREZ in Guatemala were submitted by MR. JUAREZ, or his counsel, for payment or reimbursement. (*Id* at 89). Subsequently, on April 18, 2000, MR. JUAREZ's counsel submitted pharmaceutical bills, in the amount of 4,106.63 quetzales, with the equivalent amount being paid in United States dollars to MR. JUAREZ's counsel on or about April 20, 2000. The Amended Complaint

4

acknowledges that MR. JUAREZ received the maintenance and cure benefits due to him. (See the Amended Complaint at par. 18 and 20).

MR. JUAREZ has never resided in the United States; has never owned property in the United States; has never had a bank account in the United States; has never paid income taxes in the United States; and has never been treated in the United States.

Under the choice of law rule set forth by the United States Supreme Court in *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and supplemented by *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed. 2d 252 (1970) and the public interest and private interest factors set forth by that court in *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) this court lacks subject matter jurisdiction over this cause and should decline to accept jurisdiction on grounds of *forum non conveniens*. Alternatively, the claims asserted in Plaintiff's proposed Amended Complaint do not state any claim as against this Defendant upon which relief can be granted.

## SUBJECT MATTER JURISDICTION

Plaintiff asserts jurisdiction of this cause under the provisions of 28 U.S.C. §1331, 46 U.S.C. §688 et. seq., 46 U.S.C. app. §761 et. seq., and the "General Maritime Law of the United States." The landmark case concerning the right of a foreign seaman or his representative to bring an action in an American court for personal injuries or wrongful death, under the Jones Act (46 U.S.C. § 688) is *Lauritzen v. Larsen*, 346 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 2d 1254, 1953 AMC 1210 (1953).

In that case, Larsen, a Danish seaman, joined the crew of a Danish flag ship in New York City, signing a contract of employment in New York City. Larsen was injured on the ship in Havana, Cuba, and received benefits according to Danish law, and the only connection with the United States was that his employment started there and he signed his contract there and the shipowner could be served with process there.

The Supreme Court refused to apply the Jones Act to that situation listing seven factors to be considered in determining the applicability of the Jones Act:

1.    The place of the wrongful act;

2.    Law of the flag;

3.    Allegiance or domicile of the injured;

4.    Allegiance of the defendant shipowners;

5.    Place of contract;

6.    Inaccessibility of foreign forum;

7.    The law of the forum.

The above tests for determining whether U.S. courts had jurisdiction over a foreign seaman's claims were supplemented by the Supreme Court in *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed. 252, 1970 AMC 994 (1970), which added an additional factor to the original *Lauritzen* seven, namely, the base of operations of the shipowner. In *Rhoditis*, a foreign seaman sued a foreign shipowner for personal injuries suffered on board a ship in New Orleans, Louisiana. Although the ship was foreign flag and the shipowner was a foreign corporation, the Court found that the actual owners of the

6

foreign corporation were long-standing residents of the United States, that the ship was controlled and managed in the United States, and that its entire income is derived from cargo that either originated or terminated in the United States. Based upon consideration of all of the factors enunciated in *Lauritzen* , as supplemented with the additional factor concerning the shipowner's base of operations, the Court allowed the application of United States substantive law.

In a third and related case, the Supreme Court in *Romero v. International Terminal Operating Co.*, 358 U.S. 754, 79 S.Ct. 468, 3 L.Ed. 2d 368 (1959), considered an action by a Spanish seaman injured in Hoboken, New Jersey, on a Spanish flag vessel, the action being brought against a Spanish shipowner, the owner's American agent, and two American companies working on the ship at the time of the accident. In *Romero* the injured seaman claimed damages for his injuries under the Jones Act for negligence and under the General Maritime Law for unseaworthiness, for maintenance and cure, and for a maritime tort against the other two corporate defendants. The trial court found the foreign seaman had no right of action against its foreign employer under the Jones Act, dismissing the claim; it found that claims under the general maritime law for unseaworthiness against the shipowner were not within the jurisdiction of the District Court because the parties were not of diverse citizenship; and it dismissed the Jones Act claim against the agent, finding it was not the employer of the seaman and did not have operation or control of the ship. The maritime tort claims against the other two corporate defendants were dismissed because of lack of complete diversity of citizenship.

7

In a lengthy opinion, the Supreme Court found that the dismissal for lack of jurisdiction was in error because the plaintiff's mere assertion of claims under the Jones Act was sufficient to empower the trial court to assume jurisdiction with the court having the "power to determine whether it was or was not well founded in law or in fact." *Id.* The Supreme Court then affirmed the dismissal of the shipowner but found the dismissal of the three American defendants was erroneous because the suit against the Spanish shipowner was based on a separate cause of action, commenting, in part, that:

> While *Lauritzen v. Larsen* involves claims asserted under the Jones Act, the principles on which it was decided did not derive from the terms of that statute.**** The broad principles of choice of law and the applicable criteria selection set forth in *Lauritzen* were intended to guide the courts in the application of maritime law generally. Of course, due regard must be had for the differing interests advanced by various aspects of maritime law. But the similarity in purpose and function of the Jones Act and the general maritime principles of compensation for personal injury, admit of no rational differentiation of treatment of choice of law purposes. Thus the reasoning of *Lauritzen v. Larsen* governs all claims here. *Id.* at 485.

Thus, the holding of *Romero* is that the seven *Lauritzen* criteria (supplemented to eight by *Rhoditis*) apply to claims under the general maritime law as well as under the Jones Act.

Considering the *Lauritzen/Rhoditis* eight factors in this action, the following is clear:

1. <u>Place of Claimed Wrongful Act</u> - Italy.

2. <u>Law of the Flag</u> - Panama.

3. <u>Allegiance or domicile of the injured</u> - Guatemala.

4. <u>Allegiance of the shipowner</u> - Italy or Panama.

5.  <u>Place of contract</u> - Guatemala.

6.  <u>Inaccessibility of foreign forum</u> - Netherlands is an easily accessible forum and was agreed on in the employment contract.

7.  <u>Law of the forum</u> - Netherlands or Dutch law.[2]

8.  <u>Shipowner's base of operations</u> - Italy.

As stressed in *Lauritzen*, 345 U.S. at 584, the law of the flag flown by the vessel is of "cardinal importance." Although the Plaintiff asserts in the Amended Complaint that service is available under the Florida Long-Arm Statutes, *Lauritzen* instructs us that the fact that a defendant can be served with process in the United States is entitled to little weight. *Lauritzen, supra.* Of the eight factors specified, none favor Plaintiff. Based upon the *Lauritzen/Rhoditis* factors, Plaintiff is not entitled to bring any claims pursuant to the substantive general maritime laws of the United States, the Death on High Seas Act, or the Jones Act and her Amended Complaint must be dismissed on these grounds. *See*, *Fogelman v. Aramco*, 920 F.2d 278 (5th Cir. 1991), *Kabadais v. Golden Union*, 1996 AMC 2137 (E.D.Va. 1996).

## FORUM NON CONVENIENS

Determination of a *forum non conveniens* issue is a two-step process. First, a

---

1   In this regard, the Court must assume foreign law is adequate unless Plaintiff demonstrates the inadequacy of foreign law. *McClelland Engineers, Inc. v. Munusamy*, 784 F.2d 1313, 1319 (5th Cir. 1986), *overruled on other grounds, In re: Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147 (5th Cir. 1987).

choice of laws analysis is made as to the applicable law under the tests established by *Lauritzen/Rhoditis*.

Secondly, if foreign law is determined to be applicable, the public/private interest factors test, established by *Gulf Oil Corporation v. Gilbert, infra*, is applied to determine whether or not the court should decline jurisdiction.

In *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the landmark decision in this area, the Supreme Court set forth the tests to determine when the doctrine of *forum non conveniens* applies, listing two general categories, public interest and private interest factors.

The *Gilbert* court considered the following important considerations with regard to these categories, commenting:

> Important considerations [with regard to the private interest of the litigants] are the relevant ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial****.

> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. 333 U.S. 508, 509

These factors have been fleshed out further in subsequent litigation. In *Butler v.*

*Ben Line Steamers*, 1987 AMC 627 (C.D. Cal. 1986), the court noted "The public interest factors include: (1) Administrative difficulties flowing from court congestion; (2) Imposition of jury duty on people of a community that has no relation to the litigation; (3) Local interest in having localized controversies decided at home; (4) The interest in having the case tried in a forum familiar with the law governing the actions; and (5) the avoidance of unnecessary problems and conflicts of law.

Here, the United States has little, if any, interest in this action since it concerns a Guatemalan seaman working on a ship in the Mediterranean. The ship is of foreign registry and owned and operated by foreign entities. Clearly the public interest factors weigh heavily in favor of a Netherlands forum, pursuant to the contract of employment. See, *Johnson v. Nielsen*, 1995 AMC 2662 and *Cruz v. Maritime Company of the Philippines*, 549 F. Supp. 285 (S.D.N.Y. 1982).

As to the private interest factors, these were listed in the *Butler* case as follows:

> (1) Relative ease of access to sources of proof; (2) Availability of compulsory process for attendance of unwilling witnesses and cost of obtaining attendance of willing witnesses; (3) Possibility of viewing the subject premises; and (4) All other factors which render trial expeditious and inexpensive. 631.

Here, absolutely no sources of proof have any contacts with the United States. MR. JUAREZ's pre-employment examination was conducted in Puerto Barrios, Guatemala. MR. JUAREZ was initially hospitalized in Genova, Italy. After being treated in Italy, MR. JUAREZ was discharged and returned home to Guatemala, where he sought medical treatment. All of these corporate parties are foreign. MR. JUAREZ does not claim to have

been injured while aboard the M/V MELODY, making viewing of the premises irrelevant.

Although in general a plaintiff's selection of forum is accorded some deference, under the circumstances present here, Plaintiff's selection of forum is entitled to little weight. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 70 L.Ed. 2d 419, 102 S.Ct. 252 (1981); *Murray v. British Broadcasting Corp.*, 81 F.3d 287 (2nd Cir. 1996); *Ekaterini Ioannides v. Marika Maritime Corp.*, 928 F. Supp 374 (S.D.N.Y. 1996).

In *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 70 L.Ed. 2d 419, 102 S.Ct. 252 (1981), plaintiff sought to recover from defendants on the basis of negligence or strict liability, the latter theory not recognized under Scottish law, and admitted the action was filed in the United States because its laws regarding liability, capacity to sue, and damages, were more favorable to plaintiffs' position than those of Scotland.    The Supreme Court held that the plaintiff may not defeat a motion to dismiss on grounds of *forum non conveniens* merely by showing the substantive law that would be applied in the alternate forum is less favorable to plaintiffs than that of the chosen forum.  More importantly, in reinstating the trial court's decision, the Supreme Court, commented, in part:

> "The district court's distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified.  In Koster, the Court indicated that a plaintiff's choice of forum is entitled to great deference when the plaintiff has chosen the home forum. ****.  When the home forum has been chosen, it is reasonable to assume that this choice is convenient.  When the plaintiff is foreign, however, this assumption is much less reasonable.  Because the central purpose of any forum non conveniens inquiry, a foreign plaintiff's choice deserves less deference." *Id.* at 266.

See also, *Murray v. British Broadcasting Corp.*, 81 F.3d at 290 and *Ekaterini Ioannides v. Marika Maritime Corp.*, 928 F. Supp. at 378.

CASE NO. 00-6098-CIV-JORDAN

Moreover, here MR. JUAREZ's employment contract succinctly provides for forum in Rotterdam, The Netherlands. Such clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Here there is no evidence that the Rotterdam forum is unreasonable. Indeed, if the United States is convenient for Plaintiff, there is no reason that Rotterdam would be any different, especially in light of the fact that most, if not all, potential witnesses and evidence are located in Europe or in Guatemala. See, *Ekaterini Ioannides v. Marika Maritime Corp.*, supra.

## COUNT I: DEATH ON HIGH SEAS ACT

Plaintiff contends that the Death on High Seas Act is applicable. 46 USC app. §761 states:

> Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensured.

46 USC app. §762 provides

> The recovery in such suit shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought...

As stated above, the laws of the United States are not applicable to this claim.

13

Moreover, Mr. Estrada Juarez died on land at or near his home in Guatemala from incurable prostrate cancer and liver cancer that was not caused from any act or neglect of the Defendants that occurred on the "high seas." Therefore, the Plaintiff would, in any event, be precluded from maintaining any claim against any of the defendants under DOHSA. This is not a situation where the MR. JUAREZ sustained injuries from an accident that occurred on board a vessel on the high seas from which the MR. JUAREZ would have recovered had he received prompt medical treatment. *cf. Motts v. M/V Green Wave*, 2000 U.S. App. LEXIS 9140 (5th Cir. May 9, 2000).

Assuming *arguendo* that DOHSA is applicable, which this Defendant denies, any damages permissible under DOHSA are limited to the pecuniary loss only of the persons for whose benefit the suit is brought. In general, the measure of recovery is the actual pecuniary benefits the beneficiaries could reasonably expected to have received from the continued life of the decedent. DOHSA does not authorize recovery for the decedent's own losses, nor does it allow damages for non-pecuniary losses. *Philomena Dooley v. Korean Air Lines Co., Ltd.*, 524 U.S. 116, 118 S.Ct. 1890, 141 L. Ed.2d 102, *1998 AMC 1940 (1997); Mobile Oil Co. v. Higginbotham*, 436 U.S. 618, 1978 AMC 1059 (1978). There can be no recovery under DOHSA for loss of society, loss of love and affection, loss of companionship, loss of consortium, or mental anguish. *Philomena Dooley v. Korean Air Lines Co., Ltd.*; *Mobile Oil Co. v. HIgginbotham, supra*. Nor does DOHSA permit recovery of pre-death pain and suffering under any "survival" causes of action, since it expressly allows only awards for pecuniary losses to the statutory beneficiaries. *Philomena Dooley*

14

CASE NO. 00-6098-CIV-JORDAN

*v. Korean Air Lines Co.*; *Mobile Oil Co. v. Higginbortham, supra*. DOHSA preempts any "survival" causes of action being brought under the general maritime law or state law. *Philomena Dooley v. Korean Air Lines Co., Ltd.*; *Mobile Oil Co. v. Higginbortham, supra*; *Jacobs v. Northern King Shipping Co., Ltd.*, 1999 AMC 2341 (5th Cir. 1999).

### COUNT II: JONES ACT CLAIM:

Alternatively, Plaintiff seeks to assert a claim under the Jones Act. 46 U.S.C. app. §688 provides

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such actions all statutes of the United States modifying or extending the common law right or remedy in cases of personal injury to railway employees shall appy; and.in cases of the death any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right to trial by jury, and in such action all statutes of the United States confirming or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such action shall be in the court of the district in which the defendant employer resides or in which his principal office is located.

Assuming *arguendo* that the Jones Act is applicable which, as discussed above, it is not, the personal representative of Plaintiff's estate would also be limited to the recovery of *pecuniary* damages only. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 323, 112 L.Ed. 275 (1990); *Miller v. American President Lines*, Ltd., 989 F.2d 1450, 1457, 1993 AMC 1217, (6th Cir. 1993). Furthermore, any rights that the MR. JUAREZ has under the Jones Act may only be asserted as against the decedent's employer, ICS ISLAND CRUISE SERVICES N.V. *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 1949 AMC 1031 (1949).

### COUNT III - UNSEAWORTHINESS CLAIM:

Assuming *arguendo* that the general maritime laws of the United States apply to these claims which, as discussed above, they do not, then the Plaintiff is precluded from maintaining any claim for unseaworthiness as against any of the proposed named Defendants. *Miles v. Apex Marine Corporation*, 498 U.S. 19, 111 S.Ct. 317, 326, 112 L.Ed.2d 275, 1991 AMC 1 (1990). Rather, since MR. JUAREZ has died, and assuming *arguendo* that the substantive law of the United States applies, which it does not, then any remedies that he or his survivors would have in this action would be only those claims that are provided by the Jones Act. *Miles v. Apex Marine Corporation, supra.* As discussed above, Mr. Estrada Juarez would not be entitled to assert any claim under DOHSA.

### COUNT IV - MAINTENANCE AND CURE CLAIM

All maintenance and cure expenses submitted on behalf of the MR. JUAREZ have been paid. Moreover, MR. JUAREZ was not entitled to receive maintenance and cure for palliative treatment. *Farrell v. United States*, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949).; *Vella v. Fore Motor Co.*, 421 U.S. 1, 95 S.Ct. 1381, 43 L.Ed.2d 682 (1975); *Cox v. Dravo Corp.*, 517 F.2d 620 (3d Cir. 1975), cert. den. 423 U.S. 1020; *Rofer v. Head & Head, Inc.*, 226 F.2d 927 (5th Cir. 1955).

### COUNT V - ATTORNEYS FEES

All maintenance and cure expenses incurred up to the time of MR. JUAREZ's' death, that were submitted, have been paid. Therefore, even assuming *arguendo* that the

laws of the United States apply, which they do not, then the Plaintiff should not be entitled to recover any attorneys fees.

## COUNT VI - PUNITIVE DAMAGES

Assuming *arguendo* that the laws of the United States apply, which they do not, punitive damages are not recoverable under DOHSA or the Jones Act. *Mobile Oil Corp. v. Higginbotham, 436 U.S. 618, 56 L.Ed. 2d 581, 98 S.Ct. 2010 (1978); cf. Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 325, 112 L.Ed. 2d 275 (1990)*; Motts v. M/V Green Wave, 2000 U.S. App. LEXIS 9140 (5th Cir. May 9, 2000); Miller v. American President Lines,* 989 F.2d 1450, 1458, 1993 AMC 1217 (6th Cir. 1993)*; Kopczynski v. The Jacqueline,* 742 F.2d 555, 560-61 (9th Cir. 1984)*; Bergen v. F/V St. Patrick,* 816 F.2d 1345, 1347 (9th Cir. 1987).

Nor are punitive damages recoverable for the alleged willful and callous failure of an employer of a seaman to pay maintenance and cure to an injured seaman. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed. 2d 275 (1990)*; Motts v. M/V Green Wave, 2000 U.S. App. LEXIS 9140 (5th Cir. May 9, 2000); Guevara v. Maritime Overseas Corporation,* 59 F.3d 1496 (5th Cir. 1995) (*en banc*)*; cf. Miller v. American President Lines, Ltd.*, 989 F.2d 1450, 1457 1993 AMC 1217 (6th Cir. 1993).

WESTRIA HODINGS, INC. recognizes that the Eleventh Circuit previously held in *Hines v. J.A. LaPorte, Inc.*, 820 F.2d 1187, 1988 AMC 1721 (11th Cir. 1987), that punitive damages may be awarded in addition to attorneys fees for the arbitrary and willful withholding of maintenance and cure benefits to an injured seaman.  That decision was

decided prior to the Supreme Court deciding *Miles v. Apex Marine Corp., supra.* Furthermore, in rendering its decision, *Hines v. J.A. LaPorte, Inc.* relied on the reasoning expressed by the Fifth Circuit *In Complaint of Merry Shipping, Inc.*, 650 F.2d 622, 1981 AMC 2839 (5th Cir. 1981). That decision has now been expressly overruled by *Guevara v. Maritime Overseas Corporation*, 59 F.3d 1496 (5th Cir. 1995) (*en banc*).

## COUNT VII - PREJUDGMENT INTEREST

If this matter were governed by U.S. admiralty law, which it is not, then under certain circumstances the award of prejudgment interest is within the discretion of the Court to award in connection with certain pecuniary damages. The claim for prejudgment interest however, creates a separate cause of action.

## INSUFFICIENCY OF PROCESS, INSUFFICIENCY OF SERVICE OF PROCESS, AND LACK OF *IN PERSONAM* JURISDICTION

Defendants, WESTRIA SHIPPING, MEDITERRANEAN SHIPPING CRUISES, and ISLAND CRUISE SERVICE N.V. further contend that there has been insufficiency of process, insufficiency of service of process and that the Court lacks *in personam jurisdiction* over the persons of these Defendants. The record before this Court shows as follows:

As stated above, Plaintiff's alleged claims arise while the M/S "MELODY" was trading in the Mediterranean. The vessel had not entered into any port in the United States from the time that MR. JUAREZ first joined the vessel in Italy until he was repatriated home to Guatemala. There is no connexity or causal connection between Plaintiff's claims

and the United States, and more specifically, the State of Florida. Accordingly, this Court lacks specific personal jurisdiction over these Defendants. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984); *R.F. Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977)("[T]he relationship among the defendant, the forum, and the litigation...[is] the central concern of the inquiry into personal jurisdiction."); *Asarco, Inc. V. Glenara, Ltd.*, 912 F.2d 784 (5th Cir. 1990); *Nicolaisen v. Toei Shipping Co., Ltd.*, 722 F.Supp. 1162, 1164-1165 (D.N.J. 1989), *aff'd without opinion*, 887 F.2d 262 (3d Cir. 1989, *motion for leave to proceed in forma pauperis denied*, 495 U.S. 928, 110 S.Ct. 2166, 109 L.Ed.2d 495 (1990); *Ocean Chemical Transport, Inc. v. Cotton*, 702 So.2d 1272 (Fla. 1st DCA 1997); *American Overseas Marine Corp. v. Patterson*, 632 So.2d 1124, 1127 (Fla. 1st DCA) (and cases cited therein), *rev. denied*, 641 So.2d 1346 (Fla. 1994); *Spanier v. Suisse-Outremer Reederei A.G.*, 557 So.2d 83 (Fla. 3d DCA 1990); *cf. Elmlund v. Mottershead,* 750 So.2d 736 (Fla. 3d DCA 2000).

Defendant, WESTRIA HOLDINGS, INC., has appeared in this matter as the Claimant Owner of the M/V MELODY, *in rem*. Plaintiff has attempted to obtain service on WESTRIA HOLDINGS, INC. by serving the summons and Amended Complaint on "CT Corporation System" for "MEDITERRANEAN SHIPPING COMPANY (USA) INC., AS MANAGERS FOR WESTRIA HOLDINGS, INC." Previously served in this cause on May 23, 2000 is the Affidavit of ANTONIA GONZALEZ PEREZ, President of WESTRIA HOLDINGS, INC., which establishes that WESTRIA HOLDINGS, INC. is a Panamanian

corporation and is the owner of the M/S "MELODY;" that WESTRIA HOLDINGS INC. has no offices in the United States; that it has no bank accounts in the United States; that it owns no property in the United States; that it has no agents in the United States; that it pays no taxes in the United States; that it does not have any United States citizens working for it; that it does not hire crew members in the United States; and that the M/S "MELODY" is operated from primary offices c/o Geneva. Furthermore, the Plaintiff previously scheduled depositions to be taken of representatives of MEDITERRANEAN SHIPPING COMPANY (USA) INC. to be held in New York in December, 2000.[3] It is expected that this testimony will affirmatively establish that MEDITERRANEAN SHIPPING COMPANY (USA) INC. is not the manager or agent for WESTRIA HOLDINGS, INC., nor is it authorized to accept service of process on behalf of WESTRIA HOLDINGS, INC.

Plaintiff has also attempted to obtain service of process on the entity described as "ICS ISLAND CRUISE SERVICES N.V." by leaving a copy of the Summons and Amended Complaint at the premises of the Defendant, C.C.E.T., INC., as the purported agent of "ICS ISLAND CRUISE SERVICES, N.V." Attached hereto as Exhibit "C" is the Affidavit of Evita Arrundell, director of ISLAND CRUISE SERVICE, N.V., establishing that C.C.E.T., INC. is not authorized to accept service of process on its behalf. The Affidavit further establishes that ISLAND CRUISE SERVICE, N.V. is a corporation organized and existing under the laws of the Netherlands Antilles, that maintains its principal place of business at 43 Cole

---

[3] Plaintiff's counsel was required to cancel these depositions due to an illness of a family member. It is anticipated that these depositions will be re-scheduled at a later time.

Bay, Philipsburg, St. Maarten, Netherlands Antilles; that it is not and never has been authorized, qualified, registered, licensed or otherwise chartered under the laws of the State of Florida to do business in that state, or in any other State in the United States of America; that it does not own or lease any property in Florida, or in any other State in the United States of America; that it does not maintain any office, facility or other place of business in the State of Florida; that it does not maintain any general agents in Florida; it has not appointed any resident agent to accept service of process on its behalf in Florida; it does not maintain any bank accounts, either in its name or jointly with any other person, firm, corporation or other entity in the State of Florida; it does not pay any taxes to the State of Florida or to any county, municipal, or other local government in the State of Florida; it does not hold any business or occupational licenses issued by the State of Florida or by any county, municipal, or other local government in the State of Florida; it does not advertise in any publication based in Florida nor in any publication aimed exclusively at residents in the State of Florida; it has no answering service, mailing address, directory listing or telephone number in the State of Florida; it has no officers, directors, employees, or agents in the State of Florida, or in any other State of the United States. Although ISLAND CRUISE SERVICE, N.V. entered into certain letter agreements with C.C.E.T., INC. to provide travel and other related services, nevertheless, at no time was C.C.E.T., Inc. ever authorized to accept service of process on behalf of ISLAND CRUISE SERVICE N.V. in the State of Florida under the terms of these Letter Agreements, or otherwise.

21

CASE NO. 00-6098-CIV-JORDAN

The Affidavit of Felice Compagna, President of C.C.E.T., Inc., dated November 15, 2000, a copy of which is attached as Exhibit "D," establishes that C.C.E.T., INC. was never authorized to accept service or process, nor id it ever agree to accept service of process, on behalf of the entity described as "ICS ISLAND CRUISE SERVICES N.V." Rather, on or about August 28, 2000, Mr. Compagna sent a letter to David Rash, counsel for the Plaintiff in the above-styled cause, a copy of which is attached to Mr. Compagna's Affidavit as Exhibit "C." Mr. Compagna advised counsel for the Plaintiff in that letter that C.C.E.T., INC. was not the agent for the entity described as "I.C.S. N.V. (ISLAND CRUISE SERVICES N.V.)" and was not authorized to accept service on their behalf. Mr. Compagna's Affidavit further establishes that at no time did he or any other employee of C.C.E.T., Inc. have any direct communication with the decedent, Ranulfo Estrada Juarez; that C.C.E.T., INC. has never employed Ranulfo Estrada Juarez; that C.C.E.T., INC. is not and never has been an agent for WESTRIA HOLDINGS, INC., MEDITERRANEAN SHIPPING CRUISES, or MEDITERRANEAN SHIPPING COMPANY (USA), INC.; and that C.C.E.T., INC. never owned, chartered, operated, managed, controlled, or acted as an agent for the M/S "MELODY."

It was expected that the previously scheduled depositions to be taken from representatives of MEDITERRANEAN SHIPPING COMPANY (USA), INC. would help establish that the Court lacks in personam jurisdiction in Florida over the person of the Defendant, MEDITERRANEAN SHIPPING CRUISES. Since these depositions were recently cancelled, through no fault of any of the parties, the undersigned needs additional

22

time to file affidavits supporting its position that the Court lacks *in personam* jurisdiction over the person of the Defendant, MEDITERRANEAN SHIPPING CRUISES.  It is anticipated that these Affidavits will be filed within the next twenty (20) days.  These Affidavits are anticipated to establish that the M/S MELODY primarily operates throughout the Mediterranean and other foreign ports, and only comes into Florida for about ten days each year, arriving in the early morning and leaving later that same afternoon.

That in view of the foregoing, there has been insufficiency of process, insufficiency of service of process and the Court lacks *in personam* jurisdiction over WESTRIA HOLDINGS, INC., ISLAND CRUISE SERVICE, N.V. and MEDITERRANEAN SHIPPING CRUISES.  Accordingly, the purported service must be quashed and the Amended Complaint dismissed as against those entities. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984); *R.F. Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977); *Asarco, Inc. V. Glenara, Ltd.,* 912 F.2d 784 (5th Cir. 1990); *Nicolaisen v. Toei Shipping Co., Ltd.,* 722 F.Supp. 1162, 1164-1165 (D.N.J. 1989), *aff'd without opinion,* 887 F.2d 262 (3d Cir. 1989, *motion for leave to proceed in forma pauperis denied,* 495 U.S. 928, 110 S.Ct. 2166, 109 L.Ed.2d 495 (1990); *Ocean Chemical Transport, Inc. v. Cotton*, 702 So.2d 1272 (Fla. 1st DCA 1997); *American Overseas Marine Corp. v. Patterson*, 632 So.2d 1124, 1127 (Fla. 1st DCA) (and cases cited therein), *rev. denied*, 641 So.2d 1346 (Fla. 1994); *Spanier v. Suisse-Outremer Reederei A.G.*, 557 So.2d 83 (Fla. 3d DCA 1990); *cf. Elmlund v. Mottershead,* 750 So.2d 736 (Fla. 3d DCA 2000).

CASE NO. 00-6098-CIV-JORDAN

In view of the foregoing, together with other matters appearing of record, the Defendants, WESTRIA HOLDINGS, INC., MEDITERRANEAN SHIPPING CRUISES, ISLAND CRUISE SERVICE N.V. (identified in the Amended Complaint as "ICS ISLAND CRUISE SERVICES N.V.") and C.C.E.T., INC. pray that this Court will enter an Order dismissing the Amended Complaint filed against them.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true copy of the foregoing was served by mail to David C. Rash, Esq., 88 N.E. 168th Street, N. Miami Beach, Florida 33162, on November 22, 2000; Cary R. Weiner, Esq., DeOrchis, Walker & Corsa, L.L.P., 61 Broadway, 26th Floor, New York, New York 10006-2802; and Gale Hawkes, Esq., DeOrchis, Corsa & Hillenbrand, L.L.P., 2650 Biscayne Boulevard, Miami, Florida 33137.

HAYDEN AND MILLIKEN, P.A.
5915 Ponce de Leon Blvd., #63
Miami, Florida 33146
Telephone:   (305) 662-1523
Facsimile:   (305) 663-1358

By: _____
       Richard R. McCormack
       Fla. Bar No. 168850

# CREW AGREEMENT

VESSEL: **M/S Melody**

LAST NAME: **Estrada Juarez**    NAME    **Ranulfo**    MIDDLE NAME: **Alcira**

DATE OF BIRTH: __06-29-49__ Passport # __2128124__ Nationality __Guatemala__

HOME ADDRESS: Colonia Maria Luisa I, Santo Tomas de Castilla

BENEFICIARY: Mariquita Gudiel ( Wife)

RANK __2nd. Cook Saucier__    COMMENCEMENT DATE __05-27-1999__
EXPIRATION DATE __04-26-2000__

Duration of contract can be extended or reduced up to two months if Management deems necessary.

1) Upon and subject to the terms, provisions and conditions hereof the Employer hereby employs the Employee to perform personal service on board the above vessel and/or any other vessel to be designated. And the Employee hereby accepts such employment and agrees to perform such services. Transfer to another vessel may occur at the Employer's discretion.
For first time employees, the first two months on board shall be considered a probationary period during which time Management will evaluate the employees performance. If management finds employees performance unsatisfactory Management has the right to terminate employment with a seven (7) days notice, paying the wages until the date of sign-off.

2) The Employee at all times during his/her employment shall be subject and directly responsible to his/her department head or other person designated by the Employer who shall designate on and off duty hours, specific duties to be performed by the Employee and other details of employment Employee shall perform as designated, neatly, efficiently and otherwise in a manner satisfactory to the department head or other such person. Employee will be personally responsible for any damage or injury caused by Employee to the vessel, any property thereon, or any person.

3) Employee must at all times comply strictly with applicable rules of conduct promulgated by the Employer and the regulations of the vessel, as the same may be from time to time in larged, modified, altered or rescinded in whole or in part by the Employer. Breach of any such rules of conduct may subject Employee to fines and/or discharge. The Employer undertakes no responsibility for you not being able to land a particular country by the reason of you not having the proper documents or for any other reason.

**4A. NON-TIP AREA PERSONNEL**

The Employer shall pay Employee for all his services the monthly amount of $ __800.00__ in US funds which includes basic salary, fixed overtime of 30 hours weekly, vacation and holidays.

**4B. TIP AREA PERSONNEL**

As a "Tipping Employee", the Employer shall pay Employee a total monthly income of including basic salary, overtime, vacations, and holidays of $ __N/A__ plus Bonus and/or commissions as earned.

**4C. ALL PERSONNEL**

The Employer may withhold from any Employee of any class such amount as Employer deems necessary to cover fines or other costs of expenses to which such Employee is subject hereunder. Such withholding shall not relieve the Employee from any of his/her obligations hereunder, except to the extent amount withheld has actually been used by Employee upon by Employer to apply against amounts owed and payable by

**Effective 10-29-16**

EXHIBIT "A"

Employee. Any amounts withheld and not so expended shall be remitted by the Employer to the Employee upon termination of his/her employment. Periodic salary payments shall be made at the end of the month. Upon termination of employment, in arrears for the period then ending

In the event of injury or illness of an Employee while in the service of the vessel, the Employer will pay as sick pay and maintenance in accordance with the applicable statutes, regulations, and general maritime law as follows:

1) In the event of a job related injury or illness of an Employee while in the service of the vessel, the Employer will pay sick pay based on the basic salary, $__347.00__ Until the Employee has reached maximum medical improvement but not to exceed three (3) days at which time the Employer will determine if Employee should be repatriated. If and when repatriated for said illness/injury Employer will pay Employee basic salary for a maximum of 60 days.

2) The Employer shall not be liable for any Employee's injury or illness which arose from intentional misconduct on the part of the Employee, or arising from pre-existing injury or illness which was not disclosed by the Employee to the Employer prior to the commencement of the employment.

5) This employment may be terminated at any time by Employee by at least fourteen (14) days written notice thereof to the Employer and by Employer at any time without notice, for cause. Cause shall include any breach of Agreement or the rules of conduct, smuggling or other illegal activity, incompetence, inability to perform for any reason, disobedience, impertinence, tardiness, improper behavior towards or in the presence of passengers, or other conduct which is cause for discharge under generally accepted standards of employment of the type herein described for the mentioned cruise vessel.

ADDITIONAL CAUSES: Employer may terminate Employee's employment at anytime as follows:

(a) On fourteen (14) days notice or 14 days basic salary

(b) For failure to pass a physical examination by a doctor designated by the Employer either before or after the execution of this contract.

(c) Due to the loss of vessel or loss of capacity of navigation.

(d) Lay up of vessel or loss capacity of navigation

(e) Sale of vessel or change of flag

(f) Illness, accidental, and Act of God whether or not it directly affects Employee

(g) Idleness of vessel for any reason whatsoever.

In the event of casualty, fire or other accident to the vessel whereby Employee's effects are damaged or lost, the Employer will pay compensation of up to a maximum of $__3000.00__. Furthermore, it remains clearly understood that when an Employee leaves the vessel to go ashore on Employee's own time, should Employee find him/herself involved in personal problem the result of which Employee loses property or suffers and accident or causes loss of lesions to other persons, the Employer does not assume any responsibility of such losses or lesions for which the Employee shall be solely responsible.

6. CONTRABAND

Infractions concerning contraband or the possession of narcotics will be immediate cause for dismissal. Any staff member violating contraband laws of the country to which vessel trades or found to be in possession of narcotics will forfeit all wages, traveling expenses and the like accruing both before and after such infractions become known to the Employer. All such contraband may be seized by the Employer's representative without compensation. It is hereby expressly agreed and understood that neither the Owners of the vessel on which you serve, nor the Master of Employer will be responsible for any consequence, fines, penalties, imprisonment, etc. that you may suffer or have imposed as a result of your illegal possessions, smuggling, dealing or trafficking on drugs or other prohibited substances on board the vessel or ashore.

Effective 10-29-96

7. The **Employee** will be responsible for his travel expenses from his country of origin to port of embarkation as well as furnish the **Employer** with a return plane ticket from Miami to his country of origin said ticket will be valid for one (1) year and booked with a regularly scheduled airline (charter flight coupons not acceptable), or the Employee can provide funds to cover cost of an airline ticket. Employer whenever possible will extend to Employee (for employees account ) discounted airline tickets to join the vessel at port of embarkation.

On completion of contract **Employer** will provide airline ticket from port of debarkation to Guatemala

Employer will deduct USD 75.00 monthly from salary for duration of contract, and hold same in escrow. Upon completion of contract money held in escrow will be returned to the crewmember.

## WORKING CONDITIONS

1) One complete set of work uniforms will be provided , care and maintenance of said uniform to be the sole responsibility of **Employee** , laundering for same will be provided . It is the **Employee's** responsibility to ensure that said work uniform be maintained in good condition and within the standards of good grooming. If **Employee** is asked to purchase a replacement uniform because it does not meet said standard , new set of uniform will be sold to **Employee** at a discounted price.

2) Room & board will be furnished at no expense to the Employee

3) No taxes are deducted aboard the vessel. Payments of taxes will be responsibility of the Employee as deemed by their respective country or origin.

4) The Employee must have prior to employment valid passport for minimum of one year and both C and D visas from the United States Embassy or Consulate valid for at least six months, and a clean bill of health issued by an accredited doctor. In any event if additional medical examination is required , cost of same will be deducted from first month's salary. Failure to pass examination will immediately disqualify you and you will be returned to your country of origin at your own expense.

5) Those personnel assigned to the Bar, and consigned the bar stock at commencement of contract will be solely responsible for reconciling of said stock at the completion of contract. It is understood and agreed that from time to time said bar stock will be subject to audit.

6) Uniforms: Employee will receive the first set of uniforms free, each subsequent set provided will be paid by the Employee at full cost of uniform.

I, the undersigned **Employee**, hereby confirm that I have read this **Agreement of Engagement** in its entirety, and that I have received copy of the same and hereby agree to be bound by the terms contained above which are subject to Dutch law with Rotterdam court jurisdiction.

EMPLOYEE
RANULFO ESTRADA JUAREZ

_____
I.C.S. N.V.
FOR THE EMPLOYER

DATE : 05-21-99

Effective: 19-29-96

**ICS**

## Island Cruise Services N.V.

Piazza Dante 6** Genova, Italy**Phone 010 581835

May 21,1999

To Whom it May Concern:

The bearer of this letter, _Mr. Estrada, Ranulfo_ has been
hired by our company ISLAND CRUISE SERVICES, N.V. to work
on board the passenger vessel _M/S Melody_ of Panamanian
Registry.

_Mr. Estrada, Ranulfo_ is traveling to Genova, Italy to join
the _M/S Melody_ on    May 27,1999.
Contact information  for the vessels agents is as follow:

   ICS Island Cruise Services N.V.
   Piazza Dante 6** 16121 Genova, Italy
   Telephone:   39-010-581835
   CONTACT: Capt. Luigi Marre

_Mr. Estrada, Ranulfo_ upon arriving in  Genova, Italy
will be met by ICS agent / representative and transfered
to the Vessel.

We kindly request that you allow   _Mr. Estrada, Ranulfo_
to enter your country for the purpose of joining the above
referenced vessel.

Should you have any questions, please do not hesitate to call
Capt. Luigi Marre.

Sincerely yours,

EXHIBIT "B"

JUAREZ
EXHIBIT NO. 4
2-8-00

AFFIDAVIT

BEFORE ME, the undersigned authority, personally appeared EVITA ARRUNDELL, who after being duly sworn by me, deposes and says:

1.      That your Affiant is a Director of ISLAND CRUISE SERVICE, N.V., and she has personal knowledge of the matters contained herein.

2.      That ISLAND CRUISE SERVICE N.V., also known as "I.C.S., N.V." and "ICS ISLAND CRUISE SERVICES N.V.," is a corporation organized and existing under the laws of the Netherlands Antilles, that maintains its principal place of business at 43 Cole Bay, Philipsburg, St. Maarten, Netherlands Antilles.

3.      That ISLAND CRUISE SERVICE N.V. is not and never has been authorized, qualified, registered, licensed or otherwise chartered under the laws of the State of Florida to do business in that state, or in any other State in the United States of America;

4.      That ISLAND CRUISE SERVICE N.V. does not own or lease any property in Florida, or in any other State in the United States of America;

5.      That ISLAND CRUISE SERVICE N.V. does not maintain any office, facility or other place of business in the State of Florida;

6.      That ISLAND CRUISE SERVICE N.V. does not maintain any general agents in Florida;

7.      That ISLAND CRUISE SERVICE N.V. has not appointed any resident agent to accept service of process on its behalf in Florida;

8.      That ISLAND CRUISE SERVICE N.V. does not maintain any bank accounts, either in its name or jointly with any other person, firm, corporation or other entity in the State of Florida;

EXHIBIT "C"

Affidavit of Evita Arrundell
Page 2

9.     That ISLAND CRUISE SERVICE N.V. does not pay any taxes to the State of Florida or to any county, municipal, or other local government in the State of Florida;

10.    That ISLAND CRUISE SERVICE N.V. does not hold any business or occupational licenses issued by the State of Florida or by any county, municipal, or other local government in the State of Florida;

11.    That ISLAND CRUISE SERVICE N.V. does not advertise in any publication based in Florida nor in any publication aimed exclusively at residents in the State of Florida;

12.    That ISLAND CRUISE SERVICE N.V. has no answering service, mailing address, directory listing or telephone number in the State of Florida;

13.    That ISLAND CRUISE SERVICE N.V. has no officers, directors, employees, or agents in the State of Florida, or in any other State of the United States;

14.    That on or about May 21, 1999, ISLAND CRUISE SERVICE N.V. hired RANULFO ESTRADA JUAREZ in Guatemala to serve as a 2nd Cook Saucier on behalf of ISLAND CRUISE SERVICE N.V. on board the M/V MELODY, of Panamanian Registry, pursuant to the terms and conditions of that certain Crew Agreement, a copy of which is attached as Exhibit "A."

15.    Pursuant to this Crew Agreement, RANULFO ESTRADA JUAREZ was flown from Guatemala to Genoa, Italy, where he joined the M/V "MELODY" on or about May 27, 1999.

16.    On or about December 19-20, 1999, RANULFO ESTRADA JUAREZ was

Affidavit of Evita Arrundeil
Page 3

16.    On or about December 19-20, 1999, RANULFO ESTRADA JUAREZ was repatriated by aircraft from Genoa, Italy to his home country of Guatemala. At no time between May 21, 1999 and December 20, 1999 did the M/V MELODY ever arrive in a port in the United States.

17.    That on or about March 17, 1998, ISLAND CRUISE SERVICE, N.V. entered into that certain Letter of Agreement with C.C.E.T., Inc., a copy of which is attached hereto as Exhibit "B."

18.    That on or about October 5, 1999, ISLAND CRUISE SERVICE, N.V. entered into that certain renewal Letter Agreement with C.C.E.T., Inc., a copy of which is attached hereto as Exhibit "C."

19.    At no time was C.C.E.T., Inc. ever authorized to accept service of process on behalf of ISLAND CRUISE SERVICE, N.V. in the State of Florida under the terms of the forgoing Letter Agreement or renewal of that Letter Agreement, or otherwise.

FURTHER AFFIANT SAYETH NOT.

I declare, verify and state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed by me in St. Maarten, Netherlands Antilles on this _14_ day of November, 2000.

EVITA ARRUNDEIL

## CREW AGREEMENT

VESSEL: **M/S Melody**

LAST NAME: **Estrada Juarez**    NAME    **Ranulfo**    MIDDLE NAME: **Alcim**

DATE OF BIRTH: __06-29-49__ Passport # __2128124__ Nationality __Guatemala__

HOME ADDRESS: __Colonia Maria Luisa i, Santo Tomas de Castila__

BENEFICIARY: __Mariquita Gudiel ( Wife)__

RANK __2nd. Cook Saucier__    COMMENCEMENT DATE __05-27-1999__
    EXPIRATION DATE __04-26-2000__

Duration of contract can be extended or reduced up to two months if Management deems necessary.

1) Upon and subject to the terms, provisions and conditions hereof the **Employer** hereby employs the **Employee** to perform personal service on board the above vessel and/or any other vessel to be designated. And the **Employee** hereby accepts such employment and agrees to perform such services. Transfer to another vessel may occur at the Employer's discretion.
For first time employees, the first two months on board shall be considered a probationary period during which time Management will evaluate the employees performance. If management finds employees performance unsatisfactory Management has the right to terminate employment with a seven (7) days notice, paying the wages until the date of sign-off.

2) The **Employee** at all times during his/her employment shall be subject and directly responsible to his/her department head or other person designated by the **Employer** who shall designate on and off duty hours , specific duties to be performed by the **Employee** and other details of employment **Employee** shall perform as designated, neatly, efficiently and otherwise in a manner satisfactory to the department head or other such person. **Employee** will be personally responsible for any damage or injury caused by **Employee** to the vessel, any property thereon, or any person.

3) **Employee** must at all times comply strictly with applicable rules of conduct promulgated by the **Employer** and the regulations of the vessel, as the same may be from time to time in larged , modified, altered or rescinded in whole or in part by the **Employer** . Breach of any such rules of conduct may subject **Employee** to fines and/or discharge. **The Employer** undertakes no responsibility for you not being able to land a particular country by the reason of you not having the proper documents or for any other reason.

**4A. NON-TIP AREA PERSONNEL**

The **Employer** shall pay **Employee** for all his services the monthly amount of **$ __800.00__** in US funds which includes basic salary, fixed overtime of 30 hours weekly, vacation and holidays.

**4B. TIP AREA PERSONNEL**

As a "Tipping **Employee**", the **Employer** shall pay **Employee** a total monthly income of including basic salary , overtime, vacations, and holidays of $ __N/A__ plus Bonus and/or commissions as earned.

**4C. ALL PERSONNEL**

The **Employer** may withhold from any **Employee** of any class such amount as **Employer** deems necessary to cover fines or other costs of expenses to which such **Employee** is subject hereunder. Such withholding shall not relieve the **Employee** from any of his/her obligations hereunder , except to the extent amount withheld has actually been used by **Employee** upon by **Employer** to apply against amounts owed and payable by

                                                                    Effective 10-29-96

EXHIBIT "A"

**Employee**. Any amounts withheld and not so expended shall be remitted by the Employer to the Employee upon termination of his/her employment. Periodic salary payments shall be made at the end of the month. Upon termination of employment, in arrears for the period then ending

In the event of injury or illness of an Employee while in the service of the vessel, the Employer will pay as sick pay and maintenance in accordance with the applicable statutes, regulations, and general maritime law as follows:

1) In the event of a job related injury or illness of an Employee while in the service of the vessel, the Employer will pay sick pay based on the basic salary, $___347.00___ Until the Employee has reached maximum medical improvement but not to exceed three (3) days at which time the Employer will determine if Employee should be repatriated. If and when repatriated for said illness/injury Employer will pay **Employee** basic salary for a maximum of 60 days.

2) The Employer shall **not be liable** for any Employee's injury or illness which arose from intentional misconduct on the part of the Employee, or arising from pre-existing injury or illness which was not disclosed by the Employee to the Employer prior to the commencement of the employment.

5) This employment may be terminated at any time by Employee by at least fourteen (14) days written notice thereof to the Employer and by Employer at any time without notice, for cause. Cause shall include any breach of Agreement or the rules of conduct, smuggling or other illegal activity, incompetence, inability to perform for any reason, disobedience, impertinence, tardiness, improper behavior towards or in the presence of passengers, or other conduct which is cause for discharge under generally accepted standards of employment of the type herein described for the mentioned cruise vessel.

**ADDITIONAL CAUSES:** Employer may terminate Employee's employment at anytime as follows:

(a) On fourteen (14) days notice or 14 days basic salary

(b) For failure to pass a physical examination by a doctor designated by the Employer either before or after the execution of this contract.

(c) Due to the loss of vessel or loss of capacity of navigation.

(d) Lay up of vessel or loss capacity of navigation

(e) Sale of vessel or change of flag

(f) Illness, accidental, and Act of God whether or not it directly affects Employee

(g) Idleness of vessel for any reason whatsoever.

In the event of casualty, fire or other accident to the vessel whereby Employee's effects are damaged or lost, the Employer will pay compensation of up to a maximum of $___3000.00___. Furthermore, it remains clearly understood that when an Employee leaves the vessel to go ashore on Employee's own time, should Employee find him/herself involved in personal problem the result of which Employee loses property or suffers and accident or causes loss of lesions to other persons, the Employer does not assume any responsibility of such losses or lesions for which the Employee shall be solely responsible.

**6. CONTRABAND**

Infractions concerning contraband or the possession of narcotics will be immediate cause for dismissal. Any staff member violating contraband laws of the country to which vessel trades or found to be in possession of narcotics will forfeit all wages, travelling expenses and the like accruing both before and after such infractions become known to the Employer. All such contraband may be seized by the Employer's representative without compensation. It is hereby expressly agreed and understood that neither the Owners of the vessel on which you serve, nor the Master of Employer will be responsible for any consequence, fines, penalties, imprisonment, etc. that you may suffer or have imposed as a result of your illegal possessions, smuggling, dealing or trafficking on drugs or other prohibited substances on board the vessel or ashore.

**Effective 10-29-98**

7. The Employee will be responsible for his travel expenses from his country of origin to port of embarkation as well as furnish the Employer with a return plane ticket from Miami to his country of origin said ticket will be valid for one (1) year and booked with a regularly scheduled airline (charter flight coupons not acceptable), or the Employee can provide funds to cover cost of an airline ticket. Employer whenever possible will extend to Employee (for employees account ) discounted airline tickets to join the vessel at port of embarkation.

On completion of contract Employer will provide airline ticket from port of debarkation to Guatemala.

Employer will deduct USD 75.00 monthly from salary for duration of contract, and hold same in escrow. Upon completion of contract money held in escrow will be returned to the crewmember.

## WORKING CONDITIONS

1) One complete set of work uniforms will be provided , care and maintenance of said uniform to be the sole responsibility of **Employee** , laundering for same will be provided . It is the **Employee's** responsibility to ensure that said work uniform be maintained in good condition and within the standards of good grooming. If **Employee** is asked to purchase a replacement uniform because it does not meet said standard , new set of uniform will be sold to **Employee** at a discounted price.

2) Room & board will be furnished at no expense to the Employee

3) No taxes are deducted aboard the vessel. Payments of taxes will be responsibility of the Employee as deemed by their respective country or origin.

4) The Employee must have prior to employment valid passport for minimum of one year and both C and D visas from the United States Embassy or Consulate valid for at least six months, and a clean bill of health issued by an accredited doctor. In any event if additional medical examination is required , cost of same will be deducted from first month's salary. Failure to pass examination will immediately disqualify you and you will be returned to your country of origin at your own expense.

5) Those personnel assigned to the Bar, and consigned the bar stock at commencement of contract will be solely responsible for reconciling of said stock at the completion of contract. It is understood and agreed that from time to time said bar stock will be subject to audit.

6) Uniforms: Employee will receive the first set of uniforms free, each subsequent set provided will be paid by the Employee at full cost of uniform.

I, the undersigned Employee, hereby confirm that I have read this **Agreement of Engagement** in its entirety, and that I have received copy of the same and hereby agree to be bound by the terms contained above which are subject to Dutch law with Rotterdam court jurisdiction.

| EMPLOYEE | I.C.S. N.V. |
| RANULFO ESTRADA JUAREZ | FOR THE EMPLOYER |

DATE :   05-21-99

Effective: 10-29-98



# CCET Travel

Telephone: (305) 573-9271 • Fax: (305) 573-9038

*"The Magic of Travel
your Vacation
our Obsession"*

March 17, 1998

Messrs
I.C.S., N.V.
43 Cole Bay
Philipsburg, St Maarten

Gentlemen:

This Letter of Agreement between C.C.E.T., INC. and I.C.S.,N.V. engages the services of C.C.ET.,INC to provide all travel related services as requested by I.C.S.; services to include:

- Assisting seaman with obtaining the required travel documentation i.e. visas, letter of travel, medical certificates, etc.

- Coordinating with recruiting agent, the travel arrangements from the seaman's country of origin to international gateway city.

- Coordinating travel by providing airline ticket, and transfers to/from airport to ship and/or hotel

- Providing Airport assistance.

- Advising port agents of seaman's arrival and providing flight information as coordinated by CCET.

From time to time I.C.S., may require C.C.E.T. to arrange for funds to be advanced to personnel for reasons of last minute repatriation. On these occasions it is agreed that C.C.E.T. will make arrangements for these payments and charge I.C.S. a minimal handling fee, not to exceed 5% (five percent) of monies advanced on behalf of I.C.S.

It is agreed that for the above services I.C.S., N.V. will pay C.C.E.T, INC. $2500.00 per month respectively for Mv Melody and Mv Rhapsody , $2200.00 per month for the Mv Monterey , plus cost of travel arrangemetns and costs incurred for documentation, transportation and/or hotel expenses.

Should additional ships be added to our service agreement, fees will be negotiated and agreed upon separately from the services subscribed herein.



EXHIBIT "B"

PAGE 1 OF 2

2300 Biscayne Boulevard • Miami, Florida 33137



# CCET Travel

Telephone: (305) 573-9271  ●  Fax:  (305) 573-9038

*"The Magic of Travel
your Vacation
our Obsession"*

-2-

Letter of Agreement - Drawn between C.C.E.T., INC. and I.C.S., N.V.

It is agreed and understood that these fees are inclusive of any and/or all overtime, weekend work required to provide the required services.

The terms of this agreement is for a duration of twelve (12) months and will be evaluated six (6) months from date of signature for consideration of costs and/or services which are not foreseen.

The Letter of Agreement is executed and agreed upon by the undersigned.

For and On Behalf Of
C.C.E.T, INC.

For and On  Behalf Of

Date: 3/17/98

Date:_____

Witness:_____

Witness:_____



# C.C.E.T., Inc

Phone (305) 573-9271 • Fax (305) 573-9038

October 5,1999

I.C.S.,N.V.
Cole Bay 43
Phillipsburg, St Maarten

RE:  Agreement Renewal

Gentlemen:

This letter of agreement between C.C.E.T., INC. and I.C.S., N.V. engages the services of C.C.E.T., INC. to provide all travel related services as requested by I.C.S.,NV. - services to include:

- Assisting seamen with obtaining the required travel documentation i.e. visas, letter of travel,etc
- Coordinating with recruiting agent travel arrangements from seaman's original point of travel
- Coordinating travel by providing airline tickets,hotel, transfers to/from vessel and or hotel
- Providing assistance at airport
- Advising port agents of seamans' arrival and providing flight arrangements as coordinated by CCET

From time to time I.C.S. may require C.C.E.T, INC. to arrange funds to be advanced to personnel for reasons of last minute repatriation, on these occasions it is agreed that CCET,Inc will make arrangements for these payments and charge I.C.S., N.V. a minimal handling fee not to exceed 5% (five per cent) of monies advanced on behalf of I.C.S., N.V.

It is agreed that fo rthe above services I.C.S., N.V. will pay C.C.E.T.INC the following monthly fee:

|  |  |
|---|---|
| MV Melody | $2,500.00 |
| Mv Monterey | $1500.00 |
| Mv Rhapsody | $1500.00 |

It is further understood and agreed that these fees are inclusive of any and/or all overtime, or weekend work needed to provide the required services.

The terms of this agreement is a term of twelve (12) months, and will be evaluated every six months from date of signature for consideration of costs and/or services which are not foreseen.

In acceptance of terms stipulated herein.

_____          _____
I.C.S., N.V.                                      C.C.E.T, INC.

Oct 12, 1999                                     Oct 1999
_____          _____
DATE                                              DATE

3050 Biscayne Blvd.
Suite 202
Miami FL. 33137

EXHIBIT  "C"

AFFIDAVIT

STATE OF FLORIDA      )
                              )SS
COUNTY OF MIAMI-DADE    )

BEFORE ME, the undersigned authority, personally appeared FELICE COMPAGNA, who after being duly sworn by me, deposes and says.

1.     That your Affiant is President of C.C.E.T., INC. and he has personal knowledge of the matters contained herein.

2.     That C.C.E.T., INC. is a Florida corporation authorized and doing business at Suite 202, 3050 Biscayne Boulevard, Miami, Florida 33137.

3.     That C C.E.T., INC. is engaged in the business of a travel agency.

4.     That on or about March 17, 1998, C.C.E.T., INC. entered into that certain Letter Agreement with ISLAND CRUISE SERVICES, N.V., a copy of which is attached hereto as Exhibit "A, regarding various services that were to be performed by C.C.E.T., INC. on behalf of ISLAND CRUISE SERVICES, N.V."

5.     That on or about October 5, 1999, C.C.E.T., INC. entered into that certain renewal Letter Agreement with ISLAND CRUISE SERVICES N.V., a copy of which is attached hereto as Exhibit "B."

6.     That on or about a copy of a Summons and Complaint were served on C.C.E.T., Inc., as the purported agent of "ICS ISLAND CRUISE SERVICES N.V.," in the matter of MAIQUITA GUDIEL DE JUAREZ, as surviving spouse and personal representative of the Estate of RANULFO ESTRADA JUAREZ vs. WESTRIA HOLDINGS INC , et. al.," pending in the United States District Court, Southern District of Florida, Case No 00-6098-CIV-JORDAN.

EXHIBIT "D"

Affidavit of Felice Compagna
Page 2

7.    C.C.E.T., INC. was never authorized to accept service of process, nor did it ever agree to accept service of process, on behalf of the entity described as "ICS ISLAND CRUISE SERVICES N.V."

8.    On or about August 28, 2000, your Affiant mailed a letter to David Rash, counsel for the Plaintiff in the foregoing described lawsuit, a copy of which is attached as Exhibit "C." Your Affiant advised Mr. Rash in that letter that C.C.E.T., INC. was not the agent for the entity described as "I.C.S., N.V. (ISLAND CRUISE SERVICES N.V.)" and was not authorized to accept service on their behalf.

9.    That at no time did the undersigned or any other employee of C.C.E.T. INC. have any direct communication with Ranulfo Estrada Juarez.

10.   That C.C.E.T., INC. has never employed Ranulfo Estrada Juarez.

11.   C.C.E.T., INC. is not and never has been an agent for WESTRIA HOLDINGS, INC., MEDITERRANEAN SHIPPING CRUISES. or MEDITERRANEAN SHIPPING COMPANY (USA), INC.

12.   C.C.E.T., INC. never owned, charterered, operated, managed, controlled, or acted as an agent for the M/S "MELODY."

FURTHER AFFIANT SAYETH NOT.

I declare, verify and state under penalty that the foregoing is true and correct Executed by me in Miami-Dade County, Florida on this _15_ day of November, 2000

FELICE COMPAGNA

# CCET Travel

Telephone: (305) 573-9271 • Fax: (305) 573-9038

*"The Magic of Travel your Vacation our Obsession"*

March 17, 1998

Messrs
I.C.S., N.V.
43 Cole Bay
Philipsburg, St Maarten

Gentlemen:

This Letter of Agreement between C.C.E.T., INC. and I.C.S.,N.V. engages the services of C.C.ET.,INC to provide all travel related services as requested by I.C.S.; services to include:

- Assisting seaman with obtaining the required travel documentation i.e. visas, letter of travel, medical certificates, etc.

- Coordinating with recruiting agent, the travel arrangements from the seaman's country of origin to international gateway city.

- Coordinating travel by providing airline ticket, and transfers to/from airport to ship and/or hotel

- Providing Airport assistance.

- Advising port agents of seaman's arrival and providing flight information as coordinated by CCET.

From time to time I.C.S., may require C.C.E.T. to arrange for funds to be advanced to personnel for reasons of last minute repatriation. On these occasions it is agreed that C.C.E.T. will make arrangements for these payments and charge I.C.S. a minimal handling fee, not to exceed 5% (five percent) of monies advanced on behalf of I.C.S.

It is agreed that for the above services I.C.S., N.V. will pay C.C.E.T, INC. $2500.00 per month respectively for Mv Melody and Mv Rhapsody , $2200.00 per month for the Mv Monterey , plus cost of travel arrangements and costs incurred for documentation, transportation and/or hotel expenses.

Should additional ships be added to our service agreement, fees will be negotiated and agreed upon separately from the services subscribed herein.

EXHIBIT "A"

2300 Biscayne Boulevard • Miami, Florida 33137



**CCET Travel**

Telephone: (305) 573-9271 ● Fax: (305) 573-9038

*"The Magic of Travel*
*your Vacation*
*our Obsession"*

-2-

Letter of Agreement - Drawn between C.C.E.T., INC. and I.C.S., N.V.

It is agreed and understood that these fees are inclusive of any and/or all overtime, weekend work required to provide the required services.

The terms of this agreement is for a duration of twelve (12) months and will be evaluated six (6) months from date of signature for consideration of costs and/or services which are not foreseen.

The Letter of Agreement is executed and agreed upon by the undersigned.

For and On Behalf Of
C.C.E.T, INC.

Date: 3/17/95

For and On Behalf Of

Date:_____

Witness:_____        Witness:_____



# C.C.E.T., Inc

Phone (305) 573-9271 • Fax (305) 573-9038

October 5, 1999

I.C.S., N.V.
Cole Bay 43
Phillipsburg, St Maarten

RE: Agreement Renewal

Gentlemen:

This letter of agreement between C.C.E.T., INC. and I.C.S., N.V. engages the services of C.C.E.T., INC. to provide all travel related services as requested by I.C.S., NV. - services to include:

- Assisting seamen with obtaining the required travel documentation i.e. visas, letter of travel,etc
- Coordinating with recruiting agent travel arrangements from seaman's original point of travel
- Coordinating travel by providing airline tickets,hotel, transfers to/from vessel and or hotel
- Providing assistance at airport
- Advising port agents of seamans' arrival and providing flight arrangements as coordinated by CCET

From time to time I.C.S. may require C.C.E.T, INC. to arrange funds to be advanced to personnel for reasons of last minute repatriation, on these occasions it is agreed that CCET,Inc will make arrangements for these payments and charge I.C.S., N.V. a minimal handling fee not to exceed 5% (five per cent) of monies advanced on behalf of I.C.S., N.V.

It is agreed that fo rthe above services I.C.S., N.V. will pay C.C.E.T.INC the following monthly fee:

| | |
|---|---|
| MV Melody | $2,500.00 |
| Mv Monterey | $1500.00 |
| Mv Rhapsody | $1500.00 |

It is further understood and agreed that these fees are inclusive of any and/or all overtime, or weekend work needed to provide the required services.

The terms of this agreement is a term of twelve (12) months, and will be evaluated every six months from date of signature for consideration of costs and/or services which are not foreseen.

in acceptance of terms stipulated herein.

_____                    _____
I.C.S., N.V.                               C.C.E.T, INC.

Oct 12, 1999                               _____
DATE                                       DATE

3050 Biscayne Blvd.                        EXHIBIT "B"
Suite 202
Miami FL. 33137

# ·C.C.E.T., Inc

Phone (305) 573-9271 • Fax (305) 573-9038

August 28, 2000

Mr. David C. Rash , P.A.
88 N. E. 168 Street
North Miami Beach, Fl. 33162

RE: Case No: 00-6098-CIV-JORDAN
    Marquita Gudiel De Juarez

Dear Mr. Rash:

In response to the "NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE OF
SUMMONS" that you sent to me, "As Agent of ICS Island Cruise Services  N. V."   please be
advised that I am not  the agent for I.C.S.,N .V. ( ISLAND CRUISE SERVICES N. V.)  , nor am I
authorized to accept  service of process on their behalf.

We trust this information will be of guidance.

Sincerely yours,

C.C.E.T. , INC.

Felice Campagna

CC:  Mr Richard McCormick
     Milken & Hayden P.A.

Enclosure:

FC/ nr

3050 Biscayne Blvd.
Suite 202
Miami FL. 33137

EXHIBIT "C"